FILED

FEB 2 1 2023

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Justin S. Beck
3501 Roselle St.,
Oceanside, CA 92056
760-449-2509
justintimesd@gmail.com
*In Propria Persona*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN S. BECK, | Case No.: 3:23-CV-0164-MMA-DEB |
| Plaintiffs, | Judge:   Hon. Michael M. Anello |
| vs. | **RICO CASE STATEMENT** |
| STATE OF CALIFORNIA; THE STATE BAR OF CALIFORNIA; SUZANNE GRANDT; RUBEN DURAN; ELI DAVID MORGENSTERN; KENNETH CATANZARITE | |
| Defendants, | |
| UNITED STATES ATTORNEY GENERAL; UNITED STATES OF AMERICA | |
| Nominal Defendants | |

## RICO CASE STATEMENT

1. The alleged unlawful conduct is in violation of 18 U.S.C. § 1962(c), 18 U.S.C. § 1962(a) and 18 U.S.C. § 1962(b).

2. The defendants are State of California, The State Bar of California, Suzanne Grandt, Ruben Duran, Eli David Morgenstern, and Kenneth Catanzarite.

3. The alleged wrongdoers, other than the defendants listed above, are as follows, with the alleged misconduct of each wrongdoer:

1    State Bar Court. It is alleged this nonsovereign entity is used as a collateral attack either

2    to delay non-attorney rights, equity, and money in favor of allegedly criminal conduct – or to

3    suit the corrupt motives of passion or interest as may be directed by Office of General Counsel

4    and Board of Trustees. State of California is the only State with such an entity, where Courts in

5    other States have various means to reduce public harm without delay caused by State Bar Court.

6    Girardi & Keese. This entity is allegedly among the corrupt law firms in California that

7    used and commingled operations with The State Bar of California, Executive Director, Office of

8    General Counsel, Board of Trustees, Office of Chief Trial Counsel, State Bar Court, California

9    Supreme Court, and other government functions to defraud the public and enrich themselves. An

10   investigation that began on August 26, 2014, by Munger Tolles & Olsen cites a "five-layer chess

11   game" involving "State Bar leadership" that was "failing to adhere to basic principles of

12   governance." The report cites a trip to Mongolia by Joseph Dunn, Bar employee Thomas Layton,

13   and former State Bar President Howard Miller of the Girardi & Keese law firm in January 2014.

14   On information and belief, this report was deliberately concealed from the public, and Board of

15   Trustees, Office of General Counsel, and Executive Director know and were involved with

16   compromising the California judicial system. On information and belief, this trip to Mongolia

17   was predicate to the State Bar Leadership Bank program for which funds were and are being

18   laundered by State Bar's Board of Trustees in China and Taiwan. The 2014 report was allegedly

19   concealed from the public, as it cites Girardi 18 times. The report specifically cites "Perceived

20   Girardi Keese Influence at the Bar." On November 2, 2022, Federal Judge Thomas M. Durkin

21   in a Memorandum Opinion and Order called Mr. Girardi's conduct "unquestionably criminal."

22   Office of General Counsel. This law firm within the nonsovereign entity The State Bar

23   of California is alleged to coordinate, conceal, and protect 700+ Club constituents.

24   ACTS Law. One individual alleges in writing to the Plaintiff that "When Girardi [Keese]

25   was put into bankruptcy, we retained ACTS law firm. Kim Archie told us a lot of Girardi clients

26   are being retained by Acts law. But after signing with Acts law we weren't told that 8 former

27   Girardi Keese lawyers worked with the firm! Acts law was Girardi 2.0 we later found out that

28   Robert Finnerty was just covering up the Girardi fraud."

1
2
3
4

<u>Pillar Law Group</u>. This entity is allegedly among the corrupt law firms in California that used and commingled operations with The State Bar of California, Executive Director, Office of General Counsel, Board of Trustees, Office of Chief Trial Counsel, State Bar Court, California Supreme Court, and other government functions to defraud the public and enrich themselves

5
6
7
8
9
10
11
12
13
14
15
16

<u>Catanzarite Law Corporation</u>. This entity is allegedly among the corrupt law firms in California that use and commingle operations with The State Bar of California, Executive Director, Office of General Counsel, Board of Trustees, Office of Chief Trial Counsel, State Bar Court, California Supreme Court, and other government functions to defraud the public. The entity is allegedly used to file knowingly fraudulent litigation using the protection of The State Bar of California to extort settlements, obstruct justice, maliciously prosecute, and obtain fraudulent judgments. It is alleged that this entity is an affiliate of Aegis Asset Management, Inc. a registered investment advisor which is alleged to launder racketeering profits of Catanzarite Law Corporation and 700+ Club. It is alleged that this entity is used to launder financial instruments like fraudulent court judgments acquired through a pattern of racketeering activity, and to establish property owners associations to control real estate acquired through a pattern of racketeering activity in Orange County, California for Kenneth J. Catanzarite.

17
18
19
20
21
22
23

<u>Nicole Marie Catanzarite Woodward</u>. This individual is an officer of Catanzarite Law Corporation and alleged daughter of Kenneth J. Catanzarite. She appeared in several appeals targeting the Plaintiff's rights or decisions which Court of Appeal considered "meritless." This individual is allegedly involved in the ongoing schemes to defraud the Plaintiff by mail and wire, and malicious prosecution of the Plaintiff without objective probable cause who benefits from the ongoing, undue protection of The State Bar of California enterprise. This individual is an alleged member of the 700+ Club described herein.

24
25
26
27
28

<u>Tim James Okeefe.</u> This individual is an associate of Catanzarite Law Corporation. He appears on pleadings, notices of motion, and similar papers in conduct allegedly targeting the Plaintiff. He is also purporting to representing James Duffy in a federal case against an entity owned or controlled by Jeffrey Schunk, where he would not know Mr. Duffy or Mr. Schunk but for the alleged racketeering activity commencing September 14, 2018, involving Catanzarite

3

Law Corporation. This individual is allegedly involved in the ongoing schemes to defraud the Plaintiff by mail and wire, malicious prosecution of the Plaintiff without objective probable cause who benefits from the ongoing, undue protection of The State Bar of California enterprise. As of July 13, 2022, the Court of Appeal in California concluded that three cases were filed without objective probable cause, with malice, against the Plaintiff that achieved favorable termination reflecting the lack of merits to all claims against the Plaintiff. This individual is an alleged member of the 700+ Club described herein.

Brandon Woodward. This individual is an associate of Catanzarite Law Corporation. He appears on pleadings, notices of motion, and similar papers in conduct allegedly targeting the Plaintiff. He is also allegedly the husband of Ms. Catanzarite-Woodward. This individual is allegedly involved in the ongoing schemes to defraud the Plaintiff by mail and wire, malicious prosecution of the Plaintiff without objective probable cause who benefits from the ongoing, undue protection of The State Bar of California enterprise. As of July 13, 2022, the Court of Appeal in California concluded that three cases were filed without objective probable cause, with malice, against the Plaintiff that achieved favorable termination reflecting the lack of merits to all claims against the Plaintiff. This individual is an alleged member of the 700+ Club described herein.

Eric V. Anderton. This individual is an associate of Catanzarite Law Corporation. He is alleged to be a "back up" when Kenneth J. Catanzarite, Brandon Woodward, and Tim James O'Keefe are disqualified for representing adverse interests in the same or substantially related matters in order to defraud litigants and Courts. This individual is an alleged member of the 700+ Club described herein.

Jim Travis Tice. This individual is a purported former associate of Catanzarite Law Corporation, used as a proxy for Kenneth J. Catanzarite when Mr. Catanzarite, Mr. Anderton, Mr. Woodward, or Ms. Catanzarite-Woodward are disqualified by trial courts or Courts of Appeal to continue fraudulent schemes to extort litigants. Mr. Tice assumed the role of counsel in Orange County Superior Court Case No. 30-2019-01164267, allegedly with actual knowledge that all of the claims therein were and are fraudulent. Mr. Tice did the same thing in Court of

4                                    3:23-CV-0164-MMA-DEB

Appeal in a series of parallel, fraudulent cases related to "Corbell Partnership" and "Renato Corzo" for which Mr. Tice was disqualified, and found to have filed an appeal without authority. Mr. Tice was used as a straw litigant related to a Noroski in 2013, after the trial court concluded the case filed was a "sham" according to public records disclosed to the Plaintiff by State Bar. This individual is an alleged member of the 700+ Club described herein.

Becky Phillips. This individual is a key employee of Catanzarite Law Corporation. Ms. Phillips is alleged to send postal mail and wire communications underlying all allegedly fraudulent schemes of Catanzarite Law Corporation and Kenneth J. Catanzarite.

Han Le. This individual is a key employee of Catanzarite Law Corporation. Ms. Le is alleged to aid, abet, and conspire with other Catanzarite Law Corporation actors to defraud Courts and innocent litigants.

Denise Pinkerton. This individual is an alleged straw litigant who is "in on it," or she has no idea what is filed on her behalf, or the basis for such claims. On information and belief, a parallel scheme to defraud Bank of America through Catanzarite Law Corporation exists or did exist. Ms. Pinkerton is purported "attorney-in-fact" for a "Roger Root." Roger Root was principal in Jolly Rogers Investments, Inc. when it invested in Mobile Farming Systems, Inc. in or around 2012. It is unknown if Ms. Pinkerton even knows Mr. Root, or if she is his attorney-in-fact except for the representations of Mr. Catanzarite, who allegedly does not care about the truth when making statements to the Court due to State Bar's alleged protection of him.

Jolly Rogers Investments, Inc. Jolly Roger, Inc. or Jolly Rogers Investments, Inc. invested approximately $450,000 in Mobile Farming Systems, Inc. in or around 2012, years before Plaintiff ever met Richard Francis O'Connor, Jr. or Amy Jeanette Cooper (in April 2015). This entity was defunct from May 2015 through January 17, 2019, according to Washington Secretary of State records. After Mobile Farming Systems, Inc. counsel file a motion to post a security bond challenging the standing of Catanzarite Law Corporation to file derivative claims for a non-shareholder on January 7, 2019, it was reinstated January 17, 2019, using the wire, and its address was changed to that of Catanzarite Law Corporation at 2331 W. Lincoln Ave., Anaheim, CA 92801. Its agent was changed to Kenneth J. Catanzarite.

5

3:23-CV-0164-MMA-DEB

Mobile Farming Systems, Inc. This entity was inoperable from around March 2015 through January 23, 2019. This entity was sued derivatively by Catanzarite Law Corporation commencing September 14, 2018, by a non-shareholder, Denise Pinkerton for Roger Root. Other parties sued without standing or objective probable cause derivatively were Plaintiff, Richard Francis O'Connor, Jr., Amy Jeanette Cooper, Richard Francis O'Connor, Jr., Cliff Higgerson, and Anthony B. Scudder. Mobile Farming Systems, Inc. received approximately 500 discovery requests, amidst approximately 5,000 total discovery requests upon other defendant, from Catanzarite Law Corporation and Kenneth J. Catanzarite on December 21, 2018, according to Mobile Farming Systems, Inc. ("MFS") actual counsel Kenneth Watnick who was engaged to defend the false derivative action. MFS was taken over by Catanzarite Law Corporation's Kenneth J. Catanzarite, to cover up the lack of standing to file a derivative action, between January 4, 2019, and January 23, 2019, through overt acts of alleged non-judicial extortion of Richard Francis O'Connor, Jr. and Amy Jeanette Cooper who were charged directly with securities fraud charges by Mr. Catanzarite through Denise Pinkerton. In or around the same time, the MFS address was changed to that of Catanzarite Law Corporation. According to Catanzarite Law Corporation on January 28, 2019, in a pleading, O'Connor, Higgerson, Cooper, and Scudder ("O'Connor Faction") "agreed to renounce" their duly authorized and issued shares of Cultivation Technologies, Inc. ("CTI") "in favor of MFS" under the threat of securities fraud charges filed through Denise Pinkerton. This MFS entity was then used as an alleged shell to conduct fraudulent litigation lacking probable cause, where MFS was first sued by Catanzarite Law Corporation, and then Catanzarite Law Corporation attorneys purported to advocate for it using the "renounced" property of O'Connor Faction, and the exculpation of purported conflict waivers. Catanzarite Law Corporation purports to be tolling claims against O'Connor Faction presently so they be brought "later" so "no conflict." The compromise of the derivative action was never approved by the Court. After seeking to unwind all shares of CTI while advocating for other shareholders under different factual pretenses on May 1, 2019, the trial Court rejected the MFS claims filed "with every fiber of [its] being." Rather than dismiss the claims, Catanzarite Law Corporation just filed amended complaints, disregarded all facts, and continued the scheme.

3:23-CV-0164-MMA-DEB

1    Richard Francis O'Connor, Jr. In or around 2012 or 2013, O'Connor allegedly caused

2    MFS to transfer $340,000 in illegal commissions to a Joseph Porche who sold securities for

3    MFS. These funds came from Jolly Roger Investments, Inc. Mr. O'Connor was CEO of CTI and

4    a founder of the company from June 2015 until he resigned in May 2016. He is purportedly now

5    an officer and director of MFS, with the same address as Catanzarite Law Corporation. Plaintiff's

6    records show Mr. O'Connor participated in approximately 158 securities transactions involving

7    the sale or transfer of CTI shares between June 2015 and January 23, 2019. On information and

8    belief, Mr. O'Connor personally sold more than $2,000,000 in CTI stock personally, or through

9    TGAP Holdings, LLC, and concealed it from the IRS and Courts. On January 23, 2019, Mr.

10   O'Connor signed a "Unanimous Consent of the Sole Shareholder of CTI" on behalf of MFS as

11   the "sole shareholder" which purported to unwind all duly authorized corporate acts of CTI under

12   the alleged extortion of Kenneth J. Catanzarite to force corporate actions. Mr. O'Connor then

13   proceeded to conduct at least four overt acts of perjury under ongoing alleged threats of Mr.

14   Catanzarite "working with law enforcement" that conflicted with each other to support Mr.

15   Catanzarite's alleged scheme to defraud the Plaintiff, Courts, and innocent litigants using

16   protection of State Bar staff. Mr. O'Connor allegedly occupied a home owned by Mr. Catanzarite

17   in Orange County in exchange of producing false evidence to support the schemes.

18       Amy Jeanette Cooper. This individual was President of MFS, had extra-marital affairs

19   with Mr. O'Connor, and allegedly cooperated with Mr. O'Connor to transfer $340,000 in illegal

20   commission to a Joseph Porche who sold securities for MFS. These funds came from Jolly

21   Rogers Investments, Inc. Ms. Cooper allegedly knew this to be illegal, and this act would form

22   the basis of cooperating with Mr. Catanzarite in January 2019 under his threat of "working with

23   law enforcement." Ms. Cooper was President of CTI, then aided in the removal of the CTI board

24   of directors under Mr. Catanzrite's threat of securities fraud allegations under completely false

25   pretenses. Ms. Cooper knew her acts in January 2019 were fraudulent, but allegedly believed the

26   risk of working with Mr. Catanzarite was less than the risk of her being "caught" for paying of

27   illegal commissions to Mr. Porche under Mr. Catanzarite's threat. Court of Appeal found prima

28

3:23-CV-0164-MMA-DEB

facie evidence of malicious prosecution of three lawsuits by Ms. Cooper against the Plaintiff using MFS and involving Mr. Catanzarite.

Cliff Higgerson. This individual loaned MFS $500,000, but the company failed. Mr. Higgerson accepted in June 2015 the offer to purchase 1,000,000 shares of CTI and thereby became a founder. According to Mr. Catanzarite, Mr. Higgerson agreed to "renounce" his CTI shares "in favor of MFS" – allegedly to save his daughter from Mr. Catanzarite's threat of "working with law enforcement" and his own status as defendant to a derivative action. Mr. Higgerson filed a demurrer in January 2019 to the derivative action before he allegedly colluded with Ms. Cooper (his daughter) in exchange of their dismissals from the case filed by Ms. Pinkerton and promise to produce false evidence to suit Mr. Catanzarite's schemes. Court of Appeal found prima facie evidence of malicious prosecution of three lawsuits by Ms. Cooper against the Plaintiff using MFS and involving Mr. Catanzarite.

Anthony B. Scudder. This individual was investor relations for CTI. He spoke with Roger Root in August 2015, and provided evidence that Mr. Root declined the offer to purchase CTI shares but "supported what [CTI] was doing." Mr. Catanzarite was provided evidence of this. Nevertheless, Mr. Catanzarite – through Ms. Pinkerton as "attorney-in-fact" filed claims on September 14, 2018 in Orange County Superior Court asserting that Mr. Root was never offered shares in CTI, and that MFS was the sole shareholder of CTI, which Mr. Catanzarite knew to be false. Mr. Scudder was also sued by Catanzarite Law Corporation commencing September 14, 2018. According to Mr. O'Connor's emails, Mr. Scudder agreed to "trade his testimony" in exchange of his dismissal from the derivative claims, which dismissal occurred on January 4, 2019. Mr. Scudder later agreed to settle with Plaintiff related to his malicious prosecution and RICO allegations, however, Mr. Catanzarite had obtained a $13,000 judgment in Orange County Superior Court for legal fees on behalf of Mr. Scudder through alleged abuse of "Anti-SLAPP" in California despite Plaintiff showing his likelihood of prevailing on at least three counts of malicious prosecution charges. Nevertheless, Mr. Scudder was then allegedly coerced by that judgment and forced to reject the settlement for Mr. Catanzarite's corrupt motives of passion or interests unrelated to his defendant-turned-client, Mr. Scudder. On information and belief, Mr.

3:23-CV-0164-MMA-DEB

Scudder knew Catanzarite was protected by State Bar and that he was part of a criminal enterprise, so Mr. Scudder feared that more than the charges alleged by Plaintiff. Mr. Scudder confirmed to the Plaintiff by phone that Mr. Catanzarite made a practice of bribing witnesses, and that he was "very powerful."

Jorge E. Navarette. This individual is the California Supreme Court Executive Officer, Clerk, and Deputy. Mr. Navarette filed, or caused to be filed, a fraudulent antitrust petition on behalf of the Plaintiff in California Supreme Court on October 18, 2022, that was not authorized (Case No. S276939). After notice of potential obstruction of federal proceedings including antitrust allegations delivered United States Department of Justice on November 29, 2022, Mr. Navarette obtained, or manufactured, an "En Banc" decision on the fraudulent antitrust petition that Plaintiff did not file nor authorize (S276939), with a rubber-stamp signature of Chief Justice Cantil-Sakauye on November 30, 2022 that was delivered by mail to Plaintiff. Before the antitrust petition, Mr. Navarette also sent postal mail to the Plaintiff related to the alleged "In Re Walker" scheme to defraud operated by California Supreme Court to protect "700+ Club" and screen for them. Specifically, Mr. Navarette is alleged to review accusations against State Bar attorneys and ensure California Supreme Court does not hear such accusations by sending postal mail intending to defraud members of the public and protect 700+ Club constituents.

Leah Wilson. This individual is the Executive Director for The State Bar of California. Ms. Wilson is alleged to coordinate with Board of Trustees, Office of General Counsel, and Office of Chief Trial Counsel to protect the 700+ Club, which allegedly includes Catanzarite Law Corporation and Girardi-Kees actors. Ms. Wilson is alleged to have setup the "Leadership Bank Program" which controls and possesses money laundering capacity for up to $5 billion at any given time within interest only lawyer trust accounts (IOLTA) through China and Taiwan. The banks allegedly used for international money laundering include American Continental Bank, CTBC Bank Corp., New Omni Bank, and Bank of the Orient. This individual is an alleged member of the 700+ Club described herein.

Tani Cantil-Sakauye. This individual is the 28th chief justice of the State of California and alleged member of the 700+ Club outlined herein, also participant in Girardi enterprise.

3:23-CV-0164-MMA-DEB

1        Ellin Davtyan. This individual is General Counsel for The State Bar of California. Ms.

2    Davtyan is alleged to lead an office of approximately 20-attorneys within Office of General

3    Counsel whose primary purposes are to oppress pro se litigants, provide frivolous legal opinions

4    to excuse The State Bar of California's illegal conduct, and to coordinate obstruction of justice

5    to protect The State Bar of California enterprise and the 700+ Club within State and Federal

6    Courts in California. Ms. Davtyan sent a threatening letter with intent to defraud the Plaintiff

7    and control the enterprise on December 15, 2022, after Ms. Grandt inadvertently confirmed

8    Plaintiff's allegations that Executive Director, Board of Trustees, Office of General Counsel,

9    and Office of Chief Trial Counsel communicate to allegedly defraud members of the public in

10   favor of allegedly corrupt attorneys including those associated with Catanzarite Law Corporation

11   led by Mr. Catanzarite. Ms. Davtyan is also alleged to provide legal guidance with intent to

12   protect attorneys overtly despite The State Bar of California's statutory role as a public protection

13   agency. This individual is an alleged member of the 700+ Club described herein.

14       Robert George Retana. This individual is Assistant General Counsel for The State Bar of

15   California enterprise. Mr. Retana is alleged to work primarily with Suzanne Grandt to preserve

16   The State Bar of California enterprise, protect 700+ Club members, to defraud Courts, and to

17   obstruct justice. Following the Plaintiff's filing to exhaust state remedies in an antitrust petition

18   that was stricken (S276517) on September 27, 2022 by a rubber-stamp of Chief Justice Cantil-

19   Saukauye, on October 17, 2022, Mr. Retana wired "Antitrust Determination #2022-001" to

20   Plaintiff after removing or ignoring four full volumes of evidentiary exhibits from S276517,

21   citing *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 immunity, and overtly ignoring

22   *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (2015). Mr. Retana's

23   legal opinion calls the Plaintiff's antitrust allegations "gratuitous" after being assigned by

24   California Supreme Court to make an antitrust determination for his own conduct, Office of

25   General Counsel, Office of Chief Trial Counsel, and Board of Trustees majority-controlled by

26   active market participants. Mr. Retana informed Jorge E. Navarette by emailed letter that the

27   Plaintiff had "60-days" to request California Supreme Court to review the obstructed petition

28   and determination filed by Mr. Retana. Instead, Jorge E. Navarette filed the obstructed petition

3:23-CV-0164-MMA-DEB

1    on October 18, 2022, that Plaintiff did not authorize nor did he file, created a new case number
2    S376939, and obtained a fraudulent "En Banc" decision in a case that should not have existed in
3    the first place. This individual is an alleged member of the 700+ Club described herein.

4         Charles Tsai. This individual was Deputy Attorney General in the Executive Branch of
5    California Government in December 2022. After the Plaintiff delivered a public records request
6    concerning disclosures to the auditor and Governor made by The State Bar of California as to
7    material State liability on December 8, 2022, California Department of Justice confirmed it
8    would produce records on January 3, 2023, by letter. As set forth herein concerning Suzanne
9    Grandt, when Plaintiff caught her in in overt acts of alleged fraud, Mr. Tsai overtly transitioned
10   from the Executive Branch as Deputy Attorney General to the Office of General Counsel of
11   Judicial Branch entity The State Bar of California between December 8, 2022 and January 5,
12   2023 with alleged intent to defraud Plaintiff and obstruct 22-CV-01616-BAS-DDL. This
13   individual is an alleged member of the 700+ Club described herein.

14        Jose Lopez, Jr. This individual was convicted of RICO conspiracy violations, announced
15   by United States Department of Justice in September 2017. Mr. Lopez was an Orange County
16   Superior Court Clerk who was found to have manipulated or "fixed" more than 1,000 cases. On
17   information and belief, Mr. Lopez is not alone, and cases involving other 700+ Club members
18   are routinely manipulated or obstructed as may be directed by The State Bar of California's
19   Office of General Counsel in Orange County Superior Court. Mr. Catanzarite or others
20   associated with Catanzarite Law Corporation allegedly fixed cases related to a Deborah Breuner
21   Davis, also known to The State Bar of California enterprise. This conviction serves as evidence
22   of alleged compromise of Orange County Superior Court, where it is alleged that Office of
23   General Counsel, Suzanne Grandt, and Charles Tsai are conspiring to obstruct the Plaintiff's
24   claims act litigation and trial court cases to protect The State Bar of California enterprise and
25   700+ Club constituents associated with Catanzarite Law Corporation and State Bar.

26        Thomas V. Girardi. This individual was allegedly protected by The State Bar of
27   California enterprise for forty years, and he compromised the entire judicial system through
28   seeding of judges, corruption of State Bar Court, and as outlined in 2014 by a report allegedly

11                                  3:23-CV-0164-MMA-DEB

concealed by Board of Trustees from the public – by controlling aspects of The State Bar of California. Mr. Girardi's alleged fingerprints remain in The State Bar of California and Judicial Council, and this allegedly shows this Court cannot summarily reject Plaintiff's genuine claims as if they were not credible. According to a press release from U.S. Attorney's Office, Central District of California, "Thomas Vincent Girardi has been indicted by a federal grand jury" and "is charged with five counts of wire fraud." This individual is an alleged member of the 700+ Club described herein. The Plaintiff possesses an amicus filed by a Phillip Kay in Federal Court alleging with specificity the improper use of The State Bar of California for corrupt interests.

David Lira. This individual is still allegedly protected by The State Bar of California enterprise, and was among key staff of Girardi-Keese. Mr. Lira is also cited by Judge Thomas Durkin on November 2, 2022, as conspiring with staff and Mr. Girardi to defraud clients. This individual is an alleged member of the 700+ Club described herein.

Keith Griffin. This individual is still allegedly protected by The State Bar of California enterprise, and was among key staff of Girardi-Keese. Mr. Griffin is also cited by Judge Thomas Durkin on November 2, 2022, as conspiring with staff and Mr. Girardi to defraud clients. This individual is an alleged member of the 700+ Club described herein.

John K. Trotter. This individual is allegedly tied with the Girardi-Keese aspects of the 700+ Club, also former Presiding Justice of the California Court of Appeal, Fourth Appellate District, Division Three (Orange County). Plaintiff received public records showing direct links between Mr. Trotter and Mr. Girardi. Mr. Trotter is one of the founding members of JAMS.

