**Exhibit 2**

Justin S. Beck
3501 Roselle St.,
Oceanside, CA 92056
760-449-2509
justintimesd@gmail.com
*In Propria Persona*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUSTIN S. BECK, | Case No.: 3:22-CV-01616-BAS-DDL |
| Plaintiff, | |
| vs. | Judge: Hon. Cynthia A. Bashant |
| CATANZARITE LAW CORPORATION; STATE OF CALIFORNIA; THE STATE BAR OF CALIFORNIA; ORANGE COUNTY SUPERIOR COURT; ORANGE COUNTY DISTRICT ATTORNEY'S OFFICE; RUBEN DURAN, ESQ.; SUZANNE CELIA GRANDT, ESQ.; RICHARD FRANCIS O'CONNOR, JR.; MOHAMMED ZAKHIREH; JAMES DUFFY; KENNETH CATANZARITE, ESQ.; JIM TRAVIS TICE, ESQ.; NICOLE MARIE CATANZARITE WOODWARD, ESQ.; BRANDON WOODWWARD, ESQ.; TIM JAMES O'KEEFE, ESQ.; AMY JEANETTE COOPER; CLIFF HIGGERSON; ELI DAVID MORGENSTERN, ESQ.; LEAH WILSON, ESQ.; ROBERT GEORGE RETANA, ESQ.; ELLIN DAVTYAN, ESQ.; JOHN C. GASTELUM; JORGE E. NAVARETTE; GEORGE SARGENT CARDONA, ESQ.; ANTHONY B. SCUDDER | SECOND AMENDED COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF |
| | [COUNT I] RICO—18 U.S.C. § 1962(c) |
| | [COUNT II] RICO—18 U.S.C. § 1962(c) |
| | [COUNT III] RICO—18 U.S.C. § 1962(a) |
| | [COUNT IV] RICO—18 U.S.C. § 1962(b) |
| | [COUNT V] RICO—18 U.S.C. § 1962(d) |
| | [COUNT VI] CAL. GOV. COD. § 815.6 |
| | [COUNT VII] CAL. GOV. COD. § 815.3 |
| | [COUNT VIII] 42 U.S.C. § 1983 |
| | [COUNT IX] 42 U.S.C. § 1983 |
| Defendants, | |
| UNITED STATES ATTORNEY GENERAL; UNITED STATES OF AMERICA | |
| Nominal Defendants | |

1

3:22-CV-01616-BAS-DDL

**COMPLAINT**

Plaintiff JUSTIN S. BECK ("Plaintiff" or "Beck") for his second amended complaint against defendants CATANZARITE LAW CORPORATION; STATE OF CALIFORNIA; THE STATE BAR OF CALIFORNIA; ORANGE COUNTY SUPERIOR COURT; ORANGE COUNTY DISTRICT ATTORNEY'S OFFICE; RUBEN DURAN, ESQ; SUZANNE CELIA GRANDT, ESQ.; RICHARD FRANCIS O'CONNOR, JR.; MOHAMMED ZAKHIREH; JAMES DUFFY; KENNETH CATANZARITE, ESQ.; JIM TRAVIS TICE, ESQ.; NICOLE MARIE CATANZARITE WOODWARD, ESQ.; BRANDON WOODWARD, ESQ.; TIM JAMES O'KEEFE, ESQ.; CLIFF HIGGERSON; LEAH WILSON, ESQ.; ROBERT GEORGE RETANA, ESQ.; ELLIN DAVTYAN, ESQ.; JOHN C. GASTELUM; JORGE E. NAVARETTE; GEORGE SARGENT CARDONA, ESQ.; ANTHONY B. SCUDDER; ("Defendants") and UNITED STATES ATTORNEY GENERAL; UNITED STATES OF AMERICA ("Nominal Defendants") alleges as follows:

1. Plaintiff is an entrepreneur, executive, and non-attorney member of the public who derives his money, business, and property by way of consulting, founding companies, mergers, and acquisitions.

2. Plaintiff is among the protected class of citizenry, in special relationship to The State Bar of California, which is bound by mandatory law to protect Plaintiff after January 1, 2019, through passage of AB 3249, Chapter 659 which amended Cal. Bus. & Prof. Cod. § 6094(a).

3. "The State Bar and officers and employees are subject to the rules governing liability of public entities, officers, and employees specified in Division 3.6 (commencing with Section 810) of Title 1 of the Government Code" rendering any decisional law applied to attorneys, or before January 1, 2019, inapplicable to the instant case.

4. Plaintiff has vested rights to sue State of California, The State Bar of California, Orange County Superior Court and State actors. 42 U.S.C. § 1983 claims do not require notice or claim denial.

5. Plaintiff has pending claims under Federal Tort Claims Act for the role of Special Agent Alexander Murray of the Federal Bureau of Investigation, Assistant Attorney General Kristen Clarke for the Civil Rights Division United States Department of Justice, U.S. Attorney and Chief of the Public Corruption & Civil Rights Section Mack Jenkins, and U.S. Attorney of the Public Corruption and Civil Rights Section Lindsey Greer Dotson who each have actual knowledge of the facts at issue.

**INTRODUCTION**

6. Plaintiff is direct target of a pattern of racketeering activity intended to 1) defraud him of business and property, and 2) to prevent from his money judgments for claims against the government to conceal the conduct and suppress the evidence of public corruption in his possession.

7. Catanzarite Law Corporation, Kenneth Catanzarite, Nicole Marie Catanzarite Woodward, Brandon Woodward, Tim James O'Keefe, and Jim Travis Tice designed or carried out a fraudulent scheme using Orange County Superior Court to defraud Plaintiff and others aided, ratified by State actors.

8. To date, two public issuers and Plaintiff's associated ownership were destroyed by Defendants' activity violative of 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), § 1344 (bank fraud), § 1503 (obstruction of justice), § 1952(a)(3) (using interstate commerce facility for unlawful activity), § 1956 (money laundering), § 1957 (illegal transactions), and § 1960 (illegal transmissions).

9. Between November 2019 and present, Kenneth Catanzarite and his associates with Catanzarite Law Corporation have been disqualified for representation of adverse interests before the same tribunal in the same or substantially related matters four times in targeting Plaintiff with the scheme.

10. Despite disqualification of his firm and associates under mandatory law, upheld by Court of Appeal, Kenneth Catanzarite is still overtly representing Richard Francis O'Connor, Jr., Amy Jeanette Cooper, Cliff Higgerson, James Duffy, Mohammed Zakhireh, and Anthony B. Scudder, here.

11. In successfully overturning errant Anti-SLAPP rulings in California Court of Appeal (before State of California, The State Bar of California were named), Plaintiff demonstrated a likelihood of prevailing on at least three counts of malicious prosecution (a high bar) against Kenneth Catanzarite, Brandon Woodward, Tim James O'Keefe, Amy Jeanette Cooper, Cliff Higgerson, and Mohammed Zakhireh remitted September 2022 to Orange County Superior Court (4DCA Case No. G059766).

12. State of California, The State Bar of California, Jorge E. Navarette, Ruben Duran, Esq., Suzanne Grandt, Esq., Leah Wilson, Esq., Eli David Morgenstern, Esq., Robert George Retana, Esq., Ellin Davtyan, Esq., and George Sargent Cardona, Esq., act to continue unlawful activity and defraud.

13. Orange County District Attorney's Office and Orange County Superior Court choose to carry on the illegal conduct with malice and actual knowledge of its illegal nature to conceal public corruption.

14. Judge John C. Gastelum communicates *ex parte* with The State Bar of California to obstruct justice.

**JURISDICTION AND VENUE**

15. This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1964 under the Racketeer Influenced and Corrupt Organizations Act ("RICO") for 18 U.S.C. § 1962(a)-(d) claims.

16. This Court has subject matter jurisdiction over constitutional claims under 42 U.S.C. § 1983 as being federal question under 28 U.S.C. § 1331 where each arise from abuse of control over the California state judicial system by one or more aspects of State of California or The State Bar of California.

17. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because defendants do business in this district and each are subject to personal jurisdiction in this district, where process may be served in any judicial district of the United States per 18 U.S.C. § 1965(b), when required by the ends of justice. Nationwide service of process confers personal jurisdiction over a defendant in any jurisdiction where each defendant has contacts with the United States.

**PARTY IDENTIFICATION**

18. Plaintiff JUSTIN S. BECK ("Beck" or "Plaintiff") is an individual United States and California citizen, entrepreneur, and person who sustained injury to his business or property by reason of defendants' violation of 18 U.S.C. § 1962, and his person by way of 42 U.S.C. § 1983 and other statutes, whose principal place of business and residence is 3501 Roselle St., Oceanside, CA 92056.

19. Defendant STATE OF CALIFORNIA ("State") is a sovereign entity among United States subject to denial of Plaintiff's government claims. State allegedly abuses sovereignty in refusing to actively supervise (as defined by federal antitrust laws in regulation per FTC guidance after 2015) The State Bar of California, State-elected official Ruben Duran, Esq., and each public employee, elected official named herein. State liability arises under Gov. Cod. §§§ 815.2, 815.3, and 815.6.

20. Defendant THE STATE BAR OF CALIFORNIA ("State Bar") is a public entity, per federal law lacking invocation or application of state action immunity after 2015, controlled by majority (7) of active market participant Board of Trustees (13 total) without active state supervision in the same industry it regulates (Courts, law). State Bar operates facilities affecting interstate commerce at 845 S. Figueroa St., Los Angeles, CA 90017 and 180 Howard St., San Francisco, CA 94105.

21. Defendant CATANZARITE LAW CORPORATION ("CLC") is a State Bar associated enterprise law firm whose principal business address is 2331 W. Lincoln Ave., Anaheim, CA 92801.

3:22-CV-01616-BAS-DDL

22. Defendant KENNETH CATANZARITE, ESQ. ("KJC") is a State Bar associated culpable person attorney whose principal business address is 2331 W. Lincoln Ave., Anaheim, CA 92801. KJC is principal of CLC, and father of NMC.

23. Defendant NICOLE MARIE CATANZARITE WOODWARD, ESQ. ("NMC") is a State Bar associated culpable person attorney whose principal business address is 2331 W. Lincoln Ave., Anaheim, CA 92801. NMC is principal of CLC, and daughter of KJC.

24. Defendant BRANDON WOODWARD, ESQ. ("BW") is a State Bar associated culpable person attorney whose principal business address is 2331 W. Lincoln Ave., Anaheim, CA 92801. BW is CLC associate, and husband of NMC.

25. Defendant TIM JAMES O'KEEFE, ESQ. ("TJO") is a State Bar associated culpable person attorney whose principal business address is 2331 W. Lincoln Ave., Anaheim, CA, 92801, CLC associate.

26. Defendant JIM TRAVIS TICE, ESQ. ("Tice") is a State Bar associated culpable person attorney whose principal business address is purported to be 38 Sorrento, Irvine, CA 92614. Tice is former associate of CLC and personal counsel for KJC.

27. Defendant RUBEN DURAN, ESQ. ("Duran") is a State Bar associated culpable person sued in both his official and individual capacities whose principal business address is 2855 E. Guasti Rd., Ontario, CA 91761 as partner for private law firm Best Best & Krieger LLP ("BB&K") individually and 845 S. Figueroa St., Los Angeles, CA 90017 for State Bar officially. Duran is Chairman (Officer) of State Bar and Managing Partner of BB&K's Ontario office.

28. Defendant SUZANNE CELIA GRANDT, ESQ. ("Grandt") is a State Bar associated culpable person sued in both her official and individual capacities whose principal business address is 180 Howard St., San Francisco, CA 94105 for State Bar, and whose individual address is 152 Lombard St., Apt. #404, San Francisco, CA 94111. Grandt is Assistant General Counsel for State Bar.

29. Defendant LEAH WILSON, ESQ. ("Wilson") is a State Bar associated culpable person sued in both her official and individual capacities whose principal business address is 180 Howard St., San Francisco, CA 94105, and whose individual address is unknown to Plaintiff. Wilson is Executive Director for State Bar who also consulted for State Bar to establish its Leadership Bank Program.

5

3:22-CV-01616-BAS-DDL

30. Defendant ROBERT GEORGE RETANA, ESQ. ("Retana") is a State Bar associated culpable person sued in both his official and individual capacities whose principal business address is 180 Howard St., San Francisco, CA 94105, and whose individual address is unknown to Plaintiff. Retana is Assistant General Counsel for State Bar.

31. Defendant ELLIN DAVTYAN, ESQ. ("Davtyan") is a State Bar associated culpable person sued in both her official and individual capacities whose principal business address is 845 S. Figueroa St., Los Angeles, CA 90017, and whose individual address is unknown to Plaintiff. Davtyan is General Counsel for State Bar since July 2022 after replacing Vanessa Holton, announced February 7, 2022.

32. Defendant GEORGE SARGENT CARDONA, ESQ. ("Cardona") is a State Bar associated culpable person sued in his official capacity whose principal business address is 845 S. Figueroa St., Los Angeles, CA 90017. Cardona is Chief Trial Counsel for State Bar who joined State Bar in October 2021 confirmed by the Senate as Chief Trial Counsel June 27, 2022.

33. Defendant ELI DAVID MORGENSTERN, ESQ. ("Morgenstern") is a State Bar associated culpable person sued in his official and individual capacities whose principal business address is 845 S. Figueroa St., Los Angeles, CA 90017, and whose individual address is 363 S. Glenroy Ave., Los Angeles, CA 90049. Morgenstern is Senior Trial Counsel for State Bar.

34. Defendant JORGE E. NAVARETTE ("Navarette") is a State Bar associated culpable person sued in both his official and individual capacities whose principal business address is 350 McAllister St., San Francisco, CA 94102, and whose individual address is unknown to Plaintiff. Navarette is Court Administrator, Deputy, Clerk, and Executive Officer of California Supreme Court.

35. Defendant JOHN C. GASTELUM ("Gastelum") is a State Bar associated culpable person sued in both his official and individual capacities whose principal business address is 700 W. Civic Center Dr., Santa Ana, CA 92701, and whose individual address is unknown to Plaintiff. Gastelum is judge in Department C11 for Orange County Superior Court presiding over Case No. 30-2021-01237499.

36. Defendant ORANGE COUNTY SUPERIOR COURT ("OCSC") is a State Bar associated enterprise and function of State government whose principal business address is 455 Golden Gate Avenue, San Francisco, CA 94102, and physical address is 700 W. Civic Center Dr., Santa Ana, CA 94102 and 751 W. Santa Ana Blvd., Santa Ana, CA 92701.

37. Defendant ORANGE COUNTY DISTRICT ATTORNEY'S OFFICE ("OCDA") is a State Bar associated enterprise and component of County of Orange government whose principal business address is 300 N. Flower St., Santa Ana, CA 92703. Most of the conduct at issue occurred within OCDA's criminal jurisdiction, and OCDA has actual knowledge of its alleged criminal nature.

38. Defendant RICHARD FRANCIS O'CONNOR, JR. ("O'Connor") is a CLC associated culpable person whose principal business address is purportedly 2331 W. Lincoln Ave., Anaheim, CA 92801, and whose individual address is unknown to the Plaintiff. O'Connor was sued by CLC, started producing evidence for CLC, now client for CLC as derivative claims are tolled against him to bring "later" so "no conflict."

39. Defendant AMY JEANETTE COOPER ("Cooper") is a CLC associated culpable person whose principal business address is purportedly 2331 W. Lincoln Ave., Anaheim, CA 92801 and whose individual address is 42 Lower North Ter, Belvedere Tiburon, CA, 94920. Cooper was sued by CLC, started producing evidence for CLC, now client for CLC as derivative claims are tolled against her to bring "later" so "no conflict." Cooper is Higgerson's daughter.

40. Defendant CLIFF HIGGERSON ("Higgerson") is a CLC associated culpable person whose individual address is 12365 Garwood Dean, Truckee, CA 96161. Higgerson was sued by CLC, started producing evidence for CLC, now client for CLC as derivative claims are tolled against him to bring "later" so "no conflict." Higgerson is Cooper's father.

41. Defendant ANTHONY B. SCUDDER ("Scudder") is a CLC associated culpable person whose individual address is 23711 Mariner Drive, Apt. #46, Dana Point, CA 92629. Scudder was sued by CLC, started aiding and abetting CLC, now client for CLC as derivative claims are tolled against him to bring "later" so "no conflict."

42. Defendant MOHAMMED ZAKHIREH ("Zakhireh") is a CLC associated culpable person whose principal business address is Cosmetic Surgery Institute of Palm Desert, Suite A1, 73710 Alessandro Dr., Palm Desert, CA 92260. Zakhireh performed plastic surgery for O'Connor. He also sued Plaintiff "on behalf of 92 shareholders" before agreeing those shareholders did not exist for CLC.

