Justin S. Beck
3501 Roselle St.,
Oceanside, CA 92056
760-449-2509
justintimesd@gmail.com
*In Propria Persona*

**FILED**

APR 1 0 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ 4AV _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN S. BECK,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF CALIFORNIA; THE STATE BAR OF CALIFORNIA; SUZANNE GRANDT; RUBEN DURAN; ELI DAVID MORGENSTERN; KENNETH CATANZARITE,<br><br>Defendants,<br><br>UNITED STATES ATTORNEY GENERAL; UNITED STATES OF AMERICA<br><br>Nominal Defendants | Case No.: 3:23-CV-0164-AGS-DDL<br><br>Judge:    Hon. Andrew G. Schopler<br><br>**PLAINTIFF JUSTIN S. BECK'S OPPOSITION TO DEFENDANT KENNETH J. CATANZARITE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Related to Docket #20<br><br>Hearing Date: May 9, 2023<br><br>Action Filed: January 30, 2023<br><br>Trial Date:    None Set |

i                                   3:23-CV-0164-AGS-DDL

1

TABLE OF CONTENTS

2   I.    INTRODUCTION………………………………………………..…………….1

3   II.   BACKGROUND INFORMATION………………….......................................2-9

4   III.  ARGUMENT…………………………………..…………………..….……10-19

5         A. Short and Plain Statement will Not Suffice for RICO Based on Fraud Allegations

6         B. FAC and RICO Case Statement Sufficiently Plead Facts to State Claims

7              1. Legal Standard

8              2. Plaintiff States Claims Under 18 U.S.C. § 1962(b)

9                   a. MFS is a Corporation and Enterprise

10                  b. Plaintiff Properly Alleges PORA (Beyond State Personal Injury Case)

11                  c. Plaintiff Has Standing to Sue Catanzarite Under § 1962(b)

12             3. Plaintiff's RICO Claims Involve Other Injuries, Facts, Defendants, and Relief

13             4. Plaintiff Must Be Allowed to Amend as a Matter of Law

14             5. Court Must Convert Motion to Dismiss to Summary Judgment Opportunity

15  IV.   CONCLUSION ………………………………..………………………..…………….20

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

Cases—State

*Action Apartment Ass'n, Inc. v. City of Santa Monica,* ………………..……………………..…….…14

    41 Cal. 4th 1246 (2007)

*Bingham v. Kearney,* …………………………………….………..……………………….……..18

    136 Cal. 175, 177 [68 P. 597]

*Kimmel v. Goland,* …………………………………………………………………………….14

    51 Cal.3d 202, 204 (Cal. 1990)

*Palodini v. Municipal Markets Co.,* ………………………………………….………………….18

    185 Cal. 672 [200 P. 415]

*People v. Persolve,* ………………………………………………………….…………………14

    218 Cal.App.4th 1267, 1274 (2013)

*Tice v. Noroski (In re Estate of Schneider),* ……………………………………………………….5

    No. G047377, (Cal. Ct. App. Nov. 8, 2013)

*Quirk v. Rooney,* …………………………………………………….…………………....…….18

    130 Cal. 505 [62 P. 825]

Statutes & Rules—State

Cal. Pen. Cod. § 518…………………………………………………………………12, 13, 15

    Extortion

Cal. Pen. Cod. § 519………………………………………………………….……...……...13

    Defining Fear for Extortion

Cal. Pen. Cod. § 520……………………………………………..……………………..12, 13

    California Extortion Statutes Meet Racketeering Activity (One Year or More in Prison)

Cal. Pen. Cod. § 522………………………………………………………………....…12, 13, 15

    Extortion for Signatures

Cal. Pen. Cod. § 523…………………………………………………...……12, 13, 15

    Attempted Extortion for Signatures or Property

iii                3:23-CV-0164-AGS-DDL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Cases—Federal</u>

*Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, ………………..……...…….…17

    17 F.3d 315, 329

*Alexander Grant & Co. v. Tiffany Indus., Inc.*, …………………..……………….…………..17

    770 F.2d 717, 719 (8th Cir. 1985)

*Andrews Farms v. Calcot, Ltd.*, ……………………………………………….................11

    527 F. Supp. 2d 1239, 1256 (E.D. Cal.2007)

*Ashcroft v. Iqbal*, …………………………………………………….............11, 19

    556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed. 2d 868 (2009)

*Bell Atlantic Corp. v. Twombly*, ……………………………………………..……………10, 19

    550 U.S. 544, 555 (2007)

*Burgert v. Lokelani Bernice Pauahi Bishop Trust*, ………………………………………...…11

    200 F.3d 661, 663 (9th Cir. 2000)

*Cincinnati Gas & Elec. Co. v. General Elec. Co.*, …………………………………………..11

    656 F. Supp. 49, 85 (S.D. Ohio 1986),

*Conley v. Gibson*, ……………………………………………………..….…..……10

    355 U.S. 41, 47, 78 S.Ct. 99, 103, 2L.Ed. 2d. 80 (1957)

*Crowe v. Henry*, …………………………………………………………………17

    43 F.3d 198, 205 (5th Cir. 1995)

*Diaz v. Gates*, …………………..……………………..………………...…….17, 18

    420 F.3d 897 (9th Cir. 2004)

*Diaz v. Int'l Longshore and Warehouse Union, Local 13*, …………………………………..10

    474 F.3d 1202, 1205 (9th Cir. 2007)

*Federal Information Systems, Corp. v. Boyd*, …………………………………………..11

    753 F. Supp. 971, 974, 977 (D.D.C. 1990)

*Gadda v. Ashcroft*, ……………………..……………………………………1

    377 F.3d 934, 942-43 (9th Cir. 2004)

*Gilligan v. Jamco Dev. Corp.,* ……………………………………………………...…………10

      108 F.3d 246, 248-49 (9th Cir. 1997)

*Goldfarb v. Virginia State Bar,*……………………………………………………*passim*

      421 U.S. 773, 791, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975)

*H.J., Inc. v. Nw. Bell Tel. Co.,* …………………………….…………………...…………14

      492 U.S. 229, 238 (1989)

*Hook v. Idaho,* ……………………………………………………………………………10

      1:21-cv-00199-BLW, 3 (D. Idaho Feb. 4, 2022)

*Ikuno v. Yip,*……………………………...…………………………………...………...11

      912 F.2d at 310 (9th Cir. 1990)

*Lipton v. Pathogenesis Corp.,* ……………………………………………….…………10

      284 F.3d 1027, 1039 (9th Cir. 2002)

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,* …………………………………1, 13, 14

      431 F.3d 353, 361 (9th Cir. 2005)

*Matsuura III,* …………………………………………………………...………14

      330 F.Supp.2d at 1133

*Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.,* …………...………………..……14

      833 F.2d 1360, 1363 (9th Cir. 1987)

*Miranda v. Ponce Federal Bank,* …………………………………………….…….....*passim*

      948 F.2d 41, 44 n.3 (1st Cir. 1991)

*Odom v. Microsoft,* …………………………………………………….…………12

      486 F.3d at 548

*Pelayo v. Nestle USA, Inc. et al.,* ………………………………………….…....………10, 19

      989 F.Supp.2d 973 978 (C.D.Cal. 2013)

*Sedima, S.P.R.L. v. Imrex Co., Inc.,* ……………………………………………………...12

      473 U.S. 479, 495 (1985)

*Sever v. Alaska Pulp Corp.,* ……………………………………………….……14

      978 F.2d at 1529

*United States v. Jacobsen,* ……………………………………......………………………..11

    691 F.2d 110, 112-13 (2d Cir. 1982)

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.,*……………………………………………..*passim*

    No. 92-CV-2808, 1993 WL 8340 (N.D. Ill. Jan. 8, 1993),

    *judgment aff'd*, 20 F.3d 771 (7th Cir. 1994).

