1   Justin S. Beck
2   3501 Roselle St.,
    Oceanside, CA 92056
3   760-449-2509
    justintimesd@gmail.com
4   *In Propria Persona*

FILED

APR 24 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                         DEPUTY

5

**IN THE UNITED STATES DISTRICT COURT**
6   **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

7   JUSTIN S. BECK,                          )   Case No.: ~~3:22-CV-01616-AGS-DDL~~
8                                            )   3:23-CV-0164-AGS-DDL
              Plaintiff,                     )   Judge:       Hon. Andrew G. Schopler
9                                            )
        vs.                                  )   **PLAINTIFF JUSTIN S. BECK'S**
10                                           )   **OPPOSITION TO DEFENDANT STATE**
    STATE OF CALIFORNIA; THE STATE BAR )       **OF CALIFORNIA'S JOINDER TO**
11  OF CALIFORNIA; SUZANNE GRANDT;  )           **STATE BAR DEFENDANTS' MOTION**
    RUBEN DURAN; ELI DAVID                   )   **TO DISMISS**
12  MORGENSTERN; KENNETH                     )
13  CATANZARITE,                             )   [Related to Docket #13]
                                             )
14            Defendants,                    )   Hearing Date: May 9, 2023
15                                           )
    UNITED STATES ATTORNEY GENERAL; )         Time:        3:00 PM
16  UNITED STATES OF AMERICA                 )
                                             )   Courtroom:   5C, 5th Floor
17        Nominal Defendants                 )
18                                           )   Action Filed: January 30, 2023
                                             )
19                                               Trial Date:  None Set

20

21

22

23

24

25

26

27

28

                                    i                      3:23-CV-0164-AGS-DDL

1
<u>TABLE OF CONTENTS</u>

2   **MEMORANDUM OF POINTS AND AUTHORITIES**………………………….........…………1-13

3   **I.**      **INTRODUCTION**…………………………………………………..…………………........1

4   **II.**     **FACTUAL ALLEGATIONS**………………………….…………………..…………….........2

5   **III.**   **ARGUMENT**…………………………………………..…………….…......................5-13

6        **A. Rule 8 is Not the Pleading Standard for RICO or Antitrust Arising from Fraud**

7        **B. U.S. District Court has Subject Matter Jurisdiction for RICO and Antitrust**

8             1. <u>Eleventh Amendment Does Not Bar Non-Diverse Plaintiff's Suit Against State</u>

9             2. <u>U.S. District Court Has Subject Matter Jurisdiction for All of Plaintiff's Claims</u>

10            3. <u>State Fails to Address *Respondeat Superior* Liability on Joinder for Individuals</u>

11            4. <u>State Accepted Federal Funds and Distributed Them to Active Market Participants</u>

12        **C. State of California is Not Immune from Antitrust Liability Per U.S. Supreme Court**

13            1. <u>No Clearly Articulated Policy Exists for State to Enable FAC, 72 Predicate Acts</u>

14            2. <u>No Active State Supervision of State Bar Defendants or Catanzarite Exists</u>

15        **D. Plaintiff Sufficiently States Claims Against State of California**

16        **E. While Not Argued – Plaintiff Dispels the Notion of Sovereign Immunity under State Law**

17        **F. Plaintiff Corrects *Respondeat Superior* Liability for Counts V & VI**

18   **IV.**   **CONCLUSION**…………………………………………..…………….…......................13

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

### Cases – State

*Alejo v. City of Alhambra,* ............................................................................................13

    75 Cal.App.4th at p. 1194

*Barner v. Leeds,* ............................................................................................................11

    24 Cal.4th 676, 685 (2000)

*Brown v. U.S. Taekwondo,* ............................................................................................12

    11 Cal.5th 204, 209 276 Cal. Rptr. 3d 434, 483 P.3d 159 (Cal. 2021)

*Davidson v. City of Westminster,* ..............................................................................11,12

    32 Cal.3d 197, 202 (1982)

*Elton v. County of Orange,* ...........................................................................................13

    3 Cal.App.3d 1053, 1059 (1970)

*Hoff v. Vacaville Unified School Dist.,* ..........................................................................12

    19 Cal.4th 925 (1998)

*Johnson v. State,* ......................................................................................................11, 12

    69 Cal. 2d 782 (1968)

*McCorkle v. City of Los Angeles,* ..................................................................................11

    70 Cal.2d 252, 261 (1969)

*Muskopf v. Corning Hospital District,* .........................................................................2, 11

    55 Cal.2d 211 (1961)

*Rodriguez v. Inglewood Unified School District,* ..............................................................3

    186 Cal.App.3d 707 (1986)

*Rowland v. Christian,* ....................................................................................................12

    69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968)

*Scott v. County of Los Angeles,* .....................................................................................12

    27 Cal.App.4th 125 (1994)

*Tarasoff v. Regents of University of California,* ..............................................................12

    17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166] (1976)

*Thompson v. County of Alameda,* ..........................................................................................12

      27 Cal.3d 741, 751-752 [167 Cal.Rptr. 70, 614 P.2d 728] (1980)

*Wirin v. Parker,* ................................................................................................................13

      48 Cal.2d 890, 894 (1957)

### Statutes & Rules – State

Cal. Bus. & Prof. Cod. § 6068(a).........................................................................................10

Cal. Gov. Cod. § 815.............................................................................................................2

Cal. Gov. Cod. § 815.2.....................................................................................................2, 13

Cal. Gov. Cod. § 815.6.....................................................................................................2, 13