Todd Spitzer. The Orange County District Attorney's Office led by Todd Spitzer is subject of a United States Department of Justice Report on Civil Rights Violations issued October 13, 2022. The Plaintiff notified his office of the alleged criminal conduct to which Plaintiff has been subject since 2018 by Catanzarite et al., which they refused to investigate. Plaintiff was instructed to file a police report with Anaheim, which was purportedly "put in the system." Plaintiff requested a meeting with someone, and was not even let inside the building in Orange County. This individual is an alleged member of the 700+ Club described herein.

12

3:23-CV-0164-MMA-DEB

**Hailyn Chen**. Hailyn Chen is among Board of Trustees for The State Bar of California. On information and belief, she was appointed to preserve non-existent privilege to conceal Board of Trustees' actual knowledge of Thomas V. Girardi's compromise of The State Bar of California and California judicial system. Ms. Chen allegedly coordinates obstruction of any compromise to The State Bar of California enterprise with Office of General Counsel through direct *ex parte* communication with judicial officers, She is Co-Managing partner of Munger, Tolles & Olsen, the firm that conducted investigation into compromise of The State Bar of California in 2014 by Thomas V. Girardi, Howard Miller, and others and the "five-layer chess game" alleged which led to the investigative report. This individual is an alleged member of the 700+ Club described herein.

**Lawrence J. Dal Cerro**. This individual was assigned to investigate Hailyn Chen, Suzanne Grandt, Ruben Duran, George Cardona, Leah Wilson, Eli Morgenstern, and Robert Retana. It is alleged this individual colludes with Office of General Counsel and Board of Trustees to conceal the conduct at issue under color of State law, where a January 13, 2023 letter to the Plaintiff says original case no. 3:22-CV-01616-BAS-DDL was remanded, but that was inaccurate. This individual is an alleged member of the 700+ Club described herein.

**4.   The alleged victims, other than the Plaintiff, are as follows:**

**Deborah Breuner Davis**. Ms. Davis is a former client of Catanzarite Law Corporation according to Plaintiff's information and belief. Mr. Catanzarite placed a loan against her home for legal services in the amount of $120,000 from Catanzarite Law Corporation, and then allegedly foreclosed on the home valued at $1.2 million to steal it. To allegedly conceal the gains from illegal debt for legal services, Mr. Catanzarite transferred the $1.2+ million home to a Robert Valusek in 2017 for the price of $99,500.

**Donald & Rose Williams**. These individuals are alleged to have fully disclosed their injuries to the nonsovereign entity The State Bar of Califronia, but as victims of the alleged 700+ Club, they were deliberately mistreated as being a matter of "discretion" of The State Bar of California, Office of General Counsel, under purported authority of State of California. They lost their home.

13

1        **Chima Anyanwanu**. This individual was targeted by The State Bar of California

2    enterprise related to 16 homeless people evicted from an encampment who didn't have money

3    for a retainer. For a five-week delay related to a $4,000 payment, his license to practice was

4    suspended for 30-days and he was placed on probation for 2-years. According to the LA Times,

5    "The State Bar has repeatedly failed to police prominent and wealthy members of the legal

6    community, most notably Tom Girardi, who misappropriated millions of dollars from clients

7    over decades…The bar has historically trained its firepower on individuals without the money,

8    firm backing or political connections to put up a fight, and those lawyers are disproportionately

9    Black men, like Anyanwu."

10       **Todd Mikles**. Mr. Mikles is a victim, similarly to the Plaintiff, of a scheme to defraud

11   involving the mail and wire, through a series of maliciously prosecuted lawsuits lacking

12   objective probable cause. In Mr. Mikles case, Mr. Catanzarite visited a Richard Carlson at his

13   home. Mr. Carlson testified February 12, 2020, that he did not believe he had suffered damages

14   and was not seeking an attorney. When asked by opposing counsel why Mr. Carlson was the

15   lead plaintiff in 9 putative class actions filed across the country for hundreds of millions of

16   dollars, Mr. Catanzarite said these questions were harassing. Suzanne Grandt, Charles Tsai, and

17   Ruben Duran are aware of this scheme. It is cited in Plaintiff's motion in a related case before

18   Charles Tsai's alleged obstruction of justice. It is also subject of not less than 19 Court of Appeal

19   rulings in Mr. Catanzarite's allegedly relentless pursuit of fraudulent judgments, extorted

20   settlements, and deliberate obstruction of justice for personal gain unrelated to merit.

21       **Sanjay Bhardwaj**. Mr. Bhardwaj is a victim of alleged manufacturing of evidence in State

22   Bar Court. Plaintiff possesses expert testimony showing a Judge McElroy presiding over

23   proceedings involving an alleged 700+ Club member Paul Thorndal. Mr. Bhardwaj was

24   disbarred, on information and belief, because he is a sole practitioner and minority – among the

25   regular targets alleged for The State Bar of California enterprise. McElroy is an alleged member

26   of the Girardi sphere of influence according to other evidence in possession of Plaintiff, namely

27   an amicus brief filed by Phil Kay which is allegedly corroborated by cumulative evidence the

28   Plaintiff filed in 3:22-CV-01616-BAS-DDL but Tsai allegedly coerced the Court to strike.

3:23-CV-0164-MMA-DEB

1       Deborah DeAnda. Ms. DeAnda is an alleged victim of Girardi's sphere of influence,

2   members of 700+ Club, and a John K. Trotter who was a once appellate justice who transitioned

3   to mediation. She was allegedly threatened and coerced as part of a broader scheme to take her

4   interests in a law firm, where an alleged 700+ Club member John Restaino said "we own this

5   court" referring to Orange County Superior Court.

6       Brian Bargabus. Mr. Bargabus is an alleged victim of the exact conduct at issue, residing

7   with Plaintiff, also possessing vested rights to sue State of California agency The State Bar of

8   California for which State of California is liable. Mr. Bargabus is a key witness to obstruction of

9   justice by Mr. Tsai, Office of General Counsel actors, and the ongoing malicious prosecution by

10  Mr. Catanzarite of the Plaintiff with predicate acts detailed herein.

11      ROES 1-150,000. ROES 1-150,000 are, on information and belief, the estimated number

12  of U.S. citizens and businesses who sought public protection from The State Bar of California

13  from 2010-2021 but were defrauded by mail and wire by the "public protection agency" through

14  one or both of The State Bar of California's mail facilities affecting interstate commerce with

15  malice, as it overtly protected 700+ Club members. It is alleged that actors associated with The

16  State Bar of California seek to defraud the public and deliberately protect attorneys, particularly

17  "700+ Club" which allegedly includes Mr. Girardi, Mr. Catanzarite, and those associated with

18  them. For instance, on December 22, 2019, one "Former Investigator" for State Bar of California

19  (Former Employee) is quoted: "I was an investigator in the OCTC [Office of Chief Trial

20  Counsel]. The idea is NOT to investigate attorney misconduct but to draft memo after memo in

21  an effort to make it look as if there had actually been an investigation. Nor is it designed to

22  discipline attorneys. Last year, out of 15,000 complaints made to the State Bar, only 25 got an

23  actual hearing. WTF! As far as management goes, WHAT MANAGEMENT? The term slave

24  drivers is more appropriate. I don't know what it's like to work in other areas of the State Bar

25  but OCTC is for all intents a purposes a fraudulent enterprise. OCTC is horrible place to work

26  for an honest person. Finally, as far as attorney positions it's a great place to work if you don't

27  want to practice law. On any given day half the attorney offices are empty."

28

15                      3:23-CV-0164-MMA-DEB

1               <u>United States</u>. The conduct at issue allegedly defrauds the United States in violation of

2  18 U.S.C. § 371. Beyond the harm to Courts and innocent defendants sued without objective

3  probable cause or whose money is stolen, Plaintiff is informed by law students who are subject

4  to similar predation as Plaintiff has experienced by other staff bound by duty to help and protect

5  them. Where The State Bar of California affects approximately 20% of the United States market

6  for legal services and controls approximately $3.63 trillion in interstate commerce, the effect on

7  the United States cannot be underestimated. It is alleged that The State Bar of California is an

8  unlawful trust, but it is not capable of being penetrated without federal intervention because the

9  unlawful trust controls the entire judicial system in California, and even may obstruct the Federal

10  judiciary. In one manner, the United States underwrites student loans for law school; The State

11  Bar of California allegedly defrauds the U.S. through its alleged monopoly on the same.

12               <u>44 United States Persons, daily</u>. Plaintiff alleges that the deliberate fraud conducted by

13  The State Bar of California, some of which is alleged in the predicate acts outlined herein, occurs

14  44 times per day at minimum. This number is based on the number of persons who allegedly

15  inform The State Bar of California of their harm, who are subject to the predatory practices by

16  mail and wire, negligence, and deliberate protection of 700+ Club members and other attorneys

17  who defraud the public as a practice with commingled operations by and between the allegedly

18  corrupt attorneys' practices, Office of General Counsel, Office of Chief Trial Counsel, Executive

19  Director, and Board of Trustees. No other State has "State Bar Court." It is alleged that these 44

20  United States Persons would not be harmed but for the abuse of sovereignty and alleged systemic

21  corruption that The State Bar of California enterprise has caused and will cause without

22  intervention.

23  **5. A description of the pattern of racketeering activity or collection of unlawful debts alleged**

24  **for each RICO claim is as follows. Where the predicate offenses of wire fraud and mail**

25  **fraud are involved, the "circumstances constituting fraud or mistake are stated with**

26  **particularity" including the time, place, and substance of the alleged misrepresentations,**

27  **and the identify of persons to whom and by whom the alleged misrepresentations were**

28  **made.**

3:23-CV-0164-MMA-DEB

a. <u>List the alleged predicate acts and the specific statutes that were allegedly violated.</u>

PREDICATE ACT. On June 14, 2022, "via email only" to the Plaintiff at justintimesd@gmail.com it was disclosed by "Office of Chief Trial Counsel" from ctc.cpra@calbar.ca.gov addressed to "Justin S. Beck" signed by "Alex Hackert" that "In Re Perrine (2007) Catanzarite did not tell the Court that his client, who was declaring bankruptcy, deeded his home to Catanzarite. In bankruptcy, the person declaring bankruptcy cannot sell or give away without telling the Court. Catanzarite took the property to pay for his fees, but did not tell the Court about this, violating this strict rule. The Court took away all of Catanzarite's fees: "Given the gravity of Catanzarite's non-disclosure, the court will deny all fees to Catanzarite for legal services rendered to Perrine to the petition date due to its failure to comply with Section 329(a) and Rule 2016(b). Catanzarite was ordered to give back either his fees, or the property he took." These acts allegedly violated 18 U.S.C. § 1503 in that they were intended to obstruct justice, and they did obstruct justice, and they are from a facility engaged in interstate commerce located at 845 S. Figueroa Ave, Los Angeles, CA 90017 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

PREDICATE ACT. On June 14, 2022, "via email only" to the Plaintiff at justintimesd@gmail.com it was disclosed by "Office of Chief Trial Counsel" from ctc.cpra@calbar.ca.gov addressed to "Justin S. Beck" signed by "Alex Hackert" that "Catanzarite violated court rules by making statements to the court without any proof. The court said: "But here plaintiffs [Catanzarite] admit they violated several rules. They also continued to cite the excluded evidence in their reply brief even after defendants noted the error in their briefs.' The Court pointed out that Catanzarite's brief made 39 unsupported factual statements, and paragraphs lacking references. Some statements were completely incorrect. Catanzarite does not care about the truth making statements to the Court. The Court said "Kenneth J. Catanzarite and Laurence M. Rosen are ordered to pay defendants the $10,000 sanctions award…" These acts were from a facility engaged in interstate commerce located at 845 S. Figueroa Ave, Los

Angeles, CA 90017 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

PREDICATE ACT. On June 14, 2022, "via email only" to the Plaintiff at justintimesd@gmail.com it was disclosed by "Office of Chief Trial Counsel" from ctc.cpra@calbar.ca.gov addressed to "Justin S. Beck" signed by "Alex Hackert" that "In this case that is ongoing, the Court punished Catanzarite for saying one thing, then switching his story. The court stated that Catanzarite's case was a "sham." First, Catanzarite claimed that the dental practice run by Dr. Noroski and Dr. Schneider should give back money to patients who had been treated at the dental office, but did not say anything was wrong with the dentistry. Then, Catanzarite realized he had no case, because the plaintiffs who were former plaintiffs had their depositions and said they were happy with Dr. Noroski and happy with Dr. Schneider. (See attached.) The plaintiffs dropped out and Catanzarite had no case. Catanzarite asked to file an amended complaint and now said that the dental services were bad. The Court punished Catanzarite $14,000 for wasting everyone's time." These acts were from a facility engaged in interstate commerce located at 845 S. Figueroa Ave, Los Angeles, CA 90017 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

PREDICATE ACT. On April 14, 2022, Michael S. Tilden, CPA as Acting California State Auditor wrote the Governor of California and issued Report 2022-030. The details allegedly disclose systemic corruption of The State Bar of California, money laundering convictions, utter disregard for public interest, and statistical anomalies related to "700 attorneys." On information and belief, this is the "700+ Club," and it includes Mr. Catanzarite, attorneys associated with his firm, and Mr. Girardi, attorneys associated with his firm.

PREDICATE ACT. On July 20, 2017, Honorable William H. Alsup in No. C 17-02798 WHA says: "Get the State Bar to look into [Suzanne Grandt's] conduct. Maybe my committee here in this Court, the committee that we have for admitting to practice in this Court ought to look into Ms. Grandt's conduct…And next time the State Bar will be a little bit more honest with the poor federal judge…Ms. Grandt told me something that wasn't true, and I relied on it." These

3:23-CV-0164-MMA-DEB

acts allegedly violated 18 U.S.C. § 1503 in that they were intended to obstruct justice, and they did obstruct justice. In exchange for allegedly defrauding this federal judge, Suzanne Grandt was promoted to Assistant General Counsel for The State Bar of California, with her promotion announced internally four days later. It is alleged this promotion engaged in interstate commerce located at 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

PREDICATE ACT. On Friday, September 22, 2017, it was announced that Orange County Superior Court clerk Jose Lopez, Jr. was sentenced to over 11 years in federal prison for racketeering offense, violation of 18 U.S.C. § 1962(d), for a bribery scheme fixing cases. At least 1,000 cases were affected, and it is alleged that other Orange County Superior Court clerks are bribed by Kenneth J. Catanzarite and influenced by The State Bar of California's Office of General Counsel. It is alleged that Suzanne Grandt previously, and Charles Tsai currently, communicate with Judge John C. Gastelum with intent to defraud Plaintiff and to obstruct justice. It is alleged that Grandt and Tsai seek to make it appear to this Court as if it is Plaintiff being vexatious despite the overwhelming record of fraud to which he is subject, and others are subject, including actual convictions of wire fraud in Orange County, and RICO by a Clerk in the Court.

PREDICATE ACT. Thomas V. Girardi allegedly compromised the entire judicial system in California including The State Bar of California and its Board of Trustees as presently constructed led by Ruben Duran and Hailyn Chen. With actual knowledge of MTO's report in which Mr. Girardi is named 18 times from 2014, and the "five layer chess game" involving State Bar's management as alleged in the MTO investigation, Ruben Duran used the wire on Monday, January 24, 2022 and disseminated through "Office of Communications": The State Bar of California's Board of Trustees announced today that it has been conducting an additional investigation into whether the State Bar's handling of past discipline complaints against former licensee Thomas V. Girardi was affected by Girardi's connections to or influence at the State Bar. The investigation is intended to identify actions by anyone with ties to the State Bar that may constitute malfeasance in how discipline complaints against Girardi were handled.

3:23-CV-0164-MMA-DEB

"The State Bar Board leadership and staff take very seriously the immense harm done by Thomas Girardi to innocent victims," said Ruben Duran, Board Chair. "We have been proactively doing everything in our power to learn from the past and do better in the future to prevent harms like this from recurring." It is alleged that Mr. Duran intended to defraud the public, give a false sense of security, and to conceal the true nature of The State Bar of California's operations—including the protection of attorneys engaged in serial fraud like Kenneth J. Catanzarite. This overt act using the wire allegedly violated 18 U.S.C. § 1343 in that it used the wire, with intent to defraud the public and any internet user, and to conceal constructively Duran's and Board of Trustees' involvement in alleged criminal activity including international money laundering. When Mr. Duran made these statements, he was allegedly concealing the harm to Plaintiff, and carrying on the criminal conduct of 700+ Club to take money and property from the public. It is alleged, for more than ten years, that these acts engaged in interstate commerce from facilities located at 845 S. Figueroa Ave, Los Angeles, CA 90017 and 180 Howard St. San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

PREDICATE ACT. On November 2, 2022, Federal Judge Thomas M. Durkin in No. 18 C 7686 describes "when attorney Thomas Girardi stole some of the money five of his clients were owed." The order describes "Girardi drafted a letter to one of the clients stating the following: I got enough of the problem taken care of so we were able to release 50% of the settlement." And "a similar letter to another client stated: We made an agreement with Boeing that all of the cases would be resolved" and another "claiming that Girardi was "dealing with the head of the IRS" regarding the supposed tax issue." "Before sending the letters, Girardi's secretary shared them with Griffin and Lira." These letters allegedly violated 18 U.S.C. 1341 in that they were sent with intent to defraud by mail, or they allegedly violated 18 U.S.C. 1343 in that they were sent using the wire. On February 1, 2023, it was announced by U.S. Attorney's Office, Northern District of Illinois that Mr. Girardi was indicted on wire fraud charges, alleged violations of 18 U.S.C. § 1343 and Mr. Lira was indicted on wire fraud charges, alleged violation of 18 U.S.C. § 1343.

3:23-CV-0164-MMA-DEB

PREDICATE ACT. On November 3, 2022, Ruben Duran again used the wire to disseminate through Board of Trustees and The State Bar of California on the internet to every user accessing it, that "Over the past 40 years, the State Bar opened 205 [injury notices] about Girardi." Duran says "I speak on behalf of the entire Board of Trustees when I say that we want the public to know that we take our statutory mission to protect the public seriously. As articulated in our new strategic plan, the public protection mission is the guiding light in all that we do. Moreover, meaningful change begins with a culture that values transparency and accountability, principles the Board of Trustees and State Bar leadership hold central to our decision making." This press release dated November 3, 2022, distributed by Board of Trustees and Ruben Duran allegedly violated 18 U.S.C. § 1343 in that it intended to defraud as part of a scheme to protect the enterprise. The intent of this press release, particularly as Mr. Duran was concealing the conduct at issue, and with actual knowledge that he and Board of Trustees established and carried on Mr. Girardi knowingly, was intended to defraud the public and provide a false sense of security that The State Bar of California had somehow changed its ways. In reality, Mr. Duran allegedly made this announcement only because the Federal Judge Thomas M. Durkin concluded that Mr. Girardi's conduct was "unquestionably criminal." It is alleged that Mr. Girardi stole more than one billion dollars using his corruption of the California judicial system. It is alleged that Mr. Catanzarite is similar to Mr. Girardi, and that he obstructs justice and steals money with full knowledge of Board of Trustees. These acts were alleged to take place from a facility engaged in interstate commerce located at 845 S. Figueroa Ave, Los Angeles, CA 90017 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

PREDICATE ACT. It is alleged that Girardi of The State Bar of California enterprise obtained a $500 million fraudulent judgment related to the Dole Fruit Company. This matter is described *In re Girardi*, 611 Fed.3d 1027, 1039-1040. This was announced July 13, 2010, and involves Walter J. Lack and Paul A. Traina, other alleged members of the 700+ Club.

PREDICATE ACT. "Over a period of about 10 years, GK negotiated settlements with most of the defendants in the Lockheed Action on behalf of Gutierrez and other plaintiffs in that

3:23-CV-0164-MMA-DEB

action. "Gutierrez's allegations in this action is that GK misappropriated part of the settlement funds paid by the settling defendants for the benefit of Gutierrez and other class members. " *Gutierrez v. Girardi*, 194 Cal.App.4th 925, 927928. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive and defraud, and that State Bar carried these on, too.

PREDICATE ACT. On November 12, 2015, Stephen Young Kang of The State Bar of California enterprise pled guilty to and was convicted of two counts of violating title 18 U.S.C. § 1343.

PREDICATE ACT. "11-29-2018 RENATO CORZO et al., Plaintiffs and Appellants, v. PARKS PALMER TURNER & YEMENIDJIAN, LLP et al., Defendants and Respondents. Catanzarite Law Corporation, Kenneth J. Catanzarite and Tim J. O'Keefe for Plaintiffs and Appellants." *Corzo v. Parks Palmer Turner & Yemenidjian, LLP*, No. B285691, (Cal. Ct. App. Nov. 29, 2018) (Renato Corzo and his partnership sued the partnership's accountants for malpractice and breach of fiduciary duty. Defendant accountants filed a demurrer arguing that the lawsuit was barred by the statute of limitations. The trial court agreed. Corzo asked for and received leave to amend his complaint. Corzo's next complaint included new facts he believed tolled the statute of limitations. Defendants demurred again. The trial court sustained the demurrer without leave to amend, finding that the amended complaint was a "sham" pleading engineered to avoid the statute of limitations. Was it? Yes. We agree with the trial court that Corzo's amended complaint was a sham pleading. Because Corzo has not demonstrated he can amend the pleading to state a viable cause of action not barred by the applicable statute of limitations, we affirm the trial court's dismissal of the amended complaint with prejudice.) These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive others for money or property, and that State Bar carried these on, too. Rule 8.1115(b) of the California Rules of Court allow reliance upon unpublished opinions as evidence of 18 U.S.C. § 1343.

PREDICATE ACT. This case is before the Court on Plaintiffs Denise Pinkerton individually, and as attorney in fact for Roger Root's Motion for Remand. (Doc. 13). Defendant Bank of America, N.A. responded in opposition, (Doc. 16), and Plaintiffs replied, (Doc. 22).

3:23-CV-0164-MMA-DEB

This case was originally filed in state court by Plaintiffs, Florida citizens, alleging two counts against Bank of America—breach of contract and negligence. (Doc. 1-3). Bank of America removed the case to this Court, invoking its diversity jurisdiction. (Doc. 1). Less than a month after removal and five days after Bank of America answered, Plaintiffs filed a First Amended Complaint, (Doc. 12), and the Motion to Remand, (Doc. 13), on the same day. The First Amended Complaint's sole purpose is to add an additional defendant and cause of action—misrepresentation against Defendant Curt Radlein, a Florida citizen. (Doc. 12). Although the original complaint includes numerous alleged conversations Pinkerton had with named Bank of America employees, it did not list Radlein. (Doc. 1-3). Plaintiffs argue that Radlein is now properly (not fraudulently) joined because Bank of America cannot prove an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." (Doc. 22 at 2 (quotation marks omitted) (quoting McDonal v. Abbott Labs., 408 F.3d 177, 185 (5th Cir. 2005)). Bank of America argues that the Court should dismiss the claim against Radlein and deny the motion to remand under the balancing test announced in Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987). *Pinkerton v. Bank of Am., N.A.*, Case No. 5:19-cv-374-Oc-32PRL, (M.D. Fla. Nov. 26, 2019) These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive others for money or property using the wire, and that State Bar carried these on, too. Rule 8.1115(b) of the California Rules of Court allow reliance upon unpublished opinions as evidence of 18 U.S.C. § 1343. These acts allegedly violated 18 U.S.C. § 1503 in that they were intended to obstruct justice, and they did obstruct justice. Pinkerton and Catanzarite were manipulating their pleadings to defraud Bank of America, not because of any truth to their allegations, and consistent with Mr. Catanzarite's patterns to defraud members of the public, banks, and Courts.

PREDICATE ACT. On October 4, 2022, Matthew Charles Elstein of The State Bar of California enterprise was "Sentenced to More than 3 years in Prison for Conning Clients via Sham Court Documents" after he "pleaded guilty to one count of wire fraud" in November 2021. Elstein was a licensed California attorney from December 1994 until the State Bar of California ordered him inactive in March 2019. From June 2015 to July 2018, Elstein engaged in a scheme

23                           3:23-CV-0164-MMA-DEB

to defraud his clients by falsely claiming he obtained favorable legal resolutions for them, when in fact the favorable resolutions had never been obtained. These acts did violate 18 U.S.C. § 1343 because Mr. Elstein was convicted. It is alleged that these patterns of "sham court documents" are not dissimilar to the matters of practice of Mr. Catanzarite, carried on by The State Bar of California.

PREDICATE ACT. For the matter commencing with a visit by Kenneth Joseph Catanzarite to Richard Carlson's home, who became the lead plaintiff despite testifying that he did not believe he suffered damages and was not seeking an attorney: On June 16, 2020, "Report of Kenneth J. Catanzarite SBN: 113750" was delivered by postal mail "Via Certified Mail Return Receipt" to "Office of Chief Trial Counsel, Intake" which "Enclosed are three Reports of Judicial Sanctions and one Report of Discipline. These reports arise out of my client representation in hotly contested matters cases styled In Re Daymark Realty Advisors, Inc. (Case No. 18-23750), In Re Daymark Residential Management, Inc. (Case No. 18-23751), and In Re Daymark Properties Reality, Inc. (Case No. 18-23752)…in the United States Bankruptcy Court for the Southern District of Florida, where we represent directly, and by proposed clases, 14,000 adversely affected investors…The key figure in the fraud is Todd A. Mikles." These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive others for money or property using the wire leading to the Court decisions communicated, and that State Bar carried these on, too. Rule 8.1115(b) of the California Rules of Court allow reliance upon unpublished opinions as evidence of 18 U.S.C. § 1343. These acts allegedly violated 18 U.S.C. § 1503 in that they were intended to obstruct justice, and they did obstruct justice. Kenneth J. Catanzarite knew the entire series of cases were filed commencing with a visit to Richard Carlson's home, who did not believe he had suffered damages according to his February 12, 2020 testimony, and was not seeking an attorney. Kenneth J. Catanzarite filed 9 putative class actions on his behalf anyway and intended to defraud Office of Chief Trial Counsel by mail. The State Bar of California enterprise knew the scheme was fraudulent, too, but knew that Kenneth J. Catanzarite was among the protected attorneys and the 700+ Club, so they didn't do anything, and still refuse to do anything despite the ongoing harm to innocent members of the public. This

24

3:23-CV-0164-MMA-DEB

letter, in addition to evidencing 18 U.S.C. § 1343 as alleged wire fraud and 18 U.S.C. § 1503 as alleged obstruction of justice, was also allegedly violative of 18 U.S.C. § 1341 in that it was delivered by certified mail, and intended to defraud, and it intended to take money and property from Todd Mikles without objective probable cause.