43. Defendant JAMES DUFFY ("Duffy") is a CLC associated culpable person whose principal business address is 403 E. Park Dr., Anacortes, WA 98221. Duffy acts in concert with Zakhireh, O'Connor.

44. Nominal Defendant UNITED STATES ATTORNEY GENERAL ("USAG") is responsible for protecting the interests of citizens and is not an ordinary party to this proceeding. Where State refuses to adhere to federal antitrust laws by actively supervising State Bar which affects $3.63 trillion interstate commerce, USAG has a duty to ensure they are enforced in California as a neutral.

45. Nominal Defendant UNITED STATES OF AMERICA ("USA") is a sovereign nation responsible for protecting all 50 states and all USA citizens. USA is subject to Plaintiff's Federal Tort Claims Act filing. Where State refuses to adhere to federal antitrust laws by actively supervising State Bar which affects $3.63 trillion interstate commerce, criminal, and civil justice of USA persons, USA has a duty to ensure they are enforced in California as a neutral. USA has a duty to Plaintiff and other USA citizens in California. (a) Though the Fifth Amendment does not contain an equal protection clause, as does the Fourteenth Amendment which applies only to the States, the concepts of equal protection and due process are not mutually exclusive. P. 499. (b) Discrimination may be so unjustifiable as to be violative of due process. P. 499. *Bolling v. Sharpe*, 347 U.S. 497, (1954) In California, discrimination against non-attorneys is so unjustifiable that it is violative of due process.

### **GOVERNMENT CLAIMS ACT APPLIED TO EACH COUNT IN THIS CASE**

46. According to Cal. Gov. Cod. § 815:

> "(a) Except as provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. (b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person."

47. Liability is "provided by statute" under Cal. Gov. Cod. § 815.2, Cal. Gov. Cod. § 815.3, Cal. Gov. Cod. § 815.6, 42 U.S.C. § 1983, and 18 U.S.C. § 1962(a)-(d) in this action. "The statutes that provide for liability do not need to be part of the Government Claims Act, and do not need to provide specifically on their face that they apply to public entities." *Rodriguez v. Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707.

48. According to Cal. Gov. Cod. § 815.2 applied to 18 U.S.C. § 1962(a)-(d), *respondeat superior*:

> "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee

or his personal representative. (b) Except as provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

49. According to Cal. Gov. Cod. § 815.3 applied to RICO, intentional infliction of emotional distress:

"**(a)** Notwithstanding any other provision of this part, unless the elected official and the public entity are named as codefendants in the same action, a public entity is not liable to a plaintiff under this part for any act or omission of an elected official employed by or otherwise representing that public entity, which act or omission constitutes an intentional tort, including, but not limited to, harassment, sexual battery, and intentional infliction of emotional distress. For purposes of this section, harassment in violation of state or federal law constitutes an intentional tort, to the extent permitted by federal law. This section shall not apply to defamation. **(b)** If the elected official is held liable for an intentional tort other than defamation in such an action, the trier of fact in reaching the verdict shall determine if the act or omission constituting the intentional tort arose from and was directly related to the elected official's performance of his or her official duties. If the trier of fact determines that the act or omission arose from and was directly related to the elected official's performance of his or her official duties, the public entity shall be liable for the judgment as provided by law. For the purpose of this subdivision, employee managerial functions shall be deemed to arise from, and to directly relate to, the elected official's official duties.[]**(c)** If the trier of fact determines that the elected official's act or omission did not arise from and was not directly related to the elected official's performance of his or her official duties, upon a final judgment, including any appeal, the plaintiff shall first seek recovery of the judgment against the assets of the elected official. If the court determines that the elected official's assets are insufficient to satisfy the total judgment, including plaintiff's costs as provided by law, the court shall determine the amount of the deficiency and the plaintiff may seek to collect that remainder of the judgment from the public entity. The public entity may pay that deficiency if the public entity is otherwise authorized by law to pay that judgment.**(d)** To the extent the public entity pays any portion of the judgment against the elected official pursuant to subdivision (c) or has expended defense costs in an action in which the trier of fact determines the elected official's action did not arise from and did not directly relate to his or her performance of official duties, the public entity shall pursue all available creditor's remedies against the elected official in indemnification, including garnishment, until the elected official has fully reimbursed the public entity.**(e)** If the public entity elects to appeal the judgment in an action brought pursuant to this section, the entity shall continue to provide a defense for the official until the case is finally adjudicated, as provided by law.**(f)** It is the intent of the Legislature that elected officials assume full fiscal responsibility for their conduct which constitutes an intentional tort not directly related to their official duties committed for which the public entity they represent may also be liable, while maintaining fair compensation for those persons injured by such conduct.**(g)** This section shall not apply to a criminal or civil enforcement action brought on behalf of the state by an elected district attorney, city attorney, or Attorney General.

3:22-CV-01616-BAS-DDL

**(h)** If any provision of this section or the application thereof to any person or circumstances is held invalid, that invalidity shall not affect other provisions or applications of the section which can be given effect without the invalid provision or application, and to this end the provisions of this section are severable."

50. There exists no immunity provided by statute under Government Claims Act or otherwise for violation of 18 U.S.C. § 1962(a)-(d), Cal Gov. Cod. § 815.3, or Cal. Gov. Cod. § 815.6:

"To apply [immunity] sections to immunize [State, State Bar, Orange County Superior Court, or Orange County District Attorney's Office] from liability for breach of a mandatory duty would completely eviscerate Government Code section 815.6 which specifically provides for liability of the public entity for injuries resulting from a failure to carry out a mandatory duty imposed by a public enactment." (*Elton v. County of Orange* (1970) 3 Cal.App.3d 1053, 1059; see also *Alejo*, 75 Cal.App.4th at p. 1194)

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

51. The main enterprise consists of Los Angeles County Superior Court, Girardi-Keese, Orange County Superior Court, Catanzarite Law Corporation, State Bar Court, Orange County District Attorney's Office, State Bar's Office of General Counsel, Office of Chief Trial Counsel, Executive Director, Board of Trustees, 700+ Club, Client Security Fund, unnamed State employees, other law firms, inanimate entities formed or overtaken by attorneys to suit any given fraudulent scheme, interest on lawyer trust accounts ("IOLTA"), client trust accounts ("CTA"), and banks holding IOLTA/CTA to launder and exchange *sub rosa* compensation among members (together the "State Bar Enterprise").

52. The pattern of racketeering activity involves attorneys associated with State Bar Enterprise as beneficiaries targeting non-attorney members of the public using the Courts and fraudulent schemes.

53. The predicate acts take place primarily in Orange County and Los Angeles County, supported, carried on, or concealed by persons in San Francisco County associated with State Bar Enterprise.

54. In Report 2022-030, California State Auditor identified statistical anomalies associated with 700+ attorneys who were disciplined outside of California but not in California, and 700+ attorneys who received at least four "private letters" from State Bar responding to public injuries ("700+ Club").

55. On information and belief, public entity State Bar operates primarily for the personal benefit of 700+ Club which includes KJC, NMC, BW, TJO, Tice, Grandt, Davtyan, Duran, Retana, Wilson, Morgenstern, Thomas V. Girardi, David Richard Lira, Keith Griffin, Walter Lack, Paul Traina, Gloria Allred, Todd Spitzer, and other allegedly corrupt persons among State Bar Enterprise.

56. State Bar operations are used to conceal criminal conduct, launder money, and control operations of State through collateral attack and threat of State Bar Court used for corrupt motives and interests.

57. State Bar Court's subservience to political branches has prevented law enforcement or civil judgment penetration of State Bar's operations, a front for criminal activity of 700+ Club.

58. Attorneys practicing in California from outside CA require permission of State Bar, which further inhibits external threat to its operations. But for this, the operations would not and could not continue.

59. If an attorney threatens operations of 700+ Club, a combined attack or void strategy can be forced by the State Bar Enterprise through control of district attorneys, U.S. attorneys, and State Bar Court.

60. If a member of the public threatens operations of 700+ Club, a combined attack using purported "discretion" of State Bar Enterprise to conceal or enable crimes under color of sovereignty exists.

61. A July 31, 2014, report of improper activity from State Bar's Chief Trial Counsel, Jayne Kim centered on "concerns related to certain actions by Executive Director Joseph Dunn (ED), Chief Financial Officer Peggy Van Horn (CFO) and General Counsel Thomas Miller (GC) that demonstrate a disturbing [] lack of transparency at the highest levels within the organization."

62. Ms. Kim claims, "State Bar leadership is failing to adhere to basic principles of governance" and that a "'five layer chess game' with key stakeholders and other executives" has "systemically fostered a culture of intimidation and isolation within the organization and resulted in dishonest communication to the Board of Trustees." It is alleged this culture is ongoing, by design.

63. A 2014 investigation by Munger Tolles & Olsen ("MTO") reveals "Girardi-Keese Influence at the Bar…closeness of the relationship of some senior managers and that firm does raise potentially troubling perceptions that the Board should take action to rectify going forward. The frequency with which Girardi's firm has surfaced in matters we investigated is striking. [] in emails we reviewed on other topics, we noted that Miller was being consulted on matters…concerning client trust accounts."

64. State Bar knew about Girardi, but chose to continue his conduct and conceal it, for forty years.

65. State Bar conceded to its failures about Girardi and the "irreparable harm" to "innocent" members of the public on November 3, 2022, in an "open letter" published online.

66. When posting November 3, 2022, Duran and Board of Trustees were concealing current schemes involving KJC, BW, NMC, TJO, Tice, Duran, Grandt, Morgenstern, Davtyan, Retana, and others.

**PREDICATE ACTS CONSTITUTING A PATTERN OF RACKETEERING ACTIVITY**

67. Thomas V. Girardi is alleged to have defrauded insurance companies, including Farmers Insurance Co., of more than one billion dollars paid to constituents of State Bar Enterprise including judges, in alleged violation of 18 U.S.C. § 1344 in that financial institutions were defrauded by State Bar Enterprise conduct. Girardi was named 18 times in 2014 investigation ¶ 63, concealed from public.

68. After a guilty plea for two-counts of wire fraud in violation of 18 U.S.C. § 1343, U.S. Attorney's Office for Central District of California announced February 29, 2016, State Bar Enterprise "Orange County Attorney [Stephen Young Kang] Who Pleaded Guilty to Federal Charges in $8 Million Fraud Scheme Sentenced to Over Five Years in Prison." During the sentencing hearing, "several of Kang's victims described in detail the devastating financial and emotional impact of the fraud scheme. Two of the victims commented that Kang's fraud led to the 'darkest years' of their lives."

69. On July 20, 2017, Grandt and Retana appeared against self-represented Ty Clevenger before Honorable William Alsup in No. C 17-02798 WHA in U.S. District Court, Northern District of California. The transcript reported by Rhonda L. Aquilina, CSR #9956, RMR, CRR reads: The Court: "[Clevenger] brought this lawsuit trying to stop what he said was a First Amendment violation that you, the State Bar, were punishing him because he wrote unflattering things about the State Bar…I said: Will [Clevenger] be able to take discovery in State Bar court[]? And you told me flat out "yes" at least three times. Then about two weeks later we get a letter from your side that was false, untrue, and you wanted to correct it. Mr. Retana: "we apologize for any misunderstanding." The Court: Any?..it was reckless…what you told me…Get the State Bar to look into [Grandt's] conduct….the committee we have for admitting to practice in this Court, ought to look into Ms. Grandt's conduct…Ms. Grandt told me something that wasn't true, and I relied on it." University of San Diego (USD) School of Law Center for Public Interest Law (CPIL) executive director Professor Robert C. Fellmeth was quoted in *Los Angeles Daily Journal* after State Bar promoted Grandt four days after the foregoing hearing. Fellmeth is quoted "[t]his is not a sterling example of meritorious reward." Grandt and Retana's overt acts allegedly violated 18 U.S.C. § 1503(a) by corruptly endeavoring to influence an officer of a U.S. Court, or corruptly influence, obstruct, or impede, or endeavor to influence, obstruct, or impede the due administrative of justice.

70. On September 22, 2017, State Bar Enterprise Jose Lopez, Jr. was sentenced to over 11 years in federal prison for racketeering offense, violation of 18 U.S.C. § 1962(d), for a bribery scheme fixing more than 1,000 cases in Orange County Superior Court. This did violate RICO.

71. Overtly, with intent to defraud, KJC, CLC, BW, and TJO used the wire, or caused the wire to be used, in OCSC September 14, 2018, at 12:36:59 PM using "Denise Pinkerton, an individual as attorney in fact for Roger D. Root" as plaintiff in a false derivative action *against* Mobile Farming Systems, Inc. ("MFS"), Plaintiff, O'Connor, II, Cooper, Higgerson, Aroha Holdings, Inc., and Scudder. The case included securities fraud charges against Cooper and O'Connor. KJC, BW, TJO, and CLC knew neither Ms. Pinkerton nor Mr. Root were a shareholder in MFS but filed it anyway to commence an open-ended, fraudulent CLC and State Bar Enterprise scheme that continues today, in this Court and Superior Court. Parties to the communication included Clarissa Bustamante, Clerk of the Superior Court, Judge Geoffrey T. Glass, and any internet user. This allegedly violated 18 U.S.C. § 1343 by using the wire to commence a fraudulent scheme targeting Plaintiff.

72. "January 2019 was a busy month for Catanzarite, setting in motion the group's [fraudulent] corporate takeover scheme." *Beck v. Catanzarite Law Corp.*, No. G059766, 11 (Cal. Ct. App. Jul. 13, 2022) Overtly, with intent to defraud, KJC used the wire or caused the wire to be used in OCSC to dismiss Anthony B. Scudder and Aroha Holdings, Inc. through e-filing transaction 2747866 at 02:38:58 PM on January 3, 2019, from a derivative action against MFS without Court approval. Parties to the communication included any internet user. This allegedly violated 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff.

73. Overtly, with intent to defraud, KJC used the wire or caused the wire to be used in OCSC to dismiss O'Connor, TGAP Holdings, LLC, and Scott Unfug through e-filing transaction 3751199 at 03:48:28 PM on January 22, 2019. The purpose of this was to conceal a lack of standing for derivative claims, takeover of MFS, then CTI. Parties to the communication included any internet user. This allegedly violated 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff.

74. Overtly, with intent to defraud, KJC used the wire or caused the wire to be used in OCSC to dismiss Cooper and Higgerson through e-filing transaction 1583344 at 04:35:18 PM on January 23, 2019. Parties to the communication included any internet user. KJC needed Cooper's MFS vote. This

3:22-CV-01616-BAS-DDL

1   allegedly violated 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting

2   Plaintiff.

3   75. Overtly, with intent to defraud, between January 22, 2019, and January 25, 2019, KJC used the wire

4   or caused the wire to be used for each signature and obtained "Written Consent of Mobile Farming

5   Systems, Inc." which "immediately removed" the board of directors of MFS which was signed by

6   "Richard Francis O'Connor II" and dated "January ____, 2019." Other parties to the communication

7   include: "Denise Pinkerton" who signed on "January 23, 2019," "Scott Unfug" who signed "January

8   23, 2019," "Douglas Scott" who signed "January 24, 2019," Janell Christiansen" who signed

9   "January 23, 2019," Amy Jeanette Cooper" who signed "January 25, 2019," "Douglas Hunt," who

10  signed January ____, 2019," "Rick Mesa" who signed "January 23, 2019," "Ken Miller," who signed

11  January 23, 2019," and "Jeff Ray Schunk," who signed "January 23, 2019." This allegedly violated

12  18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff.

13  76. Overtly, with intent to defraud, KJC, BW, TJO, and CLC used the wire, or caused the wire to be

14  used, at 03:51:51 PM in OCSC through e-filing transaction 158488, to file "Unanimous Written

15  Consent as of January 23, 2019" on behalf of "Mobile Farming Systems, Inc." as "Sole Shareholder"

16  of Cultivation Technologies, Inc. ("CTI") Parties to the communication included any internet user.

17  KJC, BW, TJO, and CLC knew MFS was not a shareholder of CTI, and that they had extorted the

18  signature of O'Connor while tolling securities fraud charges against him to produce evidence. This

19  allegedly violated 1) 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting

20  Plaintiff; and 2) Cal. Pen. Cod. § 518 PC in that Mr. O'Connor was threatened by KJC under color

21  of official right and did consent to provide his signature and property under that threat.

22  77. Overtly, with intent to defraud, KJC used the wire on February 26, 2019 at 01:49 PM from email

23  kcatanzarite@catanzarite.com to Rex Loesby of Western Troy Capital Resources at the email

24  rexloesby@gmaill.com wherein he falsely claimed "MFS is the sole shareholder of CTI. You have

25  not consulted with Mr. O'Connor who is the CEO of MFS and CTI and as such he has not agreed to

26  any [merger] such as you describe. If you would like to discuss a transaction then you need to be

27  talking to MFS and Mr. O'Connor. As such we dispute and object to any agreement purportedly by

28  and between Western Troy and CTI. Kindly withdraw your notice and engage in meaningful

1   negotiations with Mr. O'Connor." KJC received a February 5, 2019, letter detailing transaction value

2   increment of $175 million to $240 million but described Western Troy "valueless." This allegedly

3   violated 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff.