*Wool v. Tandem Computers, Inc.* …………………………………………………..……..10

    818 F.2d 1433, 1439 (9th Cir. 1987)

<u>Statutes & Rules—Federal</u>

18 U.S.C. § 1341…………………………………………………...………………7, 8, 12, 15

    Mail Fraud

18 U.S.C. § 1343……………………………………………...……………7, 8, 9, 12, 15

    Wire Fraud

18 U.S.C. § 1344………………………………………………...……………………8, 12

    Bank Fraud

18 U.S.C. § 1346……………………………………………….………...………3, 15

    Fraudulent Scheme Includes Intangible Right to Good and Honest Services in Government

18 U.S.C. § 1503(a) ………………………………………...…………..…3, 6, 7, 12, 14

    Obstruction of Justice

18 U.S.C. § 1512 ………………………………………...……………..……..……13

    Tampering with Witness, Victim, or Informant

18 U.S.C. § 1961(1) …………………………………………...……………12

    Racketeering Activity Definition

18 U.S.C. § 1961(4) …………………………………………...……………12

    Enterprise Definition

18 U.S.C. § 1961(5) …………………………………………...……………14

    Pattern of Racketeering Activity Definition

18 U.S.C. § 1962(b) ……………………………………….……………1, 11, 13, 15, 17, 18, 19

    Acquired Interests In or Control Over Enterprise Through Pattern of Racketeering Activity

F.R.Civ.P. 8(a)..................................................................................10

    Pleading Standards (Non-Fraud or Mistake)

F.R.Civ.P. 8(a)(2) .........................................................................10

    Pleading Standards (Non-Fraud or Mistake)

F.R.Civ.P. 8(d)(1) ......................................................................*passim*

    Pleading Standards (Simple, Concise, Direct)

F.R.Civ.P. 9(b) ...................................................................10, 17, 19

    Pleading Standards (Fraud or Mistake Specificity)

F.R.Civ.P. 12(b)(6) ..............................................................10, 11

    Motion to Dismiss for Inability to State a Claim

F.R.Civ.P. 12(d)...................................................................19

    Conversion of Motion to Dismiss to Summary Judgment; Parties Right to present Pertinent Material under F.R.Civ.P. 56

F.R.Civ.P. 56....................................................................19

    Motion for Summary Judgment

Other Authorities

The Structure of Modern Free Speech Doctrine: Strict Scrutiny, Intermediate Review, and "Reasonableness Balancing" Elon Law Review, Vol. 8: 291. R. Randall Kelso, Spurgeon E. Bell Distinguished Professor of Law, South Texas College of Law/Houston.

1 **I. INTRODUCTION**

2   This is a companion RICO case with varied legal theories to *Justin S. Beck v. Catanzarite Law*

3 *Corporation et al.* (3:22-CV-01616-AGS-DDL). In this case, Plaintiff alleges Kenneth J. Catanzarite is

4 an enterprise under § 1962(c) in which Duran, Morgenstern, and Grandt agreed to participate through a

5 pattern of racketeering activity causing *respondeat superior* liability to the government. It alleges under

6 § 1962(b) that Mobile Farming Systems, Inc. – a company Catanzarite is suing and tolling claims against

7 in a fraudulent derivative action that is somehow now his "client" – is an enterprise for which

8 racketeering activity was used to acquire and maintain control over to harm Plaintiff's interests.

9   Why Plaintiff is not allowed to pursue genuine claims here under Federal law based on new facts

10 for unresolved issues, and Catanzarite is allowed to conduct serial fraud amidst fifteen "cases" (see also

11 Richard Carlson) on the mere basis that he is licensed to practice law by the State Bar, is a mystery.

12   Plaintiff is victim of a pattern of racketeering activity, not protected "litigation activity." The

13 lead § 1962(c) case in the 9th is *Living Designs, Inc. v. E.I. Dupont De Nemours and Co.*, 431 F.3d 353

14 (9th Cir. 2005) (RICO enterprise consisting of a law firm engaged in "litigation activity" as being

15 racketeering). Indeed, "[m]embership in the bar is a privilege burdened with conditions." *Gadda v.*

16 *Ashcroft,* 377 F.3d 934, 942-43 (9th Cir. 2004). It is not a license to racketeer and defraud non-attorneys.

17   From at least 2007 through present according to Plaintiff's research and public records produced

18 by The State Bar of California, Kenneth J. Catanzarite has engaged in a pattern of practice using his

19 license to practice law as a racketeering license. This is not privileged activity in California or the 9th

20 Circuit. According to Wikipedia as of Saturday, April 8, 2023, "DARVO (an acronym for "deny, attack,

21 and reverse victim and offender") is a reaction that perpetrators of wrongdoing, such as sexual offenders

22 [or legal predators], may display in response to being held accountable for their behavior. Some

23 researchers indicate that it is a common manipulation strategy of psychological abusers."

24   On March 10, 2023, The State Bar of California announced it had been compromised by

25 corruption and bribery of its employees and leaders. Catanzarite allegedly bribed public employees to

26 allow his racketeering. There is no other explanation that attorneys with relatively minor infractions are

27 disbarred, and Catanzarite is allowed to do whatever he wants to whoever he wants with impunity. The

28 fraudulent nature of his conduct and racketeering, and Plaintiff's damages, are for a jury to decide.

## II.   BACKGROUND INFORMATION

Racketeering victim "<u>Chima Anyanwanu</u>. This individual was targeted by The State Bar of California enterprise related to 16 homeless people evicted from an encampment who didn't have money for a retainer. For a five-week delay related to a $4,000 payment, his license to practice law was suspended for 30-days and he was placed on probation for 2-years. According to the LA Times, "The State Bar has repeatedly failed to police prominent and wealthy members of the legal community…The bar has historically trained its firepower on individuals without the money, firm backing or political connections to put up a fight, and those lawyers are disproportionately Black men like Anyanwu." Dkt. #9, p. 14 (1:9)." (Anyanwanu allegedly didn't have deep enough pockets to grease the right palms of Office of Chief Trial Counsel or Office of General Counsel, as Mr. Catanzarite allegedly does.)

Racketeering victim "<u>Todd Mikles</u>…In Mr. Mikles case, Mr. Catanzarite visited a Richard Carlson *at his home*. Mr. Carlson testified February 12, 2020, that he did not believe he had suffered damages and was not seeking an attorney. When asked by opposing counsel why Mr. Carlson was the lead plaintiff in 9 putative class actions filed across the country for hundreds of millions of dollars, Mr. Catanzarite ["counsel" for Carlson] said these questions were harassing. Suzanne Grandt, Charles Tsai, and Ruben Duran are aware of this scheme. It is cited in Plaintiff's motion in a related case before Charles Tsai's alleged obstruction of justice. It is also subject of not less than 19 Court of Appeal rulings in Mr. Catanzarite's allegedly relentless pursuit of fraudulent judgments, extorted settlements, and deliberate obstruction of justice for personal gain unrelated to merit." Dkt. #9, p. 14 (10:20).

Racketeering victim "<u>Sanjay Bhardwaj</u>. Mr. Bhardwaj is a victim of alleged manufacturing of evidence in State Bar Court. Plaintiff possesses expert testimony showing a Judge McElroy presiding over proceedings involving an alleged 700+ Club member Paul Thorndal. Mr. Bhardwaj was disbarred, on information and belief, because he is a sole practitioner and minority – among the regular targets for The State Bar of California enterprise. McElroy is an alleged member of the Girardi sphere of influence according to other evidence in possession of Plaintiff, namely an amicus brief by Phil Kay which is allegedly corroborated by cumulative evidence the Plaintiff filed in 3:22-CV-01616-[AGS]-DDL but Tsai allegedly coerced the Court to [terminate to conceal corruption of The State Bar of California enterprise, and obstruct the fair administration of justice.] Dkt. #9, p. 14 (21:28).