Cal. Gov. Code § 820.2........................................................................................................12

Cal. Gov. Code § 820.8........................................................................................................12

Cal. Pen. Cod. § 518.............................................................................................................4

Cal. Pen. Cod. § 522.............................................................................................................4

Cal. Pen. Cod. § 523.............................................................................................................4

### Cases – Federal

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,* .............................................................8

      486 U.S. 492, 501, 108 S.Ct. 1931, 100 L.Ed.2d 497 (1988)

*Ashcroft v. Iqbal,* ...............................................................................................................11

      556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed. 2d 868 (2009)

*Ashker v. Cal. Dep't of Corr.,* ..............................................................................................7

      112 F.3d 392, 394–95 (9th Cir. 1997)

*Bell Atlantic Corp. v. Twombly,* ..........................................................................................5

      550 U.S. 544, 555, 590 (2007)

*Burgert v. Lokelani Bernice Pauahi Bishop Trust,* .............................................................11

      200 F.3d 661, 663 (9th Cir. 2000)

*California Liquor Dealers v. Midcal Aluminum,* .....................................................7, 8, 9, 10

      445 U.S. 97, 106, 100 S. Ct. 937 (1980)

*Conley v. Gibson,* ...................................................................................................5

    355 U.S. 41, 47, 78 S.Ct. 99, 103, 2L.Ed. 2d. 80 (1957)

*Cornel v. Hawaii,* ...................................................................................................7

    37 F.4th 527, 531 (9th Cir. 2022)

*Diaz v. Int'l Longshore and Warehouse Union, Local 13,* ...............................................5

    474 F.3d 1202, 1205 (9th Cir. 2007)

*Federal Trade Commission v. Ticor Title Insurance,* ...........................................8, 9

    504 U.S. 621, 634-636 112 S. Ct. 2169 (1992)

*Gilligan v. Jamco Dev. Corp.,* ...................................................................................10

    108 F.3d 246, 248-49 (9th Cir. 1997)

*Goldfarb v. Virginia State Bar,* ...........................................................................1, 8

    421 U.S. 773, 791, 95 S. Ct. 2004 (1975)

*Hafer v. Melo,* ...................................................................................................7

    502 U.S. 21, 30–31 (1991)

*Haines v. Kerner,* ...................................................................................................10

    404 U.S. 519, 92 S. Ct. 594 (1972)

*Hook v. Idaho,* ...................................................................................................5

    1:21-cv-00199-BLW, 3 (D. Idaho Feb. 4, 2022)

*Hoover v. Ronwin,* ...................................................................................................8

    466 U.S. 558, 567-568, 584 104 S. Ct. 1989 (1984)

*Lipton v. Pathogenesis Corp.,* ...................................................................................5

    284 F.3d 1027, 1039 (9th Cir. 2002)

*Lovell v. Chandler,* ...................................................................................................7

    303 F.3d at 1051 (9th Cir. 2002)

*Mitchell v. Washington,* ...................................................................................................7

    818 F.3d 436, 442 (9th Cir. 2016)

*Montana-Dakota Util. Co. v. Northwestern Public Service Co.,* ...............................6

    341 U.S. 246, 249 (1951)

v

1  *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n,* ...............................1, 8, 9, 10
2       574 U.S. 494, 504-5, 510 (2015)
3  *Oneida Indian Nation of N.Y. v. County of Oneida,* ...........................................................6
4       414 U.S. 661, 666 (1974)
5  *Parker v. Brown,* ......................................................................................................7, 8, 9
6       317 U.S. 341, 351, 63 S. Ct. 307 (1943)
7  *Patrick v. Burget,* ......................................................................................................9, 10
8       486 U.S. 94, 100, 101, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988)
9  *Pelayo v. Nestle USA, Inc. et al.,* .................................................................................5
10      989 F.Supp.2d 973 978 (C.D.Cal. 2013)
11 *Pena v. Gardner,* .........................................................................................................7
12      976 F.2d 469, 472 (9th Cir. 1992)
13 *Porter v. Jones,* ...........................................................................................................7
14      319 F.3d 483, 491 (9th Cir. 2003)
15 *Romano v. Bible,* .........................................................................................................7
16      169 F.3d 1182, 1186 (9th Cir. 1999)
17 *Romero v. International Terminal Operating Co.,* ...........................................................6
18      358 U.S. 354, 359 (1959)
19 *Vinson v. Thomas,* .......................................................................................................7
20      288 F.3d 1145, 1151 (9th Cir. 200)
21 *Wool v. Tandem Computers, Inc.* ..................................................................................5
22      818 F.2d 1433, 1439 (9th Cir. 1987)

23                          **Statutes & Rules – Federal**

24 15 U.S.C. § 4.....................................................................................................................6
25 15 U.S.C. § 15...................................................................................................................6
26 18 U.S.C. § 1341...............................................................................................................4
27 18 U.S.C. § 1343...............................................................................................................4
28 18 U.S.C. § 1344...............................................................................................................4

1  18 U.S.C. § 1503.................................................................................................4

2  18 U.S.C. § 1956.................................................................................................4

3  18 U.S.C. § 1957.................................................................................................4

4  18 U.S.C. § 1960.................................................................................................4

5  18 U.S.C. § 1962(a) ........................................................................................3, 4

6  18 U.S.C. § 1962(b) ........................................................................................3, 4

7  18 U.S.C. § 1962(c) ........................................................................................3, 4