PREDICATE ACT. Related to that letter from June 16, 2020, showing the threat of continuing fraud:  "Kenneth Catanzarite appeals the denial of relief from a judgment of the bankruptcy court. The district court affirmed the award of sanctions against Catanzarite for violating a preliminary injunction that barred "the commencement of any further actions under the same or similar facts or circumstances to" lawsuits he had filed against bankruptcy creditors. The district court also ruled that Catanzarite forfeited his opportunity to object to the amount of sanctions imposed. We affirm. In 2018, Daymark Realty Advisors, Incorporated, Daymark Properties Realty, Incorporated, and Daymark Residential Management, Incorporated, filed separate petitions for bankruptcy under Chapter 11 of the Bankruptcy Code, which the bankruptcy court consolidated. Catanzarite, an attorney licensed in California and admitted to appear *pro hac vice* in the bankruptcy court, filed adversary complaints against the Daymark companies for Richard Carlson and eleven other plaintiffs (the Carlson plaintiffs) and for Katherine Looper and six other plaintiffs. Those plaintiffs complained of breach of fiduciary duties and other wrongdoing in handling their investments in several properties, including their interests as tenants-in-common in the Congress Center, an office tower in Chicago, Illinois. Later, Catanzarite moved successfully to convert the bankruptcy petition to an action under Chapter 7 of the Bankruptcy Code. Catanzarite also sued Daymark creditors, including Todd Mikles, Etienne Locoh, GCL, LLC, and other entities related to the Daymark companies (the Mikles creditors). Catanzarite filed nine putative class action complaints for the Carlson plaintiffs in California and Utah courts against various combinations of the Mikles creditors. The complaints alleged that the creditors were alter egos of and shared common control of and culpability for the Daymark companies' mishandling of investments in the Congress Center and other properties. The Mikles creditors entered an agreement to settle their claims with the bankruptcy trustee, Chad Paiva, and obtained an injunction that stayed the nine lawsuits. *See* 11

3:23-CV-0164-MMA-DEB

U.S.C. § 105(a); Fed.R.Bankr.P. 7001(7). After a hearing attended by Catanzarite, the creditors, and the Trustee on August 27, 2019, the bankruptcy court issued an order that "enjoin[ed] continuation of the [nine] Subject Lawsuits or the commencement of any further actions under [the] same or similar facts or circumstances to the Subject Lawsuits" for 60 days. On the Mikles creditors' motion, and after a second hearing, the bankruptcy court issued a second preliminary injunction that extended the stay to December 11, 2019. On November 7, 2019, Catanzarite, as counsel for Katherine Looper and nine other plaintiffs (the Looper plaintiffs), filed in a California court a complaint alleging that Mikles and GCL assisted the Daymark companies to defraud investors in connection with the Congress Center and another property. Catanzarite also filed a notice of lis pendens on GCL property. The Mikles creditors moved to enforce the injunction and to impose sanctions. The bankruptcy court held a hearing on the motion attended by the creditors, Catanzarite, and the Trustee. The Trustee testified about Catanzarite's actions, the effect on the stay, and maintaining control of the property of the estate. The bankruptcy court granted the motion and sanctioned Catanzarite. The bankruptcy court ruled that Catanzarite, as counsel for and in active concert with the Carlson plaintiffs, see Fed. R. Civ. P. 65(d)(2)(B), violated the injunction by filing a civil action and lis pendens for the Looper plaintiffs "based upon TIC ownership interests in the Congress Center," which was the same subject "matter[] explicitly enjoined by the Second Preliminary Injunction Order." And the bankruptcy court stated that it earlier had sanctioned Catanzarite for creating a website containing false and misleading statements about the Daymark bankruptcy. The bankruptcy court stayed the Looper action and ordered Catanzarite to reimburse the Mikles creditors and "Trustee Paiva for any actual attorneys' fees and expenses incurred in connection with" the Looper action. Although the Trustee was not a party to the motion, the bankruptcy court found "it appropriate to compensate the bankruptcy estate . . . in light of the pending settlement motion in the main bankruptcy case and the intent of the injunctive relief in this adversary proceeding-to maintain the status quo pending the hearing to consider approval of that settlement . . . ." As directed by the bankruptcy court, the Mikles creditors and the Trustee timely filed affidavits for and redacted time records of the fees and expenses they sought as compensatory sanctions. On January 29,

3:23-CV-0164-MMA-DEB

2020, the Mikles creditors requested $49, 020.50 in attorneys' fees, and on February 5, 2020, the Trustee requested $13, 333 for similar expenses. On February 25, 2020, almost three weeks after the expiration of the seven-day deadline imposed by the bankruptcy court, Catanzarite objected to the affidavits. The bankruptcy court denied Catanzarite's objection to the affidavits as untimely. The bankruptcy court found that Catanzarite "failed to timely object to either affidavit" or "to timely move for an extension of time to object" and that his notice of late filing "offered a variety of excuses for missing the deadline, none of which [rose] to the level of excusable neglect." The bankruptcy court awarded the full amount of attorneys' fees that the Mikles creditors requested as "incurred in connection with responding to the [Looper action] and prosecuting the [motion to enforce], and . . . not excessive." As to the Trustee, the bankruptcy court found that "certain time entries include time for both main case issues as well as the pertinent issues in this adversary proceeding" and, being "unable to determine which portion of [specific] entries [were] attributable to the [Looper action] and the [motion to enforce], . . . [it] exercise[d] its discretion and award[ed] only 50% of the fees billed" on four days in December 2019. The bankruptcy court awarded the Trustee $11, 639.25 in attorneys' fees. The district court affirmed the imposition of sanctions and the fee awards. The district court ruled that, "under the plain language of Rule 65(d)(2)(B), [Catanzarite], as the attorney for the enjoined Carlson [plaintiffs], was bound by the Preliminary Injunction" and violated it by filing an action "based on similar ownership interests and the same or similar facts or circumstances." The district court rejected Catanzarite's argument that he could engage in prohibited conduct for another client. The district court ruled that Catanzarite's "failure to object to the fee affidavit[s] and his conclusory and vague challenges to the reasonableness of the fees . . . [were] fatal to his argument" challenging the accuracy and veracity of the affidavits. The district court also ruled that the bankruptcy court did not abuse its discretion in determining the fee awards after carefully reviewing the affidavits and time records that the Mikles creditors and the Trustee submitted. The district court rejected as refuted by the record Catanzarite's argument that awarding sanctions to the Trustee violated his right to due process. "[A]s [the] second court of review," we "examine[] independently the factual and legal determinations of the bankruptcy court and

27

employ[] the same standard of review as the district court." *In re Ocean Warrior, Inc.*, <u>835 F.3d 1310, 1315</u> (11th Cir. 2016) (quoting *In re Fisher Island Invs., Inc.*, <u>778 F.3d 1172, 1189</u> (11th Cir. 2015)). We review the imposition of sanctions for abuse of discretion and related findings of fact for clear error. *Id.* Under the abuse-of-discretion standard, we must affirm "unless the [bankruptcy] court made a clear error of judgment, or has applied the wrong legal standard." *Id.* (internal quotation marks omitted). So the bankruptcy court enjoys a "a range of choice within which we will not reverse . . . even if we might have reached a different decision." *Schiavo ex. rel. Schindler v. Schiavo*, <u>403 F.3d 1223, 1226</u> (11th Cir. 2005). The bankruptcy court did not err in determining that Catanzarite was bound by the injunction. <u>Federal Rule of Civil Procedure 65</u> binds three categories of persons to comply with an injunction: "the parties; the parties' . . . attorneys; and other persons who are in active concert or participation" with persons in the first two categories. <u>Fed.R.Civ.P. 65(d)(2)(B)</u>. The Rule binds an attorney to an injunction to the same extent as a party. So, as the bankruptcy court explained, Catanzarite could not "engag[e] in conduct in which [the parties, ] the Carlson [plaintiffs, ] themselves could not engage." Catanzarite misinterprets <u>Rule 65(d)(2)(B)</u> as prohibiting attorneys only "from engaging in enjoined conduct *on behalf of an enjoined party*." "We are not at liberty to add terms or posit an interpretation that differs from the explicit language of" a federal rule of procedure. *United States v. Orozco*, <u>160 F.3d 1309, 1316</u> (11th Cir. 1998). <u>Rule 65(d)(2)(B)</u> plainly bars a party's attorney from engaging in enjoined conduct regardless of his client's situation. Because Catanzarite was bound to obey the injunction, we need not address his argument that the bankruptcy court erred by ruling, in the alternative, that he was bound to the injunction by acting in concert with his clients under <u>Rule 65(d)(2)(C)</u>. Catanzarite violated the injunction. The injunction expressly prohibited "the commencement of any further actions under same or similar facts or circumstances to the Subject Lawsuits." Two of the subject lawsuits involved Mikles creditors mishandling investors' tenancy-in-common interests in the Congress Center. In the complaint and lis pendens, Catanzarite repeated many of the facts and legal arguments made in the subject lawsuits.

3:23-CV-0164-MMA-DEB

The bankruptcy court did not abuse its discretion. "Congress has empowered bankruptcy courts broadly to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the <u>Bankruptcy Code, 11 U.S.C. § 105(a)</u>, including sanctions to enforce . . . [an] injunction." *In re McLean*, <u>794 F.3d 1313, 1319</u> (11th Cir. 2015). The bankruptcy court sanctioned Catanzarite for the permissible purpose of compensating the Trustee and the Mikles creditors for losses caused by Catanzarite's noncompliance. *See Local 28, Sheet Metal Workers' Int'l Ass'n v. EEOC*, <u>478 U.S. 421, 443</u> (1986). The Trustee was entitled to compensation even though he did not move to enforce the injunction or join the Mikles creditors' motion. The Trustee was a party in the bankruptcy case in which the injunction issued for the purpose of maintaining the status quo pending the resolution of a proposed settlement between the estate and the Mikles creditors. *See E.E.O.C. v. Guardian Pools, Inc.*, <u>828 F.2d 1507, 1514-15</u> (11th Cir. 1987). Catanzarite's violation of the injunction interrupted the progress of the bankruptcy case and required the Trustee and the Mikles creditors to incur expenses related to the Looper action and to the enforcement of the injunction. Catanzarite argues that he was denied due process with respect to the award to the Trustee, but he was "given fair notice that his conduct may warrant sanctions and the reasons why" as well as "an opportunity to respond . . . and to justify his actions," *In re Mroz*, <u>65 F.3d 1567, 1575-76</u> (11th Cir. 1995). The motion to enforce outlined Catanzarite's willful disobedience of the injunction. During the hearing on the motion, the Trustee testified about the effect that Catanzarite's noncompliance had on the bankruptcy proceedings, and Catanzarite presented a defense. As the district court stated, Catanzarite "was on notice that the bankruptcy court was . . . considering whether and how [his] actions may have affected the Trustee and the estate and whether that should give rise to sanctions." And the bankruptcy court afforded Catanzarite the opportunity to object to the Trustee's affidavit and time records, but Catanzarite delayed filing a response. This process was sufficient to satisfy due process. The bankruptcy court also did not abuse its discretion in determining the fee awards. The bankruptcy court ensured that its awards were "calibrated to the damages caused by" Catanzarite's noncompliance by limiting the award to "cover[ing] the legal bills that the litigation abuse occasioned." *Goodyear Tire & Rubber Co. v. Haeger*, <u>137 S.Ct. 1178, 1186</u> (2017)

3:23-CV-0164-MMA-DEB

1   (internal quotation marks omitted and alterations adopted). The bankruptcy court "carefully
2   reviewed the Affidavits and time records" the Trustee and the Mikles creditors submitted and
3   found that the fees were "incurred in connection with responding to the [Looper action] and in
4   prosecuting" the motion to enforce the injunction. The bankruptcy court noticed an inadvertent
5   duplication of fees by the Trustee and adjusted the amount requested to account for the error.
6   Catanzarite contests the amounts of the awards, but he forfeited the opportunity to challenge
7   those amounts by failing timely to object to the affidavits, *see Green v. Graham*, 906 F.3d 955,
8   963 (11th Cir. 2018). *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-
9   12766, 1-9 (11th Cir. Mar. 9, 2022) These overt acts are alleged to have violated 18 U.S.C. §
10   1343 in that they intended to deceive others for money or property using the wire, and that State
11   Bar carried these on, too. Rule 8.1115(b) of the California Rules of Court allow reliance upon
12   unpublished opinions as evidence of 18 U.S.C. § 1343. These acts allegedly violated 18 U.S.C.
13   § 1503 in that they were intended to obstruct justice, and they did obstruct justice. Kenneth J.
14   Catanzarite knew the entire series of cases were filed commencing with a visit to Richard
15   Carlson's home, who did not believe he had suffered damages according to his February 12,
16   2020 testimony, and was not seeking an attorney. Kenneth J. Catanzarite filed 9 putative class
17   actions on his behalf anyway and intended to defraud others using the straw litigant, Richard
18   Carlson, just as with Denise Pinkerton. The State Bar of California enterprise knew the scheme
19   was fraudulent, too, but knew that Kenneth J. Catanzarite was among the protected attorneys and
20   the 700+ Club, so they didn't do anything, and still refuse to do anything despite the ongoing
21   harm to innocent members of the public. On information and belief, there are 19 different Court
22   of Appeal opinions in California related to these matters, which are intended as a weapon of
23   extortion by Kenneth J. Catanzarite using the help or protection of The State Bar of California
24   enterprise. All of it is allegedly fraudulent according to the testimony of Mr. Carlson, also known
25   to The State Bar of California, but still carried on with malice to defraud the public and protect
26   Mr. Catanzarite, unjustly.
27       PREDICATE ACT. Using the wire at 12:36:59 PM for Denise Pinkerton in Orange
28   County Superior Court, Mr. Catanzarite and Catanzarite Law Corporation filed "(1) The

30                                 3:23-CV-0164-MMA-DEB

Pinkerton Action. *Denise Pinkerton v. Cultivation Technologies, Inc., et al.,* OCSC No. 30-2018-01018922. Catanzarite filed this lawsuit on September 14, 2018, on behalf of an elderly woman (via an attorney in fact) who invested all her retirement savings in MFS shares. This shareholder, individually and derivatively on behalf of MFS, asserted CTI, Probst, O'Connor, Cooper, and others involved with CTI, engaged in fraud, conversion, breach of fiduciary duty, conspiracy, fraudulent concealment, and theft of trade secrets. In addition to damages, this derivative action demanded the cancellation of CTI stock certificates, an injunction preventing the sale of CTI stock, an injunction forcing CTI to stop using MFS's trade secrets, and the payment of punitive damages and attorney fees. For this lawsuit, CTI attorney of record was Winget, Spadafora, Schwartzberg LLP (Winget). On January 23, 2019, a few days before Catanzarite filed a shareholder derivative action involving CTI shareholders, Catanzarite dismissed several defendants from the Pinkerton Action, including CTI and members of the O'Connor Faction (O'Connor and Cooper). It also deleted causes of action for misappropriation of trade secrets, unfair competition, and declaratory relief against CTI. In August 2019, Catanzarite amended the complaint to remove all shareholder derivative causes of action on behalf of MFS. Thus, the only defendants remaining were members of the Probst Faction (Probst, Justin Beck, I'm Rad, LLC, Robert Kamm, Robert Bernheimer, Irving Einhorn, and Miguel Motta). *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 3 (Cal. Ct. App. Jun. 28, 2021) Witnesses include Clarissa Bustamante, Deputy Clerk, Orange County Superior Court, Judge Geoffrey T. Glass, and all named defendants including those allegedly extorted to produce evidence: Amy Jeanette Cooper, Richard Francis O'Connor, and Cliff Higgerson. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to defraud others for money or property using the wire, and that State Bar carried these on, too. Kenneth J. Catanzarite knew that Roger Root was not a shareholder of MFS nor of CTI. He also knew Roger Root lacked standing, and that Roger Root had been offered shares of CTI because Plaintiff provided proof based on email from August 2015 from Anthony B. Scudder. Mr. Catanzarite did not care, because he knew he could use the Courts as he pleased, that he controlled Orange County

3:23-CV-0164-MMA-DEB

Superior Court through The State Bar of California enterprise, and he could defraud Plaintiff, who was defrauded.

PREDICATE ACT. On Thursday, October 4, 2018, Kenneth J. Catanzarite did use the wire at 7:32AM PDT from address kcatanzarite@catanzarite.com and emailed Plaintiff through his counsel Samuel Y Edgerton, III at the address sedgerton@fmglaw.com seeking to settle claims he knew were fraudulent. "Given the Roots' settlement request for CTI shares, it is reasonable to infer Catanzarite and his clients knew only those shares had value and also understood those shares were available because MFS did not own 100 percent of CTI. Under these circumstances, a reasonable attorney may not have found the Pinkerton Action claims tenable." *Beck v. Catanzarite Law Corp.*, No. G059766, 37 (Cal. Ct. App. Jul. 13, 2022) This overt act is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire.

PREDICATE ACT. Also on Thursday, October 4, 2018, at 7:07AM it was announced by wire that "Catanzarite Law Corporation filed a lawsuit against Cultivation Technologies, Inc. ("CTI"), its shareholders, directors, officers, and others…The complaint asserts claims on behalf of investor Roger Root, derivatively on behalf of Mobile Farming Systems, Inc…Root also asserts individual claims for securities fraud." Parties to this wire communication were every user of the internet, and it was delivered by Catanzarite Law Corporation with contact information listed for Timothy J. O'Keefe with the email tokeefe@catanzarite.com as directed by Mr. Catanzarite's allegedly fraudulent scheme. Mr. Catanzarite was using the wire to take money and property from Plaintiff and others, and knew that Roger Root had been granted an offer to buy CTI shares but didn't care. He knew he could use the wire to defraud without fear because he was protected among the 700+ Club, just like Thomas V. Girardi was. He knew this wire communication would also place pressure on Cooper and O'Connor, whom he would later allegedly extort to produce evidence under the threat of "working with law enforcement." This overt act is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive and defraud others for money or property using the wire. This overt act also laid the foundation for alleged

32

3:23-CV-0164-MMA-DEB

extortion for signatures and property under California Penal Code 518 PC, which meets the definition of racketeering activity under 18 U.S.C. § 1961(1).

PREDICATE ACT. Sometime in January 2019, it is alleged that Kenneth J. Catanzarite used the wire to contact Amy Jeanette Cooper who was represented by counsel Stephen Erigero. According to the sworn declaration of Amy Jeanette Cooper's actual counsel Stephen Erigero, neither he nor his firm were involved in compromise of the derivative Pinkerton Action, and his firm terminated their representation of Ms. Cooper on January 23, 2019. This overt act is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire.

PREDICATE ACT. Kenneth Watnick, actual counsel for MFS says on January 7, 2019 "On December 21, MFS retained counsel. Upon being retained, MFS's counsel contacted [Pinkerton's] counsel to introduce himself and request a service list. In response, [Catanzarite] advised that he had or was serving discovery on MFS. Specifically, on December 21, [Pinkerton/Catanzarite] served discovery which contained over 500 separate requests for testimony, documents, and information…MFS understands that [Pinkerton/Catanzarite] has propounded similar discovery requests uon Defendants Probst, O'Connor, Cooper, and all other named defendants. In total, [Pinkerton/Catanzarite] has propounded approximately two thousand (2,000) separate written discovery requests upon just MFS and the Management Defendants…MFS understands that when combined with the other named defendants [including Plaintiff], [Pinkerton/Catanzarite] has served in excess of five thousand (5,000) separate written discovery requests." Mr. Catanzarite was allegedly using these "discovery" requests to defraud everyone by wire in violation of 18 U.S.C. § 1343 with intent to extort private information so he could file more fake lawsuits without standing or probable cause. He knew he could rely upon The State Bar of California enterprise to protect him, just like Thomas V. Girardi enjoyed for forty years.

PREDICATE ACT. Where Mr. Catanzarite knew he was caught filing a fake lawsuit without standing for a non-shareholder, and that Pinkerton and Root were not shareholders of MFS nor CTI, he knew he would have to take over MFS. And so he did. First, using the wire on

33

3:23-CV-0164-MMA-DEB

January 17, 2019, Mr. Catanzarite re-instated the entity Jolly Rogers Investments, Inc. which had been administratively dissolved in May 2015. Because the lack of standing was so evidenced on January 17, 2019, he set in motion the scheme to take over MFS by extorting corporate actions under the threat of "working with law enforcement." Parties to the filing include Washington Secretary of State, and any internet user reviewing public records of Jolly Rogers Investments, Inc. Mr. Catanzarite used the wire to change the address of Jolly Rogers Investments, Inc. to his firm's address, consistent with his patterns. He used the threat of securities fraud charges against Cooper and O'Connor, who in turn worked with Higgerson, and leveraged the malice existing of Duffy and Zakhireh, to commit a series of overt acts by "consent." This overt act is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire.

PREDICATE ACT. Mr. Catanzarite used the wire or caused the wire to be used in Orange County Superior Court, to dismiss Anthony B. Scudder and Aroha Holdings, Inc. through e-filing transaction 2747866 at 02:38:58 PM on January 3, 2019. Mr. Catanzarite allegedly intended to compromise the fraudulent derivative case against Mobile Farming Systems, Inc. through Denise Pinkerton in the first of several steps to take over MFS. Parties to the communication include any internet user, the assigned Judge, and the Orange County Superior Court Clerk as well as the Plaintiff who was a party defendant to the scheme. This overt act is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a scheme.

PREDICATE ACT. Mr. Catanzarite used the wire or caused the wire to be used in Orange County Superior Court, to dismiss Richard Francis O'Connor, II, TGAP Holdings, LLC, and Scott Unfug through e-filing transaction 3751199 at 03:48:28 PM on January 22, 2019. Mr. Catanzarite allegedly intended to compromise the fraudulent derivative case against Mobile Farming Systems, Inc. without Court approval through Denise Pinkerton in continuance of the scheme. This overt act is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a scheme.

3:23-CV-0164-MMA-DEB

PREDICATE ACT. Mr. Catanzarite used the wire or caused the wire to be used in Orange County Superior Court, to dismiss Amy Jeanette Cooper and Cliff Higgerson through e-filing transaction 1583344 at 04:35:18 PM on January 23, 2019. Mr. Catanzarite allegedly intended to compromise the fraudulent derivative case against Mobile Farming Systems, Inc. without Court approval through Denise Pinkerton in continuance of the scheme. This overt act is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a scheme.

PREDICATE ACT. Between various communications allegedly intending to defraud between January 22, 2019 and January 25, 2019, Mr. Catanzarite used the wire or caused the wire to be used and obtained "Written Consent Of The Shareholders of Mobile Farming Systems, Inc." which "immediately removed" the board of directors which was signed by "Richard Francis O'Connor II" and dated "January ___, 2019." Other parties to the communications include: "Denise Pinkerton" who signed on "January 23, 2019," "Scott Unfug" who signed "January 23, 2019," "Douglas Scott" who signed "January 24, 2019," "Janell Christiansen" who signed "January 23, 2019," "Amy Jeanette Cooper" who signed "January 25, 2019, "Douglas Hunt," who signed "January ___, 2019," "Rick Mesa" who signed "January 23, 2019," "Ken Miller" who signed "January 23, 2019" and "Jeff Ray Schunk" who signed "January 23, 2019." It is alleged that these acts were extorted within the meaning of Cal. Pen. Cod. 518 PC in that Mr. O'Connor and Ms. Cooper's signatures were needed, they provided them with their property (which they "agreed to renounce in favor of MFS") who were threatened with securities fraud allegations by Pinkerton and the color of official right to file a fake derivative case against Mobile Farming Systems, Inc. by Mr. Catanzrite. Each overt act to obtain signatures are alleged to have violated 18 U.S.C. § 1343 in that each intended to deceive others for money or property using the wire as part of a scheme. Specifically, Mr. O'Connor, Ms. Cooper, and Mr. Catanzarite knew that CTI had operated for years, and that MFS was not a shareholder at all much less the sole shareholder. But Mr. Catanzarite allegedly knew he could use the Courts to defraud as he pleased because he is among the 700+ Club, just like Thomas V. Girardi.

35                                    3:23-CV-0164-MMA-DEB

PREDICATE ACT. After removing the board of directors and placing Mr. O'Connor at the helm of the inanimate corporate entity MFS on "January ___, 2019" Mr. O'Connor executed "Unanimous Written Consent as of January 23, 2019" on behalf of "Mobile Farming Systems, Inc." as "Sole Shareholder" of CTI. Mr. O'Connor knew beyond any reasonable doubt that this was not true because Mr. O'Connor authorized the first and many subsequent securities transactions of CTI himself as CEO, then through private sales of stock for which he was paid allegedly more than $2,000,000. Nevertheless, this consent on January 23, 2019, appointed himself as "President and Chief Executive Officer," James Duffy (an actual CTI shareholder) as "Secretary," and Mohammed Zakhireh (an actual CTI shareholder) as "Treasurer and Chief Financial Officer." The Court of Appeal would later conclude these acts to be fraudulent in *Beck v. Catanzarite Law Corp.*, No. G059766, 38 (Cal. Ct. App. Jul. 13, 2022) ("Beck also presented evidence Catanzarite and the O'Conner Faction created a mutually beneficial alliance. In exchange for their dismissal from the Pinkerton Action, these former defendants agreed to help opposing counsel file a different lawsuit against CTI and the Probst Faction (which included Beck). Beck's evidence suggested these CTI shareholders agreed to create and support a false story about MFS's ownership of CTI, revive MFS by reconfiguring its board of directors, and then use MFS as a litigation tool to sabotage CTI and its board members. In addition to providing testimony that MFS owned CTI, the O'Connor Faction members publicly renounced their CTI stock shares. O'Connor executed the 2019 Consent, without objection from his cohorts, which rendered worthless all their CTI stocks. As pointed out by Beck, all of this anti-CTI activity, following their dismissals from the Pinkerton Action, was highly suspect especially when one considers their actions and business dealings as CTI board members and shareholders from 2015 to 2019. ") It is alleged that these acts were extorted within the meaning of Cal. Pen. Cod. 518 PC in that Mr. O'Connor and Ms. Cooper's signatures were needed, they provided them with their property (which they "agreed to renounce in favor of MFS") who were threatened with securities fraud allegations by Pinkerton and the color of official right to file a fake derivative case against Mobile Farming Systems, Inc. by Mr. Catanzrite. Each overt act to obtain signatures are alleged to have violated 18 U.S.C. § 1343 in that each intended to deceive others for money

3:23-CV-0164-MMA-DEB

or property using the wire as part of a scheme. Specifically, Mr. O'Connor, Mr. Duffy, Dr. Zakhireh, and Mr. Catanzarite knew that CTI had operated for years, and that MFS was not a shareholder at all much less the sole shareholder. But Mr. Catanzarite allegedly knew he could use the Courts to defraud as he pleased because he is among the 700+ Club, just like Thomas V. Girardi.