4   78. Overtly, with intent to defraud, KJC used the wire, or caused the wire to be used, at 02:55:15 PM on

5   March 19, 2019 through e-filing transaction 2774681 in OCSC to file an affidavit signed by Richard

6   Francis O'Connor, II before Jonathan Patrick, Notary Public, Orange County, Commission

7   #2187299 from Newport Beach, California declaring "I am familiar with Roger Root and his wife

8   Sharon having met them in Florida related to the MFS stock purchases…As CEO and director of

9   MFS acting on its behalf, MFS is rightfully and properly the owner as holder of 28,000,000 CTI

10  shares of Common Stock…including the right to vote said shares and to not suffer dilution." Parties

11  to the communication included any internet user. KJC and O'Connor both knew this was false

12  because O'Connor was responsible for CTI share issuances, participated in 158 different securities

13  transactions to sell CTI shares before January 23, 2019, for millions of dollars. This allegedly

14  violated 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff.

15  79. Overtly, with intent to defraud, KJC, BW, and TJO used the wire and CLC, or caused the wire to be

16  used, at 04:00:12 PM on April 16, 2019, through e-filing transaction 2784758 in OCSC to file yet

17  another case conflicting with others filed on different factual circumstances, against directly adverse

18  parties. Parties to the communication included any internet user. This allegedly violated 1) 18 U.S.C.

19  § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff; and 2) 18 U.S.C. § 1344

20  to defraud Scottsdale Insurance Co.

21  80. Overtly, with intent to defraud, KJC used the wire, or caused the wire to be used, at 11:08:25 AM

22  on May 15, 2019, in OCSC through e-filing transaction 2794851, to amend the fraudulent class

23  action filed April 16, 2019, by adding a fraudulent shareholder consent under completely separate

24  factual pretenses than on January 23, 2019, also including a forged proxy of Carlos A. Calixto.

25  Parties to the communication included any internet user. This allegedly violated 1) 18 U.S.C. § 1343

26  by using the wire as part of a fraudulent scheme targeting Plaintiff; and 2) 18 U.S.C. § 1344 to

27  defraud Scottsdale Insurance Co.

28

3:22-CV-01616-BAS-DDL

81. Overtly, with intent to defraud, KJC used the wire, or caused the wire to be used, at 04:25:11 PM on September 6, 2019, in OCSC through e-filing transaction 41009836, to file *Cultivation Technologies, Inc., v. Scottsdale Insurance Co.*, OCSC No. 30-2019-01096233. KJC was appearing for a company he and his firm were suing, CTI, seeking to stop Plaintiff's defense coverage under color of official right so Plaintiff would submit to the scheme. CTI was not KJC's client, and he knew it. Parties to the communication included any internet user. This allegedly violated 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff; and 2) 18 U.S.C. § 1344 to defraud Scottsdale Insurance Co.

82. Overtly, with intent to defraud, KJC used the wire, or caused the wire to be used, at 02:49:56 PM on November 4, 2019, through e-filing transaction 3852632 in OCSC to file another false affidavit signed by Richard Francis O'Connor, II before Douglas Desjardins, Notary Public, Orange County Commission #2140086, from Oceanside, California declaring "I sold my Cultivation Technologies, Inc. ("CTI") common shares to Mr. Jim Duffy which shares were included in his total proxy count 2,720,900." Parties to the communication included any internet user. The purpose of this was to cover up the fraudulent representation of CTI that KJC had engaged in that led to disqualification of KJC, CLC, BW, TJO, and NMC. It also conflicted factually with a prior March 19, 2019, false affidavit from Mr. O'Connor under penalty of perjury, suborned by KJC to suit the fraudulent scheme. This allegedly violated 1) 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff; and 2) 18 U.S.C. § 1344 to defraud Scottsdale Insurance Co.

83. Overtly, with intent to defraud, KJC used the wire, or caused the wire to be used, at 11:20:48 AM on November 12, 2019, in OCSC through e-filing transaction 2858641 a declaration signed by Richard Francis O'Connor, II from Newport Beach, California declaring "As Chief Executive, I issued 5,000,000 Founder Shares when CTI was formed at $.001 per share to each of Probst and Justin Beck for their contributions to the startup effort...The very first time that the shareholders learned of the purported issuance of the Preferred Stock was at that November 29, 2018 shareholders meeting." Parties to the communication included any internet user. The purpose of this was to cover up the fraudulent representation of CTI that KJC had engaged in that led to disqualification of KJC, CLC, BW, TJO, and NMC. The other purpose was to conceal or justify false allegations. It also

16                                    3:22-CV-01616-BAS-DDL

1   conflicted factually with the prior affidavits under penalty of perjury, suborned by KJC to suit a

2   fraudulent scheme. This allegedly violated 1) 18 U.S.C. § 1343 by using the wire as part of a

3   fraudulent scheme targeting Plaintiff; and 2) 18 U.S.C. § 1344 to defraud Scottsdale Insurance Co.

4   84. Overtly, with intent to defraud, KJC used the wire, or caused the wire to be used, at 10:12:17 PM on

5   December 30, 2019, in OCSC through e-filing transaction 1703017 a declaration signed by Richard

6   Francis O'Connor, II from Big Bear, California on December 27, 2019, declaring "I am Chief

7   Executive Officer of Mobile Farming Systems, Inc. ("MFS"). I am also the Chief Financial Officer

8   and Chief Operating Officer of Cultivation Technologies, Inc. ("CTI") having been appointed by the

9   Board of Directors." Parties to the communication included any internet user. This declaration once

10  more conflicted with a prior affidavit March 19, 2019, from Mr. O'Connor, also seeking to avoid

11  yet another disqualification of KJC, NMC, TJO, BW, and CLC on January 10, 2020. This allegedly

12  violated 1) 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff; and

13  2) 18 U.S.C. § 1344 to defraud Scottsdale Insurance Co.

14  85. On February 14, 2020, State Bar Enterprise Michael Avenatti of Orange County, California, was

15  convicted of one count of wire fraud in violation of 18 U.S.C. § 1343 in U.S. District Court, Southern

16  District of New York.

17  86. Overtly, with intent to defraud April 3, 2020, Morgenstern used the mail, or caused the mail to be

18  used through Joy Nunley, to deliver a letter to the Plaintiff at his address 3501 Roselle St., Oceanside,

19  CA 92056 from State Bar's 845 S. Figueroa St., Los Angeles, CA 90017 facility engaged in interstate

20  commerce. Morgenstern declared KJC, BW, TJO, and CLC's fraudulent scheme was "not serious

21  enough" for "State Bar Court" which he knew was false but didn't care because he knew he had to

22  protect KJC as a constituent of 700+ Club within State Bar Enterprise and defraud Plaintiff. This

23  allegedly violated 18 U.S.C. § 1341 by using mail as part of a fraudulent scheme targeting Plaintiff.

24  87. Overtly, with intent to defraud June 16, 2020, a "Report of Kenneth J. Catanzarite SBN: 113750"

25  was delivered "Via Certified Mail Return Receipt" to "Office of Chief Trial Counsel, Intake" arising

26  out of "client representation in hotly contested matters styled In Re Daymark Realty Advisors, Inc.

27  (Case No. 18-23751), and in re Daymark Property Realty, Inc. (Case No. 18-23752)…in the United

28  States Bankruptcy Court for the Southern District of Florida…The key figure in the fraud is Todd

A. Mikles." KJC knew this letter was false, because a February 12, 2020, deposition of Richard Carlson reveals Carlson did not believe he had suffered damages, nor was he seeking an attorney, when he was visited at his home by KJC before 9 putative class actions were filed on his behalf by KJC in several jurisdictions. When asked why Mr. Carlson was named plaintiff in nine fake lawsuits filed without probable cause for hundreds of millions of dollars (where Mikles was a defendant), KJC said the questions were "harassing" and required "expert testimony." This June 16, 2020, letter allegedly violated 18 U.S.C. § 1341 by using mail as part of a fraudulent scheme targeting non-attorney, Todd Mikles similarly to other overt acts targeting Plaintiff by KJC via Pinkerton, MFS.

88. Overtly, with intent to defraud, KJC used the wire, or caused the wire to be used, at 02:57:28 PM on August 10, 2020, in e-filing transaction 3926850 in OCSC a "Cross Action" on behalf of MFS in No. 30-2020-01145998. Parties to the communication included any internet user. KJC knew Morgenstern, Office of Chief Trial Counsel, and Office of General Counsel would allow and continue to protect the fraudulent scheme as a "pending civil matter" if KJC did this, even though a Court rejected the same false claims "with every fiber of [it's] being" on May 1, 2019 and State Bar knows this. KJC also knew he had extorted the role of counsel for MFS, the company he was suing derivatively and tolling claims to bring "later," and that the derivative claims were compromised without Court approval. This allegedly violated 1) 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff; and 2) 18 U.S.C. § 1344 to defraud Scottsdale Insurance Co.

89. Overtly, with intent to defraud in conspiracy with KJC, Office of General Counsel of State Bar used the mail, or caused the mail to be used through Joan Randolph, on August 12, 2020, to deliver a letter to the Plaintiff at his address 3501 Roselle St., Oceanside, CA 92056 from State Bar's 180 Howard St., San Francisco, CA 94105 facility engaged in interstate commerce. The letter described why Office of General Counsel would continue the scheme, provided arguments defending KJC without regard for statutory requirements or court orders, and it sent a lead generation tool to pay more lawyers and defraud Plaintiff further. This allegedly violated 1) 18 U.S.C. § 1341 by using the mail as part of a fraudulent scheme targeting Plaintiff; and 2) 18 U.S.C. § 1962(d) in that it evidenced agreement to violate 18 U.S.C. § 1343 per ¶ 88 only two days later.

3:22-CV-01616-BAS-DDL

90. Overtly, with intent to defraud, Navarette used the mail, or caused the mail to be used through Robert R. Toy, Deputy Clerk, on September 29, 2020, to deliver a letter to the Plaintiff at his address 3501 Roselle St., Oceanside CA 92056 from California Supreme Court's 350 McAllister St., San Francisco, CA facility engaged in interstate commerce. The purpose of this letter was to protect KJC, BW, TJO, and CLC and delay or estop the Plaintiff's rights under color of State law and procedural waste. Navarette or Toy knew that "accusations" were rarely, if ever, heard in California Supreme Court but intended to give Plaintiff a false sense of security and defraud him. This allegedly violated 1) 18 U.S.C. § 1341 by using the mail as part of a fraudulent scheme targeting Plaintiff; and 2) 18 U.S.C. § 1952(a)(3) by using the mail or a facility in interstate or foreign commerce, with intent to promote, manage, establish, carry on, or facilitate unlawful activity, and thereafter performing or attempting to perform the use of the mail or facility for similar purposes.

91. Overtly, with intent to defraud, Navarette used the mail, or caused the mail to be used through T. Zhang, on March 22, 2021, to deliver a letter to the Plaintiff at his address 3501 Roselle St., Oceanside, CA 92056 from California Supreme Court's 350 McAllister St., San Francisco, CA facility engaged in interstate commerce. "The court has directed that the accusation against attorney(s) be returned to you unfiled, and on this date. Very truly yours, Jorge E. Navarette, Clerk and Executive Officer of the Supreme Court. By: T. Zhang, Deputy Clerk." This allegedly violated 1) 18 U.S.C. § 1341 by using the mail as part of a fraudulent scheme targeting Plaintiff; 2) 18 U.S.C. § 1952(a)(3) by using the mail or a facility in interstate or foreign commerce, with intent to promote, manage, establish, carry on, or facilitate unlawful activity, and thereafter performing or attempting to perform the use of the mail or facility for similar purposes; and 3) 18 U.S.C. § 1962(d) in that it evidenced agreement to violate 18 U.S.C. § 1341, 18 U.S.C. 1343, and 18 U.S.C. § 1344 as above.

92. Overtly, with intent to defraud, Tice used the wire, or caused the wire to be used on behalf of Amy Cooper, at 08:47:55 AM on September 8, 2021, through efiling 1891229, in OCSC to assume the role of legal counsel for a false securities class action in OCSC No. 30-2019-01064267. Tice knew he was just continuing the fraudulent scheme for KJC, TJO, BW, NMC, and CLC after disqualification of each, which Tice had previously done in another series of cases on behalf of a "Corzo" or "Corbell Partnership." For Corzo and Corbell, Tice was disqualified in Court of Appeal

and found to have filed an appeal "without authority." Tice was informed SEC possessed ~25,000 pages of documentary evidence in LA-4837 showing claims he was advocating for Cooper in continuance of a fraudulent scheme were patently false, but Tice chose to continue it willfully. This allegedly violated 1) 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff; and 2) 18 U.S.C. § 1344 to defraud Scottsdale Insurance Co.

93. Overtly, with intent to defraud after January 1, 2019, when Cal. Bus. & Prof. Cod. § 6094(a) became law after passage of AB 3249, Chapter 659 where State Bar, its officers, and employees became expressly subject to Government Claims Act, State Bar Enterprise used the wire to publish a form at https://www.calbar.ca.gov/Portals/0/documents/forms/misc/Govt-Claim-Form.pdf with parties to the communication being the Plaintiff and any other internet user. The date and time of this wire communication is unknown to Plaintiff without discovery. Duran, in his capacity as Chair, knew he controlled the State Bar Enterprise, and that he could obstruct any Government Claims Act litigation by propounding materially false statements in Court or inapplicable and irrelevant immunities because he knew he also controlled the nomination of judicial officers or their advancement and that they would have to agree to any of Duran's State Bar Enterprise schemes. This allegedly violated 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting the public.

94. Overtly, with intent to defraud, the State Bar Enterprise used the wire or caused the wire to be used through the Commission on Judicial Nominees Evaluation of the State Bar of California controlled by Board of Trustees led by Duran, on November 10, 2021, to recommend appointment of Associate Justice Maurice Sanchez to the Fourth District, Division Three Court of Appeal which presides over all OCSC proceedings. Witnesses to these overt acts include: Ruben Duran, Hailyn Chen, Adam Hoffman, Justin A. Palmer, Daniel L. Allender, Ugochi L. Anaebere-Nicholson, Caley R. Anderson, Matthew Barnachia, Andre R. Bollinger, Aundrea J. Brown, Julie S. Choe, Jamie Crook, Frine C. Eger-Gelson, Jeffrey El-Hajj, Noemi Nunez Esparaza, Tara C. Doss, Diana A. Garrido, Winnifred Gin, Stacey Guillory, Hon. Brenda Harbin-Forte (Ret.), Pamela Hemann, Theresa Hurley, Mack A. Jenkins, Jeanine Kraybill, Chhaya Malik, Meghan McMeel, Sandra A. Mori, Agustin D. Orozco, Loren C. Penaloza, T. Peter Pierce, Judith Reif, Francesca Serrano, David J. Sutton, Ryan R. Tacorda, Hon. Randa M. Trapp (Ret.), Corey R. Weber, Jaime E. Wrage, Donal W. Yoo, and

1  Michael J. Yraceburn (the "Judiciary Controllers"). This allegedly violated 1) 18 U.S.C. § 1343 by

2  using the wire as part of a fraudulent scheme targeting Plaintiff.; and 2) 18 U.S.C. § 1962(b) in that

3  the act was intended to control the Orange County Superior Court enterprise and defraud Plaintiff.

4  95. Overtly, with intent to defraud, Duran used the mail or caused the mail to be used by Sarah L. Cohen,

5  Claims Officer for State Bar "RE: Claim of Justin Beck," on November 12, 2021, to deliver a letter

6  to the Plaintiff at his address 3501 Roselle St., Oceanside, CA 92056 from State Bar's 180 Howard

7  St., San Francisco, CA 94105 facility engaged in interstate commerce. The purpose of the letter was

8  to deny the Plaintiff's Government Claims Act submission thereby vesting his right to sue. This

9  allegedly violated 1) 18 U.S.C. § 1341 by using the mail as part of a fraudulent scheme targeting

10  Plaintiff; 2) 18 U.S.C. § 1952(a)(3) by using the mail or a facility in interstate or foreign commerce,

11  with intent to promote, manage, establish, carry on, or facilitate unlawful activity, and thereafter

12  performing or attempting to perform the use of the mail or facility for similar purposes; 3) 18 U.S.C.

13  § 1962(d) in that it evidenced agreement to violate 18 U.S.C. § 1341, 18 U.S.C. 1343, and 18 U.S.C.