1    "Common Plan #1. For the Kenneth Joseph Catanzarite enterprise, it is alleged that the plan
2    consists of filing fraudulent cases that lack standing or probable cause predicated upon the ongoing
3    protection of The State Bar of California enterprise. Examples are provided In Re Perrine, Alexandros
4    v. Cole, Edwards v. Noroski, Richard Carlson as lead plaintiff in 9 putative class actions when he did
5    not believe he had suffered damages nor did he seek an attorney when he was visited at his home by Mr.
6    Catanzarite, and then Denise Pinkerton as "attorney-in-fact" for a Roger Root, who was not a
7    shareholder but commenced a campaign of false cases for which the register of actions is in the
8    thousands targeting the Plaintiff. After the first case is filed, discovery is propounded, leading to private
9    information to which Mr. Catanzarite and his associates are allegedly not entitled, thereby causing more
10   fraudulent litigation. Declarations are provided under penalty of perjury that conflict with each other, as
11   if each case were a vacuum unrelated to its related cases. This plan is supported by deliberate
12   indifference, actual concealment, or bribery by or of Office of Chief Trial Counsel, Office of General
13   Counsel, and Board of Trustees for The State Bar of California enterprise. It is alleged this plan is
14   consistent with that of the Girardi-Keese law firm. It is alleged that Courts and judges are selected for
15   these schemes according to their willingness to permit the conduct without acting on their own volution,
16   or by *ex parte* communications involving actual exchange of consideration. It is alleged Court clerks aid
17   in this process by communicating with The State Bar of California enterprise and Kenneth Joseph
18   Catanzarite enterprise in Orange County Superior Court. It is alleged this plan is evidenced by public
19   records requests reflecting actual knowledge of The State Bar of California, and its refusal to mitigate
20   public harm, and the impunity with which the Kenneth Joseph Catanzarite enterprise conducts itself
21   against innocent members of the public." Dkt. #9, p. 70 (1:22). See also 18 U.S.C. § 1346.

22       PREDICATE ACT. On June 14, 2022, "via email only" to the Plaintiff…it was disclosed by
23   "Office of Chief Trial Counsel"…that "In Re Perrine (2007) Catanzarite did not tell the Court that his
24   client, who was declaring bankruptcy, deeded his home to Catanzarite. In bankruptcy, the person
25   declaring bankruptcy cannot sell or give away without telling the Court. Catanzarite took the property
26   to pay for his fees, but did not tell the Court about this, violating this strict rule. The Court took away
27   all of Catanzarite's fees…These acts allegedly violated 18 U.S.C. § 1503 in that they were intended to
28   obstruct justice, and they did obstruct justice." Dkt. #9, p. 17 (2:16).

1    PREDICATE ACT. On June 14, 2022, "via email only" to the Plaintiff…it was disclosed by

2    "Office of Chief Trial Counsel"…that "Catanzarite violated court rules by making statements to the

3    court without any proof.:  The Court said: "But here plaintiffs [Catanzarite] admit they violated several

4    rules. They also continued to cite the excluded evidence in their reply brief even after defendants noted

5    the error in their briefs.' The Court pointed out that Catanzarite's brief made 39 unsupported factual

6    statements, and paragraphs lacking references. Some statements were completely incorrect. **Catanzarite**

7    **does not care about the truth making statements to the Court.**" These acts were from a facility

8    engaged in interstate commerce located at 845 S. Figueroa Ave, Los Angeles, CA 90017 under 18 U.S.C.

9    § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent

10   to commit or facilitate unlawful activity." Dkt. #9, p. 17 (17:27). (Why would he care about truth, now?)

11   PREDICATE ACT. On June 14, 2022, "via email only" to the Plaintiff…it was disclosed by

12   "Office of Chief Trial Counsel"…that the "Court punished Catanzarite for saying one thing, then

13   switching his story. The court stated that **Catanzarite's case was a 'sham.'** First, Catanzarite claimed

14   that the dental practice run by Dr. Noroski and Dr. Schneider should give back money to patients who

15   had been treated at the dental office, but did not say anything was wrong with the dentistry. Then,

16   Catanzarite realized he had no case, because the plaintiffs who were former [patients] had their

17   depositions and said  they were happy with Dr. **Noroski** and happy with Dr. **Schneider.** The plaintiffs

18   dropped out and Catanzarite had no case. Catanzarite asked to file an amended complaint and now said

19   that the dental services were bad. The Court punished Catanzarite $14,000 for wasting everyone's time."

20   These acts were from a facility engaged in interstate commerce located at 845 S. Figueroa Ave, Los

21   Angeles, CA 90017 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate

22   commerce, including the mail, with intent to commit or facilitate unlawful activity." Dkt. #9, p. 17-18.

23   "Tragically, Ulrike **Schneider** died of cancer on July 10, 2009 at the age of 46. She died intestate,

24   unmarried, and without children. Ulrike's mother Erika stands to inherit the estate (Prob. Code, § 6402,

25   subd. (b)) and would ordinarily be entitled to appointment as administrator of the estate (§ 8461, subd.

26   (e)). But Erika is a resident of Germany, precluding her appointment as administrator. (§ 8402, subd.

27   (a)(4).) And prior to the recent amendment of section 8465, Erika was also precluded from nominating

28   an administrator to serve in her stead. (*Estate of Damskog* (1991) 1 Cal.App.4th 78, 79; Stats. 2012, ch.

635, § 1 [effective January 1, 2013, court may now appoint as administrator nominee of heir who is precluded from acting as administrator by reason of foreign residency].) *Tice v. Noroski (In re Estate of Schneider)*, No. G047377, (Cal. Ct. App. Nov. 8, 2013) Against this legal backdrop, two competing petitions for letters of administration were on file with the probate court as of mid-2012. One was submitted by appellant Daniel **Noroski**, Ulrike's long-term, live-in boyfriend. **Noroski** petitioned to have the public administrator (see § 7600 et seq.) appointed; the public administrator's office opposed its own appointment in this case. **The second petition was filed by respondent <u>Jim Travis Tice</u>. Although Tice himself had no special status that would have entitled him to priority for appointment (§ 8461), the <u>Tice petition was filed by the same attorneys who represented Erika in objecting to the Noroski petition.</u>** Tice sought appointment to pursue claims against Noroski and others on behalf of the estate. Noroski claimed it would be inappropriate to appoint Tice because Tice was biased against Noroski on account of Tice's relationship with Erika's law firm and his announced intention to pursue litigation against Noroski on behalf of the estate. *Tice v. Noroski (In re Estate of Schneider)*, No. G047377, (Cal. Ct. App. Nov. 8, 2013) "Catanzarite Law Corporation, Kenneth J. Catanzarite, Ronald R. Roundy and Eric V. Anderson for Petitioner and Respondent." *Tice v. Noroski (In re Estate of Schneider)*, No. G047377, (Cal. Ct. App. Nov. 8, 2013)

PREDICATE ACT. "On Friday, September 22, 2017, it was announced that Orange County Superior Court clerk Jose Lopez, Jr. was sentenced to over 11 years in federal prison for racketeering offense, violation of 18 U.S.C. § 1962(d), for a bribery scheme fixing cases. At least 1,000 cases were affected, and it is alleged that other Orange County Superior Court clerks are bribed by Kenneth J. Catanzarite and influenced by The State Bar of California's Office of General Counsel. Dkt. #9, p. 19 (8:19). [Plaintiff will show evidence that dozens of Orange County Superior Court cases involving KJC and his family may have been fixed.]

PREDICATE ACT. "11-29-2018 RENATO CORZO et al…Catanzarite Law Corporation, Kenneth J. Catanzarite, and Tim J. O'Keefe for Plaintiffs and Appellants…The trial court sustained demurrer without leave to amend, finding that the amended complaint was a "sham" pleading engineered to avoid the statute of limitations. Was it? Yes. **We agree with the trial court that Corzo's amended complaint was a sham pleading**." Dkt. #9, p. 22 (10:25). [Tice later appears in this scheme in 2021.]