8  18 U.S.C. § 1964(a) ............................................................................................6

9  18 U.S.C. § 1964(c) ............................................................................................6

10  18 U.S.C. § 1968.................................................................................................6

11  Federal Rules of Civil Procedure 8..................................................................1, 5

12  Federal Rules of Civil Procedure 9(b) .........................................................1, 4, 5

13  Federal Rules of Civil Procedure 12(b)(1) ...................................................1, 6

14  Federal Rules of Civil Procedure 12(b)(6) .............................................1, 10, 11

15                           <u>Other Authorities</u>

16  Rest. 2d. Torts (1965) § 315...........................................................................10

17  Elhauge, The Scope of Antitrust Process, .........................................................8

18        104 Harv. L.Rev. 667, 672 (1991)

19  Garland, Antitrust and State Action: Economic Efficiency and the Political Process, ...........................8

20        96 Yale L.J. 486, 500 (1986)

21  The Misunderstood Eleventh Amendment............................................................6

22        William Baude & Stephen E. Sachs, 169 U. Pa. L. Rev. 609 (2021

23

24

25

26

27

28

# I.     INTRODUCTION

Defendant State of California ("State") joins defendants The State Bar of California, Ruben Duran, Suzanne Grandt, Eli David Morgenstern (collectively "State Bar defendants") Motion to Dismiss Plaintiff's First Amended Complaint for Damages & Injunctive Relief ("FAC") pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6), as to all claims against the State of California ("Joinder"). Dkt. #13. Each of State's arguments fail for the same reasons State Bar defendants' fail.

Most importantly, State Bar defendants are not sovereign actors under any instance, The State Bar of California is a regulator of its own market controlled by majority of active market participants. Its conduct is not conduct of the State acting as sovereign. The Court can use a simple lens: is Kenneth Joseph Catanzarite, in his reckless and relentless use of Courts to conduct fraudulent schemes, acting in a sovereign capacity? No. Was Girardi's protection racket insulated? Were Duran, Grandt, Morgenstern acting as sovereign? *Absolutely not*. Individual State Bar defendants lack sovereign immunity for this reason. There was no clearly articulated policy to allow attorneys to do whatever they want, to whoever they want. Nor was or is there active state supervision. State is responsible for this refusal and failure.

Plaintiff's claims lie in RICO and antitrust involving fraud, so the standard is Rule 9(b), not Rule 8. Plaintiff is non-diverse with permission to sue State where U.S. District Court has original subject matter jurisdiction, State accepted federal funds, and State refuses to appear in Superior Court despite service, so Eleventh Amendment is moot. Binding decisional law of U.S. Supreme Court holds that State is not immune from antitrust law. That Plaintiff fails to state a claim against State is simply not credible.

State of California fails, and refuses, to provide active supervision to State Bar defendants – and this has caused damages to Plaintiff. "The Court applied this reasoning to a state agency in *Goldfarb*. There the Court denied immunity to a state agency (the Virginia State Bar) controlled by market participants (lawyers) because the agency had "joined in what is essentially a private anticompetitive activity" for "the benefit of its members." 421 U.S., at 791, 792, 95 S.Ct. 2004. *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 510 (2015) It's difficult for lawyers to "get it" here.

State of California fails to address the conduct of its non-sovereign actors from which Plaintiff alleges *respondeat superior* liability to arise for racketeering, investing proceeds from racketeering in an enterprise, control of an enterprise through racketeering, constitutional violations, and antitrust.

## II.    FACTUAL ALLEGATIONS

"[State has] engaged in an unlawful, fraudulent scheme against plaintiff involving overt acts by wire and mail designed to convert or take his money, business, and property, harass, and vex plaintiff, or to cover up the scheme under color of state law." FAC, p. 2, ¶ 2. "The fraudulent scheme is predicated upon ongoing, extra-judicial acts designed to harm plaintiff, his reputation, to willfully damage the value of his material financial interests, and to restrain plaintiff from achieving fair and neutral adjudication of his genuine claims on their merits. Other U.S. citizens are being harmed similarly." Ibid. ¶ 5. "For all times relevant, THE STATE BAR OF CALIFORNIA was controlled by majority of active market participant Board of Trustees in regulation of active market participants after 2015." Id., p. 3, ¶ 11.

"For all times relevant, THE STATE BAR OF CALIFORNIA lacked active supervision by STATE OF CALIFORNIA after 2015 as defined by federal antitrust laws." Ibid, ¶ 12. "In 1961, the California Supreme Court in *Muskopf* v. *Corning Hospital District* (1961) 55 Cal.2d 211 "discarded as mistaken and unjust" the concept of sovereign immunity holding "when there is negligence [or crime, for that matter], the rule is liability, immunity is the exception." Ibid. ¶ 13. "*Muskopf* led to Government Claims Act of 1963, which expressly provide sections of liability in this case for judgments against The State Bar of California and State of California in favor of Beck:

> Cal. Gov. Cod. § 815 provides "(a) Except as provided by statute: a) A public entity is not liable for an injury, whether such injury rises out of an act or omission of the public entity or a public employee or any other person. (b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person." Ibid. ¶ 14

> "Statute is "otherwise provided" by:

> Cal. Gov. Cod. § 815.2, which holds: "(a) A public entity is liable for injury proximately caused by an act or omission by an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. (b) Except as provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity." Ibid. ¶ 15.