PREDICATE ACT. Via "U.S. Mail & Email" on "January 25, 2019," Catanzarite Law Corporation and Kenneth J. Catanzarite did send to the Plaintiff, copying Stephen J. Erigero, Ivan L. Tjoe, Alan J. Hart, and Ken Watnick a letter ""Notice by Mobile Farming Systems, Inc. ("MFS") as sole shareholder of Cultivation Technologies, Inc. ("CTI") of Actions" and "Notice of MFS Shareholders that Board of Directors is Removed." Signed by Mr. Catanzarite, "This is also notice that law enforcement is looking at both MFS and CTI. We are fully cooperating with them and expect that your clients will do the same." It is alleged that 700+ Club uses control of the enterprise and The State Bar of California through district attorneys like Todd Spitzer, or U.S. Attorney's unnamed, to aid in any given scheme of 700+ Club or The State Bar of California. Mr. Catanzarite knew the letter to Plaintiff, which professed "We would like to immediately take control of the assets and operations of CTI for the benefit of the sole shareholder MFS," was fraudulent but Mr. Catanzarite did not care because he knew he was protected by the enterprise. It is alleged that this letter violated 18 U.S.C. § 1341 in that it was sent by mail intending to defraud as part of a scheme against Plaintiff, and violated 18 U.S.C. § 1343 in that it was also delivered by wire intending to defraud as part of a scheme against Plaintiff.

PREDICATE ACT. Using the wire at 03:51:51 PM in Orange County Superior Court through e-filing transaction 158488, Mr. Catanzarite filed, or caused to be filed: (2) The MFS Action. *Mobile Farming Systems, Inc. v. Cultivation Technologies, Inc., et al.,* OCSC No. 30-2019-01046904.Catanzarite filed this lawsuit in January 28, 2019, for MFS and "derivatively on behalf of its wholly owned subsidiary [n]ominal [d]efendant [CTI]." MFS asserted it was entitled to file a derivative action because it organized CTI and acquired 28, 000, 000 shares of CTI common stock, and therefore, CTI was its wholly owned subsidiary. The complaint asserted

37

3:23-CV-0164-MMA-DEB

MFS contributed assets to CTI (a seedling trailer and a shipping container) and paid start-up costs. MFS sought cancellation of CTI's shares as well as any "insider loans and transactions." It alleged CTI owed MFS "$75,007.24 plus accrued interest of $12,444.29" (MFS's start-up loan) and other damages to be proven at trial. (Underline omitted.) The complaint sought attorney fees, punitive damages, and interest. The lawsuit was based on the premise that no CTI shareholders, other than MFS shareholders, had any valid stock or voting rights. This complaint also asserted the Probst Faction violated Corporations Code section 1507 by "preparing, signing and circulating false minutes, issuing securities, transacting business with insiders, [and] borrowing money from insiders and records relating to CTI." MFS requested that the court enjoin the Probst Faction from operating CTI until the court held a section 709 hearing "to determine the rightful ownership of CTI, its appropriate [b]oard of [d]irectors, and executive structure. The court initially granted a temporary restraining order (TRO). According to Probst, the TRO was financially devastating for CTI because "CTI's operations ground to a halt" for several months. Probst declared, "CTI did not have access to its working capital and... key customers became aware of the TRO and refused to continue to place orders and the cash flow began to severely suffer." The court dissolved the TRO in May 2019, after holding a section 709 hearing. The court determined MFS was not a CTI shareholder and could not challenge the election of CTI's directors. In August 2019, the same day Catanzarite amended the Pinkerton Action to be a direct rather than derivative action, Catanzarite also transformed the MFS Action into a direct action. The first amended complaint (FAC) omitted CTI as a party and alleged only direct claims against members of the Probst Faction for breach of fiduciary duty, conversion, misappropriation of trade secrets, and unfair competition. *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 4-5 (Cal. Ct. App. Jun. 28, 2021) Moreover, when the factual allegations of the Pinkerton Action and the MFS Action are compared in an objective manner, no reasonable attorney would conclude both had merit. Simply stated, one action was based on the factual premise CTI's board members improperly renounced the Subsidiary Promise, leaving MFS *without any* CTI shares, and the other was based on the factual premise MFS *currently owned* 100 percent of CTI's shares, rendering any other CTI stock certificates worthless.

3:23-CV-0164-MMA-DEB

The lack of probable cause for maintaining the two lawsuits was further demonstrated by evidence Catanzarite filed multiple lawsuits while unethically representing clients with conflicting interests. For good reason, it is difficult to apply the "reasonable attorney" test when there is evidence the attorneys initiating the cases violated multiple rules of professional conduct. For example, no reasonable attorney would agree to act as corporate counsel of MFS while at the same time representing shareholders in a derivative lawsuit against that corporation. Yet this is exactly what happened when Catanzarite filed the MFS Action while also litigating the Pinkerton Action. We conclude the concurrent representation of directly adverse parties creates a strong inference the attorneys and litigants knew the claims in one or both lawsuits were untenable." *Beck v. Catanzarite Law Corp.*, No. G059766, 37-38 (Cal. Ct. App. Jul. 13, 2022) *Beck v. Catanzarite Law Corp.*, No. G059766, 37-38 (Cal. Ct. App. Jul. 13, 2022) ("Given the Roots' settlement request for CTI shares, it is reasonable to infer Catanzarite and his clients knew only those shares had value and also understood those shares were available because MFS did not own 100 percent of CTI. Under these circumstances, a reasonable attorney may not have found the Pinkerton Action claims tenable. Moreover, when the factual allegations of the Pinkerton Action and the MFS Action are compared in an objective manner, no reasonable attorney would conclude both had merit. Simply stated, one action was based on the factual premise CTI's board members improperly renounced the Subsidiary Promise, leaving MFS *without any* CTI shares, and the other was based on the factual premise MFS *currently owned* 100 percent of CTI's shares, rendering any other CTI stock certificates worthless. ") ") It is alleged that this overt act by Mr. Catanzarite violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a scheme. Mr. Catanzarite would then use the pendency of the MFS Action to schedule a 709 trial ("709 Trial") in which he sought to unwind all shares of CTI under knowingly false pretenses which was scheduled for April 30, 2019.

PREDICATE ACT. CTI announced it would merger with a Canadian issuer Western Troy Capital Resources where shareholders of CTI would receive shares of the Canadian issuer, and hold them in the US, as a "foreign private issuer." Plaintiff alleges the transaction was valued

3:23-CV-0164-MMA-DEB

at approximately $261 miillion, and that the Plaintiff's share was $32.67 million. Using the wire on February 26, 2019, Kenneth Catanzarite used the email address kcatanzarite@catanzarite.com to Rex Loesby at the email address rexloesby@gmail.com with a Subject: "Mobile Farming Systems, Inc. ("MFS") and Cultivation Technologies, Inc." wherein Mr. Catanzarite said: "Mr. Loesby: I just called the number on the news release for Western Troy Capital Resources ("Troy") at 303-771-9610 and note that there was no receiptionist and a voice mail message with your name only and no mention of Troy. Attached is litigation asserting that MFS is the sole shareholder of CTI. You have not consulted with Mr. O'Connor who is the CEO of MFS and CTI and as such he has not agreed to your RTO [reverse takeover] such as you describe. If you would like to discuss a transaction then you need to be talking to MFS and Mr. O'Connor. As such we dispute and object to any agreement purportedly by and between Western Troy and CTI. Kindly withdraw your notice and engage in meaningful negotiations with Mr. O'Connor. I would be willing to discuss the merits of a transaction with your company but it appears to have no assets or operations of any value. If you disagree then support your value numbers. Moreover, we so no justification for Western Troy shareholders with a valueless company to be entitled to 8,781,994 shares out of a proposed 67,392,515 or 13% of CTI for purposes of an RTO." Plaintiff alleges Mr. Catanzarite intended to disrupt the merger under false pretenses, because he knew MFS was not a shareholder of CTI, and he knew that Mr. O'Connor was not the CEO of CTI. This overt act is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a scheme. This overt act is alleged to have violated 18 U.S.C. § 1962(b) in it intended to exert or maintain control of the enterprise through a pattern of racketeering activity.

PREDICATE ACT. Using the wire at 04:00:12 PM in Orange County Superior Court through e-filing transaction 2784758, Mr. Catanzarite filed or caused to be filed: (3) The Mesa Action. *Mesa, et al. v. Probst, et al.*, OSCC No. 30-2019-01064267. Catanzarite filed this shareholder derivative class action on April 16, 2019. The complaint asserted the "nature of [the] action" was on behalf of shareholders owning both MFS and CTI shares seeking to "join MFS in a consolidated action with [the MFS Action] and to among other relief, recognize the

3:23-CV-0164-MMA-DEB

ownership and control of CTI as held by" four groups of shareholders. (Capitalization and bold omitted.) These shareholder groups included MFS (holding 28, 000, 000 CTI shares), as well as any MFS shareholders who purchased CTI shares in various offerings. The complaint expressly excluded shares held by Probst Faction members, their attorneys, agents, or affiliates. Richard Mesa initiated the lawsuit in three capacities: (1) individually as a "shareholder of both" MFS and CTI shares; (2) in a representative capacity on behalf of over 100 similarly situated shareholders; and (3) derivatively on behalf of CTI. The Mesa Action asserted nine causes of action against the Probst Faction and CTI as a nominal defendant. Identical to allegations in the MFS Action, the Mesa Action sought to enjoin the Probst Faction from operating CTI until there could be an expedited <u>section 709</u> hearing. In addition to damages, the class sought punitive damages and attorney fees. One month later, Catanzarite amended the complaint to add Cooper and Tom Mebane as plaintiffs and FinCanna as a defendant. More significantly, the complaint's "nature of the action" changed. The class members no longer sought to join the MFS Action or seek recognition of MFS's controlling shares over CTI. Instead, the Mesa Action plaintiffs sought to declare the current CTI directors' meetings and actions void. In particular, the class sought to unravel CTI's financial dealings with FinCanna, who had just foreclosed on CTI's properties. The FAC included two new causes of action, as well as allegations the Probst Faction wrongfully liquidated CTI's assets and that FinCanna should not have initiated foreclosure proceedings. The FAC asserted FinCanna "claims ownership of the extraction facility and CTI's employees have effectively become [FinCanna] employees." Furthermore, it maintained CTI shareholders "have suffered a total loss of their share value of not less than $5,000,000 and millions more in business opportunities...." CTI's attorney of record, Winget, filed an answer asserting the plaintiffs lacked standing or were not qualified to maintain a derivative lawsuit on CTI's behalf. In October 2019, the Mesa Action plaintiffs filed a motion requesting the court appoint a receiver for CTI. *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 5-6 (Cal. Ct. App. Jun. 28, 2021) It is alleged that Mr. Catanzarite filed the Mesa Action because he knew the 709 Trial would fail factually, because he knew there exited overwhelming evidence that his claims were false. It is

41                                                          3:23-CV-0164-MMA-DEB

1  alleged that this overt act by Mr. Catanzarite violated 18 U.S.C. § 1343 in that it intended to

2  deceive others for money or property using the wire as part of a scheme.

3         PREDICATE ACT. Using calls, texts, and voicemails seeking to control CTI through

4  other false pretenses, Mr. Catanzarite did contact or cause to be contacted Carlos Calixto "on or

5  about May 6, 2019." Mr. Catanzarite sought to bribe Mr. Calixto for his signature under separate

6  factual pretenses than January 23, 2019 and allegedly offered $5,000 for Mr. Calixto's vote. This

7  overt act is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive others for

8  money or property using the wire as part of a scheme. These overt acts are alleged to have

9  violated 18 U.S.C. § 1962(b) in that each intended to exert or maintain control of an enterprise

10  through a pattern of racketeering activity. It also involved allegd forgery of Mr. Calixto's

11  signature when he refused to participate in the scheme.

12         PREDICATE ACT. On March 19, 2019, Richard Francis O'Connor II signed an affidavit

13  before Jonathan Patrick, Notary Public, Orange County, Commission #2187299 from Newport

14  Beach, California. Therein, Mr. O'Connor declares "I am familiar with Roger Root and his wife

15  Sharon having met them in Florida related to the MFS stock purchases…As CEO and director

16  of MFS acting on its behalf, MFS is rightfully and properly the owner as holder of 28,000,000

17  CTI shares of Common Stock and entitled to all of the rights, benefits and privileges of said

18  shares, including the right to vote said shares and to not suffer dilution of nor interference with

19  such rights." It is alleged this affidavit was extorted by Mr. Catanzarite for purposes of obtaining

20  a temporary restraining order under knowingly false pretenses in Orange County Superior Court.

21  Mr. O'Connor had personally participated in an alleged 158 securities transactions involving

22  CTI shares, and he knew that MFS was not a shareholder of CTI because he made it so. Mr.

23  Catanzarite did file this affidavit from Mr. O'Connor on March 19, 2019, at 02:55:15 PM through

24  e-filing transaction 2774681 in Orange County Superior Court. It is alleged that this overt act by

25  Mr. Catanzarite violated 18 U.S.C. § 1343 in that it intended to deceive others for money or

26  property using the wire as part of a scheme. It is also alleged that obtaining this signature was

27  under color of official right within the meaning of Cal. Pen. Cod. § 522 PC. Mr. Catanzarite did

28  obtain a TRO under false pretenses by deceiving the Court, because he knew that MFS was not

42

3:23-CV-0164-MMA-DEB

a shareholder of CTI. Indeed, Mr. Catanzarite used the TRO to obtain a list of CTI shareholders under false pretenses and used it to file the Mesa Action on behalf of CTI shareholders on April 16, 2019.

PREDICATE ACT. Using the wire at 05:50:16PM in Orange County Superior Court through e-filing transaction 1626667, Mr. Catanzarite filed, or caused to be filed (4) The Cooper Action. *Cooper, et al., v. Cultivation Technologies, Inc.,* OCSC No. 30-2019-01072443. On May 23, 2019, Catanzarite filed an action directly against CTI on behalf of two CTI shareholders (Cooper and Mebane), who were members of the O'Connor Faction. The previous day, FinCanna had filed a breach of contract action against CTI and CTI Subsidiaries and requested a receivership. The Cooper Action requested the court direct CTI to (1) hold a shareholder's meeting to elect a board of directors; (2) deliver an annual report; (3) appoint an accountant to conduct an audit; and (4) order CTI to pay the costs for an investigation, audit, and costs of the suit. Winget, on behalf of CTI filed an opposition, asserting a shareholder meeting was scheduled for August 2019. *Fincanna Capital Corp. v. Cultivation Tech.,* No. G058700, 6-7 (Cal. Ct. App. Jun. 28, 2021) It is alleged that this overt act by Mr. Catanzarite violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a scheme.

PREDICATE ACT. Using the wire at 12:34:40 PM in Orange County Superior Court through e-filing transaction 4986452, Mr. Catanzarite filed, or caused to be filed: "(5) The FinCanna Action Cross-complaint. *FinCanna v. Cultivation Technologies, Inc., et al.,* OCSC No. 30-2019-01072088. As mentioned, in May 2019, FinCanna filed a breach of contract action against CTI and CTI Subsidiaries. On July 2, 2019, Catanzarite filed a cross-complaint on behalf of CTI and CTI Subsidiaries against FinCanna and three of its directors. Large sections of the cross-complaint appear to have been cut and pasted from the Mesa Action complaint. Catanzarite purported to represent CTI and its subsidiaries [**the company he was also suing**]. In Probst's declaration, prepared to oppose the section 709 request in the Mesa Action, he explained Catanzarite's actions in the FinCanna Action created confusion and harm. He noted Catanzarite filed a cross-complaint and propounded discovery against CTI's "primary secured lender" without telling CTI's board "and during a time when FinCanna has not yet served their complaint

43                                    3:23-CV-0164-MMA-DEB

on CTI due to ongoing settlement negotiations." *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 7 (Cal. Ct. App. Jun. 28, 2021) It is alleged that this overt act by Mr. Catanzarite violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a scheme.

PREDICATE ACT. Using the wire at 04:25:11 PM in Orange County Superior Court through e-filing transaction 41009836, Mr. Catanzarite filed, or caused to be filed: (6) The Scottsdale Action. *Cultivation Technologies, Inc., v. Scottsdale Insurance Company,* OCSC No. 30-2019-01096233. On September 6, 2019, Catanzarite filed this declaratory relief action purporting to represent CTI. In this lawsuit, CTI demanded that its insurance company, Scottsdale, stop providing a defense or indemnity to the [Plaintiff] in the Mesa Action. The complaint asserted Scottsdale "refused to communicate with the officers and directors elected by the common shareholders of CTI and who are of the position that only they and their elected officers and directors speak for CTI." In the complaint, CTI sought the court's declaration of its rights under the insurance policy and orders forbidding Scottsdale from providing a defense "unless and until the vote of the disinterested common shareholders of CTI [was] obtained." We note that immediately before filing the Scottsdale Action, Catanzarite amended the complaints in the first two derivative actions transforming them into direct actions against individuals who were part of the Probst Faction (the Pinkerton and MFS Actions). Additionally, after filing the Scottsdale Action, Catanzarite dismissed the Cooper Action on September 13, 2019. *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 7-8 (Cal. Ct. App. Jun. 28, 2021) It is alleged that this overt act by Mr. Catanzarite violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a scheme. It is alleged that this overt act also violated 18 U.S.C. § 1344 in that Scottsdale Insurance Co. meets the definition of a financial institution, and Mr. Catanzarite did intend to defraud the financial institution.

PREDICATE ACT. Conflicting with the factual declaration of March 19, 2019, by affidavit that MFS owned all shares of CTI, on November 4, 2019, Richard Francis O'Connor II signed an affidavit before Douglas Desjardins, Notary Public, Orange County, Commission #2140086, from Oceanside, California. Therein, Mr. O'Connor declares: "I sold my Cultivation

Technologies, Inc. ("CTI") common shares to Mr. Jim Duffy which shares were included in his total proxy count 2,720,900." Mr. Catanzarite did file this affidavit from Mr. O'Connor on November 4, 2019, at 02:49:56 PM through e-filing transaction 3852632 in Orange County Superior Court. It is alleged that this overt act by Mr. Catanzarite violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a scheme, here, seeking to appoint a receiver under false pretenses. It is also alleged that obtaining this signature was under color of official right within the meaning of Cal. Pen. Cod. § 522 PC.

PREDICATE ACT. Once more conflicting with the factual declaration of March 19, 2019, by affidavit that MFS owned all shares of CTI, on November 11, 2019, Richard Francis O'Connor II signed a declaration from Newport Beach, California. Therein, Mr. O'Connor declares: "As Chief Executive, I issued 5,000,000 Founder Shares when CTI was formed at $.001 per share to each of Probst and Justin Beck for their contributions to the startup effort…The very first time that the shareholders learned of the purported issuance of the Preferred Stock was at that November 29, 2018 shareholders meeting where the shares were objected to as not validly issued." Mr. Catanzarite did file this declaration from Mr. O'Connor on November 12, 2019, at 11:20:48 AM through e-filing transaction 2858641 in Orange County Superior Court. It is alleged that this overt act by Mr. Catanzarite violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a scheme, here, seeking to avoid mandatory disqualification for representation of adverse interests in the same or substantially related matters. It is also alleged that obtaining this signature was under color of official right within the meaning of Cal. Pen. Cod. § 522 PC.

PREDICATE ACT. On November 15, 2019, Plaintiff delivered details and evidence of the allegedly fraudulent scheme of Kenneth J. Catanzarite and his associates with Catanzarite Law Corporation to The State Bar of California by mail and the forms that The State Bar of California provided to the Plaintiff using the wire at www.calbar.ca.gov . Using the mail, it is alleged that Eli David Morgenstern and Joy Nunley delivered a letter April 3, 2020, intending to defraud Plaintiff from The State Bar of California's facility engaged in interstate commerce located at 845 S. Figueroa Ave, Los Angeles, CA 90017 under 18 U.S.C. § 1952(a) which

3:23-CV-0164-MMA-DEB

punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity. Mr. Morgenstern and The State Bar of California allegedly knew that Mr. Catanzarite was among the 700+ Club, and that he was free to use Orange County Superior Court or any Federal Court to conduct schemes to defraud members of the public, so Mr. Morgenstern sent Beck the letter from the mail facility to facilitate the unlawful activity. It is alleged that this letter also violated 18 U.S.C. § 1341 in that it used the mail as part of a fraudulent scheme of Mr. Catanzarite, and as part of a fraudulent scheme of The State Bar of California.

PREDICATE ACT. Once more conflicting with the factual declaration of March 19, 2019, by affidavit that MFS owned all shares of CTI, on December 27, 2019, Richard Francis O'Connor II signed a declaration from Big Bear, California. Therein, Mr. O'Connor declares: "I am Chief Executive Officer of Mobile Farming Systems, Inc. ("MFS"). I am also the Chief Financial Officer and Chief Operating Officer of Cultivation Technologies, Inc. ("CTI") having been appointed by the Board of Directors." Mr. Catanzarite did file this declaration from Mr. O'Connor on December 30, 2019, at 10:12:17 PM through e-filing transaction 1703017 in Orange County Superior Court. It is alleged that this overt act by Mr. Catanzarite violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a scheme, here, seeking to avoid mandatory disqualification for representation of adverse interests in the same or substantially related matters. It is also alleged that obtaining this signature was under color of official right within the meaning of Cal. Pen. Cod. § 522 PC.

PREDICATE ACT. On August 10, 2020, using the wire at 02:57:28 in e-filing transaction number 3926850 for MFS in Orange County Superior Court, Mr. Catanzarite and Catanzarite Law Corporation filed the "MFS Cross Action" in Orange County Superior Court Case No. 30-2020-01145998 which is a malicious prosecution case in which the Plaintiff has shown a likelihood of prevailing on three counts for the filing of the Pinkerton Action, MFS Action, and Scottsdale Action in G059766. It is alleged that Mr. Catanzarite made contact with Office of General Counsel or Office of Chief Trial Counsel who are shown to coordinate decisions to allegedly defraud the public with malice, and that Mr. Catanzarite either bribed or

3:23-CV-0164-MMA-DEB

in the alternative threatened them. Specifically, the MFS Cross Action was used as a tool to allegedly control the enterprise, because the claims of MFS had already been rejected "with every fiber of [the Court's] being" on May 1, 2019 but it allowed Mr. Catanzarite to start asking for discovery from Beck, and to file false claims against other innocent people, which had previously been used to continue his scheme (see "5,000" discovery requests when Mr. Catanzarite was actually suing MFS, December 21, 2018). The Court of Appeal has concluded the claims directed at the Plaintiff lacked objective probable cause, and that they were part of a "takeover scheme." It is alleged that this MFS Cross Action was a deliberate act of fraud and extortion to provide cover that the issue was somehow a "pending civil matter" and not part of a fraudulent scheme involving Kenneth J. Catanzarite and The State Bar of California enterprise. It is alleged that this overt act by Mr. Catanzarite violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a scheme. It is alleged that this overt act also violated 18 U.S.C. § 1344 in that Scottsdale Insurance Co. meets the definition of a financial institution, and Mr. Catanzarite did intend to defraud the financial institution. It is alleged that this act was also attempted extortion for signatures or property from Plaintiff within the meaning of Cal. Pen. Cod. § 523, where the mere pendency of these ongoing, fake lawsuits are intended to take money or property from Plaintiff under color of official right. Here, Mr. Catanzarite sued MFS, then took the company over in January 2019 using the exculpation of parties' defendant to a fake derivative case, then started filing claims for MFS while it was separately prosecuting claims against MFS derivatively.

PREDICATE ACT. On August 12, 2020, Plaintiff received postal mail from The State Bar of California's Office of General Counsel ("Complaint Review Unit") located at the mail facility 180 Howard St. San Francisco, CA 94105 engaged in interstate commerce stating that it had decided to allow the alleged criminal conduct directed by Kenneth J. Catanzarite against Plaintiff, and the letter did recommend the retention of more attorneys directing Plaintiff to use the wire to do so. It is alleged this letter violated 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity. Office of General Counsel for The State Bar of California allegedly knew that

3:23-CV-0164-MMA-DEB

Mr. Catanzarite was among the 700+ Club, and that he was free to use Orange County Superior Court or any Federal Court to conduct schemes to defraud members of the public, so Office of General Counsel sent the Plaintiff the letter from the mail facility to facilitate the unlawful activity. It is alleged that this letter also violated 18 U.S.C. § 1341 in that it used the mail as part of a fraudulent scheme of Mr. Catanzarite, and as part of a fraudulent scheme of The State Bar of California.