14  § 1344 as set forth above; and 4) 18 U.S.C. § 1962(b) in that the act was intended to control the

15  Orange County Superior Court enterprise and defraud Plaintiff.

16  96. Overtly, using the wire and *ex parte* communications intending to defraud Plaintiff, members of the

17  State Bar Enterprise allegedly within Office of General Counsel or Board of Trustees, directed that

18  Judge Richard Lee recuse, and Judge John C. Gastelum be assigned, in OCSC Case No. 30-2021-

19  01237499 after the Plaintiff filed an *ex parte* application on January 18, 2022, at 01:59:56 PM which

20  posed a threat to the State Bar Enterprise. This allegedly violated 18 U.S.C. § 1962(b) in that the act

21  was intended to control the State Bar Enterprise and defraud Plaintiff. Whoever directed among State

22  Bar Enterprise knew they could control Judge John C. Gastelum to defraud Plaintiff in OCSC.

23  97. Overtly, with intent to defraud the public he is bound to protect by law, and to conceal facts known

24  to him from the 2014 investigative report by MTO, Duran used the wire, or caused the wire to be

25  used    through    Office    of    Communications    January    24,    2022    at    the    page

26  https://www.calbar.ca.gov/About-Us/News/News-Releases/state-bar-announces-additional-

27  investigation-into-handling-of-past-complaints-against-thomas-girardi wherein "The State Bar of

28  California's Board of Trustees announced today that it has been conducting an additional

investigation into whether the State Bar's handling of past discipline complaints against former licensee Thomas V. Girardi was affected by Girardi's connections to or influence at the State Bar...The State Bar Board leadership and staff take very seriously the immense harm done by Thomas V. Girardi to innocent victims," said Ruben Duran, Board Chair. "We have been proactively doing everything in our power to learn from the past and do better in the future to prevent harms like this from recurring." Parties to the communication included any internet user. This allegedly violated 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting the public, and Plaintiff.

98. Overtly, with intent to defraud, Carissa Andresen from Office of General Counsel used the wire, or caused the wire to be used by Joan Randolph, at 01:49:05 PM on February 14, 2022, through e-filing transaction 1951682 in OCSC the very accusation Navarette said had been "returned unfiled." Andresen filed this as if it were somehow dispositive of State Bar's duty to stop serial fraud involving State Bar Enterprise, KJC, NMC, TJO, BW, and CLC of which it was factually aware targeting Plaintiff and other innocent members of the public. Parties to the communication included Judge John C. Gastelum and any internet user. This allegedly violated 1) 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff; 2) 18 U.S.C. § 1952(a)(3) by using the mail or a facility in interstate or foreign commerce, with intent to promote, manage, establish, carry on, or facilitate unlawful activity, and thereafter performing or attempting to perform the use of the mail or facility for similar purposes; 3) 18 U.S.C. § 1962(d) in that it evidenced agreement to violate 18 U.S.C. § 1341, 18 U.S.C. 1343, and 18 U.S.C. § 1344 as set forth above; and 4) 18 U.S.C. § 1962(b) in that the act was intended to control Orange County Superior Court enterprise and defraud Plaintiff.

99. Overtly, with intent to defraud, Duran or others among the Court Enterprise used the wire or caused the wire to be used through the witnessing and aiding Judiciary Controllers of State Bar to direct the nomination of Court of Appeal Justice Joanne Motoike to the Fourth District, Division Three on May 2, 2022, after the Plaintiff's first amended complaint was accepted by OCSC at 08:00 AM in Orange County Superior Court No. 30-2021-01237499 the same day. This allegedly violated 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff, and 2) 18 U.S.C. § 1962(b) in that the act was intended to control Orange County Superior Court enterprise and defraud Plaintiff.

3:22-CV-01616-BAS-DDL

100. Overtly, with intent to defraud, after concealing material State liability from California State Auditor and Macias Gini & O'Connell LLP ("MGO") as external auditor in April 2022, Duran used the wire on May 19, 2022 from his BB&K email ruben.duran@bbklaw.com at 11:03 AM to George Cardona, email george.cardona@calbar.ca.gov, Leah Wilson, email leaht.wilson@calbar.ca.gov, "I would like a briefing on this when you have an opportunity, please. Thanks. Ruben." This wire communication was in response to the Plaintiff's formal request on May 19, 2022 at 09:54 AM from justintimesd@gmail.com to Carissa Andresen, email carissa.andresen@calbar.ca.gov, Ruben Duran, email ruben.duran@calbar.ca.gov, Joy Nunley, email joy.nunley@calbar.ca.gov, Joan Randolph, email joan.randolph@calbar.ca.gov, Anand Kumar, email anand.kumar@calbar.ca.gov, Kenneth Catanzarite, email kcatanzarite@catanzarite.com, Brandon Woodward, email bwoodward@catanzarite.com, Tim James O'Keefe, email tokeefe@catanzarite.com, and Nicole Marie Catanzarite Woodward, email ncatanzarite@catanzarite.com, with the subject "Clarity on Requests/Formal Requests to Mr. Duran as Board of Trustees of The State Bar of California." This allegedly violated 1) 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff; 2) 18 U.S.C. § 1952(a)(3) by using the mail or a facility in interstate or foreign commerce, with intent to promote, manage, establish, carry on, or facilitate unlawful activity, and thereafter performing or attempting to perform the use of the mail or facility for similar purposes; 3) 18 U.S.C. § 1962(d) in that it evidenced agreement to violate 18 U.S.C. § 1341, 18 U.S.C. 1343, and 18 U.S.C. § 1344 as set forth above; and 4) 18 U.S.C. § 1962(b) in that the act was intended to control the Orange County Superior Court enterprise and defraud Plaintiff.

101. Overtly, with intent to defraud, Cardona used the wire at 07:41 AM on May 25, 2022 from his email george.cardona@calbar.ca.gov to Ruben Duran, email ruben.duran@calbar.ca.gov, Carissa Andresen, email carissa.andresen@calbar.ca.gov, Leah Wilson, email leaht.wilson@calbar.ca.gov, with Subject: "FW: Clarity on Requests/Formal Request to Mr. Duran as Board of Trustees of The State Bar of California" reading "With thanks to Carissa, set out below is a summary of where we are with respect to Mr. Beck's various complaints and lawsuits. As set out at the end, we do not see any basis for a waiver of confidentiality. If you agree, OGC (which is handling Mr. Beck's pending lawsuit against the State Bar" can specifically respond to his numbered requests in his May 19 email

1    to you. Let us know if you need anything else. With that, here is the summary: [reflects a fraudulent

2    summary that disregards binding Court orders, disqualifications, and a trial of fact, instead a story

3    propounded by KJC and Andresen, not the Court orders] "[Plaintiff] has a pending lawsuit against

4    the State Bar…and is pursuing discovery." This allegedly violated 18 U.S.C. § 1343 by using the

5    wire as part of a fraudulent scheme targeting Plaintiff; 2) 18 U.S.C. § 1952(a)(3) by using the mail

6    or a facility in interstate or foreign commerce, with intent to promote, manage, establish, carry on,

7    or facilitate unlawful activity, and thereafter performing or attempting to perform the use of the mail

8    or facility for similar purposes; 3) 18 U.S.C. § 1962(d) in that it evidenced agreement to violate 18

9    U.S.C. § 1341, 18 U.S.C. 1343, and 18 U.S.C. § 1344 as set forth above; and 4) 18 U.S.C. § 1962(b)

10   in that the act was intended to control Orange County Superior Court enterprise and defraud Plaintiff.

11   102.    Overtly, with intent to defraud, Carissa Andresen from Office of General Counsel used the wire

12   on May 31, 2022 from email carissa.andresen@calbar.ca.gov delivered to Plaintiff at email

13   justintimesd@gmail.com at 01:38 PM the following: "Mr. Beck, I left you a voicemail this morning.

14   I would like to discuss with you your discovery requests in this matter. Specifically, I would like

15   your agreement to an extension of time for the State Bar to provide its responses to your first set of

16   RFAs and your first set of Form Interrogatories. I will be going on an extended leave and this matter

17   will be transferred to another attorney in our office. An extension would allow new counsel sufficient

18   time to review the facts of the case and your discovery requests, get appropriate responses from the

19   correct individuals within the State Bar, and confer with you if necessary. Let me know if you will

20   agree. Thank you." This allegedly violated 1) 18 U.S.C. § 1343 by using the wire as part of a

21   fraudulent scheme targeting Plaintiff; 2) 18 U.S.C. § 1952(a)(3) by using the mail or a facility in

22   interstate or foreign commerce, with intent to promote, manage, establish, carry on, or facilitate

23   unlawful activity, and thereafter performing or attempting to perform the use of the mail or facility

24   for similar purposes; 3) 18 U.S.C. § 1962(d) in that it evidenced agreement to violate 18 U.S.C. §

25   1341, 18 U.S.C. 1343, and 18 U.S.C. § 1344 as set forth above; and 4) 18 U.S.C. § 1962(b) in that

26   the act was intended to control Orange County Superior Court enterprise and defraud Plaintiff.

27   103.    Overtly, with intent to carry on illegal activity, Alex Hackert, Senior Trial Counsel for State Bar,

28   used the wire June 14, 2022 or caused the wire to be used from the email ctc.cpra@calbar.ca.gov at

1    11:14 AM to the Plaintiff, email justitnimesd@gmail.com "via email only" from Office of Chief
2    Trial Counsel in response to Public Records Act request dated May 7, 2022. On page three, Mr.
3    Hackert discloses the following fraudulent schemes of KJC: "*Edwards v. Noroski*...$14,000
4    sanction + $1,200 1) "In this case that is ongoing, the Court punished Catanzarie for saying one
5    thing, then switching his story. The court stated that Catanzarite's case was a "sham."" 2)
6    "*Alexandros v. Cole*...$10,000 sanction...Catanzarite violated court rules by making statements to
7    the court without any proof...The Court pointed out that Catanzarite's brief made 39 unsupported
8    factual statements...Catanzarite does not care about the truth in making statements to the Court." 3)
9    "*In Re Perrine*...$30,000 [sanction] or refund of fees...Catanzarite did not tell the Court that his
10   client, who was declaring bankruptcy, deeded his home to Catanzarite...Catanzarite took the
11   property to pay for his fees." This allegedly violated 1) 18 U.S.C. § 1343 by using the wire as part
12   of a fraudulent scheme targeting Plaintiff; 2) 18 U.S.C. § 1952(a)(3) by using the mail or a facility
13   in interstate or foreign commerce, with intent to promote, manage, establish, carry on, or facilitate
14   unlawful activity, and thereafter performing or attempting to perform the use of the mail or facility
15   for similar purposes; 3) 18 U.S.C. § 1962(d) in that it evidenced agreement to violate 18 U.S.C. §
16   1341, 18 U.S.C. 1343, and 18 U.S.C. § 1344 as set forth above; and 4) 18 U.S.C. § 1962(b) in that
17   the act was intended to Orange County Superior Court enterprise and defraud Plaintiff.

18   104.    In June 2022, State Bar Enterprise Michael Avenatti of Orange County, California, pled guilty
19          to four counts of wire fraud in violation of 18 U.S.C. § 1343 in U.S. District Court, Central District
20          of California.

21   105.    Overtly, with intent to defraud, Carissa Andresen from Office of General Counsel used the wire
22          or caused the wire to be used by Joan Randolph, at 02:09:03 PM on June 2, 2022, through e-filing
23          transaction 21166572 in OCSC No. 30-2021-01237499 to file "Memorandum of Points and
24          Authorities by The State Bar of California" in support of demurrer. This memo contained materially
25          and deliberately false representations of law preceding January 1, 2019, with intent to defraud. A
26          hearing was scheduled October 11, 2022, at 02:00:00 PM in C11 before Judge John C. Gastelum.
27          This allegedly violated 1) 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting
28

1    Plaintiff; and 2) 18 U.S.C. § 1962(b) in that the act was intended to control Orange County Superior

2    Court enterprise and defraud Plaintiff.

3    106.    Overtly, with intent to defraud and carry on illegal activity for improper purposes unrelated to

4    merits, Grandt, Duran, and Board of Trustees used the mail July 20, 2022, to deliver a letter to

5    Plaintiff at 3501 Roselle St., Oceanside, CA 92056 from State Bar's 180 Howard St., San Francisco,

6    CA 94105 facility engaged in interstate commerce reading "RE: Your May 19 and July 12, 2022

7    Email to Chair of the Board of Trustees, Ruben Duran...Dear Mr. Beck, This letter responds to your

8    May 19 and July 12, 2022, emails to the Chair of the State Bar Board of Trustees, Ruben Duran

9    [seeking public disclosure of several parallel schemes to defraud the public involving KJC, NMC,

10   BW, TJO, Tice].... Mr. Duran has referred this matter to Office of General Counsel for response...As

11   Chair of the Board of Trustees, Mr. Duran declines to waive confidentiality...on the basis that such

12   waiver is not warranted for protection of the public...[because]...you have a pending lawsuit against

13   the State Bar...Sincerely, Suzanne C. Grandt." This allegedly violated 1) 18 U.S.C. § 1341 by using mail

14   as part of a fraudulent scheme targeting Plaintiff; 2) 18 U.S.C. § 1952(a)(3) by using the mail or a facility

15   in interstate or foreign commerce, with intent to promote, manage, establish, carry on, or facilitate

16   unlawful activity, and thereafter performing or attempting to perform the use of the mail or facility

17   for similar purposes; 3) 18 U.S.C. § 1962(d) in that it evidenced agreement to violate 18 U.S.C. §

18   1341, 18 U.S.C. 1343, and 18 U.S.C. § 1344 as set forth above; and 4) 18 U.S.C. § 1962(b) in that

19   the act was intended to control Orange County Superior Court enterprise and defraud Plaintiff.

20   107.    Overtly, with intent to defraud and suppress Plaintiff's evidence of public corruption, Grandt

21   caused Joan Randolph to use the wire July 29, 2022 from email joan.randolph@calbar.ca.gov to

22   Plaintiff    email    justintimesd@gmail.com    copying    Carissa    Andresen,    email

23   carissa.andresen@calbar.ca.gov and Grandt email suzanne.grandt@calbar.ca.gov at 02:13 PM with

24   an attached "Letter to Beck" dated July 29, 2022 from Grandt and Office of General Counsel. It says

25   "State Bar has no obligation to respond to your July 26, 2022, deposition subpoena and will not be

26   making a witness available for deposition on September 9, 2022. The State Bar will also not be

27   responding to your pending interrogatories, Request for Admissions, or Requests for Production of

28   Documents until after our motion to strike is ruled upon. Lastly, please be advised if the Court grants

1  our anti-SLAPP motion, you will be liable for the State Bar's attorney's fees and costs incurred in
2  bringing the motion…your lawsuit is barred on a number of well-established legal grounds and we
3  expect to prevail on our anti-SLAPP motion. Accordingly, I encourage you to dismiss your case now
4  and avoid potential payment of attorney's fees and costs down the road." "Sincerely, Suzanne C.
5  Grandt, Assistant General Counsel, CC: Carissa Andresen." This allegedly violated 1) 18 U.S.C. §
6  1343 by using the wire as part of a fraudulent scheme targeting Plaintiff; and 2) Cal. Pen. Cod. §
7  523 as a threatening letter to induce Plaintiff's signature under false pretenses (State Bar cannot
8  recover fees for itself under Anti-SLAPP, and the filing was 5-months late under State law).

9  108.   Overtly, with intent to defraud, Grandt, Duran, and Andresen used the wire, or caused Joan
10  Randolph to use the wire at 02:50:04 PM on August 22, 2022 through efiling transaction 41375038
11  to file "Memorandum of Points and Authorities by Kumar, Anand; Carissa Andresen; Morgenstern,
12  Eli David; Nunley, Joy; Ruben Duran; Suzanne Grandt; The State Bar of California" in which they
13  told the Court "all information concerning disciplinary investigations are confidential within the
14  Office of Chief Trial Counsel…Duran is the Chair of the State Bar Board of Trustees…Grandt and
15  Andresen are Assistant General Counsel…[Duran, Grandt, and Andresen do not] work in the Office
16  of Chief Trial Counsel." Grandt knew this was materially false, but defrauded the Court, which relied
17  upon the false representations just as with Honorable William Alsup July 20, 2017. This allegedly
18  violated 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff.