1    PREDICATE ACT. "This case is before the Court on Plaintiffs Denise Pinkerton individually,
2    and as attorney in fact for Roger Root's Motion for Remand...Defendant Bank of America, N.A.
3    responded in opposition...This Case was originally filed in state court by Plaintiffs, Florida citizens,
4    alleging two counts against Bank of America...Bank of America removed the case to this Court,
5    invoking its diversity jurisdiction...Less than a month after removal and five days after Bank of America
6    answered, Plaintiffs filed a First Amended Complaint...and the Motion to Remand...on the same day.
7    The First Amended Complaint's sole purpose is to add an additional defendant and cause of action—
8    misrepresentation against Defendant Curt Radlein, a Florida citizen...Although the original complaint
9    includes numerous alleged conversations Pinkerton had with Bank of America employees, it did not list
10   Radlein...**Plaintiffs argue that Radlein is now properly (not fraudulently) joined** because Bank of
11   America cannot prove an "inability of the plaintiff to establish a cause of action against the non-diverse
12   party in state court." These acts allegedly violated 18 U.S.C. § 1503 in that they were intended to obstruct
13   justice, and they did obstruct justice. Pinkerton and Catanzarite were manipulating their pleadings to
14   defraud Bank of America, not because of any truth to their allegations, and consistent with Mr.
15   Catanzarite's patterns to defraud members of the public, banks, and Courts." Dkt. #9, p. 22-23.

16    PREDICATE ACT. "For the matter commencing with a visit by Kenneth Joseph Catanzarite to
17   Richard Carlson's home, who became the lead plaintiff despite testifying that he did not believe he had
18   suffered damages and was not seeking an attorney: On June 16, 2020, "Report of Kenneth J. Catanzarite
19   SBN: 113750" was delivered by postal mail...to "Office of Chief Trial Counsel, Intake" which
20   "Enclosed are three Reports of Judicial Sanctions and one Report of Discipline. These reports arise out
21   of my client representation in hotly contested matters...in the United States Bankruptcy Court for the
22   Southern District of Florida, where we represent directly, and by proposed classes, 14,000 adversely
23   affected investors...The key figure in the fraud is Todd A. Mikles." Kenneth J. Catanzarite knew the
24   entire series of cases were filed commencing with a visit to Richard Carlson's home, who did not believe
25   he had suffered damages according to his February 12, 2020 testimony, and was not seeking an attorney.
26   Kenneth J. Catanzarite filed 9 putative class actions on his behalf anyway...The State Bar of California
27   enterprise knew the scheme was fraudulent, too, but knew that Kenneth J. Catanzarite was among the
28   protected attorneys and the 700+ Club, so they didn't do anything, and still refuse to do anything despite

1    the ongoing harm to innocent members of the public. This letter, in addition to evidencing 18 U.S.C. §

2    1343 as alleged wire fraud and 18 U.S.C. § 1503 as alleged obstruction of justice, was also allegedly

3    violative of § 1341 in that it was delivered by certified mail, and intended to defraud, and it intended to

4    take money and property from Todd Mikles without objective probable cause." Dkt. #9, pp. 24-25.

5           PREDICATE ACT. "Related to that letter from June 16, 2020, showing the threat of continuing

6    fraud: "Kenneth Catanzarite appeals the denial of relief from a judgment of the bankruptcy court. The

7    district court affirmed the award of sanctions against Catanzarite for violating a preliminary injunction

8    that barred "the commencement of any further actions under the same or similar facts or circumstances"

9    to lawsuits he had filed against bankruptcy creditors….Catanzarite, an attorney licensed in California

10   and admitted to appear pro hac vice in the bankruptcy court…filed nine putative class action complaints

11   for the Carlson Plaintiffs in California and Utah courts against various combinations of the Mikles

12   creditors….[The bankruptcy Court told Catanzarite to stop filing cases, so he found another straw

13   plaintiff and filed more fake cases anyway.] The bankruptcy court ruled that Catanzarite, as counsel for

14   and in active concert with the Carlson plaintiffs…violated the injunction by filing a civil action and lis

15   pendens for the Looper plaintiffs…And the bankruptcy court stated that it had earlier sanctioned

16   Catanzarite for creating a website containing false and misleading statements about the Daymark

17   bankruptcy…" These acts allegedly violated 18 U.S.C. § 1343 in that they intended to deceive others

18   for money or property using the wire…These acts allegedly violated 18 U.S.C. § 1503 in that they

19   intended to obstruct justice, and they did obstruct justice. Kenneth J. Catanzarite knew the entire series

20   of cases were filed commencing with a visit to Richard Carlson's home, who did not believe he had

21   suffered damages, and was not seeking an attorney. Kenneth J. Catanzarite filed 9 putative class actions

22   on his behalf anyway and intended to defraud others using the straw litigant, Richard Carlson, just as

23   with Denise Pinkerton." Dkt. #9, pp. 29-30. [Plaintiff will provide testimony and evidence from those

24   adversely affected in trial. Here, Catanzarite asserts Plaintiff can't pursue genuine claims in two cases.]

25          PREDICATE ACT. Despite a trial of fact adjudicating the fraudulent claims and rejecting them

26   "with every fiber of [Court's] being" on May 1, 2019…"On August 10, 2020…Mr. Catanzarite and

27   Catanzarite Law Corporation filed the "MFS Cross Action" in Orange County Superior Court…It is

28   alleged that Mr. Catanzarite made contact with Office of General Counsel or Office of Chief Trial

1    Counsel who are shown to coordinate decisions to allegedly defraud the public with malice, and that

2    Mr. Catanzarite either bribed or in the alternative threatened them…It is alleged that this MFS Cross

3    Action was a deliberate act of fraud and extortion to provide cover that the issue was somehow a

4    "pending civil matter" and not part of a fraudulent scheme involving Kenneth J. Catanzarite and The

5    State Bar of California enterprise. It is alleged this overt act by Mr. Catanzarite violated 18 U.S.C. §

6    1343 in that it intended to deceive others for money or property using the wire as part of a scheme. It is

7    alleged that this overt act also violated 18 U.S.C. § 1344 in that Scottsdale Insurance Co. meets the

8    definition of a financial institution, and Mr. Catanzarite did intend to defraud the financial

9    institution…Here Mr. Catanzarite sued MFS, then took the company over in January 2019 using the

10    exculpation of [conflict waivers from] parties' defendant to a fake derivative case, then started filing

11    claims for MFS while it was separately prosecuting claims against MFS derivatively." Dkt. #9, p. 47.

12        PREDICATE ACT. Evidencing collusion, bribery, or coercion…"On August 12, 2020 [two days

13    later], Plaintiff received postal mail from The State Bar of California's Office of General Counsel

14    ("Complaint Review Unit") located at the mail facility 180 Howard St., San Francisco, CA 94105

15    engaged in interstate commerce stating that it had decided to allow the alleged criminal conduct directed

16    by Kenneth J. Catanzarite against Plaintiff, and the letter did recommend retention of more attorneys…It

17    is alleged this letter violated 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate

18    commerce, including the mail, with intent to commit or facilitate unlawful activity. Office of General

19    Counsel for The State Bar of California allegedly knew that Mr. Catanzarite was among the 700+ Club,

20    and that he was free to use Orange County Superior Court or any Federal Court to conduct schemes to

21    defraud members of the public, so Office of General Counsel sent the Plaintiff the letter from the mail

22    facility to facilitate the unlawful activity. It is alleged that this letter also violated 18 U.S.C. § 1341 in

23    that it used the mail as part of a fraudulent scheme of Mr. Catanzarite, and as part of a fraudulent scheme

24    of The State Bar of California." Dkt #9, pp. 47-48.