> "Statute is "otherwise provided" for intentional tort or criminal conduct by: "Cal. Gov. Cod. § 815.3[]. Id. p. 5 ¶ 16. "Statute is "otherwise provided" by: Cal Gov. Cod. § 815.6 []. Ibid. ¶ 17.

3:23-CV-0164-AGS-DDL

1    *Rodriguez v. Inglewood Unified School District* (1986) 186 Cal.App.3d 707 clarifies "[t]he

2    statutes that provide for liability do not need to be part of the Government Claims Act, and do not need

3    to provide specifically on their face that they apply to public entities." Ibid. ¶ 18. 18 U.S.C. § 1962(a)-

4    (c) apply to all defendants in this action, and violations of these sections by Suzanne Grandt, Ruben

5    Duran, and Eli David Morgenstern within the scope of their employment provide for liability to The

6    State Bar of California and State of California for judgments to Beck." Ibid. ¶ 19. Beck was and is in

7    special relationship to State of California, The State Bar of California, Ruben Duran, Suzanne Grandt,

8    Eli David Morgenstern as victim of ongoing schemes to defraud him – where each had actual knowledge

9    of the schemes but chose to ratify them and carry them on with at least indifference or actual malice."

10    Beck alleges other statutes and the causes for liability and *respondeat superior* liability. Id., p. 5

11    ¶¶ 21-25. Id. p. 6, ¶¶ 26-31. Beck has permission to sue California bringing this action for cause in good

12    faith and is non-diverse. Ibid. ¶ 31. This Court has subject matter jurisdiction for RICO and antitrust.

13    Ibid. ¶¶ 32-4. Id., p. 7, ¶ 35-6.

14    "Defendant THE STATE OF CALIFORNIA ("State"), a sovereign entity among the United

15    States and culpable person, is subject of plaintiff's denied government claims, and vested rights to sue.

16    State is liable for itself, nonsovereign assignee The State Bar of California, public employees, elected

17    officials, and its court officers under Government Claims Act as provided by statute, including but not

18    limited to those specified in this complaint. The economy for the State is the largest in the United States,

19    with a $3.63 trillion gross state product as of 2022, making it the largest, global sub-national economy."

20    Id. p. 8, ¶ 39. [State Bar defendants erroneously contend their operational acts are legislative, to boot].

21    "Defendant THE STATE BAR OF CALIFORNIA ("State Bar"), a non-sovereign public entity

22    controlled by active market participants in regulation for all times relevant, and culpable person, is

23    subject of plaintiff's denied government claims, and vested right to sue. The State Bar of California

24    operates postal mail and wire facilities from 845 S. Figueroa Ave., Los Angeles, CA 90017 and 180

25    Howard St., San Francisco 94105 through which it conducts a pattern of racketeering activity by mail

26    and wire approximately 44 times per day and 16,000 times per year. The State Bar of California and

27    those working for it or authorized by it cause liability to State on principles of *respondeat superior*, as

28    provided by statute, and because State has assigned its sovereignty to nonsovereign The State Bar of

3

3:23-CV-0164-AGS-DDL

California and its active market participants in regulation of their peers. State Bar is an enterprise engaged in, or whose activities affect, $3.63 trillion in interstate commerce, also affecting foreign commerce through banking and money transmissions to and from China and Taiwan through the "Leadership Bank Program:" American Continental Bank, Bank of the Orient, New Omni Bank, N.A., CTC Bank Corp." Ibid. ¶ 39.

Beck describes a pattern of racketeering activity involving similar methods, victims, and beneficiaries. Id., pp. 11-12, ¶¶ 49-57. More than two convictions exist within the past ten years involving wire fraud violative of 18 U.S.C. § 1343 associated with The State Bar of California enterprise. Id., pp. 12-16 ¶¶ 58-80. More than two acts targeted and harmed Beck, also. Id., p 16-36 ¶¶ 81-134

Supplementing his FAC is a RICO case statement. "Dkt. #9". He describes 72 predicate acts violative of 18 U.S.C. § 1961 in requisite detail to conform with F.R.Civ.P. 9(b). The statutes under § 1961 include 18 U.S.C. § 1503 (obstruction of justice), 18 U.S.C. § 1952(a) (carrying on illegal activity from a facility engaged in interstate commerce), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. §1343 (wire fraud), 18 U.S.C. § 1344 (bank fraud), Cal. Pen. Cod. § 518 PC (extortion), Cal. Pen. Cod. § 522 (extortion for signatures), Cal. Pen. Cod. § 523 (attempted extortion by threatening letter), 18 U.S.C. § 1956 (money laundering), 18 U.S.C. § 1957 (dealing in property derived from unlawful activity), 18 U.S.C. § 1960 (unlawful money transmitters). State fails to address any of these on its Joinder.

The State Bar of California accepted $20 million in Federal funds and invested in active market participants. Dkt. #9, p. 55 (10:12). The State Bar of California invested funds derived from a pattern of racketeering activity in violation of 18 U.S.C. § 1962(a). State Bar defendants engaged in overt acts to control an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(b) to defraud Plaintiff (using State Court). Id. pp. 49-68. The State Bar of California and Jorge E. Navarrete obstructed a federal antitrust petition filed in California Supreme Court, and then filed a petition on behalf of Plaintiff without authority to defraud him and the United States. Dkt. #9, pp. 64-65.

State of California refused to produce public records concerning State of California, which allegedly abuses its sovereignty, and The State Bar of California is not a sovereign under the Eleventh Amendment. Id. p. 69 (15:16). Plaintiff provides plain statements in each count in compliance with Rule 8. FAC, p. 38-59. He provides requisite details in compliance with Rule 9(b). Dkt. #9, pp. 17-68.