PREDICATE ACT. On November 10, 2021, after receiving the Plaintiff's Government Claims Act forms and supporting documentation on or around October 18, 2021, and a preservation of evidence letter dated October 14, 2021, using some form of wire communication among Board of Trustees and the Commission on Judicial Appointments controlled by Board of Trustees, Ruben Duran allegedly directed that Associate Justice Maurice Sanchez be recommended and then appointed to the Fourth District, Division Three. Mr. Duran intended that this, which was the first of three overt appointments, would ensure Board of Trustees or Office of General Counsel could interfere with any appellate proceedings related to the Plaintiff's Government Claims Act litigation occurring in Orange County. Mr. Duran allegedly knew that Plaintiff had a mounting record of fraud and corruption involving Mr. Catanzarite and The State Bar of California, and that Mr. Duran needed to take extra precautions to protect interests of the enterprise. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the enterprise through a pattern of racketeering activity. Witnesses to these overt acts allegedly include: Addam Hoffman, Justin A. Palmer, Daniel L. Allender, Ugochi L. Anaebere-Nicholson, Caley R. Anderson, Matthew Barnachia, Andre R. Bollinger, Aundrea J. Brown, Julie S. Choe, Jamie Crook, Frine C. Eger-Gelston, Jeffrey El-Hajj, Noemi Nunez Esparaza, Tara C. Doss, Diana A. Garrido, Winnifred Gin, Stacey Guillory, Hon. Brenda Harbin-Forte (Ret.), Pamela Hemann, Theresa Hurley, Mack A. Jenkins, Jeanine Kraybill, Chhaya Malik, Meghan McMeel, Sandra A. Mori, Agustin D. Orozco, Loren C. Penaloza, T. Peter Pierce, Judith Reif, Francesca Serrano, David J. Sutton, Ryan R. Tacorda, Hon. Randa M. Trapp (Ret.), Corey R. Weber, Jaime E. Wrage, Donal W. Yoo, and Michael J. Yraceburn.

48

3:23-CV-0164-MMA-DEB

PREDICATE ACT. On November 12, 2021, delivered by U.S. mail from Sarah L. Cohen, Claims Officer for The State Bar of California "RE: Claim of Justin Beck," "notice is hereby given that as of this date, the State Bar of California rejected the claim you presented to the State Bar of California on or about October 18, 2021." Ruben Duran, as Chair of the Board of Trustees, had to make decisions related to this in accordance with Government Claims Act, and Hailyn Chen allegedly was involved. When Plaintiff received this letter, Mr. Duran allegedly knew he could control the judicial enterprise in Orange County Superior Court, and that the letter was intended to defraud Plaintiff of money and property, and Mr. Duran had no intentions of the Plaintiff receiving fair proceedings so long as the matter was heard within any California Court controlled by Board of Trustees and Office of General Counsel within The State Bar of California enterprise. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the enterprise through a pattern of racketeering activity. It is alleged that this letter also violated 18 U.S.C. § 1341 in that it used the mail as part of a fraudulent scheme where The State Bar of California, Ruben Duran, and Suzanne Grandt would misrepresent to Orange County Superior Court that each were immune from all acts, any reason.

PREDICATE ACT. On December 21, 2021, Plaintiff commenced Government Claims Act litigation against The State Bar of California alleging serial fraud, corruption, negligence, and intentional infliction of emotional distress. On information and belief, it was the first case ever filed against The State Bar of California by a member of the public with a vested claim denial and right to sue after Business & Professions Code § 6094(a) became law January 1, 2019. Judicial Officer Honorable Richard Lee was assigned. On January 18, 2022, at 1:59:56 PM, the Plaintiff filed an ex parte application in Orange County Superior Court in Case No. 30-2021-01237499 which included a series of Court Orders allegedly proving beyond reasonable doubt that Mr. Catanzarite was engaged in serial fraud and that Plaintiff was entitled to relief. On information and belief, Office of General Counsel used the wire to direct Orange County Superior Court that Honorable Richard Lee recuse, and that Honorable Judge John C. Gastelum assume the role as Judge so that the Plaintiff's Government Claims Act litigation could be obstructed under the direction of Office of General Counsel and Board of Trustees to protect the

3:23-CV-0164-MMA-DEB

1    enterprise. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended

2    to exert or maintain control of the enterprise through a pattern of racketeering activity.

3          PREDICATE ACT. On February 14, 2022, a "Declaration of Carissa N. Andresen" was

4    filed in Orange County Superior Court. Attached was an attempted case that Plaintiff sought to

5    file in California Supreme Court against Kenneth J. Catanzarite, Brandon Woodward, and Tim

6    James O'Keefe. Jorge E. Navarette informed the Plaintiff in March 2021 that this case being

7    "returned unfiled" to the Plaintiff. Andresen is alleged to have specifically intended to prevent

8    Plaintiff from fair and neutral proceedings to prevent him from obtaining his money judgments.

9    Andresen knew the case was supported by overwhelming evidence and that it was purportedly

10    "unfiled," but she also knew The State Bar of California was carrying on serial fraud of Kenneth

11    J. Catanzarite in several parallel series of cases, and that Mr. Catanzarite was among those

12    attorneys protected by The State Bar of California. These overt acts are alleged to have violated

13    18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire,

14    and that State Bar carried these on, too. On information and belief, "Supreme Court Accusations"

15    are intended as procedural waste to defraud the public in favor of The State Bar of California

16    enterprise and members of the 700+ Club. No reasonable attorney would file this in support of

17    allegations that it was Plaintiff acting in bad faith, or that he was not entitled to relief. These

18    overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or

19    maintain control of the enterprise through a pattern of racketeering activity.

20          PREDICATE ACT. On May 2, 2022, the Plaintiff's first amended complaint in Orange

21    County Superior Court Case No. 30-2021-01237499 was accepted at 08:00AM. The same day

22    allegedly using the wire through coordination between Suzanne Grandt and Ruben Duran,

23    "Justice Joanne Motoike was nominated to the 4th District Court of Appeal, Division 3, by

24    Governor Gavin Newsom…She was rated "exceptionally well qualified" for the position by the

25    Commission on Judicial Nominees Evaluation of the State Bar of California." It is alleged that

26    Board of Trustees deliberately made this recommendation to obstruct the Plaintiff's Government

27    Claims Act litigation, where Honorable Associate Justice Maurice Sanchez was appointed two

28    days prior to Plaintiff's denied claim letter November 12, 2021. These overt acts are alleged to

have violated 18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire, and that State Bar carried these on, too. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the enterprise through a pattern of racketeering activity. Witnesses to these overt acts allegedly include: Addam Hoffman, Justin A. Palmer, Daniel L. Allender, Ugochi L. Anaebere-Nicholson, Caley R. Anderson, Matthew Barnachia, Andre R. Bollinger, Aundrea J. Brown, Julie S. Choe, Jamie Crook, Frine C. Eger-Gelston, Jeffrey El-Hajj, Noemi Nunez Esparaza, Tara C. Doss, Diana A. Garrido, Winnifred Gin, Stacey Guillory, Hon. Brenda Harbin-Forte (Ret.), Pamela Hemann, Theresa Hurley, Mack A. Jenkins, Jeanine Kraybill, Chhaya Malik, Meghan McMeel, Sandra A. Mori, Agustin D. Orozco, Loren C. Penaloza, T. Peter Pierce, Judith Reif, Francesca Serrano, David J. Sutton, Ryan R. Tacorda, Hon. Randa M. Trapp (Ret.), Corey R. Weber, Jaime E. Wrage, Donal W. Yoo, and Michael J. Yraceburn.

PREDICATE ACT. On May 19, 2022, from Ruben Duran at the email ruben.duran@bbklaw.com (his private law firm) sent at 11:03 AM to George Cardona at the email George.cardona@calbar.ca.gov, Leah Wilson at the email leaht.wilson@calbar.ca.gov, "I would like a briefing on this when you have an opportunity, please. Thanks. Ruben" This email was in response to the Plaintiff's formal request on May 19, 2022 at 9:54 AM delivered to Carissa Andresen at the email carissa.andresen@calbar.ca.gov, Ruben Duran at the email ruben.duran@calbar.ca.gov, Joy Nunley at the email joy.nunley@calbar.ca.gov, Joan Randolph at the email joan.randolph@calbar.ca.gov, Anand Kumar at the email anand.kumar@calbar.ca.gov, Kenneth Catanzarite at the email kcatanzarite@catanzarite.com, Brandon Woodward at the email bwoodward@catanzarite.com, Tim James O'Keefe at the email tokeefe@catanzarite.com, and Nicole Marie Catanzarite-Woodward at the email ncatanzarite@catanzarite.com with the Subject: "Clarity on Requests/Formal Request to Mr. Duran as Board of Trustees of The State Bar of California." Therein, the Plaintiff cites the special relationship doctrine where Plaintiff is knowingly harmed and in special relationship to each actor for The State Bar of California. He cites California Rules of Professional Conduct 5.1 which makes The State Bar of California as law firm responsible for each Kenneth J. Catanzarite

3:23-CV-0164-MMA-DEB

and his associates. Therein, it is shown that Office of Chief Trial Counsel (George Cardona), Executive Director (Leah Wilson), Board of Trustees (Ruben Duran), and Office of General Counsel (Carissa Andresen) do coordinate decisions related to public rights and equity, with malice. Specifically, Mr. Cardona cites the Plaintiff's Government Claims Act litigation as being somehow connected with his duty as Chief Trial Counsel to stop the alleged serial schemes to defraud targeting Plaintiff and targeting other members of the public independently of Plaintiff. Specifically, Mr. Cardona's internal narrative reflects that of Mr. Catanzarite unreasonably and not the Court orders that explicitly detail the alleged criminal conduct in possession of The State Bar of California – the attorney allegedly engaged in serial fraud. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the enterprise through a pattern of racketeering activity. These acts were alleged to take place from a facility engaged in interstate commerce located at 845 S. Figueroa Ave, Los Angeles, CA 90017 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

PREDICATE ACT. On Tuesday, May 31, 2022 using the wire at 1:38 PM, Carissa Andresen from the email carissa.andresen@calbar.ca.gov delivered to the Plaintiff the following: "Mr. Beck, I left you a voicemail this morning. I would like to discuss with you your discovery requests in this matter. Specifically, I would like your agreement to an extension of time for the State Bar to provide its responses to your first set of RFAs and your first set of Form Interrogatories. I will be going on an extended leave and this matter will be transferred to another attorney in our office. An extension would allow new counsel sufficient time to review the facts of the case and your discovery requests, get appropriate responses from the correct individuals within the State Bar, and confer with you if necessary. Let me know if you agree. Thank you." It is alleged that Ms. Andresen knew Ms. Grandt would assume the role of counsel, and that Ms. Andresen intended to defraud the Plaintiff by email to continue the scheme. Specifically, it is alleged she knew that Ms. Grandt would deny any discovery, and that she would further seek to

3:23-CV-0164-MMA-DEB

prevent the Plaintiff from fair hearings or neutral adjudication, even though she knew that Plaintiff had a right to discovery, that he alleged fraud and corruption, and that he had a vested right to sue The State Bar of California. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the enterprise through a pattern of racketeering activity. These acts were alleged to take place from a facility engaged in interstate commerce located at 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

PREDICATE ACT. On June 2, 2022, at 02:09:00 PM using the wire in Orange County Superior Court Case No. 30-2021-01237499-CU-PN-CJC, working with Suzanne Grandt, Carissa Andresen of Office of General Counsel filed ROA #79 witnessed by David H. Yamasaki, Clerk of the Court, and Anh Dang, Deputy Clerk and Judge John C. Gastelum. Therein, Ms. Grandt allegedly defrauded Judge John C. Gastelum and the Plaintiff by asserting causes of action that turn on facts were subject to some form of blanket immunity or immunities that did not meet causes of action even though the Plaintiff had vested rights to sue from The State Bar of California. Grandt knew she was taking over the case, and that Office of General Counsel controlled the California judiciary with Board of Trustees, which makes all recommendations of judicial appointments. Grandt intended to defraud Judge John C. Gastelum to provide decisions that were not supported by law, and he was defrauded to provide a decision that was not supported by law October 11, 2022. Grandt specifically intended to prevent Plaintiff from fair and neutral proceedings to prevent him from obtaining his money judgments. Grandt also knew The State Bar of California was carrying on serial fraud of Kenneth J. Catanzarite in several parallel series of cases, but she knew that Mr. Catanzarite was among those attorneys protected by The State Bar of California. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire, and that State Bar carried these on, too.

3:23-CV-0164-MMA-DEB

PREDICATE ACT. On June 28, 2022 using the wire at 2:39 PM, Suzanne Grandt from the email Suzanne.grandt@calbar.ca.gov delivered the following to the Plaintiff, and copied Joan Randolph at the email joan.randolph@calbar.ca.gov: "Mr. Beck, You had previously agreed to extend the deadlines to all discovery until August 9, 2022. I have attached the email chain reflecting this agreement (with redactions of the portion reflect internal attorney work product.) I am now asking for further extension until after the demurrer hearing as we expect discovery to be unnecessary, or at the very least significantly narrowed, by the ruling on the State Bar's demurrer. To that end, it is premature to file a motion for summary adjudication as the State Bar has not even filed an answer in this matter, and has no obligation to do so until after a decision on the demurrer. Accordingly, we recommend waiting until after a decision on the State Bar's demurrer to engage in discovery and file a summary judgment motion. Best, Suzanne." This overt acts are alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive Plaintiff of money or property using the wire. This overt act is alleged to have violated 18 U.S.C. § 1962(b) in that it intended to exert or maintain control of the enterprise through a pattern of racketeering activity. This acts was alleged to take place from a facility engaged in interstate commerce located at 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity. Specifically, it is alleged Ms. Grandt knew that The State Bar of California controlled Orange County Superior Court and Judge John C. Gastelum, and that she could procure "sustained demurrer without leave to amend" using case law from 2000 applied to lawyers, even though Plaintiff is a member of the public with vested right to sue The State Bar of California using a statute from January 1, 2019, with no case precedent. It is alleged this wire communication proves that Ms. Andresen's request for extension was not to obtain answers, it was to deliberately defraud the Plaintiff.

PREDICATE ACT. On July 13, 2022, using the wire to disseminate a press release to the general public through Office of Communications (barcomm@calbar.ca.gov) "State Bar Secures More than $105 Million in Legal Aid Assistance" was announced "that this year's $308 billion State Budget will furnish more than $105 million in funding for access to justice efforts

3:23-CV-0164-MMA-DEB

ite

sorry

---

through State Bar…This supplements the more than $50.5 million in funds the State Bar plans to distribute for similar assistance from Interest on Lawyers' Trust Accounts (IOLTA) earnings in 2023." "Whenever we speak about funds of this magnitude, it is easy to lose sight of the fact that each dollar spent represents profound change in the lives of the people our legal aid partners assist, said Leah Wilson, State Bar Executive Director." It is alleged that these funds are prioritized as being paid to lawyers horizontally while The State Bar of California enterprise knowingly defrauds members of the public. It is alleged these funds are derived through a pattern of racketeering activity, at least in part, and that The State Bar of California accepts proceeds of this unlawful activity from IOLTAs (knowing some of it was derived from racketeering) and then distributes it to conceal its nature. The same press release states that "$20 million" comes from "federal homeless prevention funds." It is alleged that LawHelpCa.org is used to create artificial demand for legal services, while the public suffers from the ongoing deliberate concealment of racketeering activity by Leah Wilson, Ruben Duran, and Suzanne Grandt. It is alleged that The State Bar of California uses IOLTA and attorney trust accounts to launder money in favor of The State Bar of California enterprise and 700+ Club. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive the public using the wire. These overt acts are alleged to have violated 18 U.S.C. § 371 in that they defrauded the United States of $20 million. These overt acts are alleged to have violated 18 U.S.C. § 1962(a) in that they intended to invest, and will invest, the proceeds of racketeering activity in an interstate enterprise.  These acts were alleged to take place from a facility engaged in interstate commerce located at either 845 S. Figueroa Ave, Los Angeles, CA 90017 or 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity. These overt acts are alleged to violate 18 U.S.C. § 1956 in that it involves the promotion, carrying on of specified unlawful activity, and it is intended to conceal or disguise the nature, location, source, ownership, or control of funds derived from illegal activity. These overt acts are alleged to violate 18 U.S.C. § 1957 in that some were derived from fraudulent judgments allegedly

55

3:23-CV-0164-MMA-DEB

procured by Girardi-Keese and Catanzarite Law Corporation actors, and then to violate 18 U.S.C. § 1960 where The State Bar of California does not possess a money transmitter license.

PREDICATE ACT. On July 20, 2022, "Via U.S. Mail and email to: justintimesd@gmail.com" Ms. Grandt did send a "letter" responding "to [Plaintiff's] May 19 and July 12, 2022, emails to the Chair of the State Bar Board of Trustees. Mr. Duran has referred this matter to the Office of General Counsel for response." Therein, Ms. Grandt describes the reasons that The State Bar of California would not disclose to the public their actual knowledge, much like Mr. Girardi's schemes, that Mr. Catanzarite was engaged in several schemes to defraud members of the public (e.g., Richard Carlson who did not believe he had suffered any damages before 9 putative class actions were filed on his behalf, when he wasn't seeking an attorney). Ms. Grandt concedes to the improper purposes of this decision being that the Plaintiff was suing The State Bar of California (malice). Grandt specifically intended to prevent Plaintiff from fair and neutral proceedings to prevent him from obtaining his money judgments. Grandt also knew The State Bar of California was carrying on serial fraud of Kenneth J. Catanzarite in several parallel series of cases, but she knew that Mr. Catanzarite was among those attorneys protected by The State Bar of California. These overt acts are alleged to have violated 18 U.S.C. § 1341 and 18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire and mail. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the enterprise through a pattern of racketeering activity. These acts were alleged to take place from a facility engaged in interstate commerce located at either 845 S. Figueroa Ave, Los Angeles, CA 90017 or 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

PREDICATE ACT. August 8, 2022, the Plaintiff attempted to file for summary judgment in Orange County Superior Court Case No. 30-2020-01145998 after the Court of Appeal issued a ruling in G059766 July 13, 2022, concluding that the Plaintiff made a prima facie case for the malicious prosecution of three lawsuits driven by Mr. Catanzarite's allegedly fraudulent scheme against Plaintiff. The same day allegedly using the wire through coordination between Suzanne

56

3:23-CV-0164-MMA-DEB

Grandt and Ruben Duran, "Thomas A. Delaney was nominated to the California Court of Appeal, Fourth Appellate District, Division Three, by Governor Gavin Newsom, and was confirmed by unanimous vote of the Commission on Judicial Appointments on October 11, 2022." These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire, and that State Bar carried these on, too. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the enterprise through a pattern of racketeering activity. Witnesses to these overt acts allegedly include: Addam Hoffman, Justin A. Palmer, Daniel L. Allender, Ugochi L. Anaebere-Nicholson, Caley R. Anderson, Matthew Barnachia, Andre R. Bollinger, Aundrea J. Brown, Julie S. Choe, Jamie Crook, Frine C. Eger-Gelston, Jeffrey El-Hajj, Noemi Nunez Esparaza, Tara C. Doss, Diana A. Garrido, Winnifred Gin, Stacey Guillory, Hon. Brenda Harbin-Forte (Ret.), Pamela Hemann, Theresa Hurley, Mack A. Jenkins, Jeanine Kraybill, Chhaya Malik, Meghan McMeel, Sandra A. Mori, Agustin D. Orozco, Loren C. Penaloza, T. Peter Pierce, Judith Reif, Francesca Serrano, David J. Sutton, Ryan R. Tacorda, Hon. Randa M. Trapp (Ret.), Corey R. Weber, Jaime E. Wrage, Donal W. Yoo, and Michael J. Yraceburn.

PREDICATE ACT. On August 18, 2022, at 02:29:00 PM using the wire in Orange County Superior Court Case No. 30-2021-01237499-CU-PN-CJC, Suzanne Grandt filed ROA #136 to "continue the hearing on Plaintiff's Summary Judgment Motion" witnessed by David H Yamasaki, Clerk of the Court, by B. Romney, Deputy Clerk and Judge John C. Gastelum, directed at Plaintiff. Despite alleging corruption and fraud, Ms. Grandt continues to assert that Plaintiff cannot state a claim in any manner, even though he had a vested right to sue The State Bar of California. Therein, Ms. Grandt allegedly defrauded Judge John C. Gastelum and the Plaintiff by asserting causes of action that turn on facts were subject to some form of blanket immunity or immunities that did not meet causes of action even though the Plaintiff had vested rights to sue from The State Bar of California and the cases cited predated January 1, 2019, when Government Claims Act expressly applied to The State Bar of California. Ms. Grandt asserted Superior Court of California did not have jurisdiction to hear the Plaintiff's Government Claims Act litigation, even though it was the proper forum according to Government Claims Act. Ms.

3:23-CV-0164-MMA-DEB

Grandt specifically intended to prevent Plaintiff from fair and neutral proceedings to prevent him from obtaining his money judgments. Grandt also knew The State Bar of California was carrying on serial fraud of Kenneth J. Catanzarite in several parallel series of cases, but she knew that Mr. Catanzarite was among those attorneys protected by The State Bar of California. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive and defraud Plaintiff of money or property using the wire.

PREDICATE ACT. On August 22, 2022, at 02:50:00 PM using the wire in Orange County Superior Court Case No. 30-2021-01237499-CU-PN-CJC, Suzanne Grandt, Ruben Duran, and Carissa Andresen through Suzanne Grandt of Office of General Counsel filed ROA #161 witnessed by David H. Yamasaki, Clerk of the Court, and Anh Dang, Deputy Clerk, and Judge John C. Gastelum directed at Plaintiff. Therein, Ms. Grandt allegedly defrauded Judge John C. Gastelum and the Plaintiff by asserting causes of action that turn on facts were subject to some form of blanket immunity or immunities that did not meet causes of action even though the Plaintiff had vested rights to sue from The State Bar of California. Ms. Grandt specifically intended to prevent Plaintiff from fair and neutral proceedings to prevent him from obtaining his money judgments. Grandt also knew The State Bar of California was carrying on serial fraud of Kenneth J. Catanzarite in several parallel series of cases, but she knew that Mr. Catanzarite was among those attorneys protected by The State Bar of California. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire.

PREDICATE ACT. On August 22, 2022, at 02:50:00 PM using the wire in Orange County Superior Court Case No. 30-2021-01237499-CU-PN-CJC, Suzanne Grandt, Ruben Duran, and Carissa Andresen through Suzanne Grandt of Office of General Counsel filed ROA #150 witnessed by David H. Yamasaki, Clerk of the Court, and Anh Dang, Deputy Clerk, and Judge John C. Gastelum, directed at Plaintiff. Therein, Ms. Grandt says "Defendant Duran is the Chair of the Board of Trustees...Defendants Grandt and Andresen are Assistant General Counsel who have appeared on behalf of the State Bar Defendants in this action...None of these new Defendants work in the Office of Chief Trial Counsel and therefore none would have been

58

3:23-CV-0164-MMA-DEB

involved in the handling of any attorney discipline complaint." When Ms. Grandt delivered this statement with intent to defraud the Court and Plaintiff, she knew that Ruben Duran, Leah Wilson, Carissa Andresen, and George Cardona had coordinated decisions related to the Plaintiff and Mr. Catanzarite from May 19, 2022 to May 25, 2022. Ms. Grandt specifically intended to prevent Plaintiff from fair and neutral proceedings to prevent him from obtaining his money judgments. Grandt also knew The State Bar of California was carrying on serial fraud of Kenneth J. Catanzarite in several parallel series of cases, but she knew that Mr. Catanzarite was among those attorneys protected by The State Bar of California. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive and defraud Plaintiff of money or property using the wire.

PREDICATE ACT. After identifying Federal antitrust laws for regulators, the Plaintiff filed an antitrust petition in California Supreme Court styled *Justin S. Beck v. Ruben Duran (The State Bar of California)* which was assigned a case number S276517. The Plaintiff included four volumes of exhibits, citing *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (2015), and served it on Ruben Duran, Suzanne Grandt, the United States Department of Justice, and the Federal Trade Commission. With alleged intent to defraud Plaintiff and to further enterprise interests, Jorge E. Navarette or Chief Justice Cantil-Sakauye delivered the Plaintiff an order striking the antitrust petition as being "premature" dated September 27, 2022. It is alleged that Office of General Counsel was then frivolously assigned to make an antitrust determination for itself. It is alleged that Office of General Counsel makes decisions for Board of Trustees as set forth on July 20, 2022, it retains public rights and equity so that allegedly corrupt lawyers can continue schemes to defraud as set forth on May 19, 2022 through May 25, 2022 in acting as "Complaint Review Unit," that it acts as the civil defense law firm for The State Bar of California while it concurrently regulates conduct giving rise to liability thus making it an impossible conflict for members of the public namely Plaintiff, that it also defends individual private/public actors like Ruben Duran against allegations of fraud and corruption, and that it appears in State Bar Court proceedings and to prosecute or defend Client Security Fund. Put simply, it is alleged that Office of General Counsel is a racket-within-a-racket that defrauds the

3:23-CV-0164-MMA-DEB

public with malice, and that it is frivolous for it to make a federal antitrust determination for itself by any measure. Nevertheless, it is alleged that this is one tool of many through which Office of General Counsel maintains control of the enterprise. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the enterprise through a pattern of racketeering activity. These acts were alleged to take place from a facility engaged in interstate commerce located at 845 S. Figueroa Ave, Los Angeles, CA 90017 or 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

PREDICATE ACT. On October 11, 2022, Plaintiff and Suzanne Grandt appeared before Honorable Judge John C. Gastelum using the wire through the "Zoom" application in Orange County Superior Court. Ms. Grandt requested in that hearing that the Court dismiss all claims filed by the Plaintiff, who had a vested right to sue the government under Government Claims Act. Ms. Grandt told the Court that Plaintiff would "keep adding parties with no relation to the facts" which she knew was not true, because the Plaintiff had alleged illegal coordination between Office of General Counsel, Board of Trustees, and Office of Chief Trial Counsel to defraud the public. Ms. Grandt later inadvertently disclosed this to be true as alleged. It is alleged that Ms. Grandt intended to defraud the Court and Plaintiff with these statements, and that she did defraud the Court through false assertions of law and fact to obtain a "sustained demurrer without leave to amend" using her alleged control over the enterprise. In the decision, the Court cites a case from 2000 which applies to attorneys and not Government Claims Act litigation, even though Plaintiff's claims were lying in fraud and corruption under Government Claims Act statutes that did not apply to the defendants Suzanne Grandt, Ruben Duran, The State Bar of California, Eli David Morgenstern, Anand Kumar, Carissa Andresen, and Joy Nunley until January 1, 2019 and Plaintiff is not an attorney. It is alleged that Judge John C. Gastelum catered to the direction of Ms. Grandt not based upon law or fact, but based on the alleged control of the enterprise for which Honorable John C. Gastelum was placed to obstruct Plaintiff's genuine claims in January 2022. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that

60

3:23-CV-0164-MMA-DEB

Ms. Grandt's use of the wire to appear while making deliberately false statements intended to deceive and defraud Plaintiff of money or property using the wire. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the enterprise through a pattern of racketeering activity.