19  109.   Plaintiff's true antitrust petition accepted by California Supreme Court is confirmed after a phone
20  call with Ines Calanoc of California Supreme Court by email September 26, 2022 delivered to Ines
21  Calanoc, email ines.calanoc@jud.ca.gov, Suzanne Grandt, email suzanne.grandt@calbar.ca.gov,
22  Ellin        Davtyan,        email        ellin.davtyan@calbar.ca.gov,        Carissa        Andresen,
23  carissa.andresen@calbar.ca.gov, Ruben Duran, email ruben.duran@bbklaw.com, Ruben Duran,
24  email ruben.duran@calbar.ca.gov, Hailyn Chen, email hailyn.chen@mto.com, Eric Garner, email
25  eric.garner@bbklaw.com, and Jose Cisneros, email jose.cisneros@sfgov.org subject line: "Proof of
26  Service on Office of General Counsel, Board of Trustees, and Private Law Firm" reading "RE: Justin
27  S. Beck v. Ruben Duran (The State Bar of California) S276517…Ms. Calanoc, Thank you for your
28  call today. I can confirm, and attach for your files, that the petition for review was served on the

1    Office of General Counsel for The State Bar of California, as well as its Board of Trustees, and the
2    managing partner for private law firm Best Best and Krieger. The petition was served and filed on
3    September 17, 2022 –and again on September 21, 2022 with accompanying exhibit attachments 1-
4    3. Finally, an additional batch of exhibits were served and filed in case the Court is unable to
5    judicially notice other evidence referenced. All parties were thus served the petition and the exhibit
6    files marked [1 to 3] and then [4 of 3] with an added verification. Sincerely, Justin S. Beck" Overtly,
7    with intent to defraud, Navarette used the mail on September 27, 2022, to deliver an order striking
8    the Plaintiff's antitrust petition as being "premature" per a rubber-stamp of Chief Justice Cantil-
9    Sakauye, which contained four volumes of probative antitrust exhibits, styled *Justin S. Beck v. Ruben*
10   *Duran (The State Bar of California)* California Supreme Court Case No. S276517 and delivered it
11   to the Plaintiff at 3501 Roselle St., Oceanside, CA 92056 from California Supreme Court's 350
12   McAllister St., San Francisco, CA 94102 facility engaged in interstate commerce. This allegedly
13   violated 1) 18 U.S.C. § 1341 by using mail as part of a fraudulent scheme targeting Plaintiff; 2) 18
14   U.S.C. § 1952(a)(3) by using the mail or a facility in interstate or foreign commerce, with intent to
15   promote, manage, establish, carry on, or facilitate unlawful activity, and thereafter performing or
16   attempting to perform the use of the mail or facility for similar purposes; 3) 18 U.S.C. § 1962(d) in
17   that it evidenced agreement to violate 18 U.S.C. § 1341, 18 U.S.C. 1343, and 18 U.S.C. § 1344 as
18   set forth above; and 4) 18 U.S.C. § 1962(b) in that the act was intended to control Orange County
19   Superior Court enterprise, and State Bar Enterprise, and defraud Plaintiff and the U.S.
20   110.   Overtly, with intent to defraud, Grandt caused Joan Randolph to use the wire Tuesday, October
21   4, 2022 at 12:21 PM from email joan.randolph@calbar.ca.gov to email Plaintiff, email
22   justintimesd@gmail.com and copy Grandt, email suzanne.grandt@calbar.ca.gov to which a copy of
23   "Reply ISO demurrer" is attached which cites cases preceding January 1, 2019 when Government
24   Claims Act applied expressly to State Bar, its officers, and employees, and cases from attorneys in
25   the jurisdiction of State Bar, not lawsuits from members of the public filed under Government
26   Claims Act after January 1, 2019. Grandt used the wire or caused Joan Randolph to use the wire the
27   same day at 12:17:47 PM through efiling transaction 21217517 to file "Reply to Opposition Filed
28   by Kumar, Anand; Morgenstern, Eli David; Nunley, Joy; The State Bar of California" in Orange

County Superior Court No. 30-2021-01237499. Parties to the second communication included any internet user. These acts allegedly violated 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff.

111.     U.S. Attorneys' office for Central District of California announced October 4, 2022, State Bar Enterprise Matthew Charles Elstein of Redondo Beach in Orange County, California was sentenced to 37 months in federal prison after he pleaded guilty in November 2021 to one count of wire fraud. Mr. Elstein was convicted for "sham court documents."

112.     Released October 13, 2022, "Justice Department Finds Civil Rights Violations by Orange County, California, District Attorney's Office and Sheriff's Department" based on a thorough investigation from 2007 through 2016 that revealed systemic Fourteenth Amendment violations.

113.     Overtly, with intent to defraud Plaintiff and the U.S., Retana caused Joan Randolph to use the wire at 01:08 PM on October 17, 2022, to deliver "Antitrust Determination 2022-0001" to Plaintiff, email justintimesd@gmail.com which was "made pursuant to California Supreme Court Administrative Order 2017-09-20." In one part, the same order reads "Actions of the State Bar that have the effect of advancing the interests of attorneys without a clear benefit to the public must be scrutinized closely for potential antitrust violations." The determination file from Retana, however, frivolously reflects removal or ignorance of all four volumes of probative exhibits after Joan Randolph coordinated review by Robert Retana commencing September 19, 2022, at 07:04:00 AM using the wire. Mr. Retana writes "Petition for Review of Per Se + Alleged Antitrust Violations Presented by Member of the Public"…alleges that OGC and BOT Board each lack direct oversight in regulation despite being controlled by a majority of active market participants…No state actor may claim sovereign immunity as of 2015 under binding decisional law of the highest Court in the United States…the State Bar "is not operated in a manner consistent with public statements made by the Chairman of the Board of Trustees…Petitions Argument section states various legal conclusions citing *North Carolina State Board of Dental Examiners v. FTC* (2015) 547 U.S. 494…allegations of racketeering, money laundering, wire fraud, and mail fraud." Mr. Retana calls these allegations "gratuitous" before categorizing all operational decisions of State Bar, which are expressly subject of Government Claims Act and federal antitrust laws as they are not legislative or

3:22-CV-01616-BAS-DDL

1     acts of California Supreme Court as sovereign, as being immune because "U.S. Supreme Court has

2     held that antitrust laws do not apply to state legislative enactments, regardless of anti-competitive

3     intent or effect. (See, e.g., *Parker v. Brown* (1943) 317 U.S. 341, 350-51)." This allegedly violated

4     1) 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff; 2) 18 U.S.C.

5     § 371 in that it evidenced conspiracy to defraud U.S. by two or more persons: Navarette and Retana;

6     and 3) 18 U.S.C. § 1962(b) in that the act was intended to control the Orange County Superior Court

7     enterprise, State Bar Enterprise and defraud Plaintiff and the U.S.

8     114.   Overtly, with intent to defraud, Retana used the wire on October 17, 2022, at an unknown time

9     "VIA EMAIL TO JORGE.NAVARETTE@JUD.CA.GOV" addressed to "Jorge E. Navarette,

10    Supreme Court Clerk and Executive Officer, Supreme Court of California, 350 McAllister Street,

11    San Francisco, CA 94102-4797…RE: State Bar Antitrust Determination 2022-0001…Dear Mr.

12    Navarette: Pursuant to Supreme Court Administrative Order 2017-09-20 [State Bar Antitrust

13    Policy], the State Bar of California hereby submits to the Court the enclosed Antitrust Determination

14    issued on October 17, 2022. The Requestor has 60 days from October 17th to file a Petition for

15    Review pursuant to Rule 9.13 of the California Rules of Court. Should you have any questions,

16    please do not hesitate to contact me at 415-538-2337 or robert.retana@calbar.ca.gov . Sincerely,

17    Robert G. Retana, Deputy General Counsel." This was delivered by Retana to Navarette from the

18    facility engaged in interstate commerce 180 Howard St., San Francisco, CA 94105. This allegedly

19    violated 1) 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff; 2)

20    18 U.S.C. § 1952(a)(3) by using the mail or a facility in interstate or foreign commerce, with intent

21    to promote, manage, establish, carry on, or facilitate unlawful activity, and thereafter performing or

22    attempting to perform the use of the mail or facility for similar purposes; 3) 18 U.S.C. § 1962(d) in

23    that it evidenced agreement to violate 18 U.S.C. § 1341, 18 U.S.C. 1343, and 18 U.S.C. § 1344 as

24    set forth above; 4) 18 U.S.C. § 371 in that it evidenced conspiracy to defraud U.S. by two or more

25    persons: Navarette and Retana; and 5) 18 U.S.C. § 1962(b) in that the act was intended to control

26    the Orange County Superior Court enterprise, State Bar Enterprise and defraud Plaintiff and the U.S.

27    115.   Overtly, with intent to defraud, Navarette used the wire, or caused the wire to be used, October

28    18, 2022, at unknown time using TrueFiling application, where "Petition for review filed" by

30                                                          3:22-CV-01616-BAS-DDL

1  "Petitioner: Justin S. Beck" which was not authorized by the Plaintiff resulted in new case S276939.

2  At or around the same date and time, actual case S276517 was manipulated in TrueFiling to remove

3  three of four exhibit volumes, also with intent to conceal the schemes. Parties to the communication

4  included any internet user in TrueFiling. This allegedly violated 1) 18 U.S.C. § 1343 by using the

5  wire as part of a fraudulent scheme targeting Plaintiff; and 2) 18 U.S.C. § 371 in that it evidenced

6  conspiracy to defraud U.S. by two or more persons: Navarette and Retana.

7  116.    Overtly, using the wire on October 19, 2022 at 03:45 PM, Orange County District Attorney's

8  Office from email victimsrightsliaison@da.ocgov.com wrote to Plaintiff, justintimesd@gmail.com

9  reading: "Dear Mr. Beck, I am the Victims' Rights Liaison and my role is to address victims'

10  concerns. I reviewed [your allegations and Court of Appeal findings]. First, if you believe you or

11  your family are in danger, please contact your local police department to inform them of any threats

12  to your safety...allegations you put forth involve federal statutes...Orange County District

13  Attorney's Office does not have jurisdiction over federal crimes." This person knew Plaintiff was in

14  danger and had read Court of Appeal's conclusions that he was a victim of serial fraud by KJC, BW,

15  and TJO from local business CLC within their criminal jurisdiction, and that Plaintiff was entitled

16  to equal protection under the law. Consistent with US DOJ's findings delivered October 13, 2022,

17  OCDA chose not to help Plaintiff, and instead chose to protect members of the State Bar Enterprise,

18  willfully. This allegedly violated 1) 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme

19  targeting Plaintiff; and 2) 18 U.S.C. § 1962(d) in that it evidenced agreement to violate 18 U.S.C. §

20  1341, 18 U.S.C. 1343, and 18 U.S.C. § 1344 as set forth above.

21  117.    Federal Judge Thomas M. Durkin in No. 18 C 7686 describes in a memorandum opinion and

22  order November 2, 2022 "when attorney Thomas Girardi stole some of the money five of his clients

23  were owed" he describes several pieces of mail or wires which the Judge concludes as being

24  "unquestionably criminal" also involving David Richard Lira and Keith Griffin of State Bar

25  Enterprise. Mr. Girardi and Mr. Lira have since been indicted on wire fraud charges violative of 18

26  U.S.C. § 1343, which allegedly was based on at least a preponderance of evidence.

27  118.    Overtly, with intent to defraud, Duran used the wire, or caused the wire to be used to disseminate

28  through Board of Trustees and The State Bar of California to every internet user published online

November 3, 2022 at https://www.calbar.ca.gov/Portals/0/documents/Open-Letter-Girardi-Disclosure-11-03-22.pdf reading: "Today, the State Bar of California is releasing information…[known to us]…over the past 40 years involving now-disbarred attorney Thomas V. Girardi…There is no excuse being offered here; Girardi caused irreparable harm to hundreds of his clients, and the State Bar could have done more to protect the public. We can never allow something like this to happen again." Parties to the communication included any internet user. This allegedly violated 1) 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff and the public; and 2) 18 U.S.C. § 1962(d) in that it evidenced agreement to violate 18 U.S.C. § 1341, 18 U.S.C. 1343, and 18 U.S.C. § 1344 as set forth above. Duran knew of the instant case, that he was concealing it with malice, and he was allowing attorney fraud to happen again, willfully.

119.    After November 29, 2022, letter from Plaintiff explicitly warning Navarette of potential obstruction of justice violative of 18 U.S.C. § 1503 and the pendency of the instant case, a petition to U.S. Congress, and FTC/DOJ complaints under 15 U.S.C. § 1, Navarette overtly obtained or manufactured one day later on November 30, 2022 a fraudulent "En Banc" decision denying review of Plaintiff's obstructed petition in unauthorized case S76939 and affixed a rubber stamp signature of Chief Justice Cantil-Sakauye thereto with intent to defraud Plaintiff and the U.S. Navarette then used the mail and delivered this fraudulent "En Banc" order to the Plaintiff at 3501 Roselle St., Oceanside, CA 92056 from the 350 McAllister St., San Francisco, CA 94102 facility engaged in interstate commerce. This allegedly violated 1) 18 U.S.C. § 1341 by using mail as part of a fraudulent scheme targeting Plaintiff; 2) 18 U.S.C. § 371 in that it evidenced conspiracy to defraud U.S. by two or more persons: Navarette, Retana, and Cantil-Sakauye; 3) 18 U.S.C. § 1503(a) because Navarette knew of this action, a petition to Congress, and the pendency of federal antitrust proceedings with specificity from Plaintiff's November 29, 2022 letter; 4) 18 U.S.C. § 1952(a)(3) by using the mail or a facility in interstate or foreign commerce, with intent to promote, manage, establish, carry on, or facilitate unlawful activity, and thereafter performing or attempting to perform the use of the mail or facility for similar purposes; 5) 18 U.S.C. § 1962(d) in that it evidenced agreement to violate 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1344 as set forth above; and 6) 18 U.S.C. § 1962(b) in that the act was intended to control the State Bar Enterprise and defraud Plaintiff and the U.S.

120. Overtly, with intent to defraud, Grandt used the wire on December 12, 2022 at 10:40 AM from email suzanne.grandt@calbar.ca.gov to Plaintiff, email justintimesd@gmail.com, reading: "Mr. Beck, On December 12, 2022 at approximately 9:56 AM, you received an email containing communication that is confidential and privileged…forwarding of this email was inadvertent and should not be construed as a waiver…We request that you do not use, share, or retain any copy of this email…Please inform us immediately if you have disseminated this record to any third parties, or confirm in writing that you have not done so….immediately destroy all copies of this record in your possession and inform us in writing when you have complied with this request and no later than end of business day today. Thank you for your cooperation, Suzanne Grandt." Grandt knew she had propounded materially false statements with Morgenstern and Duran to defraud Gastelum and Plaintiff in OCSC, and this was evidence of that criminal conduct alleged. This allegedly violated 1) 18 U.S.C. § 1343 by using the wire as part of a fraudulent scheme targeting Plaintiff; 2) 18 U.S.C. § 1503(a) because Grandt knew of this action and the pendency of federal antitrust proceedings with specificity from Plaintiff's November 29, 2022, letter to her; 3) 18 U.S.C. § 1962(b) in that the act was intended to control Orange County Superior Court enterprise and defraud Plaintiff and the U.S.

121. Overtly, with intent to defraud and conceal the schemes, Davtyan used the mail on December 15, 2022, and the wire or caused the wire to be used, to Plaintiff "Via U.S. Mail and Email: justintimesd@gmail.com" and to 3501 Roselle St., Oceanside, CA 92056 from the 180 Howard St., San Francisco, CA 94105 facility engaged in interstate commerce, reading: "Dear Mr. Beck: As we have already informed you, on December 12, 2022, at approximately 9:56 a.m., you received an email containing communication that is confidential and privileged…The forwarding of this email was inadvertent…We reiterate that you have no right to share or retain the State Bar's privileged communications, and request that you identify all persons to whom you have distributed the communication and destroy any copies in your possession. Thank you for your anticipated cooperation. Sincerely, Ellin Davtyan, General Counsel." Davtyan knew wire and mail related to criminal conduct was not privileged, and that Grandt had propounded materially false statements with Morgenstern and Duran to defraud Judge John C. Gastelum and Plaintiff. She knew this was evidence of that criminal conduct alleged. This allegedly violated 1) 18 U.S.C. § 1341 by using the

1  mail as part of a fraudulent scheme targeting Plaintiff; 2) 18 U.S.C. § 1503(a) because Davtyan knew

2  of this action and the pendency of federal antitrust proceedings with specificity from Plaintiff's

3  November 29, 2022, letter to her; and 3) 18 U.S.C. § 1962(b) in that the act was intended to control

4  the Orange County Superior Court enterprise, State Bar Enterprise and defraud Plaintiff and the U.S.