25        PREDICATE ACT. Evidencing collusion, bribery, or coercion again…"On May 19, 2022, from

26    Ruben Duran at the email ruben.duran@bbklaw.com (his private law firm)…to George Cardona…Leah

27    Wilson…"I would like a briefing on this when you have an opportunity, please. Thanks, Ruben." This

28    email was in response to Plaintiff's formal request on May 19, 2022…delivered to Carissa

Andresen…Ruben    Duran…Joy    Nunley…Joan    Randolph….Anand    Kumar…Kenneth
Catanzarite…Brandon Woodward…Tim James O'Keefe…and Nicole Marie Catanzarite Woodward…
with the Subject: "Clarity on Requests/Formal Request to Mr. Duran as Board of Trustees of The State
Bar of California." Therein, the Plaintiff cites the special relationship doctrine where Plaintiff is
knowingly harmed and in special relationship to each actor for The State Bar of California. He cites
California Rules of Professional Conduct 5.1 which makes The State Bar of California as law firm
responsible for each Kenneth J. Catanzarite and his associates. Therein, it is shown that Office of Chief
Trial Counsel (George Cardona), Executive Director (Leah Wilson), Board of Trustees (Ruben Duran),
and Office of General Counsel (Carissa Andresen) do coordinate decisions related to public rights and
equity, with malice. Specifically, Mr. Cardona cites the Plaintiff's Government Claims Act litigation as
being somehow connected with his duty as Chief Trial Counsel to stop the alleged serial schemes to
defraud targeting Plaintiff and targeting other members of the public independently of Plaintiff.
Specifically, Mr. Cardona's internal narrative reflects that of Mr. Catanzarite unreasonably and not the
Court orders that explicitly detail the alleged criminal conduct in possession of The State Bar of
California – the attorney allegedly engaged in serial fraud. These overt acts are alleged to have violated
18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire…§
1952(b) in that they intended to exert or maintain control of the enterprise through a pattern of
racketeering activity…§ 1952(a) which punishes the use of any facility in interstate commerce, including
the mail, with intent to commit or facilitate unlawful activity."

PREDICATE ACT. Showing the Court cannot trust Grandt or Duran either…"On August 22,
2022 at 02:50:00 PM…in Orange County Superior Court, Suzanne Grandt, Ruben Duran…."Defendant
Duran is the Chair of the Board of Trustees…Defendants Grandt and Andresen are Assistant General
Counsel…None of these new Defendants work in the Office of Chief Trial Counsel and therefore none
would have been involved in the handling of" Mr. Catanzarite. Dkt. #9, p. 58-59. [In related case 3:22-
CV-01616-AGS-DDL, non-sovereign actor Grandt purports to have "absolute prosecutorial immunity"
even though U.S. Supreme Court re-affirmed The State Bar of California is "not the sovereign," and
even though Grandt told Orange County Superior Court she was not involved in any form as a
prosecutor.]

III.    **ARGUMENT**

The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997). ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.")

If the Court does not find the FAC and Supplement sufficient yet, Plaintiff must be granted opportunity to amend. "In exercising its discretion to summarily dismiss claims on its own motion or by motion of the defendants, the Court takes into consideration that, in any case, and more so in pro se cases, the law requires that plaintiffs be given an opportunity to amend their pleadings to remedy any deficiencies that were identified during screening or after a motion to dismiss has been adjudicated. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002) ("It is not unreasonable that plaintiffs may seek amendment after an adverse ruling, and in the normal course district courts should freely grant leave to amend when a viable case may be presented."). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted)." *Hook v. Idaho*, 1:21-cv-00199-BLW, 3 (D. Idaho Feb. 4, 2022) Plaintiff can't be denied due process yet again, here.

**A. Short and Plain Statement will Not Suffice for RICO Based on Fraud Allegations**

F.R.Civ.P. 8(a)(2)'s purpose is to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2L.Ed. 2d. 80 (1957). For claims that do not involve fraud or mistake, Plaintiff need only plead a "short and plain statement of the claim showing the pleader is entitled to relief." F.R.Civ.P. 8(a). (A short and plain statement will not suffice for fraud, however).

The FAC with Dkt. #9 Supplement is "sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place, and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Wool v. Tandem Computers, Inc.* 818 F.2d 1433, 1439 (9th Cir. 1987). "The question of whether a business practice is deceptive in most cases presents a question of fact not amenable to resolution on a motion to dismiss." *Pelayo v. Nestle USA, Inc. et al.*, 989 F.Supp.2d 973 978 (C.D.Cal. 2013). Fraud allegations against Movants are not subject to dismissal.

**B. FAC and RICO Case Statement Sufficiently Plead Facts to State Claims**

1. Legal Standard

F.R.Civ.P. 12(b)(6) allows a party to assert "failure to state a claim upon which relief can be claimed" by motion. Quoting *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party" (Plaintiff). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed. 2d 868 (2009). FAC and Supplement satisfy this.

2. Plaintiff States Claims Under 18 U.S.C. § 1962(b)

"RICO prohibits the acquisition or maintenance of an interest in an enterprise engaged in interstate commerce through a pattern of racketeering activity." *Federal Information Systems, Corp. v. Boyd*, 753 F. Supp. 971, 974 (D.D.C. 1990). To have standing to assert a claim under the majority view, the plaintiff must allege that his or her injury stems not from the defendant's predicate acts, but from the defendants' acquisition or maintenance of an interest in, control over, the pertinent enterprise. *Andrews Farms v. Calcot, Ltd.*, 527 F. Supp. 2d 1239, 1256 (E.D. Cal.2007). (recognizing that to state § 1962(b) claim, plaintiff must allege that (1) defendant's activity led to its control of RICO enterprise, and (2) control resulted in injury to plaintiff.) In *Ikuno*, the Ninth Circuit relied on *Cincinnati Gas & Elec. Co. v. General Elec. Co.*, 656 F. Supp. 49, 85 (S.D. Ohio 1986), a case where a party was found to have control under § 1962(b) where it had voting rights and was directly involved in management. *Ikuno v. Yip*, 912 F.2d at 310. See also *United States v. Jacobsen*, 691 F.2d 110, 112-13 (2d Cir. 1982) (finding lease could be used to control enterprise; where here the extorted role of legal counsel was used.)

**a. MFS is a Corporation and Enterprise**

On one hand, Catanzarite wants conformance to Rule 8 with plain statements. When it suits him otherwise, he wants elaborate definitions (recall, "Catanzarite does not care about the truth when making statements to the Court.") As a non-fraud allegation, MFS "is an enterprise engaged in and whose

1   activities affect interstate commerce." Motion to Dismiss, p. 7 (2:6). FAC, ¶ 226. For the avoidance of

2   doubt, Plaintiff describes those associated-in-fact with MFS enterprise in detail and the fraudulent nature

3   of Catanzarite's conduct for all times relevant. Dkt. #9, p. 79-80. While the plain statements are enough

4   in the FAC, Plaintiff further describes MFS enterprise effects on interstate commerce – including facts

5   that did not exist when he filed his separate malicious prosecution (personal injury) action: "The Mobile

6   Farming Systems, Inc. enterprise allegedly affects interstate commerce through the depletion of the

7   Plaintiff's insurance policy by Scottsdale Insurance Co. The Mobile Farming Systems, Inc. enterprise

8   also allegedly destroyed a $261 million merger with a Canadian issuer in or around May 2019, and

9   another company started by Plaintiff in the healthcare field worth approximately $30 million at the time

10  it was destroyed in 2021. The Mobile Farming Systems, Inc. enterprise has further affected interstate

11  commerce in its ongoing impact on the Plaintiff's ability to do business or obtain property in the United

12  States and Canada." Dkt. #9, p. 90 (11:17). "An enterprise includes any individual, **corporation,**

13  association, or other legal entity, and any union or group of individuals associated in fact though not a

14  legal entity." 18 U.S.C. § 1961(4). For the MFS (a corporation) enterprise, the "definition is not very

15  demanding." *Odom v. Microsoft*, 486 F.3d at 548. Mobile Farming Systems, Inc. is an enterprise

16  engaged in and whose activities affect interstate commerce.