## III.   ARGUMENT

### A. Rule 8 is Not the Pleading Standard for RICO or Antitrust Arising from Fraud

State joins "1. Defendant State Bar of California's Motion to Dismiss First Amended Complaint (DOC. 12) on the grounds that the FAC fails to comply with Rule 8, and provide the State of California with "simple, concise, and direct" allegations of how the State of California's conduct violated the law, and how Plaintiff was purportedly injured by said conduct." (DOC 12, pp. 6-7). Joinder, p. 2, ¶ 1.

F.R.Civ.P. 8(a)(2)'s purpose is to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2L.Ed. 2d. 80 (1957). For claims that do not involve fraud or mistake, Plaintiff need only plead a "short and plain statement of the claim showing the pleader is entitled to relief." F.R.Civ.P. 8(a). (A short and plain statement will not suffice for fraud, however).

The FAC with Supplement is "sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place, and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Wool v. Tandem Computers, Inc.* 818 F.2d 1433, 1439 (9th Cir. 1987). "The question of whether a business practice is deceptive in most cases presents a question of fact not amenable to resolution on a motion to dismiss." *Pelayo v. Nestle USA, Inc. et al.*, 989 F.Supp.2d 973 978 (C.D.Cal. 2013). Detailed fraud allegations are not subject to dismissal.

"In exercising its discretion to summarily dismiss claims on its own motion or by motion of the defendants, the Court takes into consideration that, in any case, and more so in pro se cases, the law requires that plaintiffs be given an opportunity to amend their pleadings to remedy any deficiencies that were identified during screening or after a motion to dismiss has been adjudicated. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002) ("It is not unreasonable that plaintiffs may seek amendment after an adverse ruling, and in the normal course district courts should freely grant leave to amend when a viable case may be presented."). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted)." *Hook v. Idaho*, 1:21-cv-00199-BLW, 3 (D. Idaho Feb. 4, 2022). Plaintiff has not been granted amendment, either.

**B. U.S. District Court has Subject Matter Jurisdiction for RICO and Antitrust**

State joins "2. Defendant State Bar of California's Motion to Dismiss First Amended Complaint (DOC. 12) on the grounds that the FAC should be dismissed for lack of subject matter jurisdiction (Fed.R.12(b)(1)), in that the State of California is immunized by the Eleventh Amendment to the United States Constitution from any claims Plaintiff may assert against it in this Court. (DOC 12, pp. 8-10)." Joinder, p. 2, ¶ 3.

### 1. Eleventh Amendment Does Not Bar Non-Diverse Plaintiff's Suit Against State

The Eleventh Amendment does not mean what it does not say. William Baude & Stephen E. Sachs *The Misunderstood Eleventh Amendment*, 169 U. Pa. L. Rev. 609 (2021). It does not say Plaintiff, with permission to sue and State's refusal to appear in its own Court, can't sue State here. While Courts have [arguably, mistakenly] held the Eleventh Amendment to bar suit by a State's own citizens, State Bar defendants offered no on-point case where a non-diverse Plaintiff had permission to sue, sought redress in a State's Court with a refusal to appear in two cases, and concurrently involved violations of federal antitrust laws by purported sovereign actors who are actually not sovereign. The Eleventh Amendment does not bar Plaintiff's suit here in any instance, much less all instances.

### 2. U.S. District Court Has Subject Matter Jurisdiction for All of Plaintiff's Claims

State contends a lack of subject matter jurisdiction under F.R.Civ.P. 12(b)(1), but U.S. District Court has original subject matter jurisdiction under 15 U.S.C. § 4 for antitrust injunctions, 15 U.S.C. § 15 for antitrust damages, 18 U.S.C. § 1964(a) for racketeering injunctions, 18 U.S.C. § 1964(c) for racketeering damages, 18 U.S.C. § 1968 for racketeering investigations, and 28 U.S.C. § 1331 for violations of Plaintiff's constitutional rights.

Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974; see also *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 359 (1959). The question whether a federal statute creates a claim for relief is not jurisdictional. *Montana-Dakota Util. Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 249 (1951). Plaintiff shows he will not be granted forum in Superior Court against State.

3. <u>State Fails to Address *Respondeat Superior* Liability on Joinder for Individuals</u>

Where State fails to address *respondeat superior* liability, its Joinder fails. The Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacity. *See Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) ("[P]laintiffs may seek damages against a state official in his personal capacity."); *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (stating the Eleventh Amendment does not "bar claims for damages against state officials in their *personal* capacities"); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003); *Ashker v. Cal. Dep't of Corr.*, 112 F.3d 392, 394–95 (9th Cir. 1997); *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam). "[W]hen a plaintiff sues a defendant for damages, there is a presumption that he is seeking damages against the defendant in his personal capacity." *Mitchell*, 818 F.3d at 442 (citing *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999)). Even if they had Eleventh Amendment protection, which they don't, individual actors remain and State could be liable for them.

4. <u>State Accepted Federal Funds and Distributed Them to Active Market Participants</u>

State Bar defendants, whose arguments State has joined, are not protected by the Eleventh Amendment because they are "not the sovereign" per United States Supreme Court as set forth below. The State Bar of California also announced it accepted $20 million from the U.S. government on July 13, 2022, which it used to pay active market participants. Dkt. #9, pp. 54-55. The 9th Circuit addressed the issue, "reaffirming…precedent that a State waives Eleventh Amendment immunity by accepting federal funds. *Vinson v. Thomas*, 288 F.3d 1145, 1151 (9th Cir. 200) (reaffirming Douglas's holding that by accepting federal funds, a state waives its sovereign immunity); *Lovell*, 303 F.3d at 1051.