PREDICATE ACT. On October 11, 2022, it is alleged that Suzanne Grandt used the wire to communicate John C. Gastelum's decision to "sustain demurrer without leave to amend" to Ruben Duran or others working on their behalf on the basis of Suzanne Grandt's materially false representations and control of the enterprise. The same day, "Justice Thomas A. Delaney was confirmed by unanimous vote of the Commission on Judicial Appointments on October 11, 2022" to the Fourth District, Division Three. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive Plaintiff and defraud him of money or property using the wire. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the enterprise through a pattern of racketeering activity. Witnesses to these overt acts allegedly include: Ruben Duran, Addam Hoffman, Justin A. Palmer, Daniel L. Allender, Ugochi L. Anaebere-Nicholson, Caley R. Anderson, Matthew Barnachia, Andre R. Bollinger, Aundrea J. Brown, Julie S. Choe, Jamie Crook, Frine C. Eger-Gelston, Jeffrey El-Hajj, Noemi Nunez Esparaza, Tara C. Doss, Diana A. Garrido, Winnifred Gin, Stacey Guillory, Hon. Brenda Harbin-Forte (Ret.), Pamela Hemann, Theresa Hurley, Mack A. Jenkins, Jeanine Kraybill, Chhaya Malik, Meghan McMeel, Sandra A. Mori, Agustin D. Orozco, Loren C. Penaloza, T. Peter Pierce, Judith Reif, Francesca Serrano, David J. Sutton, Ryan R. Tacorda, Hon. Randa M. Trapp (Ret.), Corey R. Weber, Jaime E. Wrage, Donal W. Yoo, and Michael J. Yraceburn.

PREDICATE ACT. Between October 13, 2022, and October 17, 2022, Plaintiff filed a writ petition (G061896) in the Fourth District, Division Three. At the time, Plaintiff had yet to discover the overt appointments of Honorable Sanchez, Honorable Motoike, and Honorable Delaney by The State Bar of California and Office of Governor who were appointed on very specific dates to allegedly obstruct his proceedings. The Plaintiff included 9 volumes of exhibits, and then separately judicially noticed more volumes of exhibits, including wire fraud

3:23-CV-0164-MMA-DEB

convictions, Orange County District Attorney's Office being subject of a Civil Rights investigation disclosed October 13, 2022, a racketeering conviction of an Orange County Superior Court Clerk, and the overt appointments of Honorable Sanchez, Honorable Motoike, and Honorable Delaney. The FBI and United States Department of Justice received, and downloaded, probative evidence backing Plaintiff's allegations of public corruption. Parties to the communications include Mack Jenkins, the Public Corruption Unit lead for U.S. Attorney's Office in Los Angeles, and Lindsey Dotson within that office. Other parties include Criminal.Division@usdoj.gov and Antitrust.Division@usdoj.gov . Incredibly, no actor associated with The State Bar of California or State of California downloaded the writ petition or exhibits. It is alleged they knew The State Bar of California enterprise controlled the proceedings, or they would have opposed the petition. Plaintiff sought disposition of the errant decision to "sustain demurrer without leave to amend" his Government Claims Act case in 30-2021-01237499. It is alleged that Mr. Jenkins and Ms. Dotson are subject to the same wrongful use of The State Bar of California enterprise against them. It is alleged that Ruben Duran, Suzanne Grandt, or Robert Retana had ex parte communications with Honorable Sanchez, Honorable Motoike, or Honorable Delaney and that they were directed to dispose, or caused to be disposed of, the Plaintiff's writ petition which was not supported by fact or law. Without explanation, on December 28, 2022, the writ petition was rejected. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the enterprise through a pattern of racketeering activity.

PREDICATE ACT. On October 13, 2022, "Via U.S. Mail and Email: justintimesd@gmail.com" using Office of General Counsel, Ms. Grandt sent Plaintiff a letter stating "I am not a party to this action" in 30-2020-01145998. Ms. Grandt refused to produce discovery on that basis, even though The State Bar of California only accepts electronic service, and she was served multiple times as she was appearing in 30-2021-01237499. It is alleged Ms. Grandt specifically intended to prevent Plaintiff from fair and neutral proceedings to prevent him from obtaining his money judgments. Grandt also knew The State Bar of California was carrying on serial fraud of Kenneth J. Catanzarite in several parallel series of cases, and that 30-2020-

01145998 already had a favorable Court of Appeal ruling in which it was shown that Plaintiff was likely to prevail on three counts of malicious prosecution, but she knew that Mr. Catanzarite was among those attorneys protected by The State Bar of California. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire, and that State Bar carried these on, too.

PREDICATE ACT.   On   October   17,   2022,   Joan   Randolph   from   the   email joan.randolph@calbar.ca.gov as "Legal Secretary" in "Office of General Counsel" from the mail facility 180 Howard Street, San Francisco, CA 94105 delivered to Plaintiff "Antitrust Determination 2022-001" from "Office of General Counsel" which is allegedly drafted by Robert George Retana. First, the letter reflects a determination made after deliberately obstructing or removing four volumes of probative antitrust evidence from S276517. The Plaintiff alleges "OGC and the BOT Board each lack direct oversight in regulation despite being controlled by a majority of active market participants" and that "State Bar is not operated in a manner consistent with public statements made by the Chairman of the Board of Trustees...This Court must review because the horizontal trade of law, namely lawyer[s] controlling $3.4 trillion gross state product cannot govern themselves as a matter of law." The letter cites Parker v. Brown (1943) 317 U.S. 341, 350-51, but ignores the direction of *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (2015). It is alleged that this letter and determination intended to defraud the Plaintiff, and the United States because Office of General Counsel knows that it operates, and The State Bar of California operates, in ongoing violation of federal antitrust laws. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that Mr. Retana's use of the wire while making deliberately false statements of fact and law intended to deceive and defraud Plaintiff and the United States of money or property using the wire. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the enterprise through a pattern of racketeering activity, and were alleged to take place from a facility engaged in interstate commerce located at 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

3:23-CV-0164-MMA-DEB

PREDICATE ACT. Also on October 17, 2022, Robert Retana from 180 Howard Street, San Francisco, CA 94105 and the email Robert.retana@calbar.ca.gov delivered "VIA EMAIL TO JORGE.NAVARETTE@JUD.CA.GOV" to Jorge E. Navarette, Supreme Court Clerk and Executive Officer, Supreme Court of California, 350 McAllister Street, San Francisco, CA 94102-4797 "State Bar Antitrust Determination 2022-0001" in which it is stated that "Requestor has 60 days from October 17th to file a Petition for Review pursuant to Rule 9.13 of the California Rules of Court." Mr. Retana signs as "Deputy General Counsel." It is alleged that Mr. Retana sent this letter to Jorge E. Navarette with intent that a new case be filed, unbeknownst to the Plaintiff, and that Mr. Retana intended to defraud the Plaintiff and the United States. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that Mr. Retana's use of the wire while making deliberately false statements of fact and law intended to deceive and defraud Plaintiff and the United States of money or property using the wire. This overt act is alleged to have violated 18 U.S.C. § 1343 in that Mr. Retana knew the entire determination was false in that it was based upon a manipulated record which removed four volumes of exhibits from the Plaintiff's actual petition to California Supreme Court (S276517). This overt act is alleged to have violated 18 U.S.C. § 1962(b) in that Mr. Retana intended to exert or maintain control of the enterprise through a pattern of racketeering activity, and was alleged to take place from a facility engaged in interstate commerce located at 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

PREDICATE ACT. On October 18, 2022, using the wire, Jorge E. Navarette, in California Supreme Court for "Petitioner: Justin S. Beck" filed "Petition for review" using the obstructed case files from Robert George Retana from S276517 and created a new case that the Plaintiff did not authorize, nor did he file (S276539). Further, it is alleged Mr. Navarette used the wire to remove all exhibits from S276517 in TrueFiling, which is the service used by California Supreme Court and Court of Appeal for service and record keeping. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive as part of a fraudulent scheme. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that Mr.

3:23-CV-0164-MMA-DEB

Navarette intended to exert or maintain control of the enterprise through a pattern of racketeering activity, and was alleged to take place from a facility engaged in interstate commerce located at 350 McAllister Street, San Francisco, CA under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity. It is alleged that Mr. Navarette defrauded not only the Plaintiff, but defrauded California Supreme Court and the United States where State of California, The State Bar of California, and California Supreme Court affect approximately $3.63 trillion in interstate commerce.

PREDICATE ACT. On October 19, 2022, after the Plaintiff identified what is an alleged pattern of racketeering and control over the entire California judicial system by The State Bar of California which precludes any fair forum in Superior Court or any reviewing Court, he filed a federal case styled Justin S. Beck v. Catanzarite Law Corporation et al. (3:22-CV-01616-BAS-DDL). He later filed an amended complaint proposing claims on behalf of the United States for $100,000,000 paid by The State Bar of California for violating 15 U.S.C. § 1, and included claims on behalf of ROES 1-150,000 who are allegedly harmed by the same acts of alleged violations of 18 U.S.C. § 1341, 18 U.S.C. § 1343, 18 U.S.C. § 1344, 18 U.S.C. § 1952(a), 18 U.S.C. § 1956, 18 U.S.C. § 1957, 18 U.S.C. § 1960, 18 U.S.C. § 1962(a)-(d). Plaintiff alleged the need for U.S. intervention where discrimination is so unjustified against non-lawyers, that it necessitated reverse incorporation of the Fourteenth Amendment into the Fifth Amendment. He filed for two motions for summary judgment, which are attached to this case statement, and which were filed in good faith expecting obstruction of justice by The State Bar of California.

PREDICATE ACT. On December 29, 2022, unnamed persons within California Department of Justice regarding Public records Act Request; DOJ PRA 2022-02717 was delivered by email to justintimesd@gmail.com from "Public Records Coordinator" acting for "Rob Bonta Attorney General." It clearly stated, "the Department's response will be due on January 3, 2023."

PREDICATE ACT. After December 29, 2022, Charles Tsai as Deputy Attorney General from the Executive Branch overtly transitioned to Office of General Counsel for the Judicial

Branch to defend 3:22-CV-01616-BAS-DDL. It is alleged that Mr. Tsai did so with specific intent to obstruct justice, and to protect the enterprise. And Mr. Tsai did allegedly obstruct justice in 3:22-CV-01616-BAS-DDL, specifically he ignored two motions for summary judgment filed by Plaintiff that are incorporated herein by reference in support of predicate acts, and is alleged to have had ex parte communications with Honorable Cynthia A. Bashant in order that a massive record of probative evidence be removed in that case for any reviewing Court—and that it be made to seem as if it were Plaintiff acting in bad faith, or in the alternative, That Mr. Tsai made material misrepresentations to Honorable Cynthia A. Bashant of the merits of the Plaintiff's case. And it worked, where Honorable Cynthia A. Bashant was somehow directed or caused to order stricken two motions for summary judgment with all probative evidence of alleged crimes involving the enterprise constituents, and it is alleged that Charles Tsai's mission to obstruct justice through the wholly improper influence and ex parte communications with Honorable Cynthia A. Bashant was complete. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the enterprise through a pattern of racketeering activity, and were alleged to take place from a facility engaged in interstate commerce located at 845 S. Figueroa St., Los Angeles, CA 90017 or 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity. These acts allegedly violated 18 U.S.C. § 1503 in that they were intended to obstruct justice, and they did obstruct justice. It is alleged that Mr. Tsai's conduct was similar to the role Suzanne Grandt played with Honorable John C. Gastelum through ex parte communications and deliberate compromise of the fair administration of justice to retaliate against the Plaintiff for filing good faith Government Claims Act litigation which threatened The State Bar of California enterprise and 700+ Club constituents by exposing it.

PREDICATE ACT. On February 2, 2023, under different legal theories where it is alleged Kenneth J. Catanzarite is an enterprise in this case under 18 U.S.C. § 1962(c), and that 15 U.S.C. § 15 creates a private right of action for pursuing antitrust claims in U.S. District Court—including against a non-sovereign regulator—Plaintiff filed the first amended complaint

in this action in good faith. It is alleged that the California Superior Court system was and is compromised. It is alleged that this matter is of national importance, and that it is not partisan. It is alleged that an urgent need exists for U.S. intervention that is discrete of Plaintiff's desire to obtain his damages, and to achieve fair and neutral adjudication of his claims on their merits without being compromised by an alleged pattern of racketeering activity, including the alleged obstruction of justice by Mr. Tsai and Office of General Counsel for The State Bar of California.

PREDICATE ACT. On February 14, 2023, Honorable Cynthia A. Bashant in 3:22-CV-01616-BAS-DDL struck a temporary restraining order, two meticulously prepared motions for summary judgment, a request for entry of default, and a request for neutral evaluation conference together with an evidentiary record supporting all allegations described herein. The Plaintiff spent approximately 250 hours preparing these records in good faith, including the opposition to the motion to dismiss and all related immunities. Within those documents, the Plaintiff noticed the Court of a motion for summary judgment in Orange County Superior Court Case No. 30-2021-01237499 which was allegedly obstructed by Suzanne Grandt through ex parte communications with Honorable Judge John C. Gastelum. On February 15, 2023, at 11:11AM, the Plaintiff received from Orange County Superior Court a rejection notice of Order 6172307 of: Notice of Motion, Notice of Confirmation of Filing, Separate Statement, Notice of Confirmation of Filing, and Declaration in Support. It is alleged that Charles Tsai, upon achieving his alleged mission with Honorable Cynthia A. Bashant to obstruct justice in violation of 18 U.S.C. § 1503, instructed Orange County Superior Court to reject these filings from July 18, 2022 to conceal their existence, too. Cumulatively, these acts are alleged to have violated 18 U.S.C. § 1962(b) in that they continued the control or maintenance of the enterprise through a pattern of racketeering activity. It is alleged the intent of these acts is to prevent Plaintiff from fair adjudication on the merits, and to conceal The State Bar of California enterprise's true nature through Charles Tsai.

PREDICATE ACT. On February 15, 2023, Trevor Rabena, Program Analyst, for Department of General Services delivered a letter to the Plaintiff to his address at 3501 Roselle St. Oceanside, CA 92056. Despite the presentation of claims against State of California for

67

3:23-CV-0164-MMA-DEB

failing to properly supervise The State Bar of California under federal antitrust laws leading to compromise of his allegedly due judgments under Government Claims Act, Mr. Rabena says "California State Bar" "is not within the jurisdiction of the Government Claims Program." It is alleged that Mr. Rabena knew this was self-evidence of the antitrust violations of which the Plaintiff complains in good faith, where it appears The State Bar of California enterprise does indeed control State of California through a pattern of racketeering activity in violation of antitrust laws and 18 U.S.C. § 1962(b). It is alleged that Charles Tsai or Office of General Counsel ensured this letter was sent to the Plaintiff so that The State Bar of California could continue to obstruct this proceeding, Superior Court proceedings, and proceedings in any reviewing Court to ensure that the facts and evidence in possession of the Plaintiff would be suppressed and that the Plaintiff would not be granted a neutral hearing on the merits in any instance. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the enterprise through a pattern of racketeering activity. This act allegedly violated 18 U.S.C. § 1503 in that it was intended to obstruct justice, and it did obstruct justice. State of California allegedly abuses its sovereignty, and The State Bar of California is not a sovereign under the 11th Amendment.

CRIMINAL CONVICTIONS

18 U.S.C. § 1343

Matthew Charles Elstein. 1 Count

Michael Avennatti. 4 Counts

Stephen Young Kang. 2 Counts

18 U.S.C. § 1962(d)

Jose Lopez, Jr. 1 Count

CIVIL LITIGATION RESULTING IN JUDGMENTS

Anthony B. Scudder (Derivative Defendant-Turned-Client)

Case No. 30-2020-01145998

$13,000 owed by Plaintiff under California "Anti-SLAPP"

*In re: Daymark Realty Advisors, Inc., et al.*

68                                          3:23-CV-0164-MMA-DEB

1          Case No. 18-23750

2            $15,253.43 as compensatory sanctions

3    *Catanzarite v. Todd A. Mikles, et al.*

4          Case No. 20-61032-CIV-SMITH

5          $11,639.25 as sanction

6    *In re: Daymark Realty Advisors, Inc., et al., Todd A. Mikles, et al. v. Richard Carlson*

7          Case No. 18-23750-SMG

8          $11,639.25 sanction confirmed

9          $49,020.50 to the Mikles Plaintiffs ordered as sanctions

10         $11,639.25 to the Trustee ordered as sanctions

11   *Edwards v. Noroski,*

12         Case 11-510638 (2013)

13         $13,874.85 + $1,200 as sanctions

14   *Alexandros v. Cole*

15         G043715 (2011)

16         $10,000 sanction

17   *In RE Perrine,*

18         369 B.R. 571 (2007)

19         $30,000 or refund of fees

20   e. Describe how the predicate act forms a pattern of racketeering activity; and

21   Perpetrators of the predicate acts are among or associated with The State Bar of

22   California enterprise before September 14, 2018 in Orange County, California often involving

23   Orange County Superior Court. The enterprise can be the Court system itself. United States v.

24   Murphy, 768 F.2d 1518 (7th Cir. 1985). More than two convictions exist already for wire fraud

25   in violation of 18 U.S.C. § 1343, thereby constituting a pattern of racketeering activity.

26   Predicate acts targeted, and continue to target, the Plaintiff as of September 14, 2018.

27   **f. State whether the alleged predicate acts related to each other as part of a common**

28   **plan. If so, describe the alleged relationship and common plan in detail.**

3:23-CV-0164-MMA-DEB

1) **Common Plan #1**. For the Kenneth Joseph Catanzarite enterprise, it is alleged that the plan consists of filing fraudulent cases that lack standing or probable cause predicated upon the ongoing protection of The State Bar of California enterprise. Examples are provided In Re Perrine, Alexandros v. Cole, Edwards v. Noroski, Richard Carlson as a lead plaintiff in 9 putative class actions when he did not believe he had suffered damages nor did he seek an attorney when he was visited at his home by Mr. Catanzarite, and then Denise Pinkerton as "attorney-in-fact" for a Roger Root, who was not a shareholder but commenced a campaign of false cases for which the register of actions is in the thousands targeting the Plaintiff. After the first case is filed, discovery is propounded, leading to private information to which Mr. Catanzarite and his associates are allegedly not entitled, thereby causing more fraudulent litigation. Declarations are provided under penalty of perjury that conflict with each other, as if each case were a vacuum unrelated to its related cases. This plan is supported by deliberate indifference, actual concealment, or bribery by or of Office of Chief Trial Counsel, Office of General Counsel, and Board of Trustees for The State Bar of California enterprise. It is alleged this plan is consistent with that of the Girardi-Keese law firm. It is alleged that Courts and judges are selected for these schemes according to their willingness to permit the conduct without acting on their own volition, or by *ex parte* communications involving actual exchange of consideration. It is alleged Court clerks aid in this process by communicating with The State Bar of California enterprise and Kenneth Joseph Catanzarite enterprise in Orange County Superior Court. It is alleged this plan is evidenced by public records requests reflecting actual knowledge of The State Bar of California enterprise, and its refusal to mitigate public harm, and the impunity with which the Kenneth Joseph Catanzarite enterprise conducts itself against innocent members of the public.

2) **Common Plan #2**. For the Kenneth Joseph Catanzarite Enterprise, it is alleged the plan consists of taking money and property from the Plaintiff commencing September 14, 2018 by any means through ongoing protection of and collusion with The State Bar of California enterprise. Not less than six cases were filed on behalf of directly adverse parties for this plan.

3) **Common Plan #3**. For The State Bar of California enterprise and State of California, it is alleged the common plan is to prevent the Plaintiff from fair or neutral forums to conceal

3:23-CV-0164-MMA-DEB

the facts and evidence in his possession. Where the Plaintiff is alleged to be the first to file Government Claims Act litigation against The State Bar of California and has already shown a series of Court of Appeal decisions supporting allegations of at least three counts of malicious prosecution and not less than four mandatory disqualifications affecting the Kenneth Joseph Catanzarite enterprise, it is alleged that Plaintiff constitutes a direct and ongoing threat to the interests of the criminal conduct of Office of General Counsel, Office of Chief Trial Counsel, Board of Trustees, and the Kenneth Joseph Catanzarite enterprise – as well as the links to each of these and the 700+ Club. To evidence this common plan, it is alleged that the efforts to stop Plaintiff from obtaining judgments to which he is allegedly entitled are greater than the efforts for the State of California and The State Bar of California to resolve them amicably on their merits as is the duty of the government (the government is not an ordinary party.)

       4) **Common Plan #4**. It is alleged The State Bar of California is not a sovereign entity protected by the 11th Amendment, and that it uses this guise to mislead Courts and to conduct racketeering with commingled operations among allegedly corrupt lawyers and law firms, as well as the IOLTA and client trusts through which they are alleged to launder money. It is alleged this money laundering affects Medicare and Medicaid, and involved pandemic funds, as well as Chinese banks listed herein. Because The State Bar of California enterprise is responsible for monitoring the conduct of itself including its own alleged money laundering, it is alleged that no lawyer can reasonably stop it, which is why the Courts have never seen a case such as this. It is alleged that The State Bar of California purports to operate as being under the sovereign authority of State of California, however, such conduct would need to be undertaken as if it were that of the State of California itself. If that were the case, State of California is a direct and proximate threat to the United States as it is abusing its sovereignty for unlawful taking from the public, which is unconscionable. It is alleged this plan is continued through deliberate obstruction of justice to prevent Federal Courts of competent jurisdiction from making decisional law that will stop The State Bar of California enterprise from these practices. Conduct of Mr. Tsai is evidence.

6. **Describe in detail the alleged "enterprise" for each RICO claim.**

       COUNT I.    18 U.S.C. § 1962(c).

               3:23-CV-0164-MMA-DEB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(a) The Kenneth Joseph Catanzarite enterprise allegedly consists of Catanzarite Law Corporation, Nicole Marie Catanzarite Woodward, Brandon Woodward, Tim James O'keefe, Eric V. Anderson, Jim Travis Tice, Becky Phillips, Han Le, unnamed persons within Orange County District Attorney's Office, unnamed persons within Anaheim Police Department, unnamed persons within Anaheim City Attorney's Office, Aegis Asset Management, Inc. (CRD No. 305008), David M. Piller, Aegis Properties, Inc., Parkgate Center LP, 2331 W. Lincoln Ave., Anaheim, CA 92801, Kim Catanzarite, Ellen C. Catanzarite Living Trust, 354 Hazel Dr., Corona Del Mar, 92625, property owners associations in Orange County to control real estate allegedly acquired through a pattern of racketeering activity and unlawful debts, Eli David Morgenstern, Ruben Duran, Suzanne Grandt, other persons within Office of General Counsel, Office of Chief Trial Counsel, and Board of Trustees similarly situated to Ruben Duran, Suzanne Grandt, and Eli David Morgenstern, and one or more banks holding IOLTA and trust accounts used to allegedly transfer proceeds by and between the foregoing persons.

Beyond the foregoing core constituents of the Kenneth Joseph Catanzarite enterprise, It is alleged the foregoing persons engage in bribery of witnesses or straw litigants, and that the Kenneth Joseph Catanzarite enterprise includes presently Mobile Farming Systems, Inc., Amy Jeanette Cooper, James Duffy, Anthony B. Scudder, Richard Francis O'Connor, II, Cliff Higgerson, Denise Pinkerton, Richard Carlson, and Renato Corzo.

(b) The alleged Kenneth Joseph Catanzarite enterprise functions with the individual Kenneth Joseph Catanzarite at its core, who is alleged to coordinate all operations including the bribery of witnesses and public employees, ex parte communications or collusion with Court clerks including within Orange County Superior Court, direct contact with Office of General Counsel and Office of Chief Trial Counsel to conceal and further fraudulent litigation, including through coordination with Eli David Morgenstern and Suzanne Grandt. Becky Phillips and Han Le provide office support services. Joan Randolph within Office of General Counsel coordinates collusion by and between The State Bar of California enterprise and the Kenneth Joseph Catanzarite enterprise. It is alleged that Kenneth Joseph Catanzarite, allegedly in a similar manner to Thomas V. Girardi in Los Angeles Superior Court and Los Angeles, has corrupted

3:23-CV-0164-MMA-DEB

Orange County Superior Court, Orange County District Attorney's Office, and the City of Anaheim. It is alleged his knowledge of the intricacies of this public corruption places leverage upon all actors, who are forced to continue his conduct. It is alleged Mr. Catanzarite assumes the role of counsel for inanimate corporate entities or defendants under the guise of assistance, at which time the enterprise can use the pendency of actions and the threat of imposing legal fees as a weapon of extortion to produce false evidence, take property, and destroy non-lawyer lives through his public and private network of conspirators. It is alleged that Catanzarite Law Corporation is used to create entities, assume control of entities including all communications as agent, and to use those entities to file false litigation to extort insurance companies. It is alleged that Aegis Asset Management, Inc. is used to garner private information concerning investors, which is in turn used to file fraudulent litigation involving securities under the guise of and on the purported credibility of Mr. Catanzarite registered investment advisor status. It is alleged that real estate in Orange County, California is acquired through the racketeering activities, and then Catanzarite Law Corporation is used to create legal structures like property owners associations to conceal the gains and control the assets. It is alleged that The State Bar of California enterprise similarly controls all lawyers, including DA's, in collusion.

(c) The Count I defendants Ruben Duran, Eli David Morgenstern, and Suzanne Grandt are not employees, offices, or directors of the alleged Kenneth Joseph Catanzarite enterprise.