5  122.    Plaintiff delivered a public records request (DOJ PRA 2022-02717) to California Department of

6  Justice about public disclosures related to Government Claims Act litigation to the Executive Branch

7  on December 8, 2022. Overtly, between December 8, 2022, and January 5, 2023, with intent to

8  obstruct justice in this proceeding and the related case and defraud Plaintiff, the U.S., and this Court,

9  Charles Tsai transitioned from Deputy Attorney General of State of California's Executive Branch

10  to Office of General Counsel in State's Judicial Branch. On January 17, 2023 at 10:23 AM, Tsai

11  says "you may be attempting to use a prior email address of mine (Charles.Tsai@doj.ca.gov)...use

12  this email address (Charles.Tsai@calbar.ca.gov) to contact me." Charles Tsai knew that Plaintiff

13  had represented himself successfully in Court of Appeal showing at least three counts of malicious

14  prosecution in G059766, and that Plaintiff is victim of a five-year, open-ended scheme to defraud

15  that continues today. Tsai knew State Bar Enterprise had multiple open-ended schemes, too. Tsai

16  knew Plaintiff possessed overwhelming evidence of public corruption. Tsai knew Plaintiff posed a

17  threat to State Bar Enterprise interests. This act allegedly violated 18 U.S.C. § 1503(a) by corruptly

18  endeavoring to influence an officer of a U.S. Court, or corruptly influence, obstruct, or impede, or

19  endeavor to influence, obstruct, or impede the due administrative of justice, and defraud Plaintiff.

20  123.    Overtly, with intent to defraud, Tsai, Davtyan, and Retana filed a motion to dismiss this case

21  citing decisional law from cases filed by attorneys or President of U.S. with immunities that turn on

22  facts. Each deliberately misrepresented to the Court that pendency of Administrative Order 2017-

23  09-20 constituted "active state supervision" within the meaning of federal antitrust laws, which it

24  does not, and they knew was false based on the face of Order 2017-09-20 alone. Each were aware

25  of an October 14, 2021, preservation of evidence letter from Plaintiff, and that their claims of

26  immunities were legally frivolous and factually false. This allegedly violated 18 U.S.C. § 1503(a)

27  by corruptly endeavoring to influence an officer of a U.S. Court, or corruptly influence, obstruct, or

28  impede, or endeavor to influence, obstruct, or impede the due administrative of justice.

124.    After this Court ordered a TRO application at Docket #10 seeking adherence to the law and local rules by State Bar and CLC actors, and two motions for summary judgment terminated at Docket #15, Docket #26, where Plaintiff attached motion for summary judgment from OCSC that was similarly delayed under the pretenses that Plaintiff was acting in bad faith, Grandt, Duran, Charles Tsai, or others among the State Bar Enterprise overtly used the wire, or caused the wire to be used, on February 15, 2023, to direct OCSC or Gastelum reject efiling transactions which had been accepted on or around July 18, 2022, in OCSC. Each were rejected at 11:11 AM, 11:13 AM, and 11:14 AM, respectively. Davtyan, Retana, and Tsai knew Plaintiff had defeated the purported blanket immunities of every State Bar actor in those papers, and that Plaintiff presented a direct and ongoing threat to State Bar Enterprise. This allegedly violated 1) 18 U.S.C. § 1503(a) by corruptly endeavoring to influence an officer of a U.S. Court, or corruptly influence, obstruct, or impede, or endeavor to influence, obstruct, or impede the due administrative of justice because Charles Tsai and others associated with the State Bar Enterprise knew of the pendency of this action and the demand for antitrust proceedings; and 2) 18 U.S.C. § 1962(b) in that the act was intended to control Orange County Superior Court enterprise and State Bar Enterprise to defraud Plaintiff, the public, and the U.S.

## COUNT I—RICO § 1962(c)

125.    The allegations of paragraphs 1 through 124 are incorporated herein by reference.

126.    This Count is against Defendant(s) KJC, BW, and TJO (the "Count I Defendant(s).")

127.    Catanzarite Law Corporation is an enterprise engaged in and whose activities affect interstate commerce. The Count I Defendant(s) are employed by or associated with the enterprise.

128.    The Count I Defendant(s) agreed to and did conduct and participate in the conduct of the Catanzarite Law Corporation enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.

129.    Specifically, KJC, BW, TJO filed a knowingly fraudulent derivative action on September 14, 2018, against MFS using CLC for a non-shareholder to commence the scheme targeting Plaintiff.

130.    Specifically, KJC extorted O'Connor, Cooper, Higgerson, and Scudder between January 4, 2019, and January 23, 2019, in exchange of their agreement to produce false evidence targeting Plaintiff.

131. Specifically, KJC, using CLC, took over the company MFS that it was suing derivatively on or about January 23, 2019, to conceal a lack of standing, and to continue the fraudulent scheme.

132. Specifically, KJC, BW, TJO using CLC filed a knowingly fraudulent shareholder consent asserting MFS as the sole shareholder of CTI on January 28, 2019, to continue the fraudulent scheme.

133. Specifically, KJC deliberately destroyed a public merger in Canada, with shares held in the U.S., valued at approximately $261 million by asserting MFS owned CTI, and that Loesby and Western Troy had to negotiate with O'Connor as CEO of MFS and CTI, which KJC knew was materially false and part of the fraudulent scheme.

134. Specifically, KJC extorted O'Connor's signature March 19, 2019, by affidavit to obtain a temporary restraining order under knowingly false pretenses to steal more private information – namely a list of all CTI shareholders – which was successful in defrauding OCSC.

135. Specifically, KJC, BW, TJO used CLC to file a knowingly fraudulent class action against Plaintiff April 16, 2019, to continue the scheme using the stolen information obtained by TRO.

136. Specifically, KJC, BW, TJO used CLC to amend the fraudulent class action on separate factual pretenses May 15, 2019, by filing yet another knowingly fraudulent shareholder consent (conflicting with the January 23, 2019, consent, concurrently) that contained at least one forged signature (Carlos Calixto), also ignoring a class of stock KJC simply didn't agree with, to continue the scheme.

137. Specifically, after May 1, 2019, trial of fact rejected false claims, found O'Connor and Cooper responsible, KJC, TJO, and BW used CLC to amend false complaints omitting the trial conclusions.

138. Specifically, on September 6, 2019, after assuming the role of counsel for CTI fraudulently after Plaintiff resigned May 14, 2019, caused by the fraudulent scheme, KJC used CLC to sue Scottsdale Insurance Co. to stop Plaintiff's insurance coverage so he would give in to the fraudulent scheme.

139. Specifically, on August 10, 2020, KJC used CLC to file the "MFS Cross Action" to steal more information, extort others even though KJC extorted the role of counsel for MFS, and had sued MFS derivatively, compromised the false derivative MFS action without Court approval in January 2019.

140. Pursuant to and in furtherance of their fraudulent scheme, Count I Defendant(s) committed multiple related acts targeting Plaintiff of wire fraud violative of 18 U.S.C. § 1343, mail fraud violative of 18 U.S.C. § 1341, and bank fraud violative of 18 U.S.C. § 1344.

3:22-CV-01616-BAS-DDL

141.    The acts set forth within ¶ 67 (Girardi, insurance), ¶ 68 (2-count conviction, § 1343, Kang), ¶ 69 (Federal obstruction by Retana, Grandt), ¶ 70 (RICO § 1962(d) conviction by OCSC Clerk),  ¶ 71 (false derivative action), ¶ 72 (Scudder dismissal), ¶ 73 (O'Connor dismissal), ¶ 74 (Cooper dismissal), ¶ 75 (MFS consent), ¶ 76 (false 1/23/2019 consent), ¶ 77 (KJC Troy email to disrupt public merger), ¶ 78 (O'Connor, 3/19/19 false affidavit), ¶ 79 (Mesa action, later advocated by Tice), ¶ 80 (false consent, conflicting with 1/23/19 consent), ¶ 81 (Scottsdale action filed for non-client to stop Plaintiff's insurance, defraud Scottsdale), ¶ 82 (O'Connor, 11/4/19 false affidavit), ¶ 83 (O'Connor, 11/12/19 false declaration), ¶ 84 (O'Connor, 12/27/19 false declaration), ¶ 85 (Avenatti, 1-count conviction § 1343), ¶ 87 (June 16, 2020 mail RE: Carlson scheme, 9 false class actions), ¶ 88 (MFS Cross Action re-filed 8/10/20 despite the same claims' rejection with "every fiber of [Court's] being" 5/1/19, extorted role of counsel for MFS by KJC, CLC), ¶ 89 (OGC letter and lawyer solicitation tool 8/12/20, two-days after MFS Cross Action), ¶ 90 (Navarette, 9/29/20 mailer), ¶ 91 (Navarette, 3/22/21 mailer), ¶ 92 (Tice appears for Cooper 9/8/21 in false class action) above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

142.    The Count I Defendant(s) have directly and indirectly conducted and participated in the conduct of the Catanzarite Law Corporation enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

143.    As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in his business and property in that Scottsdale Insurance Co. policy depleted by $1.268 million as of July 31, 2022, continuing today, in which he is a beneficiary; he lost base earnings capacity of $325,000 annually as former CEO (past and future) directly and as victim of a "smear campaign" totaling $8,433,000 over 25-years; he shamefully was forced to use approximately $1,000,000 of inherited IRA and $365,000 in proceeds from real property to endure the predicate acts above; and he lost the actual value of his shares in the Canadian issuer Western Troy Capital Resources merger valued at $32.67 million, held in the U.S.

144.    WHEREFORE, Plaintiff requests that this Court enter judgment against the Count I Defendant(s) as follows: actual damages of $43,736,000 jointly and severally against KJC, TJO, and BW; treble damages of $131,208,000 jointly and severally against KJC, TJO, and BW; attorney's fees, pre-judgment interest, and post-judgment interest jointly and severally against KJC, TJO, and BW.

3:22-CV-01616-BAS-DDL

**COUNT II—RICO § 1962(c)**

145.    The allegations of paragraphs 1 through 144 are incorporated herein by reference.

146.    This Count is against Defendant(s) Grandt, Duran, Retana, Morgenstern, Davtyan, Cardona, and Navarette directly, with The State Bar of California and State of California liable as provided by statute on principles of *respondeat superior* (the "Count II Defendant(s).")

147.    The State Bar Enterprise is an enterprise engaged in and whose activities affect interstate commerce. The Count II Defendant(s) are employed by or associated with the enterprise.

148.    The Count II Defendant(s) agreed to and did conduct and participate in the conduct of the State Bar Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.

149.    Specifically, Morgenstern intentionally defrauded Plaintiff by mail April 3, 2020; November 21, 2021; and October 31, 2022; by coordinating and carrying on the fraudulent scheme from a facility engaged in interstate commerce against Plaintiff, and by aiding KJC, BW, TJO, and CLC. Morgenstern was allegedly bribed by KJC, or in the alternative, threatened by KJC that KJC would disclose operations of 700+ Club so Morgenstern was forced to enable and continue the scheme.

150.    Specifically, Cardona delivered email to Duran with actual knowledge of criminal activity to defraud the Plaintiff with malice on May 25, 2022, on the basis that Plaintiff was suing State Bar.

151.    Specifically, Grandt and Duran used the mail July 20, 2022, to defraud Plaintiff and carry on the knowingly illegal activity of State Bar Enterprise with malice because Plaintiff was suing State Bar.

152.    Specifically, Grandt, Duran, and Morgenstern propounded materially, knowingly false statements to defraud Plaintiff to Gastelum in OCSC No. 30-2021-01237499 to obtain sustained demurrer without leave to amend Government Claims Act litigation which was not supported by fact or law after January 1, 2019. Plaintiff was likely to prevail on summary judgment. Plaintiff alleged negligence, fraud, IIED, and corruption for which no statutory immunity exists to meet the causes of action pleaded. There was no basis or jurisdiction for Gastelum to sustain demurrer without leave to amend where Plaintiff is not an attorney and has vested rights to sue the government.

153.    Specifically, Duran used the wire with intent to defraud by coordinating Judiciary Controllers' nomination of Associate Justices Maurice Sanchez November 10, 2021, Joanne Motoike May 2,

38                                    3:22-CV-01616-BAS-DDL

1   2022, and Thomas Delaney August 8, 2022, to Fourth District, Division Three with the express

2   intent of obstructing Plaintiff's Government Claims Act litigation *ex parte*. This led to denial of writ

3   petition G061896 that challenged the illegal sustaining of demurrer, which writ petition was

4   obstructed as directed by Duran through illegal *ex parte* communications with Court of Appeal.

5   154.   Specifically, Retana used the wire to deliver a fraudulent "Antitrust Determination 2022-0001"

6   October 17, 2022, after removing or ignoring four volumes of probative exhibits with malice to carry

7   on the schemes and known antitrust violations to defraud Plaintiff and the U.S.

8   155.   Specifically, Navarette used the mail on September 29, 2020, then again March 22, 2021, to

9   carry on the knowingly illegal activity of State Bar Enterprise, conceal it, and defraud Plaintiff.

10  156.   Specifically, Navarette used the wire October 18, 2022, to file a fraudulent antitrust petition that

11  was not authorized by Plaintiff using obstructed, altered files, from Retana. Navarette then created

12  a fake case S276939 to defraud Plaintiff and the U.S. for State Bar Enterprise and personal gain.

13  157.   Specifically, Navarette responded to a warning of potential obstruction of justice delivered by

14  Plaintiff November 29, 2022, by obtaining a fraudulent "En Banc" decision November 30, 2022, on

15  an obstructed antitrust petition filed in California Supreme Court without Plaintiff's authorization.

16  158.   Specifically, Grandt used the wire December 12, 2022, to threaten Plaintiff when she

17  accidentally revealed unlawful coordination within State Bar Enterprise to defraud Plaintiff, cover

18  up the scheme, and aid KJC, BW, TJO, CLC, and Morgenstern with scheme.

19  159.   Specifically, Davtyan used the mail December 15, 2022, to threaten Plaintiff when he refused to

20  adhere to Grandt's illegal direction and fraudulent concealment under the guise of privilege because

21  Davtyan knew it proved Plaintiff's allegations of corruption and fraud within State Bar Enterprise.

22  160.   Pursuant to and in furtherance of their fraudulent scheme, Count II Defendant(s) committed

23  multiple related acts targeting Plaintiff of wire fraud violative of 18 U.S.C. § 1343, mail fraud

24  violative of 18 U.S.C. § 1341, bank fraud violative of 18 U.S.C. § 1344, carrying on illegal activity

25  from a facility engaged in interstate violative of 18 U.S.C. § 1952(a)(3), and obstruction of justice

26  violative of 18 U.S.C. § 1503(a).

27  161.   The acts set forth within ¶ 67 (Girardi, insurance), ¶ 68 (2-count conviction, § 1343, Kang), ¶ 69

28  (Federal obstruction by Retana, Grandt), ¶ 70 (RICO § 1962(d) conviction by OCSC Clerk),  ¶ 71

39                                    3:22-CV-01616-BAS-DDL

(false derivative action), ¶ 72 (Scudder dismissal), ¶ 73 (O'Connor dismissal), ¶ 74 (Cooper dismissal), ¶ 75 (MFS consent), ¶ 76 (false 1/23/2019 consent), ¶ 77 (KJC Troy email to disrupt public merger), ¶ 78 (O'Connor, 3/19/19 false affidavit), ¶ 79 (Mesa action, later advocated by Tice), ¶ 80 (false consent, conflicting with 1/23/19 consent), ¶ 81 (Scottsdale action filed for non-client to stop Plaintiff's insurance, defraud Scottsdale), ¶ 82 (O'Connor, 11/4/19 false affidavit), ¶ 83 (O'Connor, 11/12/19 false declaration), ¶ 84 (O'Connor, 12/27/19 false declaration), ¶ 85 (Avenatti, 1-count conviction § 1343), ¶ 87 (June 16, 2020 mail RE: Carlson scheme, 9 false class actions), ¶ 88 (MFS Cross Action re-filed 8/10/20 despite the same claims' rejection with "every fiber of [Court's] being" 5/1/19, extorted role of counsel for MFS by KJC, CLC), ¶ 89 (OGC letter and lawyer solicitation tool 8/12/20, two-days after MFS Cross Action), ¶ 90 (Navarette, 9/29/20 mailer), ¶ 91 (Navarette, 3/22/21 mailer), ¶ 92 (Tice appears for Cooper 9/8/21 in false class action), ¶ 93 (State Bar posts claims act form online), ¶ 94 (Sanchez nomination, 11/10/21), ¶ 95 (Plaintiff claim denial, 11/12/21), ¶ 96 (State Bar inserts Gastelum in OCSC to obstruct claims act litigation, conceal corruption), ¶ 97 (Duran false statements re: Girardi, 1/24/22 despite knowledge of MTO investigation), ¶ 98 (Andresen files "unfiled" CSC case in OCSC), ¶ 99 (Motoike nomination, 5/2/22, day of SAC in OCSC), ¶ 100 (Duran asks for briefing from BBK email), ¶ 101 (Cardona malice, ratification), ¶ 102 (Andresen VM, misrepresentation), ¶ 103 (Hackert, OCCTC disclosures RE: three KJC schemes, 6/14/22), ¶ 104 (Avenatti, 4-count conviction § 1343, 6/22), ¶ 105 (Andresen false demurrer memo 6/2/22), ¶ 106 (Duran, Board, Grandt malice, ratification 7/20/22), ¶ 107 (State Bar, Grandt, Duran malice, threat to induce signature), ¶ 108 (Grandt, Duran, State Bar materially false statements of fact and law for demurrer, 8/22/22), ¶ 109 (confirmed service of antitrust petition; stricken by alleged trust), ¶ 110 (Grandt, Morgenstern, State Bar false statements of fact of law predating 1/1/19 for demurrer, 10/4/22), ¶ 111 (Elstein conviction, 1-count § 1343, "sham court documents"), ¶ 113 (Retana material misstatements "Antitrust Determination 2022-0001," 10/17/22), ¶ 114 (Retana letter to Navarette, 10/17/22), ¶ 115 (Navarette files unauthorized case S276939 in CSC), ¶ 116 (OCDA email, 10/19/22), ¶ 117 (Girardi conduct "unquestionably criminal, 11/2/22), ¶ 118 (Duran, Board of Trustees "open letter" confession, 11/3/22), ¶ 119 (Navarette obtains fraudulent decision from unauthorized CSC case 11/30/22, sends by mail), ¶ 120

3:22-CV-01616-BAS-DDL

1    (Grandt email to conceal, threaten 12/12/22), ¶ 121 (Davtyan mailer to conceal, threaten, control

2    enterprise 12/15/22), ¶ 122 (Tsai overtly transitions from CA DOJ to OGC for State Bar, 12/22-1/23

3    to obstruct this and related case, conceal schemes and corruption, mislead Court), ¶ 123 (Tsai,

4    Davtyan, Retana mislead U.S. Court seeking to dismiss instant case), ¶ 124 (Tsai, Davtyan, or Retana

5    direct OCSC or Gastelum to remove probative corruption evidence from 30-2021-01237499,

6    2/15/23) above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

7  162.    The Count II Defendant(s) have directly and indirectly conducted and participated in the conduct

8    of the State Bar Enterprise's affairs through the pattern of racketeering and activity described above,

9    in violation of 18 U.S.C. § 1962(c).