17                    **b. Plaintiff Properly Alleges PORA (Beyond State Personal Injury Case)**

18         It is unclear why Catanzarite cites an extortion statute that Plaintiff did not plead. Motion to

19  Dismiss, p. 7 (27:28). To constitute racketeering activity, the relevant conduct must consist of at least

20  one of the indictable predicate acts listed in 18 U.S.C. § 1961. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473

21  U.S. 479, 495 (1985) ("'[R]acketeering activity' consists of no more and no less than commission of a

22  predicate act."). Plaintiff alleges indictable predicate acts violative of 18 U.S.C. § 1341, 18 U.S.C. §

23  1343, 18 U.S.C. § 1344, Cal. 18 U.S.C. § 1503(a), Cal. Pen. Cod. §§ 518-520, 522-523 PC. FAC,

24  Supplement. Plaintiff properly pleads allegations of extortion which constitute racketeering activity

25  leading to acquisition, maintenance, or control of the Mobile Farming Systems, Inc. enterprise that

26  harmed Plaintiff's business and property (discrete of personal injuries from malicious prosecution).

27         18 U.S.C. § 1961(1) holds "racketeering activity" means (A) any act or threat
       involving…extortion…which is chargeable under State law and punishable by imprisonment for

28     more than one year.

Cal. Pen. Cod. 518(a) holds "Extortion is the obtaining of property or other consideration from another, with his or her consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right."

Cal. Pen. Cod. § 519 holds "Fear, such as will constitute extortion, may be induced by a threat of any of the following: 2. To accuse the individual threatened, or a relative of his or her, or a member of his or her family, of a crime. 3. To expose, or to impute to him, her, or them a deformity, disgrace, or crime. 4. To expose a secret affecting him, her, or them. []"

Cal. Pen. Cod. § 520 holds "Every person who extorts property or other consideration from another, under circumstances not amounting to robbery or carjacking, by means of force, or any threat, such as is mentioned in Section 519, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for two, three or four years."

Cal. Pen. Cod. § 522 holds "Every person who, by any extortionate means, obtains from another his signature to any paper or instrument, whereby, if such signature were freely given, any property would be transferred, or any debt, demand, charge, or right of action created, is punishable in the same manner as if the actual delivery of such debt, demand, charge, or right of action were obtained."

Cal. Pen. Cod. § 523 holds "(a) Every person who, with intent to extort property or other consideration from another, sends or delivers to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in Section 519 is punishable in the same manner as if such property or other consideration were actually obtained by means of such threat." Cal. Pen. Code § 523

First, Catanzarite miscasts his own alleged criminal conduct in overtaking a company he is suing (under color of official right) through alleged wire fraud and non-judicial extortion, MFS, through extortion to force corporate actions of MFS to harm Plaintiff. Plaintiff's § 1962(b) claims do not lie in the use of litigation to extort Plaintiff – this is another attempt to re-cast Plaintiff's allegations in the light Catanzarite prefers. ("Catanzarite does not care about the truth in making statements to the Court.")

Second, there is a difference between baseless, meritless litigation and fraudulent litigation (at least in California, and the Ninth Circuit). There is a difference between using a threat of law enforcement to induce conduct of defendants-turned-clients O'Connor, Cooper, and Higgerson, and meritless litigation. *Living Designs, Inc. v. E.I. Dupont De Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005) is all about a law firm engaged in "litigation activity" that was deemed properly pleaded racketeering activity in the Ninth Circuit. In fact, the RICO statute, itself, provides that conduct relating to prior litigation may constitute racketeering activity. 18 U.S.C. § 1961(1)(B) (defining racketeering activity as including an act indictable under 18 U.S.C. § 1512, which relates to tampering with a witness,

1  victim, or informant). Therefore, the district court erroneously determined that Plaintiffs' "RICO claims,

2  which are based on immune litigation conduct, fail as a matter of law." *Matsuura III,* 330 F.Supp.2d at

3  1133. *Living Designs, Inc. v. E.I. Dupont De Nemours and Co.*, 431 F.3d 353, 365 (9th Cir. 2005).

4  Showing Congress did not intend a bar license to equal racketeering license, another predicate act is

5  defined – which Plaintiff alleges several predicate acts not pleaded in State court:

6  
7  
8  
> 18 U.S.C. § 1503 **(a)** Whoever corruptly…endeavors to influence…impede any…officer in or of any court of the United States…in the discharge of his duty, or by any…communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b).

9  Litigation privilege in <u>California</u> "precludes recovery for tortiously inflicted injury resulting

10  from publications or broadcasts made during the course of judicial and quasi-judicial proceedings, but

11  [not] from tortious conduct <u>regardless of the purpose for which such conduct is undertaken</u>." *Kimmel v.*

12  *Goland*, 51 Cal.3d 202, 204 (Cal. 1990). See *People v. Persolve*, 218 Cal.App.4th 1267, 1274 (2013)

13  (holding that the litigation privilege does not apply to alleged violations of certain state and federal

14  unfair debt collection statutes); See *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th

15  1246 (2007) (the litigation privilege does not apply to criminal prosecution of perjury, false reporting,

16  and **attorney deceit** because the statutes at issue are "more specific than the litigation privilege and

17  would be significant or wholly inoperable if its enforcement were barred when in conflict with the

18  privilege.")  So no, Catanzarite's license to practice law is not a racketeering licensee California.

19  Third, allegations are properly pleaded, and there are more than two of them. There are seventy

20  two related acts – some before, during, and after Plaintiff filed a personal injury case in Orange County

21  Superior Court. A pattern is defined as "at least two acts of racketeering activity" within ten years of

22  each other. 18 U.S.C. § 1961(5). Proving two predicate acts is a necessary condition for finding a

23  violation, but may not be sufficient. *See H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989). To

24  establish a "pattern of racketeering activity," the predicate acts must be both "related" and

25  "continuous." *Id.*; *Sever v. Alaska Pulp Corp.*, 978 F.2d at 1529. Related conduct "embraces criminal

26  acts that have the same or similar purposes, results, participants, victims, or methods of commission, or

27  otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J., Inc.*, 492

28  U.S. at 240. Relatedness of the alleged or proven predicate acts is rarely an issue. *See Medallion*

*Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987) (finding alleged

1   predicate acts to be related when all were directed toward plaintiff or inducing plaintiff). Here, Plaintiff

2   alleges more than two predicate acts of racketeering activity by Catanzarite that are all directed toward

3   Plaintiff. How seventy-two related (involving similar methods, victims, and beneficiaries), well-pleaded

4   predicate acts between the FAC and Supplement are merely "legal conclusions" is unclear (except for

5   Catanzarite's legal conclusion in his Motion to Dismiss that Plaintiff's allegations are legal conclusions).

6   Finally, if it is conceded by Catanzarite that all fifteen cases against Plaintiff and Mr. Mikles are

7   meritless, that goes to communications Plaintiff received from Duran, Grandt, and Morgenstern under

8   18 U.S.C. §§ 1341/1343/1346. Any reasonable person would agree Plaintiff is the target of fraudulent

9   conduct and alleged bribery of public employees when one compares Mr. Anyanwu's suspension for a

10  $4,000 payment and two-year probation – and Catanzarite's serial fraud dating back to 2007. If there is

11  another explanation for The State Bar of California's issuance of racketeering license to Catanzarite

12  other than bribery of its employees – they can all show it to a jury. *Where there is smoke, there is fire.*

13  In summary, Plaintiff pleads racketeering activity directed at him, and the Motion to Dismiss

14  does nothing but detract the Court's attention from Plaintiff's actual allegations. FAC, Supplement.

15  ### c. Plaintiff Has Standing to Sue Catanzarite Under § 1962(b)

16  Catanzarite asserts through unfounded legal conclusions that Plaintiff lacks standing to sue under

17  § 1962(b). His arguments fail as he offers nothing but his own opinions without regard of Plaintiff's

18  pleading. As non-fraud allegation, "[Catanzarite's] racketeering activity led to control of or interests in

19  the MFS enterprise, and those interests or that control resulted in injury to Plaintiff." FAC, p. 46, ¶ 227.

20  "KJC did use the pattern of racketeering activity described above [including violations of § 1341,

21  § 1343, Cal. Pen. Cod. § 518, Cal. Pen. Cod. § 522, and Cal. Pen. Cod. § 523] before January 23, 2019,

22  to assume control of the MFS enterprise by extortion to force corporate actions, and to maintain control

23  of the MFS enterprise under color of state law and civil procedure to harm Beck." FAC, p. 46, ¶ 228.