**C. State of California is Not Immune from Antitrust Liability Per U.S. Supreme Court**

State joins "3. Defendant State Bar of California's Motion to Dismiss First Amended Complaint (DOC. 12) on the grounds that the State of California is immune from antitrust liability." (DOC. 12, p. 10) Joinder, p. 2, ¶ 3. But they offer no showing that meets the requirements of *Midcal,* and they ignore the implications of the case cited by State Bar defendants (Parker). State Bar acts are not State acts.

"But while the Sherman Act confers immunity on the States' own anticompetitive policies out of respect for federalism, it does not always confer immunity where, as here, a State delegates control over a market to a nonsovereign actor. See *Parker, supra,* at 351, 63 S.Ct. 307 **("[A] state does not give**

1    **immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring**

2    **that their action is lawful**"). For purposes of *Parker*, a nonsovereign actor is one whose conduct does

3    not automatically qualify as that of the sovereign State itself. See *Hoover, supra,* at 567–568, 104 S.Ct.

4    1989. State agencies are not simply by their governmental character sovereign actors for purposes of

5    state-action immunity. See *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 791, 95 S.Ct. 2004, 44 L.Ed.2d

6    572 (1975) ("The fact that the State Bar is a state agency for some limited purposes does not create an

7    antitrust shield that allows it to foster anticompetitive practices for the benefit of its members").

8    Immunity for state agencies, therefore, requires more than a mere facade of state involvement, for it is

9    necessary in light of *Parker*'s rationale to ensure the States accept political accountability for

10    anticompetitive conduct they permit and control. See *Ticor, Supra,* at 636, 112 S.Ct. 2169. *N.C. State*

11    *Bd. of Dental Examiners v. Fed. Trade Comm'n,* 574 U.S. 494, 504-5 (2015)

12       Limits on state-action immunity are most essential when the State seeks to delegate its regulatory

13    power to active market participants, for established ethical standards may blend with private

14    anticompetitive motives in a way difficult even for market participants to discern. Dual allegiances are

15    not always apparent to an actor. In consequence, active market participants cannot be allowed to regulate

16    their own markets free from antitrust accountability. See *Midcal, supra,* at 106, 100 S.Ct. 937 ("The

17    national policy in favor of competition cannot be thwarted by casting ... gauzy cloak of state involvement

18    over what is essentially a private [attorney-enriching] arrangement"). Indeed, prohibitions against

19    anticompetitive self-regulation by active market participants are an axiom of federal antitrust policy.

20    See, *e.g., Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 501, 108 S.Ct. 1931, 100

21    L.Ed.2d 497 (1988) ; *Hoover, supra,* at 584, 104 S.Ct. 1989 (Stevens, J., dissenting) ("The risk that

22    private regulation of market entry, prices, or output may be designed to confer monopoly profits on

23    members of an industry at the expense of the consuming public has been the central concern of ... our

24    antitrust jurisprudence"); see also Elhauge, The Scope of Antitrust Process, 104 Harv. L.Rev. 667, 672

25    (1991). So it follows that, under *Parker* and the Supremacy Clause, the States' greater power to attain

26    an end does not include the lesser power to negate the congressional judgment embodied in the Sherman

27    Act through unsupervised delegations to active market participants. See Garland, Antitrust and State

28    Action: Economic Efficiency and the Political Process, 96 Yale L.J. 486, 500 (1986).

3:23-CV-0164-AGS-DDL

1    *Parker* immunity requires that the anticompetitive conduct of nonsovereign actors, especially

2    those authorized by the State to regulate their own profession, result from procedures that suffice to

3    make it the State's own. See *Goldfarb, supra,* at 790, 95 S.Ct. 2004 ; see also 1A P. Areeda & H.

4    Hovenkamp, Antitrust Law ¶ 226, p. 180 (4th ed. 2013) (Areeda & Hovenkamp). The question is not

5    whether the challenged conduct is efficient, well-functioning, or wise. See *Ticor, 504 U.S.,* at 634–

6    635, 112 S.Ct. 2169. Rather, it is "whether anticompetitive conduct engaged in by [nonsovereign actors]

7    should be deemed state action and thus shielded from the antitrust laws." *Patrick v. Burget,* 486 U.S. 94,

8    100, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988). *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n,*

9    574 U.S. 494, 505-6 (2015) But State offers no showing of elements, nor State Bar defendants.

10    To answer this question, the Court applies the two-part test set forth in *California Retail Liquor*

11    *Dealers Assn. v. Midcal Aluminum, Inc.,*445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233, a case arising from

12    California's delegation of price-fixing authority to wine merchants. Under *Midcal,* "[a] state law or

13    regulatory scheme cannot be the basis for antitrust immunity unless, first, the State has articulated a

14    clear ... policy to allow [RICO violations, attorney-enriching schemes to the detriment of the public, and

15    constitutional violations in favor of corrupt private and public attorneys], and second, the State provides

16    active   supervision   of   [the]   anticompetitive   conduct." *Ticor,   supra,* at   631, 112   S.Ct.