(d) The Count I defendants Ruben Duran, Eli David Morgenstern, and Suzanne Grandt are associated-in-fact with the alleged Kenneth Joseph Catanzarite enterprise.

(e) It is alleged that Ruben Duran, Eli David Morgenstern, and Suzanne Grandt are members of the Kenneth Joseph Catanzarite enterprise, which is part of a larger enterprise which the Plaintiff refers to as the alleged 700+ Club.

(f) It is alleged that Eli David Morgenstern and Suzanne Grandt are members of the Kenneth Joseph Catanzarite enterprise and the 700+ Club enterprise. It is alleged that Ruben Duran is a member of the 700+ Club enterprise, which includes the Kenneth Joseph Catanzarite enterprise. It is alleged that Eli David Morgenstern, Suzanne Grandt, and Ruben Duran are perpetrators in overt acts of concealment and receiving consideration directly or indirectly from

73

3:23-CV-0164-MMA-DEB

the Kenneth Joseph Catanzarite enterprise, also passive instruments in their malice fraud of enablement and materially false statements by mail and wire regarding the Kenneth Joseph Catanzarite enterprise, and possibly victims from time-to-time in that the cumulative, historical conduct of the Kenneth Joseph Catanzarite enterprise is used as a weapon of extortion to allow its continuance. For instance, whether Mr. Duran was involved prior to 2018 when he was first appointed to Board of Trustees, the historical enablement and participation within the Kenneth Joseph Catanzarite enterprise of persons similarly situated to Mr. Duran gives leverage, and the knowledge of Mr. Catanzarite of the 700+ Club places a threat to all other members, thereby allowing and ensuring the continuance of the enterprise conduct. It is alleged that Eli David Morgenstern has willfully controlled any matter concerning Mr. Catanzarite within the Office of Chief Trial Counsel, and that he receives direct payment from Mr. Catanzarite, with direct coordination by Suzanne Grandt or others within Office of General Counsel.

COUNT II.     18 U.S.C. § 1962(a).

(a) The State Bar of California enterprise allegedly consists of: the non-sovereign entity, The State Bar of California, Office of General Counsel, Office of Chief Trial Counsel, Board of Trustees, Commission on Judicial Nominees Evaluation, Client Security Fund, Judicial Council, Superior Courts, Courts of Appeal, Supreme Court, District Attorney's Offices, City Attorney's Offices, California Crime Victim's Bureau, the postal mail facilities located at 180 Howard St., San Francisco, CA 94105 and 845 S. Figueroa St., Los Angeles, CA 90017, State Bar Court, LawHelpCA.org legal aid organizations, American Continental Bank attorney trust accounts, Bank of America attorney trust accounts, Bank of the Orient trust attorney trust accounts, Chase Business attorney trust accounts, Citibank attorney trust accounts, City First Bank attorney trust accounts, CommerceWest Bank attorney trust accounts, CTBC Bank Corp. attorney trust accounts, First Bank attorney trust accounts, LendingClub Bank attorney trust accounts, New Omni Bank attorney trust accounts, Poppy Bank attorney trust accounts, Signature Bank-NY attorney trust accounts, Wells Fargo Bank attorney trust accounts, Ellin Davtyan, Suzanne Grandt, Robert George Retana, Charles Tsai, Todd Spitzer, Hailyn Chen, Jorge E. Navarette, Joan Randolph, Kenneth Joseph Catanzarite, Nicole Marie Catanzarite Woodward, Thomas V.

74

3:23-CV-0164-MMA-DEB

Girardi, David Lira, Walter Lack, Gloria Allred, Brandon Woodward, Tim James O'Keefe, Eric
V. Anderton, Jim Travis Tice, Girardi-Keese, Catanzarite Law Corporation, and others among
700+ Club. The 700+ Club was identified through statistical anomalies by California State
Auditor Report 2022-030. 700 attorneys each had at least 4 notices of injury disposed of by The
State Bar of California through private letters, and more than 700 attorneys who were disciplined
in other jurisdictions did not result in any form of public protection. It is alleged this statistical
anomaly is significant, and that The State Bar of California enterprise operates for 700+ Club.

(b) It is alleged The State Bar of California enterprise operates primarily for the benefit
of 700+ Club, and that it uses its operations to conceal the racketeering activity of each of its
members under color "discretion" and the purported State authority vested in the non-sovereign
entity The State Bar of California, Board of Trustees, Office of General Counsel, Office of Chief
Trial Counsel, public employees, elected officials, and commingled operations by and between
the 700+ Club. It is alleged State Bar Court and District Attorney's Offices are used as a
collateral attack to any compromise of the enterprise – where charges can be drafted by Office
of Chief Trial Counsel and prosecution of any lawyer can commence in State Bar Court. It is
alleged The State Bar of California's design allows it to wield the power of U.S. Attorney's
Offices in California because of this unique structure that exists in no other State. This allegedly
renders The State Bar of California enterprise virtually impenetrable, because it also controls
judicial recommendations, which are appointed by Office of Governor. This alleged unity of
unlawful interests lacks separation of powers, and it is alleged that corruption = monopoly –
accountability. To simply state the operations, 700+ Club members are enabled to do whatever
they want, to whoever they want, using the California judicial system. Insurance companies bear
the brunt nationally. State law is codified to enable attorney schemes to defraud, where
Legislature is also composed of or controlled by The State Bar of California enterprise. For
instance, "Anti-SLAPP" law purporting to preserve the right of free speech is used as a weapon
to dissuade litigants from opposing fraud – where maliciously prosecuted cases can actually
result in fees to the perpetrators (see Anthony B. Scudder judgment in Orange County Superior
Court despite the predicate acts of alleged wire fraud and mail fraud underlying the same

3:23-CV-0164-MMA-DEB

judgment). It is alleged that The State Bar of California enterprise wields the threat of Anti-SLAPP against pro se litigants to prevent good faith Government Claims Act litigation in Superior Courts. It is alleged that the "Leadership Bank Program" setup by Leah Wilson is established for money laundering capacity among IOLTA accounts and attorney trust accounts which are also regulated by The State Bar of California enterprise without active state supervision. It is alleged that Office of General Counsel controls the judiciary through ex parte communications with Judges, whose careers rely upon The State Bar of California enterprise.

(c) Ruben Duran is an employee, officer, or director of The State Bar of California enterprise as the Chairman of the Board of Trustees, and as the managing partner of Best Best & Krieger private law firm in Ontario, California, also the city attorney for the cities of Ontario and Fontana, general counsel to the Oxnard Harbor District, Crescent City Harbor District, and board counsel to SCAG (Southern California Association of Governments). It is alleged that he is among the most powerful people in the Country in that there exists no objective scrutiny over his conduct, and he propounds immunities in Courts that are not afforded to the President of the United States. It is alleged that Mr. Duran controls $3.63 trillion in interstate commerce, and that he was selected by Assembly Speaker Anthony Rendon due to his willingness to defraud the public and conceal The State Bar of California enterprise operations. The State Bar of California and State of California are not employees, officers, or directors of The State Bar of California enterprise.

(d) It is alleged that non-sovereign entity, The State Bar of California, is a front for The State Bar of California enterprise commingled with the government functions of State of California. It is alleged that The State Bar of California, as a non-sovereign entity controlled by majority of active market participants in the same industry it regulates amidst $3.63 trillion in interstate commerce, lacks state action immunity invocation under federal antitrust laws. It is alleged that this feature renders State of California liable on principles of *respondeat superior*, and under Cal. Gov. Cod. § 815.6 as being mandatory duty. It is alleged that State of California nor The State Bar of California will provide express permission to sue in Federal Court, although such permission is implied in that the State of California and The State Bar of California are

3:23-CV-0164-MMA-DEB

using sovereignty vested by the United States to steal from United States citizens under color of law. It is alleged this distinction is easy to identify – was Thomas V. Girardi's conduct an act of the State? It was not. Are those individuals allegedly harmed remunerated by the State? Not yet, but they should be where the purported sovereignty and discretion of The State Bar of California enterprise using the Superior Courts, from the United States, was used to allegedly steal from the non-lawyer public for forty years. It is alleged that these practices are self-evident as it relates to the Kenneth Joseph Catanzarite enterprise.

(e) It is alleged that The State Bar of California and State of California are members of the enterprise itself, in that the lines among it are for obscured by The State Bar of California's control over the judicial system, the 700+ Club, and the collateral attack present at all times through District Attorney's, U.S. Attorney's, and State Bar Court to any threat. The State Bar of California as a non-sovereign public entity subject to Government Claims Act, lacking state action immunity, is allegedly liable, and causing liability to State of California which has allegedly abused its sovereignty vested by the United States rendering the 11th Amendment moot.

(f) For defendant Ruben Duran, he is an alleged perpetrator for The State Bar of California enterprise as a principal in all alleged racketeering activity. Mr. Duran is Chairman of the Board of Trustees, which controls Office of General Counsel, Executive Director, and Office of General Counsel as well as the Commission on Judicial Performance Evaluation. Mr. Duran is an alleged passive participant in all conduct of the 700+ Club in that The State Bar of California accepts funding from IOLTAs and from State of California, some of which is derived from a pattern of racketeering activity. Mr. Duran is also an alleged victim of the historical conduct of the 700+ Club in that he is forced to conceal the true operations of The State Bar of California enterprise as it has allegedly corrupted The State Bar of California beyond repair. It is alleged that corruption of The State Bar of California as a non-sovereign public entity now causes control of State of California government itself. The State Bar of California is a perpetrator through Board of Trustees, Office of General Counsel, Office of Chief Trial Counsel, and 700+ Club commingled with government functions of State of California. State of California is a perpetrator through attorneys within government positions like Charles Tsai who transitioned

3:23-CV-0164-MMA-DEB

from Deputy Attorney General in Executive Branch to Office of General Counsel in Judicial Branch to allegedly obstruct this proceeding, and through the various State agencies, and through the Court system itself. State of California is a passive participant in that it refuses to place active supervision over The State Bar of California as defined by federal antitrust laws and FTC guidance after 2015. State of California is a passive participant in that it benefits from the alleged fraud against the United States government through the conduct of The State Bar of California enterprise against national insurance carriers, student loan programs, Medicare, and through the appearance by The State Bar of California enterprise constituents pro hac vice in 49 other States.

COUNT III.    18 U.S.C. § 1962(b).

(a) The Mobile Farming Systems, Inc. enterprise allegedly consists of Mobile Farming Systems, Inc., Catanzarite Law Corporation, Kenneth Joseph Catanzarite, Suzanne Grandt, Eli David Morgenstern, Brandon Woodward, Tim James O'Keefe, Nicole Marie Catanzarite Woodward, Richard Francis O'Connor, II, Amy Jeanette Cooper, James Duffy, Cliff Higgerson, Mohammed Zakhireh, Han Le, Becky Phillips, Orange County Superior Court, The State Bar of California, State of California, and more recently – Charles Tsai.

(b) The Mobile Farming Systems, Inc. enterprise was a defunct company from March 2015 through January 23, 2019, which was already shown through a trial of fact in which Mr. Catanzarite participated. An entity named Jolly Rogers Investments, Inc. or Jolly Roger, Inc. invested approximately $450,000 in the entity in 2012-2013 years before the Plaintiff met the principals of Mobile Farming Systems, Inc.: Richard Francis O'Connor, II, Amy Jeanette Cooper, and Richard Probst ("MFS Founders") on or about April 7, 2015. The MFS Founders formed a new company, Cultivation Technologies, Inc. ("CTI") and capitalized it in June 2015 through the issuance of 23,000,000 shares. CTI operated from June 2015 through January 23, 2019 as if MFS were bankrupt and non-existent. It is alleged that, between January 4, 2019 and January 23, 2019, Mr. Catanzarite extorted Richard Francis O'Connor, II and Amy Jeanette Cooper to force corporate actions under the threat of securities fraud charges in the Pinkerton Action in order to produce false evidence. It is alleged this threat was backed by Mr. Catanzarite "working with law enforcement" and the knowledge that Mr. O'Connor and Ms. Cooper

3:23-CV-0164-MMA-DEB

allegedly paid $340,000 in illegal commissions through MFS to a Joseph Porche. Mr. Catanzarite, Ms. Cooper, and Mr. O'Connor each knew that MFS was not a shareholder of CTI, however, it was used as a corporate shell to sabotage the Plaintiff, the entity CTI, and further disrupt the Plaintiff's business and property (continuing). The Court of Appeal concluded similarly in G059766. Nevertheless, it is alleged that the Mobile Farming Systems, Inc. enterprise serves the purpose of continuing the fraudulent schemes to which the Plaintiff is subject, using ongoing assistance of The State Bar of California as if it were a "pending civil matter." It is alleged that Charles Tsai in Office of General Counsel is now aiding in this process to defraud this Court and obstruct justice by seeking to move this case to another Court in which it is alleged The State Bar of California has asserted control through misrepresentations.

(c) None of the Count III Defendants are officers, directors, or employees of the Mobile Farming Systems, Inc. enterprise. However, it is alleged that Kenneth Joseph Catanzarite possesses full control of the entity, the entity has an address of his law firm, Mr. Catanzarite is the purported agent for the entity, and Mr. Catanzarite has propounded different factual positions to Orange County Superior Court regarding its ownership.

(d) Each of the Count III Defendants are associated with the Mobile Farming Systems, Inc. enterprise. Kenneth Joseph Catanzarite continues to sue the Plaintiff under false pretenses, where a trial of fact already concluded that Mobile Farming Systems, Inc. was not entitled to shares of CTI, but it is allegedly used as a weapon of extortion to slander, humiliate, and take business and property from the Plaintiff. State of California is associated in that it has refused to cause active state supervision of The State Bar of California under the meaning of federal antitrust laws after 2015, and because State of California Secretary of State registered the entity according to records. The State Bar of California's Office of General Counsel and Office of Chief Trial Counsel are alleged to work with Mr. Catanzarite in continuing the Mobile Farming Systems, Inc. enterprise course of conduct because Mr. Catanzarite is among the alleged 700+ Club. For instance, Mr. Tsai is presently seeking to move this case before Honorable Cynthia A. Bashant, before whom it is alleged to have had ex parte communications and improper influence through alleged obstructive of justice. Mr. Tsai is factually aware of the fraudulent conduct to

79

which the Plaintiff is subject, including the prima facie case for malicious prosecution of three lawsuits, and the re-filing of adjudicated claims, against the Plaintiff.

(e) The Count III defendants are separate from the alleged enterprise; it is alleged that the Mobile Farming Systems, Inc. enterprise is but one of several inanimate corporate entities through which the Kenneth Joseph Catanzarite enterprise and The State Bar of California enterprise engage in fraudulent schemes using their "discretion" against non-lawyers to take money and property under purported authority of State of California.

(f) It is alleged that Kenneth Joseph Catanzarite is the primary perpetrator for the Mobile Farming Systems, Inc. enterprise, however, it is alleged that he could not conduct himself in this manner without the ongoing aid of The State Bar of California enterprise as a member of the alleged 700+ Club, including the active assistance of Eli David Morgenstern, Suzanne Grandt, and Charles Tsai in alleged concealment and in using the Mobile Farming Systems, Inc. enterprise as a corporate shell for sabotage of the Plaintiff and other innocent litigants subject to the alleged predation.

COUNT IV.   18 U.S.C. § 1962(b).

(a) The State Bar of California enterprise is described within Count II as above.

(b) For operations of The State Bar of California enterprise not described above, these are key aspects:

1) Attorney Misconduct Complaint. It is alleged that Attorney Misconduct Complaint is a fraudulent scheme run by The State Bar of California enterprise approximately 44 times per day. It is alleged that former staff for The State Bar of California enterprise confirm that the intent of this procedure is not to help any person – it is to protect the attorneys subject of the complaints. It is alleged this procedure allows The State Bar of California enterprise to screen for complaints against the 700+ Club. It is alleged that more than 1/3rd of all notices of injury from the public submitted through this process are subject of material conflicts of interest that harm the public and protect attorneys engaged in fraud. It is alleged The State Bar of California enterprise selects small practice, sole practice, and minority attorneys to make an example of so that they can justify their funding and conceal the true operations of The State Bar of California

3:23-CV-0164-MMA-DEB

enterprise. This function is used for alleged taking under purported authority and discretion of State of California.

2) Abatement. It is alleged that "abatement" is used as a tool to conceal 700+ Club schemes to defraud the public with the aid of The State Bar of California enterprise, e.g. Eli David Morgenstern. When it is clear that an attorney is going to cause reputational damage to The State Bar of California enterprise, or if there is a protected member in the alleged protection racket among the 700+ Club, those files are placed into "abatement." The 700+ Club members allegedly know how to achieve this: make it appear as if it is still a "pending civil matter," even if the issues are adjudicated as with the Plaintiff. For instance, Kenneth Joseph Catanzarite has shown to be engaged in serial fraud by Court orders unrelated to Plaintiff, and targeting Plaintiff. His prosecution is in "abatement" because Eli David Morgenstern, George Cardona, Suzanne Grandt, and Ruben Duran are being sued – therefore it suits them to allow the schemes to continue. Once more, this function is used for alleged taking under purported authority and discretion of State of California.

3) Complaint Review Unit. This procedure is another function of alleged mail fraud and wire fraud. The process is run by Office of General Counsel, which is also in charge of making antitrust determinations, deciding what public records to disclose, and notably: civil defense law firm for The State Bar of California enterprise and its individual actors, public and private. This allegedly creates a vacuum of conflict whereby Complaint Review Unit is used to protect 700+ Club, and Office of General Counsel coordinates decisions with Office of Chief Trial Counsel, Executive Director, and Board of Trustees in order to protect attorney schemes to defraud, particularly for 700+ Club. Once more, this function is used for alleged taking under purported authority and discretion of State of California.

4) Client Security Fund. This function is allegedly misrepresented to the public. Notably, in most or all instances, reimbursement from this fund requires the attorney to have been disciplined, which only occurred in approximately 5% of cases from 2010-2021 according to the California State Auditor. This means the actual liabilities of Client Security Fund are approximately 10X or greater than represented. Further, it is alleged that Client Security Fund

3:23-CV-0164-MMA-DEB

applications are another mechanism by which The State Bar of California enterprise can protect 700+ Club schemes. The fund is also limited in that it allegedly caps reimbursement at $100,000, and requires that the attorney have been actually engaged to provide services. If, as with Mr. Catanzarite, the attorney assumes representation of an inanimate corporate entity without authority, there is no such paperwork. If the attorney is engaged in fraud using IOLTAs or trust accounts as with the alleged 700+ Club, such paperwork will not be consistent with the activity occurring. It is alleged that Office of General Counsel also litigates for Client Security Fund. Once more, this function is used for alleged taking under purported authority and discretion of State of California.

5) <u>Commission on Judicial Nominees Evaluation</u>. This function is allegedly used to suit the corrupt motives of passion or interest of The State Bar of California enterprise. For instance, it is alleged that three Court of Appeal justices were recommended on exact dates related to the Plaintiff's Government Claims Act litigation in Orange County Superior Court: November 10, 2021; May 2, 2022; August 8, 2022; October 11, 2022 in order to ensure obstruction of it.

6) <u>Office of General Counsel</u>. It is alleged that Office of General Counsel plays a central role in most attorney schemes to defraud. It is alleged Office of General Counsel coordinates with Board of Trustees and judicial officers to obstruct any compromise to The State Bar of California enterprise – allegedly with Orange County Superior Court and Honorable John C. Gastelum, then allegedly with Court of Appeal Justices Honorable Sanchez, Motoike, and Delaney, and now more recently allegedly with Honorable Cynthia A. Bashant through Charles Tsai.

7) <u>LawHelpCA.org</u>. It is alleged that this function is used to create demand for legal services that can be funded by State and justify more funding to lawyers distributed by The State Bar of California enterprise. It is alleged this function was accelerated when The State Bar of California enterprise was forced to shift its operations after federal antitrust laws in 2015: *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (2015). It is alleged that The State Bar of California enterprise prioritizes payment to lawyers, horizontally, over reimbursements to Client Security Fund by a multiple of 10X or greater. It is alleged The State

3:23-CV-0164-MMA-DEB

Bar of California enterprise prioritizes funding to legal aid providers over the enforcement of known schemes to defraud, such as those outlined in the instant case, and uses the "cover" of "Diversity, Equity, and Inclusion" programs or public good to cover up the schemes. A portion of funding sent to LawHelpCA.org organizations factually comes from racketeering activity, because all interest pooled in IOLTAs is distributed to them, and some IOLTAs are shown to have convictions for money laundering, wire fraud, and tax evasion.

    8) <u>Certified Lawyer Referral Services Directory</u>. It is alleged that the Complaint Review Unit's true purpose is to deliver leads to the Certified Lawyer Services Directory. On each postal mail letter delivered to the public from its faciliites, members of the public are given arguments on behalf of the attorneys allegedly engaged in fraud or crimes, and then they are referred to engage yet another lawyer to help them through this lead generation tool. It is alleged that this is another source of revenue to The State Bar of California enterprise, and that it is used to create artificial demand for legal services to justify more funding to The State Bar of California enterprise from the State budget.

    9) <u>IOLTA and Client Trust Accounts</u>. It is alleged that IOLTA and Client Trust Accounts are the primary means by which 700+ Club and public/private actors launder money and conceal their activity. It is alleged that IOLTA and Client Trust Accounts are solely regulated by The State Bar of California enterprise constituents who are engaged in alleged racketeering activity. It is alleged that the funds transfers are concealed as being "privileged." It is alleged that Leah Wilson or other functions of "ombuds" and purported confidentiality are further used to conceal. It is alleged that California Crime Victims Bureau and ombuds within District Attorney's Offices throughout State of California are also used to screen for and conceal attorney schemes to defraud the public, and ensure they are further concealed. For instance, it is alleged that Anaheim does not accept fraud allegations through their online portal – such allegations and evidence must be hand delivered in person. It is alleged that the "Leadership Bank Program" constituents in China and Taiwan are used for international money laundering through these accounts and that there exist approximately $5 billion in balances among IOLTAs at any given time.

3:23-CV-0164-MMA-DEB

10) <u>State Bar Court</u>. It is alleged that State Bar Court's design allows The State Bar of California, through its concurrent control of District Attorney's Offices using similar mechanisms, to conceal its schemes to defraud and stop any attorney who seeks to compromise The State Bar of California enterprise. It is alleged this means that pro se litigants are thus the only means by which The State Bar of California enterprise can be stopped without federal intervention, which is why The State Bar of California enterprise has thus far evaded such intervention and enforcement. It is alleged State Bar Court is subservient to members of the political branches since the allegedly unconstitutional decision "In re Rose" which is allegedly designed to mislead Courts and conceal The State Bar of California enterprise conduct as being the discretion of the State of California under color of law.

(c) Ruben Duran is an officer and director of The State Bar of California enterprise. Eli David Morgenstern is employed by The State Bar of California enterprise. Suzanne Grandt is employed by The State Bar of California enterprise.

(d) The nonsovereign entity, The State Bar of California, is associated with the alleged The State Bar of California enterprise. State of California is associated with the alleged The State Bar of California enterprise, where operations of State of California and The State Bar of California are allegedly commingled.

(e) Ruben Duran, Eli David Morgenstern, The State Bar of California, and State of California are alleged to be part of the enterprise itself or members of the enterprise.

(f) Ruben Duran is alleged to be a perpetrator, passive instrument, and victim of the alleged racketeering activity as set forth above. Eli David Morgenstern is alleged to be a perpetrator, passive instrument, and victim of the alleged racketeering activity in that he is alleged to have taken bribes from Mr. Catanzarite and other members of 700+ Club, and because he allegedly conceals their schemes using the mail and wire with intent to defraud the public. He is alleged to be a passive instrument in that he "looks the other way" and acts as if it is a matter of discretion under purported State of California authority. He is alleged to be a victim in that he may suffer from predicate racketeering activity of the Kenneth Joseph Catanzarite and 700+ Club constituents before assuming his role, and thereby may be subject to extortion or coercion

3:23-CV-0164-MMA-DEB

to continue the schemes, whether or not he has taken consideration from them. Suzanne Grandt is alleged to be similarly situated with Eli David Morgenstern, 700+ Club, and its alleged member the Kenneth Joseph Catanzrite enterprise. It is alleged that Eli David Morgenstern, Suzanne Grandt, and Kenneth Joseph Catanzrite actively collude to defraud the Plaintiff and other members of the public using The State Bar of California enterprise functions and purported discretion of State of California.

7. **State and describe in detail whether plaintiff is alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

      COUNT I.    18 U.S.C. § 1962(c).

      It is alleged that Kenneth Joseph Catanzarite enterprise is part of The State Bar of California enterprise, but also with its own distinct schemes and victims in consolidated operations using the Superior Courts and primarily Orange County Superior Court. As it relates to the Plaintiff, it is alleged that he is a victim of The State Bar of California enterprise's historical schemes to defraud the public, and that the Kenneth Joseph Catanzarite enterprise is but one of several prominent components of The State Bar of California enterprise like Thomas V. Girardi.

      COUNT II.    18 U.S.C. § 1962(a).

      It is alleged that the pattern of racketeering activity and the enterprise for The State Bar of California enterprise are merged into the one, non-sovereign public entity The State Bar of California, which functions through the components listed above including through State of California. It is alleged the historical racketeering activity of The State Bar of California enterprise renders it virtually impossible to stop without federal intervention because it is alleged to be a constant chain of racketeering activity and concealment of prior racketeering activity.

      COUNT III.   18 U.S.C. § 1962(b).

      It is alleged that the pattern of racketeering activity and the Mobile Farming Systems, Inc. enterprise activity are separate, in that Mobile Farming Systems, Inc. is but one of many inanimate entities or alleged straw litigants through which the Kenneth Joseph Catanzarite enterprise and The State Bar of California enterprise conduct racketeering against the non-lawyer public under purported authority and discretion of State of California.

3:23-CV-0164-MMA-DEB

COUNT IV.   18 U.S.C. § 1962(b).