10  163.    As a direct and proximate result of the Count II Defendants' racketeering activities and violations

11    of 18 U.S.C. § 1962(c), Plaintiff has been injured in his business and property in that he cannot get

12    D&O insurance due to six fraudulent cases filed; he lost incremental earnings capacity between his

13    base of $325,000 annually as former CEO (past and future) as direct victim of a "smear campaign"

14    totaling $27,407,250 over 25-years based on the median compensation package of a CEO in San

15    Diego deducting the base value of $325,000 annually from Count I; he lost the prospective value of

16    his shares in another transaction using his holdings in the Western Troy merger valued at $32.67

17    million as a reasonable basis; he lost the offered opportunity to work with A-List celebrity Will

18    Ferrell as Creative Director in a show he was to host and produce in 2021 and the associated value

19    thereof on his business and property in perpetuity; and he had to resign from an award-winning,

20    health technology company he founded where he was CEO, and to abandon his patent applications,

21    and the related public equity valued at $5.67 million with all related upside, recurring options, and

22    other compensation associated therewith; and lost or will lose approximately $25,000,000 from

23    damage to his credit score, special IRA value he will not receive, and other assets over 25-years; or

24    in the alternative to the above, he lost $138,889,249 as being  amount of economic damages he can

25    show by preponderance but that he will not receive in Superior Court of California due to the

26    racketeering activity to prevent him from the same judgments.

27  164.    WHEREFORE, Plaintiff requests that this Court enter judgment in his favor against Count II

28    Defendant(s) as follows: actual damages of not less than $90,723,898, up to $138,889,249 jointly

1   and severally against Grandt, Duran, Retana, Morgenstern, Davtyan, Cardona, and Navarette with

2   State Bar and State liable as provided by statutes Cal. Gov. Cod. § 815.2 or § 815.3; treble damages

3   of not less than $272,171,694, up to $416,667,747 jointly and severally against Grandt, Duran,

4   Retana, Morgenstern, Davtyan, Cardona, and Navarette with State Bar and State liable under Cal.

5   Gov. Cod. § 815.2 or § 815.3; plus, attorney's fees, pre-judgment interest, and post-judgment interest

6   jointly and severally against Grandt, Duran, Retana, Morgenstern, Davtyan, Cardona, and Navarette

7   with State Bar and State liable as provided by statutes Cal. Gov. Cod. § 815.2 or § 815.3.

8   **COUNT III—RICO § 1962(a)**

9   165.   The allegations of paragraphs 1 through 164 are incorporated herein by reference.

10   166.   This Count is against Defendant(s) Duran and State Bar directly with State of California liable

11   as provided by statute (the "Count III Defendant(s)").

12   167.   Legal Aid Association of California, run through LawHelpCA.org, is an enterprise engaged in

13   and whose activities affect interstate commerce.

14   168.   The Count III Defendant(s) used and invested income that was derived from a pattern of

15   racketeering activity in an interstate enterprise.

16   169.   Specifically, Duran acted as principal in the investment of IOLTA funds from 2018-present, a

17   portion of which Duran knew were derived from a pattern of racketeering activity described above.

18   Duran knew Girardi was engaged in "unquestionably criminal" conduct with Lira and Griffin, that

19   Avenatti, convicted of four counts of wire fraud, was too. Duran and State Bar knew of 700+ Club,

20   but conceal the operations and money, accept proceeds from it to re-distribute to Legal Aid

21   Association, *sub rosa* to members of State Bar Enterprise including Duran, and re-invest a portion

22   of the funds to conceal the nature of the activity from which the funds are derived.

23   170.   Specifically, Duran acted as principal (Chairman, Officer) in the patterns of racketeering activity

24   for 700+ Club, because Duran controls the conduct of 700+ Club in that Duran possess the power to

25   stop it or continue it at any given moment vested in him. Duran chooses to continue the racketeering

26   activity for personal gain, State Bar proceeds from IOLTA, and conceals the undue gains for himself

27   and others associated with State Bar Enterprise knowingly.

28

171.   Specifically, on July 13, 2022, Wilson and Duran delivered a letter to Senator Thomas Umberg with actual knowledge of Plaintiff's harm, seeking funds for "access to, and inclusion in, the legal system." Indeed, Duran's highest priority was, is paying State Bar Enterprise components above all.

172.   Specifically, on July 13, 2022, it was announced that State Bar secured $105 million from State's $308 billion budget from taxpayers, which funds would also be distributed to Legal Aid Association of California rather than address the systemic corruption of State Bar and known harm to Plaintiff and others. These funds were also derived from a pattern of Duran's racketeering activity, namely, misrepresentations to Legislature by wire, and concealment. https://www.calbar.ca.gov/About-Us/News/News-Releases/state-bar-secures-more-than-105-million-in-legal-aid-assistance

173.   Specifically, on July 13, 2022, it was announced that more than $50.5 million in funds from IOLTA will be distributed by Duran as principal in 2023 to Legal Aid Association of California, a portion of which was derived from a pattern of racketeering activity, which Duran knows.

174.   Pursuant to and in furtherance of their investment scheme in addition to those acts set forth above, Count III Defendant(s) committed multiple related acts of 18 U.S.C. § 1956 by promoting and carrying on illegal activity, concealing or disguising the origin of the funds invested; 18 U.S.C. § 1957 by engaging in monetary transactions in property derived from unlawful activity; and 18 U.S.C. § 1960 by operating an illegal money transmitting business involving illegal monies.

175.   The racketeering activity described above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

176.   As direct and proximate result of the Count III Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiff has been injured in his business and property in that State Bar "lacks resources" per Duran, but all the money that should be used to stop criminal activity of 700+ Club is sent to other lawyers among State Bar Enterprise and Legal Aid Association by design to allow and conceal the racketeering activity of 700+ Club, including KJC, BW, NMC, TJO, Tice. Duran prioritizes, in virtually all instances, enrichment and payment of lawyers over protection of the public while overtly claiming that protecting the public is his priority, which is fraud that harms Plaintiff. If Duran did not make investments to other lawyers, and instead invested in State Bar's primary purpose, Plaintiff would not have suffered violations from § 1962(c). Duran claims "we can

1   never let this happen again" while he was letting it "happen again," knowingly, with malice to

2   Plaintiff. Plaintiff has been injured in his business and property by violation of 18 U.S.C. § 1962(a)

3   as an alternative theory to any amount failing in Count I and Count II.

4   177.   WHEREFORE, Plaintiff requests that this Court enter judgment in his favor against Count III

5   Defendant(s) as follows: actual damages of any amount failing in Count I and Count II jointly and

6   severally against Duran and State Bar with State liable as provided by statutes Cal. Gov. Cod. §

7   815.2, § 815.3, or § 815.6; treble damages of not less than three times any amount failing in Count

8   I and Count II jointly and severally Duran and State Bar with State liable as provided by statutes

9   Cal. Gov. Cod. § 815.2, § 815.3, or § 815.6; plus, attorney's fees, pre-judgment interest, and post-

10   judgment interest jointly and severally against Duran and State Bar with State liable as provided by

11   statutes Cal. Gov. Cod. § 815.2, § 815.3, or § 815.6.

12   **COUNT IV—RICO § 1962(b)**

13   178.   The allegations of paragraphs 1 through 177 are incorporated herein by reference.

14   179.   This Count is against Defendant(s) Duran, Morgenstern, Cardona, Grandt, Retana, Navarette,

15   Davtyan, Gastelum, and Orange County Superior Court, directly with State Bar and State liable as

16   provided by statute ("Count IV Defendants").

17   180.   Orange County Superior Court is an enterprise engaged in and whose activities affect interstate

18   commerce. The enterprise can be the court system itself. *United States v. Murphy*, 768 F.2d 1518

19   (7th Cir. 1985).

20   181.   The Count III Defendant(s) acquired and maintained interests in and control of the Orange

21   County Superior Court enterprise through a pattern of racketeering activity,

22   182.   Specifically, Duran caused Sanchez's nomination November 10, 2021 (2-days before State Bar

23   claim denial); Motoike's May 2, 2022 (date of SAC in 30-2021-1237499); and Delaney's August 8,

24   2022 (date of MSJ first filed in 30-2020-01145998); then Delaney's confirmation October 11, 2022

25   (date of illegal sustained demurrer based on false representations in OCSC, Gastelum assistance) to

26   the Fourth District, Division Three which controls and presides over OCSC.

27   183.   Specifically, Duran and Grandt colluded *ex parte* by wire with Gastelum and OCSC to obstruct

28   Government Claims Act litigation for all times relevant after January 18, 2022, to defraud Plaintiff.

184. Specifically, Morgenstern and Cardona ensured the scheme would continue in OCSC, with malice, on the basis that Plaintiff was suing State Bar, KJC, BW, TJO, or CLC, to defraud Plaintiff.

185. Specifically, Grandt, Duran, and Morgenstern propounded materially false statements of fact and law to obtained "sustained demurrer without leave" from Gastelum in OCSC to defraud Plaintiff.

186. Specifically, Retana and Navarette colluded to defraud Plaintiff and the U.S. by obstructing S276517, creating unauthorized case S276939, then obtaining or creating a fraudulent CSC decision.

187. Specifically, Grandt, Retana, and/or Duran communicated *ex parte* with Fourth District, Division Three Court of Appeal Sanchez, Motoike, and Delaney to obstruct writ G061896 to defraud Plaintiff.

188. Specifically, Grandt, Retana, and/or Duran instructed State Bar Enterprise to ignore service of G061896 from TrueFiling because they knew it would be obstructed without cause because OCSC and Fourth District, Division Three were under control of Count IV Defendants to defraud Plaintiff.

189. Specifically, USA persons described above were served G061896, and downloaded the evidence.

190. Specifically, persons within OCSC refused to enter defaults for State in 30-2020-01145998 in December 2022 despite State being served physically, then electronically at least seven times.

191. Specifically, Grandt sought to control the enterprise December 12, 2022, at 09:56 AM after disclosing evidence of criminal activity alleged by Plaintiff, with intent to defraud Plaintiff.

192. Specifically, Davtyan sought further to control the enterprise December 15, 2022, to conceal Grandt's disclosure of criminal activity alleged by Plaintiff, with intent to defraud Plaintiff.

193. Specifically, Grandt, Morgenstern, Duran, they were not served in 30-2020-01145998 which they knew to be false but didn't care because they controlled OCSC and seek to control this Court.

194. Specifically, State refused to appear in OCSC within 30-2021-01237499 and 30-2020-01145998 because State knew Count IV Defendants controlled OCSC and that they would defraud Plaintiff.

195. Specifically, persons within OCSC rejected an amended complaint by asserting State was not a party in 30-2020-01145998 which they knew to be false since State had been served repeatedly.

196. Specifically, Gastelum acted in concert with other Count IV Defendant(s) with intent to defraud Plaintiff in 30-2021-01237499 for secret, illegal consideration or benefit unrelated to the merits.

3:22-CV-01616-BAS-DDL

197.     Specifically, Charles Tsai overtly caused OCSC to reject a motion for summary judgment, statement of facts, and declaration on February 15, 2023, by wire that was accepted in July 2022 to defraud Plaintiff and to conceal the racketeering activity above and filed evidence from the record.

198.     The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

199.     The Count IV Defendants have directly and indirectly acquired and maintained interests in and control of the Orange County Superior Court enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

200.     As direct and proximate result of the Count III Defendant(s)' racketeering activities and violation of 18 U.S.C. § 1962(b), Plaintiff has been injured in his business and property in that he is denied a neutral forum in Superior Court of California, and now the reviewing Fourth District, Division Three Court of Appeal which is his fundamental right as a citizen, and pursuant to his vested rights to sue State Bar, OCSC, and State to recover damages to his business and property; denied a right to petition Supreme Court to stop *per se*, federal antitrust violations by State Bar Enterprise damaging his business and property; and denied his right to obtain money judgments on the merits for non-economic or punitive damages in State Court. For these reasons, Plaintiff seeks the minimum non-economic damages he was prevented from recovering under Government Claims Act due to the racketeering activity as being at least 1X economic damages shown by a preponderance of evidence.

201.     WHEREFORE, Plaintiff requests that this Court enter judgment against Count IV Defendant(s) as follows: actual damages of $138,889,249 jointly and severally against Duran, Morgenstern, Cardona, Grandt, Retana, Navarette, Davtyan, Gastelum, and Orange County Superior Court, directly with State Bar and State liable as provided by Cal. Gov. Cod. § 815.2, § 815.3, or § 815.6; treble damages of $416,667,747 jointly and severally against Duran, Morgenstern, Cardona, Grandt, Retana, Navarette, Davtyan, Gastelum, and Orange County Superior Court, directly with State Bar and State liable as provided by Cal. Gov. Cod. § 815.2, § 815.3, or § 815.6; plus, attorney's fees, pre-judgment interest, and post-judgment interest jointly and severally against Duran, Morgenstern, Cardona, Grandt, Retana, Navarette, Davtyan, Gastelum, and Orange County Superior Court, directly with State Bar and State liable as provided by Cal. Gov. Cod. § 815.2, § 815.3, or § 815.6.

3:22-CV-01616-BAS-DDL

**COUNT V—RICO § 1962(d)**

202.　The allegations of paragraphs 1 through 201are incorporated herein by reference.

203.　This Count is against Defendant(s) Scudder, O'Connor, Higgerson, Cooper, Zakhireh, Duffy, Tice, NMC, Morgenstern, Duran, Grandt, Wilson, Gastelum, and Cardona directly with State Bar and State liable as provided by statute (the "Count V Defendant(s)").

204.　As set forth above, the Count V Defendant(s) agreed and conspired to violate 18 U.S.C. § 1962(a) (b) and (c).

205.　Specifically, Duran's agreement to violate § 1962(a) is shown by his knowledge of Girardi-Keese conduct and the "irreparable harm" it has caused "hundreds" of innocent public members according to an "open letter" from Duran for Board of Trustees published online November 3, 2022.

206.　Specifically, Duran's agreement to violate 18 U.S.C. § 1962(a) (b) and (c) is shown by his actual knowledge of the 2014 MTO investigation of State Bar and Girardi, the active concealment thereof, resulting damages to innocent non-attorneys, false statements on January 24, 2022, by wire, Duran's actual knowledge of State Bar's public harm, continuing today, here through CLC, State Bar actors.

207.　Specifically, Scudder's agreement to violate § 1962(c) is shown by his conduct for CTI prior to, then dismissal submitted January 3, 2019, in OCSC, from a false derivative action against MFS, and the subsequent filings for all times thereafter involving KJC, TJO, BW, and CLC.