24  "[KJC] ha[s] directly and indirectly acquired or maintained interest in or control of an enterprise

25  through a pattern of racketeering activity described above, in violation of § 1962(b)." FAC, p. 47, ¶ 234.

26  "As direct and proximate cause of Count III Defendant(s) racketeering activity and violation of

27  18 U.S.C. § 1962(b), plaintiff has been injured in his actual and prospective business and property."

28  FAC, p. 47, ¶ 235. All of the elements are properly pleaded, no matter Catanzarite's opinion of them.

1   If these short and plain statements do not suffice, Plaintiff provides extensive details on the wire

2 fraud and extortion to force actions of MFS – defendant in a fraudulent derivative action filed by KJC

3 for non-shareholder with intent to defraud – and the use of that entity to destroy Plaintiff's business and

4 property. Overt Act, FAC p. 16, ¶ 81. Overt Act, FAC p. 17, ¶ 83. Overt Act, p. 17-18, ¶ 84. Overt Act,

5 FAC p. 18, ¶ 18. Overt Act, FAC p. 19, ¶ 86. Overt Act, FAC p. 19, ¶ 87, Overt Act, FAC p. 19, ¶ 88.

6 Overt Act, p. 19, ¶ 89. Overt Act, p. 19, ¶ 90. Overt Act, p. 20, ¶ 91. Overt Act, p. 20 ¶ 92. Overt Act,

7 p. 20, ¶ 93 "working with law enforcement." FAC, p. 20, ¶ 94. FAC, p.21, ¶ 96. FAC p. 22-23, ¶ 97.

8   And Plaintiff alleges injuries caused by the control. Using the control of MFS acquired through

9 a pattern of racketeering activity, Catanzarite destroyed a merger with a Canadian issuer valued at $261

10 million. FAC p. 23, ¶ 98. It destroyed other business relationships. FAC p. 24-25, ¶ 99. KJC used the

11 control of MFS to obtain more private information so KJC could continue the fraudulent scheme. FAC

12 p. 24, ¶ 100. KJC used the control of MFS to obtain a TRO through fraud. FAC, p. 24, ¶ 101. He then

13 stole a list of CTI shareholders after using the control, which later became how he would file yet another

14 fraudulent case, later advocated by Tice. FAC p. 24, ¶ 102; p. 25, ¶ 104. He used the control to target

15 Plaintiff's insurance coverage, which caused irreparable harm to Plaintiff.  FAC, p. 25 ¶ 103 "I am

16 principal attorney of Catanzarite Law Corporation and lead counsel for Plaintiff Mobile Farming

17 Systems, Inc." which role and control was obtained through racketeering activity. FAC p. 25 ¶ 103.

18   Using the control of MFS obtained through a pattern of racketeering activity, Catanzarite refiled

19 the same fraudulent claims after Plaintiff resigned from CTI because of the fraudulent scheme. FAC p.

20 30, ¶ 113. Using the control of MFS obtained through a pattern of racketeering activity, Catanzarite filed

21 multiple sham court documents that conflicted with each other under penalty of perjury. FAC p. 30-31,

22 ¶¶ 114-16. Using control of MFS obtained through a pattern of racketeering activity, Catanzarite refiled

23 the same fraudulent claims again against Plaintiff even after they were adjudicated. FAC p. 32, ¶ 118.

24 Using the control of MFS obtained through a pattern of racketeering activity, The State Bar of California

25 refers to the series of fraudulent cases lacking standing or probable cause as a "pending civil matter" as

26 it prosecutes minority attorneys like Chima Anyanwanu with $4,000 payment delays who aided a

27 homeless encampment, or Sanjay Bhardwaj who was subject to manufactured evidence leading to his

28 disbarment for relatively minor infractions. See also Dkt. #9, p. 6-9 for Mobile Farming Systems, Inc.

1 | takeover narrative, the motivations of the parties as they relate to Mr. Catanzarite's pattern of
2 | racketeering activity. To conform further with F.R.Civ.P. 9(b), Plaintiff details extensively the
3 | communications and purpose of each. Dkt. #9, p. 30-7. Every subsequent act to destroy Plaintiff's
4 | business and property relies upon the non-judicial and judicial racketeering activity used to obtain illegal
5 | control of MFS – the company Catanzarite sued derivatively without standing, now purported "client."

6 |      Plaintiff alleges "injuries were proximately caused by a RICO person gaining an interest in, or
7 | control of, the enterprise through a pattern of racketeering activity." *Crowe v. Henry*, 43 F.3d 198, 205
8 | (5th Cir. 1995); *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 17 F.3d 315, 329.
9 | Respecting the "smear campaign" alleged (not an IIED claim, a smear campaign destroying Plaintiff's
10 | ability to do business or obtain property), *Alexander Grant & Co. v. Tiffany Indus., Inc.*, 770 F.2d 717,
11 | 719 (8th Cir. 1985) (injury to reputation of telecommunications consultant caused by "smear campaign"
12 | recoverable under RICO) is instructive. And Plaintiff's other company destroyed and lifetime business
13 | and property, although not the direct target, is also subject to RICO claims discretely of his malicious
14 | prosecution personal injuries. *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2004).

15 |      In *Fed. Info. Sys., Corp. v. Boyd*, 753 F. Supp. 971, 977 (D.D.C. 1990), the Court found extortion
16 | to force corporate actions constituted attempt to control within the meaning of § 1962(b). See also
17 | *Westways World Travel, Inc. v. AMR Corp.*, 265 F. App'x 472, 474 (9th Cir. 2008) where the Court
18 | found extortion is "racketeering activity" even if those particular parties failed to establish any acts
19 | constituting extortion as Plaintiff has. Plaintiff offers more details on racketeering to acquire and
20 | maintain interests or control of the MFS enterprise. Dkt. #9, p. 90-91. He describes injuries to business
21 | and property in detail. Dkt. #9, p. 92-4. He describes further what the control over the Mobile Farming
22 | Systems, Inc. enterprise is used for. Dkt. #9, p. 96 (1:12) including harming Plaintiff's rights in State
23 | court. Catanzarite's conclusory statements in his Motion to Dismiss are just that, ignoring the pleadings.

24 |                 3. <u>Plaintiff's RICO Claims Involve Other Injuries, Facts, Defendants, and Relief</u>

25 |      Once more, Catanzarite contends Plaintiff is splitting unresolved claims. This case is for RICO,
26 | not personal injury (malicious prosecution). It involves varied legal theories and defendants, too.

27 |      First, in *Diaz v. Gates*, the divided *en banc* 9th Circuit held that a plaintiff's pecuniary loss was
28 | a discrete "injury to business or property" that was not derivative of personal injuries suffered due to

1 │ wrongful detention (akin to three counts of malicious prosecution against Plaintiff). Regarding

2 │ Plaintiff's other destroyed company that occurred after August 12, 2020 (when fraudulent claims were

3 │ re-filed after they were adjudicated and rejected "with every fiber of [Court's] being), the court rejected

4 │ the defendant's argument that a RICO cause of action is only available to remedy injuries to business or

5 │ property interests that are the direct target of the predicate acts. *Diaz v. Gates*, 420 F.3d 897 (9ᵗʰ Cir.

6 │ 2005). Plaintiff could prevail on personal injury claims, or RICO, without foreclosing either case.