17    2169 (citing *Midcal, supra,* at 105, 100 S.Ct. 937). *N.C. State Bd. of Dental Examiners v. Fed. Trade*

18    *Comm'n,* 574 U.S. 494, 506 (2015)   The   two   requirements   set   forth   in *Midcal* provide   a   proper

19    analytical framework to resolve the ultimate question whether an anticompetitive policy is indeed the

20    policy of a State.

21    1. <u>No Clearly Articulated Policy Exists for State to Enable FAC, 72 Predicate Acts</u>

22    The first requirement—clear articulation—rarely will achieve that goal by itself, for a policy

23    may satisfy this test yet still be defined at so high a level of generality as to leave open critical questions

24    about how and to what extent the market should be regulated. See *Ticor, supra,* at 636–637, 112 S.Ct.

25    2169. Entities purporting to act under state authority might diverge from the State's considered definition

26    of the public good. The resulting asymmetry between a state policy and its implementation can invite

27    private self-dealing. *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n,* 574 U.S. 494, 507

28    (2015).

9

State joins State Bar defendants arguments. But each of State Bar defendants are bound to uphold the United States Constitution and laws of the United States under Cal. Bus. & Prof. Cod. § 6068(a). There is no clearly articulated policy to commit violations of RICO or the United States Constitution against Plaintiff in favor of State Bar defendants or Kenneth Joseph Catanzarite. The Court need not reach the second prong of the *Midcal* framework, but that prong fails, too.

### 2. No Active State Supervision of State Bar Defendants or Catanzarite Exists

The second *Midcal* requirement—active supervision—seeks to avoid this harm by requiring the State to review and approve interstitial policies made by the entity claiming immunity. *Midcal*'s supervision rule "stems from the recognition that '[w]here a private party is engaging in anticompetitive activity, there is a real danger that he is acting to further his own interests, rather than the governmental interests of the State.' " *Patrick, supra,* at 100, 108 S.Ct. 1658. Concern about the private incentives of active market participants animates *Midcal*' s supervision mandate, which demands "realistic assurance that a private party's anticompetitive conduct promotes state policy, rather than merely the party's individual interests." *Patrick, supra,* at 101, 108 S.Ct. 1658. *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n,* 574 U.S. 494, 507 (2015)

Here, State Bar defendants contend they are immune from antitrust laws, which is categorically false. State claims it is immune from federal antitrust laws, too. Kenneth Joseph Catanzarite contends that all of his conduct is "privileged" because he is a licensee of The State Bar of California. Because State of California and State Bar defendants make no showing that they conform to Midcal's requirements, their arguments fail.

### D. Plaintiff Sufficiently States Claims Against State of California

State joins "4. Defendant State Bar of California's Motion to Dismiss First Amended Complaint (DOC. 12) on the grounds that the FAC fails to state sufficient facts to state a claim under Fed.R. 12(b)(6). (DOC.12 pp. 13-24)." Joinder, p. 2, ¶ 4. The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 248-49 (9th Cir. 1997). ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim."). U.S. Supreme Court in *Haines v. Kerner,* 404 U.S. 519, 92 S. Ct. 594 (1972) was clear "[h]olding pro se submissions to less stringent standards than formal pleadings drafted by lawyers."

3:23-CV-0164-AGS-DDL

1       F.R.Civ.P. 12(b)(6) allows a party to assert "failure to state a claim upon which relief can be

2   claimed" by motion. Quoting *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th

3   Cir. 2000), "[a]ll allegations of material fact are taken as true and construed in the light most favorable

4   to the nonmoving party" (Plaintiff). "A court considering a motion to dismiss can choose to begin by

5   identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption

6   of truth. While legal conclusions can provide the framework of a complaint, they must be supported by

7   factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity

8   and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556

9   U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed. 2d 868 (2009).

10       The Court should assume veracity: State has intentionally defrauded Plaintiff and the United

11   States using the wire and mail, and enabled conduct of non-sovereign actors that shows an acute threat

12   of continuing against United States citizens violative of antitrust laws designed to protect the public.

13   State must accept political and financial accountability for this as a matter of law.

14       **E. While Not Argued – Plaintiff Dispels the Notion of Sovereign Immunity under State Law**

15       *Muskopf v. Corning Hospital District*, 55 Cal.2d 211 (1961) put an end to ambiguity about

16   blanket sovereign immunity, leading to the California Tort Claims Act of 1963: "where there is

17   negligence, liability is the rule, immunity the exception." Stated otherwise, injury to Plaintiff results not

18   from the State employee's exercise of discretion, but from negligence in performing it after having made

19   the discretionary decision to do so. (*McCorkle v. City of Los Angeles* (1969) 70 Cal.2d 252, 261.)

20       Because Plaintiff establishes governmental liability after successfully imposing a duty to State,

21   the next threshold issue is whether any statutory immunity applies to bar his causes of action. (*Davidson*

22   *v. City of Westminster* (1982) 32 Cal.3d 197, 202.) Statutory immunity calls for "judicial abstention in

23   areas in which the responsibility for <u>basic policy decisions</u> has been committed to coordinate branches

24   of government." (*Johnson v. State* (1968) 69 Cal.2d 782.) [Policy decisions fail under antitrust].

25       As a result, the availability of immunity for State turns on whether the act or omission constituted

26   an exercise of discretion in the making of a basic policy decision at the *planning stage* rather than at

27   the *operational level* of government decision making incident to normal operations, with the latter not

28   being immune. (*Barner v. Leeds* (2000) 24 Cal.4th 676, 685.)