It is alleged that the pattern of racketeering activity and the enterprise for The State Bar of California enterprise are merged into the one, non-sovereign public entity The State Bar of California, which functions through the components listed above including through State of California. It is alleged the historical racketeering activity of The State Bar of California enterprise renders it virtually impossible to stop without federal intervention because it is alleged to be a constant chain of racketeering activity and concealment of prior racketeering activity.

8. **Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual daily activities of the enterprise, if at all.**

COUNT I.    18 U.S.C. § 1962(c).

It is alleged that Kenneth Joseph Catanzarite enterprise conducts racketeering activity as a matter of practice, and that the racketeering activity targeting the Plaintiff is not isolated or unique except in the Plaintiff's intention to stop it through good faith State and Federal litigation.

COUNT II.    18 U.S.C. § 1962(a).

It is alleged that The State Bar of California enterprise conducts racketeering activity as a matter of practice, and that the racketeering activity targeting the Plaintiff is not isolated or unique except in the Plaintiff's novelty of obtaining permission to sue the government to stop it. It is alleged this pattern can easily be identified through an objective lens by reviewing reports from the California State Auditor, and by reviewing the conduct at issue and the related impunity of State actors like Charles Tsai, Ruben Duran, and Suzanne Grandt seeking to conceal it.

COUNT III.   18 U.S.C. § 1962(b).

It is alleged that the Mobile Farming Systems, Inc. enterprise is solely used for racketeering activity and as a corporate shell to sabotage the Plaintiff and other innocent litigants according to facts known by Kenneth Joseph Catanzarite and other enterprise constituents. It is alleged that, had Kenneth Joseph Catanzarite not taken over the Mobile Farming Systems, Inc. enterprise by extorting corporate actions in January 2019 – the entity would be dissolved much

86

1    like Jolly Rogers Investments, Inc. or Jolly Roger, Inc. was in May 2015 before it was reinstated
2    to suit the alleged racketeering activity at issue.
3        COUNT IV.   18 U.S.C. § 1962(b).
4        It is alleged that The State Bar of California enterprise conducts racketeering activity as
5    a matter of practice, and that the racketeering activity targeting the Plaintiff is not isolated or
6    unique except in the Plaintiff's novelty of obtaining permission to sue the government to stop it.
7    It is alleged this pattern can easily be identified through an objective lens by reviewing reports
8    from the California State Auditor, and by reviewing the conduct at issue and the related impunity
9    of State actors like Charles Tsai, Ruben Duran, and Suzanne Grandt seeking to conceal it.
10  **9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of**
11  **racketeering.**
12       COUNT I.     18 U.S.C. § 1962(c).
13       The alleged Kenneth Joseph Catanzarite enterprise has, on information and belief,
14   amassed a fortune worth hundreds of millions of dollars in real estate and businesses allegedly
15   acquired through a pattern of racketeering activity and unlawful debts.
16       COUNT II.    18 U.S.C. § 1962(a).
17       The alleged The State Bar of California enterprise, on information and belief, controls
18   the entire judicial system in California from Superior Court, to Court of Appeal, to Supreme
19   Court through the various functions described above. The State of California enterprise controls
20   $3.63 trillion in interstate commerce under the purported discretion and authority of State of
21   California. It is alleged The State Bar of California enterprise controls State of California, the
22   world's largest sub-national economy – not the other way around.
23       COUNT III.   18 U.S.C. § 1962(b).
24       The alleged Mobile Farming Systems, Inc. enterprise benefits in that it is used to exact
25   fraudulent litigation schemes intended to extort settlements from Scottsdale Insurance Co., also
26   to overtake a merger valued at approximately $261 million that failed, and finally to cover up
27   the schemes as if it were a "pending civil matter" with the ongoing assistance of The State Bar
28   of California, Eli David Morgenstern, Suzanne Grandt, Ruben Duran, and now Charles Tsai. For

3:23-CV-0164-MMA-DEB

instance, even after all the claims filed against the Plaintiff were adjudicated and rejected with "every fiber of [the Court's] being" May 1, 2019, and it was determined Cooper and O'Connor were responsible, the Mobile Farming Systems, Inc. enterprise was used to re-file the same claims on August 10, 2020 in alleged collusion with Office of General Counsel and Office of Chief Trial Counsel against the Plaintiff. It is alleged the Mobile Farming Systems, Inc. enterprise is now used to prevent Plaintiff from achieving neutral adjudication on his prima facie case for three counts of malicious prosecution in Superior Court by delaying trials and obfuscating facts and law.

COUNT IV.   18 U.S.C. § 1962(b).

It is alleged The State Bar of California enterprise benefits can influence any political matter, change the dynamic of any case, launder money to and from China or Taiwan, take money from emergency orders of the Governor through IOLTAs and client trust accounts, exact revenge upon those who challenge it as here, and influence any judicial officer through threats or promise of consideration using the same functions. It is alleged constituents of 700+ Club pay state/private actors using IOLTA and client trust accounts which are regulated by the same persons and thereby never subject to scrutiny. It is alleged The State Bar of California enterprise similarly influences and controls U.S. Attorney's, the FBI, and other federal agencies because of these various functions of corrupt influence. This allows The State Bar of California enterprise to avoid federal scrutiny. Finally, it is alleged The State Bar of California enterprise influence on the judiciary has prevented case law thus far from piercing its veil and all-encompassing authority – specifically alleging immunities that turn on facts as being somehow dispositive of cases before such facts are shown.

**10. Describe the effect of the enterprise on interstate or foreign commerce.**

COUNT I.    18 U.S.C. § 1962(c).

The Kenneth Joseph Catanzarite enterprise affects interstate commerce through the depletion of the Plaintiff's insurance policy by Scottsdale Insurance Co., and through the filing of 9 putative class actions on behalf of Richard Carlson who did not believe he had suffered damages, when he wasn't seeking an attorney, when he was visited at his home by Mr. Catanzrite

3:23-CV-0164-MMA-DEB

according to Mr. Carlson's testimony. These cases have resulted in 19 or more Court of Appeal rulings, allegedly extorted settlements under false pretenses, and rulings in U.S. Bankruptcy Courts. The Kenneth Joseph Catanzarite enterprise also allegedly destroyed a $261 million merger with a Canadian issuer, and another company started by Plaintiff in the healthcare field worth approximately $30 million at the time it was destroyed in 2021.

COUNT II.    18 U.S.C. § 1962(a).

The State Bar of California enterprise investments allegedly affect interstate and international commerce in that they involve transfer of money to and from Chinese and Taiwanese banks amidst at $5 billion in daily balances at any given time.

COUNT III.    18 U.S.C. § 1962(b).

The Mobile Farming Systems, Inc. enterprise allegedly affects interstate commerce through the depletion of the Plaintiff's insurance policy by Scottsdale Insurance Co.. The Mobile Farming Systems, Inc. enterprise also allegedly destroyed a $261 million merger with a Canadian issuer in or around May 2019, and another company started by Plaintiff in the healthcare field worth approximately $30 million at the time it was destroyed in 2021. The Mobile Farming Systems, Inc. enterprise has further affected interstate commerce in its ongoing impact on the Plaintiff's ability to do business or obtain property in the United States and in Canada.

COUNT IV.    18 U.S.C. § 1962(b).

The State Bar of California enterprise allegedly controls $3.63 trillion in U.S. GDP, and its admittance of 700+ Club members pro hac vice across state lines allegedly affects commerce in 49 states who are subject to the allegedly predatory practices of The State Bar of California and racketeering activity of 700+ Club and The State Bar of California enterprise shown above.

Further, it is alleged The State Bar of California enterprise controls a large percentage of the national market for legal education. Where it is alleged The State Bar of California enterprise is corrupt and commingled with State of California, this is allegedly defrauding the United States as underwriter for student loans for legal services controlled by the same alleged racketeering activity.

3:23-CV-0164-MMA-DEB

1

2

3

**11. If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following: (a) state who received the income derived from the pattern of racketeering activity or through the collection of unlawful debt; and (b) describe the use or investment of such income.**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

(a) Ruben Duran, Eli David Morgenstern, Suzanne Grandt The State Bar of California, and State of California each received the income derived from the pattern of racketeering activity or collection of unlawful debt. Where The State Bar of California enterprise and the 700+ Club components pay taxes or other consideration to State of California, a portion of State of California's budget is comprised of racketeering activity which is actually controlled by State of California in that it refuses to stop it. For The State Bar of California, it is alleged that IOLTAs involve money laundering and receive proceeds of racketeering activity describe above, approximately $50.5 million in 2023. Ruben Duran, Eli David Morgenstern, and Suzanne Grandt each receive their salaries or consideration from licensees of The State Bar of California's annual fees – a portion of whom are the 700+ Club and others engaged in racketeering activities. For instance, the Plaintiff shows convictions for wire fraud of Stephen Young Kang, Matthew Charles Elstein, and Michael Avenatti. The State Bar of California also receives $515 from each active licensee, some of whom are engaged in racketeering activity. State of California accepted $105 million from taxpayers, and provided it to The State Bar of California from the 2022 budget, a portion of which is allegedly from racketeering activity

19

20

21

22

23

(b) The State Bar of California enterprise distributes the money it receives from IOLTA and State to Legal Aid Organizations in order to pay lawyers instead of prioritize the alleged racketeering activity enforcement that it is factually aware of. It is alleged a portion of those $515 annual fees went to pay either Ruben Duran, Eli David Morgenstern, and/or Suzanne Grandt.

24

25

**12. If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition of maintenance of any interest in or control of the alleged enterprise.**

26

27

28

(1) For the Mobile Farming Systems, Inc. enterprise, it is alleged that Kenneth Joseph Catanzarite conducted extortion to force corporate actions by Richard Francis O'Connor, II and Amy Jeannette Cooper under the threat of securities fraud charges by Denise Pinkerton for Roger

90

3:3-CV-0164-MMA-DEB

Root, and through the pendency of the false derivative action claims filed by Ms. Pinkerton for the non-MFS shareholder, non-CTI shareholder, Roger Root on September 14, 2018. Mr. Catanzarite threatened that he was "working with law enforcement," and despite Mr. Catanzarite actual knowledge of the falsity of his claims, he was able to force Mr. O'Connor, Ms. Cooper, and others to perform various extra-judicial acts in order that Mr. Catanzarite take control of Mobile Farming Systems, Inc. in January 2019.  To maintain control of the Mobile Farming Systems, Inc. enterprise, Mr. Catanzrite is allegedly working with Eli David Morgenstern, Suzanne Grandt, and Charles Tsai actively – and Ruben Duran passively – to continue the fraudulent schemes even after the trial court adjudicated the false claims on May 1, 2019. Mr. Catanzarite used the Mobile Farming Systems, Inc. enterprise and the collusion with Mr. Morgenstern and Office of General Counsel on August 10, 2020 to re-file the same false claims so the scheme could continue and appear as a "pending civil matter."

(2) For The State Bar of California enterprise, Ruben Duran is alleged to control the entire judiciary through Board of Trustees control over the Commission on Judicial Nominees Evaluation which improperly influences judicial officers to cater to The State Bar of California enterprises needs. Mr. Duran is also alleged to control the enterprise through his control over Office of General Counsel, Office of Chief Trial Counsel, and Executive Director who are shown to allegedly collude to defraud the public by mail and wire. Mr. Duran also controls the California State Auditor processes to allegedly conceal money laundering. It is alleged this occurs not less than 44 times per day, where Ruben Duran can allegedly exercise the purported authority vested in him by State of California to take from the public. For Eli David Morgenstern, it is alleged he controls the enterprise by ensuring the 700+ Club members are protected by sending their schemes to "abatement." For Suzanne Grandt, it is alleged she controls the enterprise through "Complaint Review Unit" and more importantly, through the unscrupulous and malicious defense of civil actions. It is alleged Ms. Grandt communicates with Judge John C. Gastelum ex parte to ensure Orange County Superior Court actions filed by the Plaintiff do not compromise The State Bar of California enterprise by propounding materially false statements to the Court shown above, and through the influence Mr. Duran possesses in

3:23-CV-0164-MMA-DEB

controlling the Commission on Judicial Nominees Evaluation and thus the career of Honorable John C. Gastelum. It is alleged that Charles Tsai is now performing in a similar role as Suzanne Grandt, except here, he is allegedly obstructing justice in federal court through alleged ex parte communications with Honorable Cynthia A. Bashant – or in the alternative – by making it appear as if the Plaintiff's allegations are not in good faith. Specifically, it is alleged Duran, Tsai, and Grandt colluded to have stricken a record consisting of more than 100 probative exhibits already in 3:22-CV-01616-BAS-DDL that allegedly beyond reasonable doubt that The State Bar of California enterprise is engaged in ongoing racketeering under purported authority of State of California. Ruben Duran is also alleged to control the enterprise with Office of General Counsel by controlling the payments through IOLTAs and attorney trust accounts, and the scrutiny over those accounts, to satisfy the income and expenses of The State Bar of California enterprises true operations.

13. **If the complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following: (a) state who is employed by or associated with the alleged enterprise, and (b) state whether the same entity is both the liable "person" and the "enterprise" under 18 U.S.C. § 1962(c).**

(a) Ruben Duran, Suzanne Grandt, Eli David Morgenstern, The State Bar of California, and State of California are each allegedly associated with the alleged Kenneth Joseph Catanzarite enterprise.

(b) The same entity is not both the allegedly liable person and the alleged enterprise under 18 U.S.C. § 1962(c).

14. **If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the facts showing the existence of the alleged conspiracy.**

The complaint does not allege violations of RICO conspiracy at this time.

15. **Describe the alleged injury to business or property.**

1) Plaintiff is a former CEO whose salary was $325,000 in his last position before benefits and bonuses or annual increases. It is alleged the racketeering activity has destroyed his career and ability to earn this business or obtain property with this income for a period of 25-years, thereby $8,433,000.

3:23-CV-0164-MMA-DEB

2) Plaintiff is alleged to have depleted his inherited IRA in the amount of $1,000,000 to endure predicate acts of alleged racketeering by the Kenneth Joseph Catanzarite enterprise.

3) Plaintiff is alleged to have sold and used the proceeds of real estate in the amount of $365,000 to endure predicate acts of alleged racketeering by the Kenneth Joseph Catanzarite enterprise.

4) Plaintiff, as a former CEO, lost all incremental earnings capacity based on the trajectory of his career between 2019 and 2021 – and the proximate cause of the alleged racketeering activity upon his earnings capacity in business and property. The Plaintiff seeks $27,407,250 as being the incremental bonus amount, and the average salary of a CEO in San Diego, as being what he will not realize over the course of 25-years.

5) Plaintiff seeks $25,000,000 as being the detrimental affect on his credit, benefits, and the special value of his inherited IRA that was depleted to endure the alleged racketeering activity. Plaintiff is uninsurable as a result of ongoing, fake lawsuits filed and maintained.

6) A Canadian merger (U.S. held property) worth approximately $261 million was allegedly destroyed through control over the Mobile Farming Systems, Inc. enterprise, and the Plaintiff's proportionate share thereof being $32.67 million, in May 2019.

7) The equivalent value of at least one similar transaction as outlined above is alleged to have been lost due to control over the Mobile Farming Systems, Inc. enterprise and the related "smear campaign."

8) Plaintiff's insurance policy with Scottsdale Insurance Co. as third-party beneficiary has been depleted for at least $1.268 million as of July 2022, continuing. The Plaintiff incurred other legal fees in Orange County Superior Court in the malicious prosecution action Case No. 30-2020-01145998, although he represented himself in the Court of Appeal in showing a likelihood of prevailing on three counts in G059766. The Plaintiff alleges $1.7 million in actual losses.

9) The Plaintiff seeks $5,649,297 being the actual value of securities in March 2021 in Contakt World Technologies Corp. when the alleged control over the enterprise caused him to resign from that company and commit to resolving his claims in Court. At the same time, the

3:23-CV-0164-MMA-DEB

Plaintiff was to produce and host a show with celebrity Will Ferrell, which was allegedly destroyed as a result of the control of the enterprise and the related inhibition on the Plaintiff's ability to do business or obtain property.

       10) The Plaintiff seeks other lifetime remuneration he will not receive as a result of the racketeering activity damage to his person, business, property, and psyche as being $138,889,249 which is the cumulative amount of economic damages X1 sought over the course of 25-years. Plaintiff estimates this amount to be proximately caused by the ongoing control over The State Bar of California enterprise or the Mobile Farming Systems, Inc. enterprise.

**16. Describe the causal relationship between the alleged injury and the violation of the RICO statute.**

       For 18 U.S.C. § 1962(c), it is alleged the predicate acts directly caused the Plaintiff's loss of past income, and his ability to earn future income. Plaintiff has already shown the Court of Appeal, which "concluded" that three cases were filed against him without objective probable cause, with malice, that achieved favorable termination reflecting the lack of merits. Plaintiff had to use his IRA and proceeds from his Mother's condo because his income stopped as direct and proximate cause of the alleged racketeering activity targeting him.

       For 18 U.S.C. § 1962(a), it is alleged that, had The State Bar of California invested in persons who actually prioritized the public interest such as Plaintiff's and not made materially false statements that they prioritized the public while allegedly engaging in racketeering activity – the Plaintiff's credit score and incremental value of his salary would not be tarnished. He would not be subject to ongoing concealment of his harm, either, by The State Bar of California enterprise. He would not be subject to allegedly malicious defense by Charles Tsai and Suzanen Grandt. If The State Bar of California invested the IOLTA income and State funds into the persons who were harmed, or they actually collected fees and costs from the alleged racketeers among the 700+ Club instead of claim that the taking was a matter of discretion and authority vested in The State Bar of California enterprise vested in them by State of California, the Plaintiff would not have suffered these harms.

3:23-CV-0164-MMA-DEB

For 18 U.S.C. § 1962(b), control over Mobile Farming Systems, Inc. enterprise directly caused the merger valued at approximately $261 million to be destroyed in May 2019 which caused the Plaintiff to resign. The ongoing control over the Mobile Farming Systems, Inc. enterprise directly caused the destruction of his next company, where The State Bar of California enterprise insisted on protecting Kenneth Joseph Catanzarite as an alleged member of 700+ Club even with actual knowledge of his schemes to defraud the Plaintiff and proof. The Mobile Farming Systems, Inc. enterprise similarly prevents the Plaitniff from achiving his judgments for malicious prosecution in Superior Court, because it was used to refile the same fraudulent claims that were already determined by Court of Appeal to have been filed without probable cause, with malice, and achieving favorable termination showing their lack of merit against Plaintiff. The pendency of these fraudulent actions are alleged to have prevented the Plaintiff from continuing his career.

For 18 U.S.C. § 1962(b), control over The State Bar of California enterprise has prevented the Plaintiff from achieving fair and neutral adjudication of his Government Claims Act litigation. As shown, it is alleged this control allows for the deliberate obstruction of judicial proceedings in State and Federal Court. It is alleged this control allows Suzanne Grandt and Charles Tsai to file immunities that turn on facts as if such immunities were dispositive of claims that not even the President of the United States would be immune for. Control over The State Bar of California enterprise allegedly enables control over the Mobile Farming Systems, Inc. enterprise, in that it is falsely asserted as being a "pending civil matter" even though it is adjudicated and despite Suzanne Grandt, Ruben Duran, and Charles Tsai's actual knowledge of: Richard Carlson, In RE Perrine, Alexandros v. Cole, Edwards v. Noroski, Denise Pinkerton, and the fact that Plaintiff (until he named The State Bar of California and all proceedings were compromised) has shown a likelihood of prevailing on three counts of malicious prosecution. Control is now seeking to influence this Court by moving this case to Honorable Bashant.

17. List the damages sustained by reason of the violation of 18 U.S.C. § 1962, indicating the amount for which each defendant is allegedly liable.

3:23-CV-0164-MMA-DEB

Plaintiff seeks $138,889,249 in past and future damages, and $138,889,249 as a result of the "smear campaign" and reputational damages that will impact his career for 25-years or more, plus treble damages of those amounts, as set forth above.

Plaintiff alleges State of California and The State Bar of California are liable for all damages, because each instance of damage could not have occurred without their purported authority or the abuse of sovereignty alleged. For instance, had each not willfully enabled the Kenneth Joseph Catanzarite enterprise to conduct itself in a manner set forth above, none of this would have happened commencing on September 14, 2018 and continuing through today.

Plaintiff alleges Kenneth Joseph Catanzarite, Ruben Duran, Eli David Morgenstern, and Suzanne Grandt to be liable personally for any amount not paid by State of California or The State Bar of California. This is because it is alleged each have unduly benefitted from racketeering activity that is not disclosed to the public, particularly as Ruben Duran, Eli David Morgenstern, and Suzanne Grandt make allegedly false statements that they protect the public when they are allegedly engaged in serial schemes to defraud the public, including Plaintiff.

Plaintiff alleges Kenneth Joseph Catanzarite will and has hidden his assets using the assistance of The State Bar of California enterprise and purported authority vested in him, and thereby the Plaintiff could not and cannot be unjustly prevented from obtaining his damages from the alleged enablers who have allegedly abused the sovereignty of the United States for private and personal gains under color of law.

**18. List all other federal causes of action, if any, and provide the relevant statute numbers.**

COUNT V—42 U.S.C. § 1983—Fourteenth Amendment.

COUNT VI—42 U.S.C. § 1983—First Amendment.

COUNT VII—15 U.S.C. § 15—Antitrust.

**19. List all pending state claims, if any.**

It is difficult to ascertain how the Plaintiff will proceed with his two pending Superior Court actions where they are alleged to be obstructed and further inhibited from fair hearings in any reviewing court due to alleged control of the RICO enterprise at issue.

Malicious prosecution

California Government Code § 815.6

California Government Code § 815.2

California Government Code § 815.3

42 U.S.C. § 1983

Unfair Business Practices

Intentional Infliction of Emotional Distress

**20. Provide any additional information that you feel would be helpful to the court in processing your RICO claims.**

1) Plaintiff alleges corruption of The State Bar of California enterprise discretely of his own harm and damages and alleges the need for federal intervention for cause.

2) Plaintiff has pending claims under Federal Tort Claims Act, the status of which he will advise this Court of promptly upon their settlement, disposition, or vesting of suit.

3) Plaintiff sought permission from State of California to sue the entity in Federal Court however, Plaintiff alleges that State of California has *respondeat superior* liability individual actors "as provided by statute" according to California law, and no 11th Amendment immunity due to an alleged abuse of sovereignty and commingling of State of California operations with The State Bar of California's alleged corruption of State of California.

4) Plaintiff filed two motions for summary judgment in a related case with an exhaustive, cited evidentiary record in support of his claims prior to discovery. They were stricken and will be filed for reference in this action and provided to the United States Attorney General as being the evidence supporting the Plaintiff's allegations. The Plaintiff alleges *ex parte* communications or other extra-judicial acts of obstruction, where Mr. Tsai ignored the materiality of the allegations and misled Honorable Cynthia A. Bashant where Mr. Tsai is allegedly involved in the conduct at issue but is acting as defense counsel, concurrently. Plaintiff alleges this abuse of process to be prima facie evidence of his corruption allegations, where the purpose of the government is to do justice – not to obstruct his genuine claims by any means.

5) In Orange County Superior Court after Plaintiff received a vested right to sue The State Bar of California, Suzanne Grandt allegedly defrauded the Court where control of the

97

3:23-CV-0164-MMA-DEB

judiciary by The State Bar of California is central to the Plaintiff's allegations and need for U.S. intervention. Specifically, Ms. Grandt told the Court that Board of Trustees, Office of General Counsel, and Office of Chief Trial Counsel did not coordinate decisions – then disclosed inadvertently that this was materially false, she knew it was false, and the Court relied on it. Further, due to alleged control of the enterprise, "sustained demurrer without leave" was ordered on the basis of blanket immunity that turns on facts, and despite Plaintiff having a vested right to sue. The "sustained demurrer without leave to amend" cites an unconstitutional decision from 2000, which precedes the date that The State Bar of California, its officers, directors, and employees became expressly subject to Government Claims Act (January 1, 2019). The "sustained demurrer without leave to amend" also precedes, by 15 years, federal antitrust laws applied to regulator The State Bar of California.

6) The Plaintiff has addressed, in good faith, the purported immunities possessed by The State Bar of California – and alleges that such immunities are irrelevant to the conduct at issue where the Plaintiff is not an attorney, and immunities turn on facts. To avoid alleged abuse of process and misleading this Court, Plaintiff will present the Court with his opposition that was stricken in the related case.

7) Plaintiff requests the opportunity to conduct oral argument if the Court considers moving this Case to Honorable Cynthia A. Bashant's Court – or if the Court believes it lacks jurisdiction over State of California in this case. Plaintiff respectfully requests this case remain before a Senior District Judge under the circumstances, or the opportunity to request a Three Judge Court in the alternative.

Respectfully Submitted,

February 19, 2023

_____

Justin S. Beck

In Propria Persona

98                                              3:23-CV-0164-MMA-DEB

**DECLARATION OF SERVICE**

1

2        I, Justin S. Beck, hereby declare that I am over the age of eighteen and I am a party to this case

3  acting *in propria persona*. My address is 3501 Roselle St., Oceanside, CA 92056. On February 19, 2023,

4  I prepared and caused to be mailed on February 21, 2023, the following:

5  **RICO CASE STATEMENT; NOTICE OF CLARIFICATION REGARDING NOTICE OF**

6  **RELATED CASES; REQUEST FOR ORAL ARGUMENT**

7        Participants in this case who are registered CM/ECF users will be served.

8           See the CM/ECF service list.

9        I served the following parties by U.S. Mail:

10  The State Bar of California       Catanzarite Law Corporation
Charles Tsai                   Kenneth Catanzarite
11  845 S. Figueroa St.           2331 W. Lincoln Ave.
12  Los Angeles, CA 90017        Anaheim, CA 92801

13  *Attorney for: Ruben Duran,*      *Attorney for: Kenneth Catanzarite*
*Suzanne Grandt, The State Bar*
14  *of California in their Official*
*Capacities*
15

16  United States Department of Justice
Office of the Attorney General
17  950 Pennsylvania Ave NW
Washington, DC 20530
18

19

20        I declare under the penalty of perjury under the laws of the State of California that the foregoing

21  is true and correct.

22        Executed in Oceanside, California on February 19, 2023

23

24

25                         Justin S. Beck

26

27

28