208.　Specifically, Cooper, Higgerson, O'Connor's agreement to violate § 1962(c) is shown by their conduct before January 23, 2019, related to MFS and CTI followed by their dismissals from a false derivative action between January 22, 2019, and January 23, 2019, submitted by wire in OCSC.

209.　Specifically, O'Connor, Cooper, Higgerson, and Scudder's agreement to violate § 1962(c) is shown in that they "agreed to renounce" their shares of CTI "in favor of MFS" per KJC's representations in writing which each knew did not happen, and if it did, that it was fraudulent.

210.　Specifically, O'Connor, Zakhireh, and Duffy's agreement to violate § 1962(c) is shown in that each are named directors and officers of CTI on the face of a fraudulent shareholder consent dated January 23, 2019, submitted by wire in OCSC.

3:22-CV-01616-BAS-DDL

211. Specifically, O'Connor and Duffy's agreement to violate § 1962(c) is shown by false affidavits or declarations of O'Connor on March 19, 2019, November 4, 2019, November 11, 2019, and December 27, 2019, which were suborned or extorted by KJC in continuance of the scheme.

212. Specifically, O'Connor's agreement to violate § 1962(c) is shown in that he acted as proxy on May 15, 2019, for CTI shareholders after claiming those shareholders did not exist January 23, 2019, and voted shares for Duffy, and shares for Carlos Calixto whose signature was declared to be forged.

213. Specifically, NMC's agreement to violate § 1962(c) is shown in that she appeared in Court of Appeal G058700, which Court of Appeal called "meritless," concerning CLC, KJC, TJO, BW, and NMC's disqualification of representing adverse interests – then again in G059766 against Plaintiff.

214. Specifically, Tice's agreement to violate § 1962(c) is shown by his advocacy for knowingly fraudulent "class action" and "derivative" claims from Cooper (who had "agreed to renounce" her CTI shares "in favor of MFS" separately) as of September 8, 2021, after KJC, TJO, BW, NMC, and CLC were disqualified. Similar Tice conduct preceding this date unrelated to Plaintiff involving a "Noroski," and separately a "Corzo" and "Corbell Partnership" are cumulative evidence ('13-'21).

215. Specifically, Morgenstern's agreement to violate § 1962(c) and § 1962(b) is shown by mailed or wired letters to Plaintiff on April 3, 2020, November 21, 2021, and October 31, 2022, respectively.

216. Specifically, Duran's agreement to violate § 1962(c), § 1962(a), and § 1962(b) is shown by email to Andresen, Wilson, and Cardona on May 19, 2022, for a "briefing" on the illegal scheme targeting the Plaintiff concurrent to concealment of material State Bar and State liability from auditors.

217. Specifically, Duran, Morgenstern, and Grandt's agreement to violate § 1962(c) and § 1962(b) is shown by each of their propounded, materially false statements of fact and law to obtain sustained demurrer without leave in OCSC from Gastelum between June 2, 2022, and October 4, 2022.

218. Specifically, Cardona's agreement to violate § 1962(c) and § 1962(b) is shown by his email to Duran, Andresen, and Wilson on May 25, 2022, and related malice to Plaintiff.

219. Specifically, Grandt and Duran's agreement to violate § 1962(a), § 1962(b), and § 1962(c) is shown by their July 20, 2022, letter to Plaintiff.

220. Specifically, Wilson agreement to violate § 1962(a) is shown by her resignation as executive director in January 2019 "to pursue what she described as a venture mixing public and private dollars

3:22-CV-01616-BAS-DDL

with philanthropy" after leading formation of State Bar's Leadership Bank Program including the Chinese American Continental Bank, New Omni Bank, Bank of the Orient and the Taiwanese CTBC Bank Corp. This program followed Girardi-Keese partner Miller's visit to Mongolia in 2014, and concealment by Board of Trustees and Duran of Girardi's "unquestionably criminal" conduct.

221. Specifically, Gastelum's agreement to violate § 1962(c) and § 1962(b) is shown by his role in OCSC No. 30-2021-01237499, the acceptance and reliance of materially false statements of fact and law from Duran, Grandt, and Morgenstern, and the "sustained demurrer without leave" on the basis that he did not possess jurisdiction over Government Claims Act litigation, which he knew was false.

222. Specifically, Gastelum's agreement to violate § 1962(c) and § 1962(b) is shown by the rejection on February 15, 2023, of Plaintiff's filings and evidence that were accepted in July 2022 in OCSC.

223. Specifically, unnamed State persons' agreement to violate § 1962(c), § 1962(a), and § 1962(b) is shown by its refusal to appear in OCSC No. 30-2020-01145998, OCSC No. 30-2021-01237499 despite being physically served, followed by OCSC's false representation that State was not served.

224. Specifically, State Bar's agreement to violate § 1962(c), § 1962(a), and § 1962(b) is shown by all conduct of CLC and Girardi-Keese intercorporate, and all conduct of Duran, Wilson, Morgenstern, Grandt, Cardona, and Davtyan intracorporate related to Plaintiff as set forth above.

225. Specifically, unnamed State persons' agreement to violate § 1962(c), § 1962(a), and § 1962(b) is shown by Charles Tsai's overt transition from Deputy Attorney General in December 2022 to Office of General Counsel in January 2023 to appear in this proceeding to defraud Plaintiff.

226. The Count V Defendant(s) have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of an enterprise through a pattern of racketeering activity. The Count V Defendant(s) knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(a), (b), and (c), in violation of 18 U.S.C. § 1962(d).

49

3:22-CV-01616-BAS-DDL

227.    As direct and proximate result of the Count V Defendant(s)' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff has been injured in their business and property in that: CLC and State Bar have monopolized Plaintiff's due process rights in State and Federal Court in order to conceal the evidence and conduct of individual Defendants to prevent Plaintiff's judgment and mislead Courts while representing directly adverse parties again; Scudder and Aroha Holdings, Inc. were granted a judgment of $13,482.18 in OCSC despite the fraudulent nature of conduct leading thereto; State Bar has directed State not to resolve Plaintiff's Government Claims Act litigation to conceal the criminal conduct of State Bar Enterprise and *sub rosa* proceeds to individuals from IOLTA/CTA; State Bar has directed Senator Thomas Umberg and Assemblymember Laura Davies not to cause or allow California State Auditor to audit Board of Trustees' conduct after October 14, 2021 in relation to the foregoing per the Plaintiff's demand (showing that no active State supervision exists) to prevent Plaintiff from settlements or money judgments; and finally, none of the foregoing conduct after September 14, 2018 could continue without conspiracy to commit violations shown, which violations caused all damages.

228.    WHEREFORE, Plaintiff requests that this Court enter judgment against Count V Defendant(s) as follows: actual damages of $13,482.18 plus any amount failing in Count I-IV jointly and severally against Scudder, O'Connor, Higgerson, Cooper, Zakhireh, Duffy, Tice, Morgenstern, Duran, Grandt, Wilson, Gastelum, and Cardona directly with State Bar and State liable as provided by Cal. Gov. Cod. § 815.2, § 815.3, or § 815.6; treble damages of $40,446.54 plus any amount failing in Count I-IV jointly and severally against Scudder, O'Connor, Higgerson, Cooper, Zakhireh, Duffy, Tice, Morgenstern, Duran, Grandt, Wilson, Gastelum, and Cardona directly with State Bar and State liable as provided by Cal. Gov. Cod. § 815.2, § 815.3, or § 815.6; plus, attorney's fees, pre-judgment interest, and post-judgment interest jointly and severally against Scudder, O'Connor, Higgerson, Cooper, Zakhireh, Duffy, Tice, Morgenstern, Duran, Grandt, Wilson, Gastelum, and Cardona directly with State Bar and State liable as provided by Cal. Gov. Cod. § 815.2, § 815.3, or § 815.6.

### COUNT VI—CALIFORNIA GOVERNMENT CODE § 815.6

229.    The allegations of paragraphs 1 through 228 are incorporated herein by reference.

230.    This Count is against Defendants OCDA, State Bar, and State ("Count VI Defendant(s)").

3:22-CV-01616-BAS-DDL

231.   "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Cal. Gov. Cod. § 815.6.

232.   "Enactment" means a constitutional provision, statute, charter provision, ordinance, or regulation. Cal. Gov. Cod. § 810.6.

233.   OCDA, State Bar, and State each had mandatory duty under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution to Plaintiff.

234.   OCDA, State Bar, and State each failed to discharge the duty to Plaintiff.

235.   As direct and proximate result of Count VI Defendant(s) violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Plaintiff suffered irreparable harm.

236.   As direct and proximate result of Count VI Defendant(s) violation Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Plaintiff suffered: (1) pain and suffering; (2) severe emotional distress; (3) delays in a surgery causing 20% loss of his left arm forever; (4) a new onset seizure in December 2022; (5) loss of enjoyment of life, consideration of suicide; (6) severe grief in losing both of his parents and a mentor, exacerbated by violation of his right to equal protection under the law; (7) humiliation, loss of friends, and colleagues; (8) loss in faith and trust in government; (9) disenfranchisement as a former voting citizen.

237.   WHEREFORE, Plaintiff requests this Court enter judgment against Count VI Defendant(s) as follows: any business and property damages failing as set forth in Counts I-IV, and not less than 1X and up to 10X business and property damages in Counts I-IV as non-economic damages against OCDA, State Bar, and State jointly and severally.

## COUNT VII—CALIFORNIA GOVERNMENT CODE § 815.3

238.   The allegations of paragraphs 1 through 237 are incorporated herein by reference.

239.   This Count is against Defendants Duran, State Bar, and State (the "Count VII Defendant(s)").

240.   Cal. Gov. Cod. § 815.3 causes liability to State Bar and State for official conduct of Duran and those supervised by him for intentional infliction of emotional distress against Plaintiff.

241. Elected official Duran, those under Duran's supervision being Cardona, Wilson, Davtyan, Grandt, Retana, and Morgenstern, State Bar, and State each acted intentionally or recklessly.

242. Duran, and one or more of those under Duran's supervision as set forth above acted extremely or outrageously.

243. Plaintiff suffered severe emotional distress for all times relevant and had to be medicated for it as direct and proximate cause, then had to cease taking that medication due to a new onset seizure. Plaintiff experienced shock, worry, grief, fear, anguish, shame, humiliation, anxiety, and nervousness. Plaintiff has feared and fears homelessness as direct and proximate result of Duran's official conduct while Duran purports to solve homelessness for others and Plaintiff is disregarded with malice. Plaintiff has experienced shock at the utter lack of empathy and disregard of Plaintiff, particularly when compared to public statements made by Duran juxtaposed to Plaintiff's treatment. Plaintiff suffers from severe anxiety, taking on the government bound to protect him by law, with constant oppression and overt concealment of evidence under Duran's direct supervision. Plaintiff is under constant nervousness that Duran's outrageous, extreme conduct will further harm Plaintiff, his family, and his well-being. Plaintiff has, at times, feared for his own life in that others have been allegedly murdered trying to stop corruption of State Bar and California Courts.

244. The conduct of Duran, and one or more of those under Duran's supervision, were the cause of severe emotional distress for Plaintiff.

245. WHEREFORE, Plaintiff requests this Court enter judgment against Count VII Defendant(s) as follows: any business and property damages failing as set forth in Counts I-IV, plus not less than 1X and up to 10X all business and property damages set forth in Counts I-IV as non-economic damages against State and State Bar, jointly and severally.

### COUNT VIII—42 U.S.C. § 1983—FIRST AMENDMENT—CITIZEN PLAINTIFF

246. The allegations of paragraphs 1 through 245 are incorporated herein by reference.

247. This Count is against Defendants Duran and Grandt (the "Count VIII Defendant(s)").

248. Under the First Amendment, a citizen has the right to petition the government for redress of grievances.

249.     Duran and Grandt retaliated against Plaintiff for exercising a constitutional right to petition the government for redress of grievances.

250.     Plaintiff was engaged in a constitutionally protected activity.

251.     Duran and Grandt's actions against the Plaintiff would chill a person of ordinary firmness from continuing to engage in the protected activity.

252.     Plaintiff's protected activity was a substantial or motivating factor in Duran and Grandt's conduct.

253.     WHEREFORE, Plaintiff requests this Court enter judgment against Count VIII Defendant(s) as follows: not less than 1X and up to 10X business and property damages set forth in Counts I-IV as non-economic damages against Duran and Grandt, jointly and severally, and punitive damages.

### COUNT IX—42 U.S.C. § 1983—JUDICIAL DECEPTION

254.     The allegations of paragraph 1 through 253 are incorporated herein by reference.

255.     This Count is against Defendants Duran, Grandt, and Retana (the "Count IX Defendant(s)").

256.     In order to prevail on a judicial deception claim, a plaintiff must prove that "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). If a state official "submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth, ... he cannot be said to have acted in a reasonable manner, and the shield of qualified immunity is lost." *Chism v. Washington State*, 661 F.3d 380, 393 (9th Cir. 2011) (quoting *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991) ). *Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018)

257.     Duran, Grandt, and Retana deliberately fabricated evidence or recklessly disregard the truth.

258.     The deliberate fabrication of evidence or reckless disregard of the truth by Duran, Grandt, and Retana caused the Plaintiff's deprivation of liberty.

259.     WHEREFORE, Plaintiff requests this Court enter judgment against Count IX Defendant(s) as follows: $138,889,249 as being the actual economic damages he showed in OCSC before deprivation of his liberty; not less than 1X and up to 10X this amount as non-economic damages against Duran, Grandt, and Retana, jointly and severally, and punitive damages.

## PLAINTIFF DEMANDS TRIAL BY JURY

260.    For the foregoing reasons, Plaintiff requests the Court order judgment in his favor.

261.    Plaintiff seeks all damages set forth above, treble damages, non-economic damages, punitive damages, attorney's fees, pre-judgment interest, and post-judgment interest plus any other relief the Court deems just.

262.    If Plaintiff is successful in proving State Bar associated culpable persons are involved in conduct violative of RICO, that conduct infects and affects not less than $3.63 trillion in annual U.S. commerce, at least 39 million USA citizens and families, and California's $308 billion annual budget. But for Plaintiff, the violations would continue. Plaintiff respectfully asserts he is doing a public service in his own pursuit of justice, and that it should not be arbitrarily minimized or demeaned under the circumstances by anyone.

263.    Plaintiff seeks appointment of racketeering investigator assigned by United States Department of Justice in Washington, DC under 18 U.S.C. § 1968 against The State Bar of California for cause. Plaintiff seeks injunctive relief to restrain the ongoing violations of law against him under F.R.Civ.P. 65. Plaintiff seeks prevention and restraining orders under 18 U.S.C. § 1964(a) for culpable person Defendants to divest himself or herself of any interest, direct or indirect, in any enterprise and to impose restrictions on the future activities or investments of such persons, and to prohibit each from engaging in the same type of endeavors as the enterprise engaged in, or to order dissolution or reorganization of the enterprise. In the alternative, Plaintiff seeks USAG to take these actions.

264.    CERTIFICATION AND CLOSING. Under F.R.Civ.P. 11, by signing below, I certify to the best of my knowledge, information, and belief, that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support[]; and (4) the complaint otherwise complies with the requirements of Rule 11.

February 26, 2023

Justin S. Beck

*In Propria Persona*

54

3:22-CV-01616-BAS-DDL

## **PROOF OF SERVICE**

I, Justin S. Beck, hereby declare: that I am over 18 years of age and am a party to this action acting *In Propria Persona*, and that my address is 3501 Roselle St., Oceanside, CA 92056.

On February 27, 2023, I served one copy of the following document:

**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Participants in the case who are registered CM/ECF users will be served.

*See the CM/ECF service list.*

On the parties listed below:

| | |
|---|---|
| State of California | AGElectronicService@doj.ca.gov |
| Governor of California | govlegalunit@gov.ca.gov |
| California Senate Judiciary Committee | sjud.fax@sen.ca.gov |
| The State Bar of California | serviceofprocess@calbar.ca.gov |
| Orange County Superior Court | deborah.brown@jud.ca.gov |
| Orange County District Attorney's Office | response@ocgov.com |
| Jim Travis Tice | jtt@tice.lawyer |
| John C. Gastelum | john.c.gastelum@jud.ca.gov |
| Jorge E. Navarette | jorge.navarette@jud.ca.gov |

U.S. Department of Justice
United States Attorney General
Merrick Garland, AG
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

U.S. Department of Justice
Public Integrity Section
Corey Amundson, Chief
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

By electronic mail by personally transmitting a true copy thereof via an electronic email service connected to the internet, addressed to the email address listed above.    [X]

By United Parcel Service, Federal Express, or U.S. Priority Mail to the addresses shown.    [X]

Justin S. Beck

POS   1                                3:22-CV-01616-BAS-DDL