7 │      Second, [1] It is clearly established that a party may not split up a <u>single cause of action</u> and

8 │ make it the basis of separate suits, and in such case the first action may be pleaded in abatement of any

9 │ subsequent suit on the same claim. (1 C.J.S. § 102, p. 1306; *Quirk v. Rooney*, 130 Cal. 505 [62 P. 825];

10 │ *Bingham v. Kearney*, 136 Cal. 175 [68 P. 597]; *Palodini v. Municipal Markets Co.*, 185 Cal. 672 [200

11 │ P. 415].) [2] The **[24 Cal. 2d 895]** rule against splitting a cause of action is based upon two reasons: (1)

12 │ That the defendant should be protected against vexatious litigation; and (2) that it is against public policy

13 │ to permit litigants to consume the time of the courts by relitigating matters already **judicially**

14 │ **determined**, or by asserting claims which properly should have been settled in some prior action. Thus,

15 │ it is said in *Bingham v. Kearney*, supra, at page 177: "It is not the policy of the law to allow a new and

16 │ different suit between the same parties, concerning the same subject-matter, **that has already been**

17 │ **litigated**; neither will the law allow the parties to trifle with the courts by piecemeal litigation." But

18 │ Plaintiff's personal injuries for malicious prosecution are distinct of injuries to business and property

19 │ according to an *en banc* decision in the Ninth Circuit; Plaintiff did not split any single cause of action.

20 │      Third, none of Plaintiff's malicious prosecution claims (personal injury) allege bribery of public

21 │ officials, nor do they discuss Plaintiff's other company destroyed after Plaintiff's State case was filed,

22 │ nor did they allege violations of 18 U.S.C. § 1962(b)-(c) for which the U.S. District Court can issue

23 │ injunctions under 18 U.S.C. § 1964(a) (e.g., to pierce the veils and alleged fraudulent concealment of

24 │ assets and real estate acquired through alleged racketeering activity of Catanzarite, and to require

25 │ divestiture by Catanzarite of any enterprise interests, including the control of MFS still used to harm

26 │ Plaintiff). Plaintiff's personal injury case does not cite related conduct of Kenneth Joseph Catanzarite

27 │ enterprise or a related conviction for fixing cases in Orange County Superior Court under 18 U.S.C. §

28 │ 1962(d). If this Court ratifies Catanzarite's antics, Plaintiff will be unduly prejudiced in *all* his claims.

1          4. <u>Plaintiff Must Be Allowed to Amend as a Matter of Law</u>

2          F.R.Civ.P. 9(b) holds "Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a

3    party must state with particularity the circumstances constituting fraud or mistake. Malice, intent,

4    knowledge, and other conditions of a person's mind may be alleged generally. "The question of whether

5    a business practice is deceptive in most cases presents a question of fact not amenable to resolution on

6    a motion to dismiss." *Pelayo v. Nestle USA, Inc. et al.*, 989 F.Supp.2d 973 978 (C.D.Cal. 2013)

7          Whether or not he has a license to practice law (or purported racketeering license per

8    Catanzarite), Plaintiff has a right to access this Court, and the U.S. Supreme Court holds that Plaintiff is

9    not subject to the same stringent pleading standards of lawyers. *Haines v. Kerner*, 404 U.S. 519, 92 S.

10   Ct. 594 (1972). Nevertheless, Plaintiff meets very stringent standards in his FAC and RICO Case

11   Statement. Dkt. #9.

12         The Court has the framework of complaint under § 1962(b). FAC, p. 46-9. The Court has specific

13   allegations to conform with *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed. 2d

14   868 (2009). Under Iqbal's predecessor *Twombly,* "the relevant question is whether, assuming the factual

15   allegations are true, the plaintiff has stated a ground for relief that is plausible. That is, in *Twombly* 's

16   words, a plaintiff must "allege facts" that, taken as true, are "suggestive of illegal conduct." 550 U.S.,

17   at 564, n. 8, 127 S.Ct. 1955. *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) "Here, by contrast, the

18   allegations in the complaint are neither confined to naked legal conclusions nor consistent with legal

19   conduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 696-97 (2009) FAC, Supplement.

20         5. <u>Court Must Convert Motion to Dismiss to Summary Judgment Opportunity</u>

21         F.R.Civ.P. 12(d) converts the Motion to Dismiss into one for summary judgment under Rule 56

22   if "matters outside the pleadings are presented to and not excluded by the Court," as here, granting all

23   parties opportunity to present pertinent material. (Movants filed a personal injury case pleading from

24   Superior Court, here, which Catanzarite has yet to even answer after nearly 3-years; thus no "settled"

25   cause of action is "split" because this case lies in RICO and none of Plaintiff's claims are resolved)

26   Plaintiff's allegations extend *far beyond his State claims*, to another company destroyed, and other facts

27   involving alleged bribery of public employees and serial racketeering in related conduct.

28   //

                                    19                    3:23-CV-0164-AGS-DDL

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court deny the motion to dismiss from Kenneth J. Catanzarite or turn it into a motion for summary judgment and define a briefing schedule and/or evidentiary hearing. In the alternative, Plaintiff requests the Court grant Plaintiff his right to due process of law by allowing him to amend his complaint and supplemental RICO case statement, which the Court should construe liberally according to U.S. Supreme Court.

To grant the motion to dismiss from Kenneth J. Catanzarite would be akin to confirming that a license to practice law from The State Bar of California is a racketeering license, and that it is acceptable to bribe public employees. This goes against every tenet of civilized society. It is also against federal antitrust laws, which the U.S. Supreme Court confirmed in *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 135 S. Ct. 1101, 191 L. Ed. 2d 35, 83 U.S.L.W. 4110 (2015).

The State Bar of California has already publicly confessed to its own corruption. It is unconscionable that Kenneth J. Catanzarite be allowed to conduct himself similarly to Thomas V. Girardi just because he hasn't been stopped by a U.S. District Court or indicted yet for his alleged crimes. Nor is it fair to the public, courts, or legal profession that Ruben Duran, Eli David Morgenstern, and Suzanne Grandt make decisions in ratification of Kenneth J. Catanzarite's conduct just to avoid their own liability or for their own financial gains. We live in the United States, after all.

"***There can be no crime more serious than bribery***. *Other offenses violate one law while corruption strikes at the foundation of all law. Under our form of Government all authority is vested in the people and by them delegated to those who represent them in official capacity. There can be no offense heavier than that of him in whom such a sacred trust has been reposed, who sells it for his own gain and enrichment; and no less heavy is the offense of the bribe giver. He is worse than the thief, for the thief robs the individual, while the corrupt official plunders an entire city or State. He is as wicked as the murderer, for the murderer may only take one life against the law, while the corrupt official and the man who corrupts the official alike aim at the assassination of the commonwealth itself. Government of the people, by the people, for the people will perish from the face of the earth if bribery is tolerated. The givers and takers of bribes stand on an evil pre-eminence of infamy. The exposure and punishment of public corruption is an honor to a nation, not a disgrace. The shame lies in toleration, not in correction...If we fail to do all that in us lies to stamp out corruption we can not escape our share of responsibility for the guilt. The first requisite of successful self-government is unflinching enforcement of the law and the cutting out of corruption.*" Teddy Roosevelt, 1903 Address to Congress

Respectfully Submitted,

April 9, 2023,                                          Justin S. Beck, Opposing Party, Plaintiff

**PROOF OF SERVICE**

I, Brian Bargabus, hereby declare that I am over 18 years of age and am not a party to this action, and that my address is 3501 Roselle St., Oceanside, CA 92056.

On April 10, 2023, I served one copy of the following documents:

**PLAINTIFF JUSTIN S. BECK'S OPPOSITION TO DEFENDANT KENNETH J. CATANZARITE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

Participants in the case who are registered CM/ECF users will be served when these papers are filed with the Court.

*See the CM/ECF service list.*

Electronic service is scheduled for delivery April 3, 2023, to the following email addresses:

| | |
|---|---|
| Corey Amundson | corey.amundson@usdoj.gov |
| Todd Gee | todd.gee@usdoj.gov |
| Robert Heberle | Robert.heberle@usdoj.gov |
| Sean Mulryne | sean.mulryne@usdoj.gov |
| U.S. Attorney's Office | efile.dkt.civ@usdoj.gov |

By electronic mail by personally transmitting a true copy thereof via an electronic email service connected to the internet, addressed to the email address listed above [X].

I declare the foregoing to be true under penalty of perjury under the laws of the State of California and United States. I am signing this from Oceanside, California on April 9, 2023.

_____
Brian Bargabus, Declarant