11

In determining whether an act is discretionary or ministerial (i.e., not immune), one has to determine whether the act or omission involved a conscious balancing of risks or advantages, or whether the act or omission amounted to obedience or orders that leave the officer no choice, where the act or omission was governed by specific statutory or regulatory directives. (*Scott v. County of Los Angeles* (1994) 27 Cal.App.4th 125.) Non-sovereign state actors have consciously defrauded Plaintiff.

"Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov. Code § 820.2. "Except as otherwise provided by statute, a public employee is liable for an injury caused by the act or omission of another person. Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission." Cal. Gov. Code § 820.8. Here, we have negligent and allegedly criminal operational decisions violating duty for State where Plaintiff's harm is known to State, ignored under color of law. Any purported blanket immunities fail for State, State Bar defendants.

What happens after a discretionary decision is made is within the realm of tort claims because Plaintiff's harm is known specifically to State, State actors just favor State Bar attorneys despite the existence of a special relationship. *Hoff v. Vacaville Unified School Dist.*, 19 Cal.4th 925 (1998); *Johnson v. State*, 69 Cal. 2d 782 (1968); *Davidson v. City of Westminster*, 32 Cal.3d 197 ("[1] As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct. Such a duty may arise, however, if "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection." (Rest. 2d. Torts (1965) § 315; *Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 751-752 [167 Cal.Rptr. 70, 614 P.2d 728]; *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) State does not dispute that it has actual knowledge of the harm to Plaintiff arising from its criminal or regulatory jurisdiction, or the crimes themselves, it simply believes it has no duty to exercise reasonable care (which is not true). See also *Brown v. U.S. Taekwondo*, 11 Cal.5th 204, 276 Cal. Rptr. 3d 434, 483 P.3d 159 (Cal. 2021). "Civ. Code, § 1714; *Rowland v. Christian* (1968) 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561" *Brown v. U.S. Taekwondo*, 11 Cal.5th 204, 209 (Cal. 2021)

**F. To Apply Immunity for RICO or Antitrust Would Eviscerate Cal. Gov. Cod. § 815.6**

"[3] It is elementary that public officials must themselves obey the law." *Wirin v. Parker*, 48 Cal.2d 890, 894 (Cal. 1957) "To apply [immunity] sections to immunize [State] from liability for breach of a mandatory duty would completely eviscerate Government Code section 815.6 which specifically provides for liability of the public entity for injuries resulting from a failure to carry out a mandatory duty imposed by a public enactment." (*Elton v. County of Orange* (1970) 3 Cal.App.3d 1053, 1059; see also *Alejo [v. City of Alhambra]*, 75 Cal.App.4th at p. 1194.)

Beyond a blank statement of "State is immune" or "State bar defendants are immune for intentional torts," each offer no authority for this conclusion because no such authority exists. State Bar defendants are not permitted to violate U.S. antitrust laws, RICO, or Plaintiff's clearly established constitutional rights. It is apparently difficult for active market participants to discern this.

**G. Plaintiff Corrects *Respondeat Superior* for Counts V & VI**

Plaintiff files a correction herewith to incorporate Cal. Gov. Cod. § 815.2 and Cal. Gov. Cod. § 815.3 bases to cause *respondeat superior* liability to State or State Bar under 42 U.S.C. § 1983. Plaintiff concedes that State is not a person for purposes of 42 U.S.C. § 1983, but Government Claims Act § 815.2 or § 815.3 cause liability to State and State Bar if defendants to Count VI & VI were acting "within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court deny State of California's joinder. Dkt. #13. State of California must accept economic liability and political accountability for its decisions under federal law. The State Bar of California is engaged in anticompetitive behavior that is compromising commerce, liberty, and economic freedoms under color of sovereignty derived from the United States in favor of corrupt lawyers. The Court must look past any potential loyalty it may hold to active market participant peers and apply the law objectively. Plaintiff's claims survive State Bar defendants' motion to dismiss and State's Joinder. At worst, he must be granted leave to amend.

Respectfully Submitted,

April 22, 2023,                              Justin S. Beck, Opposing Party, Plaintiff

13                                 3:23-CV-0164-AGS-DDL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROOF OF SERVICE**

I, Brian Bargabus, hereby declare that I am over 18 years of age and am not a party to this action, and that my address is 3501 Roselle St., Oceanside, CA 92056.

On April 22, 2023, I scheduled for delivery one copy of the following documents:

**PLAINTIFF JUSTIN S. BECK'S OPPOSITION TO DEFENDANT STATE OF CALIFORNIA'S JOINDER TO STATE BAR DEFENDANTS' MOTION TO DISMISS**

Participants in the case who are registered CM/ECF users will be served when these papers are filed with the Court.

*See the CM/ECF service list.*

Electronic service is scheduled for delivery April 23, 2023, to the following email addresses:

| | |
|---|---|
| Corey Amundson | corey.amundson@usdoj.gov |
| Todd Gee | todd.gee@usdoj.gov |
| Robert Heberle | Robert.heberle@usdoj.gov |
| Sean Mulryne | sean.mulryne@usdoj.gov |
| U.S. Attorney's Office | efile.dkt.civ@usdoj.gov |

By electronic mail by personally transmitting a true copy thereof via an electronic email service connected to the internet, addressed to the email address listed above [X].

I declare the foregoing to be true under penalty of perjury under the laws of the State of California and United States. I am signing this from Oceanside, California on April 22, 2023.

Brian Bargabus, Declarant

14                                3:23-CV-0164-AGS-DDL