1   Justin S. Beck
2   3501 Roselle St.,
    Oceanside, CA 92056
3   760-449-2509
    justintimesd@gmail.com
4   *In Propria Persona*

5

6

FILED

APR 2 5 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____DEPUTY

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

7   JUSTIN S. BECK,                          )   Case No.: 3:23-CV-0164-AGS-DDL
                                             )
8          Plaintiff,                        )   Judge:     Hon. Andrew G. Schopler
                                             )
9                                            )
       vs.                                   )   **PLAINTIFF JUSTIN S. BECK'S**
10                                           )   **OPPOSITION TO UNITED STATES**
    STATE OF CALIFORNIA; THE STATE BAR )       **ATTORNEY GENERAL AND UNITED**
11  OF CALIFORNIA; SUZANNE GRANDT;          )   **STATES OF AMERICA'S MOTION TO**
    RUBEN DURAN; ELI DAVID                  )   **DISMISS FIRST AMENDED**
12  MORGENSTERN; KENNETH                     )   **COMPLAINT; DECLARATION IN**
    CATANZARITE,                            )   **SUPPORT**
13                                           )
14                                           )
           Defendants,                       )   **DATE:    May 12, 2023**
15                                           )
    UNITED STATES ATTORNEY GENERAL; )          **TIME:    4:00 PM**
16  UNITED STATES OF AMERICA                )
                                             )   **CTRM:   5C, 5th Floor**
17         Nominal Defendants                )
                                             )   [Opposition to Docket #26]
18  _____   )

19                                               Action Filed: January 30, 2023

20                                               Trial Date:   None Set

21

22

23

24

25

26

27

28

i                                    3:23-CV-0164-AGS-DDL

## I.    INTRODUCTION

"My name is Justin Stearns Beck. I am a citizen of the United States of America.

However naïve, I used to believe that "all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness." But I have been robbed of these Rights to Life, Liberty, and the pursuit of Happiness by non-sovereign actors in California under color of sovereignty derived from the United States of America.

However naïve, I thought the Fourteenth Amendment of the United States Constitution "prohibits the states from depriving "any person of life, liberty, or property without due process of law." But I have been deprived of five years of my life, my career, virtually every liberty, and most of my property, without due process of law by non-sovereign actors in California under color of sovereignty derived from the United States of America. Thousands of others have, too; each are denied forum.

However naïve, I thought attorneys were representatives of *bona fide* clients, held to the highest of ethical standards, and did not use clients as a proxy to pursue their own interests corruptly. But I have since learned that I am not a member of this special club that is enabled by California to do whatever they want to whoever as if it were protected free speech, privileged, or subject to blanket immunity as non-sovereign actors under color of sovereignty derived from the United States of America.

However naïve, I was proud to be a voting citizen in California. But I have since learned California enables, engages in, and ratifies crimes by non-sovereign actors under color of sovereignty derived from the United States of America. I have shamefully lost all trust in government for this reason.

The United States of America and United States Attorney General are parties to this action because the facts of my complaint allege State of California and The State Bar of California are corrupt. Non-sovereign actors are factually stealing from and destroying lives of United States citizens including me under color of sovereignty derived from the United States of America. This is unacceptable.

Cornell Law School defines "nominal party" as "A plaintiff or defendant who has no real interest in the result of the suit, or no actual interest or control over the subject matter of the litigation but is solely joined because a technical rule of practice requires their presence in the record." If the facts of my complaint and case statement (Dkt. #2, Dkt. #9-1) do not give rise to duties of the United States of America and United States Attorney General – I do not understand what possibly does or could."

## II.    FACTUAL HISTORY & ALLEGATIONS

First, Plaintiff notes that the duty of United States Attorney General and United States in this proceeding is to the United States and its citizens. The Motion to Dismiss First Amended Complaint at Dkt. #26 ("Motion to Dismiss") reads like a defensive posture on behalf of State Bar defendants.

"Defendant United States Attorney General ("USAG") has a duty to the United States of America, and to all citizens, amidst $3.63 trillion in interstate commerce adversely affected." Dkt. #2 ("FAC"), p. 10, ¶ 44. "Defendant United States of America ("USA") is a sovereign country which has a duty to all citizens of USA, is no an ordinary party to this proceeding, and whose duty extends to each of its states including State of California, amidst $3.63 trillion in interstate commerce adverse affected by the conduct at issue. If State refuses, USA has a duty to all persons harmed by State Bar through reverse incorporation (14th into 5th Amendment to U.S. Constitution)." Ibid. ¶ 45.

"Racketeering activity in this case involves similar methods of using protection of The State Bar of California, materially false statements of The State Bar of California Board of Trustees, Office of General Counsel, and Office of Chief Trial Counsel actors by mail and wire, and the use of California's judicial system supported by mail and wire communications in furtherance of the schemes." Id., p. 11, ¶ 50. "Racketeering activity in this case involves similar victims being the non-attorney public, issuers of securities, and insurance carriers who are unwillingly forced to underwrite The State Bar of California enterprise schemes to defraud nationally." Ibid., ¶ 52. "Racketeering activity in this case involves similar victims being the United States itself, where The State Bar of California enterprise is the only one controlling an entire judicial system and $3.63 trillion in U.S. GDP, and further admitting members of The State Bar of California enterprise pro hac vice to defraud citizens and businesses of their money and property in other states." Ibid. ¶ 53. "Racketeering activity in this case is supported or driven by conspiracy among The State Bar of California enterprise and coerced persons, adverse representation of parties before the same tribunal or in the same or similar matters to monopolize due process rights, assuming the role of "counsel" for inanimate entities through the exculpation of conflict waivers among The State Bar of California enterprise and coerced persons, disregard of conflicts of interest policies necessary for a sustainable democracy, and general disregard of public interest in favor of The State Bar of California enterprise actors with malice." FAC, p. 11-12, ¶ 54. "Attorney trust

3:23-CV-0164-AGS-DDL

1    accounts are used to launder the undue profits of attorneys in most instances." Ibid. ¶ 55. "The majority

2    of State Bar, [Board of Trustees], [Office of General Counsel], and [Office of Chief Trial Counsel's]

3    daily activities constitute mail and wire fraud. Each overt act is misrepresented to help the public, but in

4    reality, each overt act delays, estops, restricts, reduces, eliminates, harms, slanders, or destroys the

5    rights, equity, money, property, and good wil of the public that the State Bar is bound by law to protect

6    above all else, overtly." Ibid. ¶ 56. "Racketeering activity in this case shows an acute threat of continuing

7    by State Bar, CLC, KJC, Duran, Morgenstern, Grandt, OCTC, OGC, and BOT." Ibid. ¶ 57. From 2010

8    through 2021, The State Bar of California enterprise engaged in more than 100,000 instances of mail

9    and wire fraud. Id., p. 13, ¶ 63. On July 20, 2017, Suzanne Grandt engaged in obstruction of justice by

10    defrauding a U.S. judge. Id., p. 13, ¶ 64. On Friday September 22, 2017, an Orange County Superior

11    Court clerk judge was convicted for RICO conspiracy for fixing over 1,000 cases. Ibid, ¶ 65. The State

12    Bar of California knew that Thomas V. Girardi had compromised leadership, staff, and the judiciary in

13    2014 but protected him anyway. Ibid., ¶ 66. With actual knowledge that Thomas V. Girardi's

14    connections were used to defraud the public, Duran issued a wire communication as if he were ignorant

15    of it. Ibid., ¶ 67. On March 10, 2023, The State Bar of California announced publicly what it already

16    knew: Thomas V. Girardi was bribing staff and leadership of The State Bar of California, which it should

17    have stopped in 2014 but carried on anyway because its operations were intertwined. Decl., ¶ 3. On

18    November 2, 2022, Girardi's conduct was deemed by Judge Thomas M. Durkin as "unquestionably

19    criminal." FAC, p. 14, ¶ 68. One day after this Court order, The State Bar of California admitted to two

20    hundred pieces of mail fraud. Ibid., ¶ 69. Plaintiff sets forth more than two convictions for wire fraud

21    associated with The State Bar of California enterprise within the past 10-years – thereby constituting a

22    pattern of racketeering activity. FAC, p. 14, ¶ 72, 73. On February 1, 2023, Girardi was indicted by

23    federal grand juries in Illinois and California on wire fraud charges. FAC, p. 16, ¶ 80. The State Bar of

24    California enabled this for all times relevant within the meaning of 18 U.S.C. § 1952(a)(3) from facilities

25    engaged in interstate commerce. Plaintiff sets forth 47 predicate acts in his FAC that injured him

26    involving The State Bar of California enterprise. FAC, pp. 16- 36. Plaintiff meticulously details The

27    State Bar of California's illegal operations in his RICO Case Statement, and how it defrauds the United

28    States itself. Dkt. #9-1.

1    United States Attorney General & United States of America contend that Plaintiff fails to identify

2    allegations against them, and that the United States of America has not provided consent to sue.

3        Plaintiff has pending claims under Federal Tort Claims Act for the role of Special Agent

4    Alexander Murray of the Federal Bureau of Investigation, Assistant Attorney Kristen Clarke for the

5    Civil Rights Division United States Department of Justice, U.S. Attorney and Chief of the Public

6    Corruption & Civil Rights Section Mack Jenkins, and U.S. Attorney of the Public Corruption and Civil

7    Rights Section Lindsey Greer Dotson who each have actual knowledge of the facts at issue. Decl. ¶ 19.

8    Plaintiff will supplement with facts at such time they become more relevant to the case.

9        Plaintiff details 71 predicate acts in conformance with Federal Rules of Civil Procedure 9(b).

10   Dkt. #9-1, pp. 17-68.

11       "Common Plan #3. For The State Bar of California enterprise and State of California, it is alleged

12   the common plan is to prevent the Plaintiff from fair or neutral forums to conceal the facts and evidence

13   in his possession. Where the Plaintiff is alleged to be the first to file Government Claims Act litigation

14   against The State Bar of California and has already shown a series of Court of Appeal decisions

15   supporting allegations of at least three counts of malicious prosecution and not less than four mandatory

16   disqualifications affecting the Catanzarite Law Corporation enterprise; it is alleged that Plaintiff

17   constitutes a direct and ongoing threat to the interests of the criminal conduct of Office of General

18   Counsel, Office of Chief Trial Counsel, Board of Trustees, and the Catanzarite Law Corporation

19   enterprise – as well as the links to each of these and the 700+ Club. To evidence this common plan, it is

20   alleged that the efforts to stop Plaintiff from obtaining judgments in a neutral forum [continuing] to

21   which he is allegedly entitled are greater than the efforts for the State of California and The State Bar of

22   California to resolve them amicably on their merits as is the duty of the government (the government is

23   not an ordinary party.) Dkt. #9-1, p. 70-71.

24       "Common Plan #4. It is alleged The State Bar of California is not a sovereign entity protected

25   by the 11th Amendment, and that it uses this guise to mislead Courts and to conduct racketeering with

26   commingled operations among allegedly corrupt lawyers and alw firms, as well as the IOLTA and client

27   trusts through which they are alleged to launder money. It is alleged this money laundering affects

28   Medicate and Medicaid, involved pandemic funds, as well as Chinese banks listed herein. Because The

State Bar of California enterprise is responsible for monitoring the conduct of itself including its own alleged money laundering, it is alleged no lawyer can reasonably stop it, which is why the Courts have never seen a case such as this. It is alleged that The State Bar of California purports to operate as being under the sovereign authority of State of California, however, such conduct would need to be undertaken as if it were that of the State of California itself. If that were the case, State of California is a direct and proximate threat to the United States as it is abusing its sovereignty for unlawful taking from the public, which is unconscionable. It is alleged this plan is continued through deliberate obstruction of justice to prevent Federal Courts of competent jurisdiction from making decisional law that will stop The State Bar of California enterprise form these practices. Conduct of Mr. Tsai is evidence." Dkt. #9-1, p. 71.

Plaintiff sets for the details concerning each RICO claim in his RICO case statement if USA and USAG do not understand the FAC – including how the racketeering at issue in this case is defrauding the United States. Dkt. #9-1, p. 71-92. The United States Supreme Court holds Plaintiff is not subject to stringent pleading standards, and Plaintiff is a victim of crimes who should not be demeaned further.

"The purpose of federal antitrust laws as they relate to $3.63 trillion in interstate commerce controlled by The State Bar are to protect the public, not to protect attorneys." FAC, p. 58, ¶ 322.

"The public was and is being injured by the antitrust violations described above, and USAG and USA have a duty to intervene where The State Bar of California refuses to be governed, and refuses to conform to federal antitrust laws." FAC, p. 59, ¶ 324.

"WHEREFORE, plaintiff requests..." Id. p. 59, ¶ 325. "Judgement in favor of UNITED STATES OF AMERICA against The State Bar of California for violation of 15 U.S.C. § 1." Ibid. ¶ 327.

"EXTRAORDINARY RELIEF in favor of UNITED STATES OF AMERICA for intervention against The State Bar of California for antitrust violations, and racketeering investigation under 18 U.S.C. § 1968 to identify all those persons causing harm, and all those persons harmed by the conduct so they may be remunerated. The citizens harmed by this conduct lack a neutral forum due to the conduct at issue, and each are due as a fundamental right in USA."

"EXTRAORDINARY RELIEF in favor of UNITED STATES OF AMERICA citizens identified by USAG or racketeering investigator as being harmed by the antitrust violations through reverse incorporation of the Fourteenth Amendment into the Fifth Amendment."

## III.   ARGUMENT

### A. Plaintiff's FTCA Claim is Still Pending, and the United States is Not an Ordinary Party

For now, the United States needs to be in this proceeding nominally because State of California is unlawfully protecting The State Bar of California and its actors who are "not the sovereign."

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in [defense here and protecting those who cannot protect themselves] is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may [defend nominally] with earnestness and vigor — indeed, he should do so [where warranted]. But, while he may [deflect] hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful [decision] as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 (1935).

Alleged victims "ROES 1-150,000. ROES 1-150,000 are, on information and belief, the estimated number of U.S. citizens and businesses who sought public protection from The State Bar of California from 2010-2021 but were defrauded by mail and wire of honest services within the meaning of 18 U.S.C. § 1346 by the "public protection agency" through one or both of The State Bar of California's mail facilities affecting interstate commerce with malice, as it overtly protected 700+ Club members. It is alleged that actors associated with The State Bar of California seek to defraud the public and deliberately protect attorneys, particularly "700+ Club" which allegedly includes Mr. Girardi, Mr. Catanzarite, and those associated with them. For instance, on December 22, 2019, one "Former Investigator" for State Bar of California (Former Employee) is quoted: "I was an investigator in the OCTC [Office of Chief Trial Counsel]. The idea is NOT to investigate attorney misconduct but to draft memo after memo in an effort to make it look as if there had actually been an investigation. Nor is it designed to discipline attorneys. Last year, out of 15,000 complaints made to the State Bar, only 25 got an actual hearing...I don't know what it's like to work in other areas of the State Bar but OCTC is for all intents and purposes a fraudulent enterprise. OCTC is a horrible place to work for an honest person." Supplement & RICO Case Statement, Dkt. #9-1, p. 15 (11:26).

Alleged victim "United States. The conduct at issue allegedly defrauds the United States in violation of 18 U.S.C. § 371. Beyond the harm to Courts and innocent defendants sued under knowingly fraudulent pretenses, or whose money is stolen, Plaintiff is informed by law students subject to similar predation as Plaintiff has experienced by other staff bound by duty to help and protect them. Where The State Bar of California affects approximately 20% of the United States market for legal services and controls approximately $3.63 trillion in interstate commerce, the effect on the United States cannot be underestimated. It is alleged that The State Bar of California is an unlawful trust, but it is not capable of being penetrated without federal intervention because the unlawful trust controls the entire judicial system in California, and may even obstruct the Federal judiciary. In one manner, the United States underwrites student loans for law school; The State Bar of California allegedly defrauds the U.S. through its alleged corrupt monopoly on the same." Dkt. #9-1, p. 16 (1:11).

Alleged victims "44 United States Persons, daily. Plaintiff alleges that the deliberate fraud conducted by The State Bar of California, some of which is alleged in the predicate acts outlined herein, occurs 44 times per day at minimum and comprises fraudulent schemes under 18 U.S.C. § 1346. This number is based on the number of persons who allegedly inform The State Bar of California of their harm, who are subject to predatory practices by mail and wire, negligence, and deliberate protection of 700+ Club members and other attorneys who defraud the public as a practice with commingled operations by and between the allegedly corrupt attorneys' practices, Office of General Counsel, Office of Chief Trial Counsel, Executive Director, and Board of Trustees. No other State has "State Bar Court." It is alleged that these 44 United States Persons would not be harmed but for the abuse of sovereignty and alleged systemic corruption that State Bar Enterprise has caused and will cause without federal intervention." Ibid. (12:22).

"In 2015 *N.C. State Bd. Of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 135 S. Ct. 1101, 191 L. Ed. 2d 35, 83 U.S.L.W. 4110 (2015), the United States Supreme Court 'reaffirmed that a state regulatory board" controlled by majority of active market participants such as The State Bar of California "is not the sovereign. Defendants to this case ignore this binding law and its implications on each of them." State of California refuses and fails its own sovereign duties for illegal benefit to private persons, so the United States must act impartially to protect its citizens and interests.

7

**B. Rule 8 is Not the Pleading Standard for RICO or Antitrust Allegations Lying in Fraud**

U.S. Supreme Court in *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594 (1972) was clear "[h]olding pro se submissions to less stringent standards than formal pleadings drafted by lawyers."

F.R.Civ.P. 8(a)(2)'s purpose is to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2L.Ed. 2d. 80 (1957). For claims that do not involve fraud or mistake, Plaintiff need only plead a "short and plain statement of the claim showing the pleader is entitled to relief." F.R.Civ.P. 8(a). (A short and plain statement will not suffice for fraud, however).

The FAC, RICO Case Statement is "sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place, and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Wool v. Tandem Computers, Inc*. 818 F.2d 1433, 1439 (9th Cir. 1987). "The question of whether a business practice is deceptive in most cases presents a question of fact not amenable to resolution on a motion to dismiss." *Pelayo v. Nestle USA, Inc. et al*., 989 F.Supp.2d 973 978 (C.D.Cal. 2013). Detailed fraud allegations are not subject to dismissal.

1. Motion to Dismiss Fails Under 12(b)(1): Court Has Subject Matter Jurisdiction

Federal Defendants contend a lack of subject matter jurisdiction under F.R.Civ.P. 12(b)(1), but U.S. District Court has original subject matter jurisdiction under 15 U.S.C. § 4 for antitrust injunctions, 18 U.S.C. § 1964(a) for racketeering injunctions, and 18 U.S.C. § 1968 for racketeering investigations.

Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974; see also *Romero v. International Terminal Operating Co*., 358 U.S. 354, 359 (1959). The question whether a federal statute creates a claim for relief is not jurisdictional. *Montana-Dakota Util. Co. v. Northwestern Public Service Co*., 341 U.S. 246, 249 (1951). Federal Defendants contend U.S.A. has not waived its sovereign immunity (Motion to Dismiss, p. 3 (7:14), but Plaintiff has pending claims under Federal Tort Claims Act. Decl. ¶ 19. Motion to Dismiss fails 12(b)(1) because Plaintiff's claim is not insubstantial, implausible, or foreclosed.

3:23-CV-0164-AGS-DDL

2. <u>USAG and USA Are Not Named in Counts They Describe</u>

The Ninth Circuit is particularly hostile to motions to dismiss. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997). ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.").

F.R.Civ.P. 12(b)(6) allows Federal Defendants to assert "failure to state a claim upon which relief can be claimed" by motion. Quoting *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party" (Plaintiff). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed. 2d 868 (2009).

The Court should assume parties to this case have intentionally defrauded Plaintiff and the United States using the wire and mail. USA and USAG should act like it rather than demean it.

### a. Plaintiff Plainly States the Need and Claim for Racketeering Investigator

"WHEREFORE, plaintiff requests…" Id. p. 59, ¶ 325. "Judgement in favor of UNITED STATES OF AMERICA against The State Bar of California for violation of 15 U.S.C. § 1." Ibid. ¶ 327.

"EXTRAORDINARY RELIEF in favor of UNITED STATES OF AMERICA for intervention against The State Bar of California for antitrust violations, and racketeering investigation under 18 U.S.C. § 1968 to identify all those persons causing harm, and all those persons harmed by the conduct so they may be remunerated. The citizens harmed by this conduct lack a neutral forum due to the conduct at issue, and each are due as a fundamental right in USA."

"EXTRAORDINARY RELIEF in favor of UNITED STATES OF AMERICA citizens identified by USAG or racketeering investigator as being harmed by the antitrust violations through reverse incorporation of the Fourteenth Amendment into the Fifth Amendment."

### b. Plaintiff Plainly States Tort Claim if California Fails Its Obligations

It is too early in this proceeding to ascertain whether Plaintiff must invoke reverse incorporation.

9

3:23-CV-0164-AGS-DDL

1    "(a) Though the Fifth Amendment does not contain an equal protection clause, as does the

2    Fourteenth Amendment which applies only to the States, the concepts of equal protection and due

3    process are not mutually exclusive. P. 499. (b) Discrimination may be so unjustifiable as to be violative

4    of due process. P. 499. (c) [California attorneys defrauding United States citizens under color of

5    sovereignty] is not reasonably related to any proper governmental objective, and thus it imposes on

6    [non-attorney citizens in California] a burden that constitutes an arbitrary deprivation of their liberty in

7    violation of the Due Process Clause. Pp. 499-500. (d) In view of this Court's decision in *Brown* v. *Board*

8    *of Education, ante*, p. 483, that the Constitution prohibits the States from maintaining racially segregated

9    public schools, it would be unthinkable that the same Constitution would impose a lesser duty on the

10   Federal Government. P. 500. *Bolling v. Sharpe*, 347 U.S. 497, 74 S. Ct. 693 (1954)

11                    ***c. Plaintiff Plainly States Duty if California Fails Obligations to Commerce***

12       Plaintiff's Count VII is brough in the capacity of a private attorney general because no California

13   attorney can file or they'd be subject to the corrupt use of The State Bar of California's State Bar Court.

14   Decl. ¶ 11.

15       "This Count VII is against STATE OF CALIFORNIA (the "Count VII Defendant") directly and

16   on behalf of UNTED STATES OF AMERICA derivatively for injunctive relief against The State Bar

17   of California through UNITED STATES ATTORNEY GENERAL." FAC, p. 58, ¶ 316.

18       "Limits on state-action immunity are most essential when the State seeks to delegate its

19   regulatory power to active market participants, for established ethical standards may blend with private

20   anticompetitive motives in a way difficult even for market participants [Randy S. Grossman and

21   Stephanie A. Sotomayor] to discern. Dual allegiances [to State Bar defendants] are not always apparent

22   to an actor." *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 505 (2015)

23       "Federal antitrust law…is "as important to the preservation of economic freedom and our free-

24   enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms." *United*

25   *States v. Topco Associates, Inc.*,405 U.S. 596, 610, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972). "The antitrust

26   laws declare a considered and decisive prohibition by the Federal Government of <u>cartels</u>, price fixing,

27   and other combinations or practices that undermine the free market." *N.C. State Bd. of Dental Examiners*

28   *v. Fed. Trade Comm'n*, 574 U.S. 494, 502 (2015) "[T]he Court in *Parker v. Brown* interpreted the

antitrust laws to confer immunity on anticompetitive conduct by the States when acting in their sovereign capacity. See 317 U.S., at 350–351, 63 S.Ct. 307." *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 503 (2015). State Bar, State were not acting in such capacity harming Plaintiff.

"But while the Sherman Act confers immunity on the States' own anticompetitive policies out of respect for federalism, it does not always confer immunity where, as here, a State delegates control over a market to a nonsovereign actor. See *Parker, supra,* at 351, 63 S.Ct. 307 ("[A] state does not give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful"). For purposes of *Parker,* a nonsovereign actor is one whose conduct does not automatically qualify as that of the sovereign State itself. See *Hoover, supra,* at 567–568, 104 S.Ct. 1989. State agencies are not simply by their governmental character sovereign actors for purposes of state-action immunity. See *Goldfarb v. Virginia State Bar,*421 U.S. 773, 791, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) ("The fact that the State Bar is a state agency for some limited purposes does not create an antitrust shield that allows it to foster anticompetitive practices for the benefit of [State Bar defendants]"). *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 504-5 (2015)

For this reason, it is too early in this proceeding to ascertain whether USA or USAG have a duty to enforce federal antitrust laws against The State Bar of California and State of California because Plaintiff has yet been granted opportunity to show a need and must be granted such opportunity.

## IV.    CONCLUSION

The Court has subject matter jurisdiction under RICO and antitrust, Plaintiff has a pending FTCA claim, and the case may require reverse incorporation due to discrimination violative of due process. If there is ambiguity in Plaintiff's allegations in the FAC, he provided a RICO case statement in conformance with U.S. law. *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 44 n.3 (1st Cir. 1991). Dkt. #9-1. The Court should assume its veracity, not discount the allegations arbitrarily based on volume.

For the foregoing reasons, Plaintiff respectfully requests the Court deny the Motion to Dismiss from Federal Defendants. Plaintiff is doing the best he can, is not an attorney. It would appear the fundamental concept of government by the people, for the people, is lost.

Respectfully Submitted,

April 25, 2023                                   _____

                                                Justin S. Beck, Opposing Party, In Propria Persona

1  **DECLARATION OF JUSTIN S. BECK IN OPPOSITION OF UNITED STATES ATTORNEY**
2  **GENERAL AND UNITED STATES OF AMERICA MOTION TO DISMISS**

3    I, Justin S. Beck, declare as follows under penalty of perjury under the laws of the United States
4  and State of California. I am over the age of 18. I have personal knowledge, could, and would
5  competently testify as to the truth and authenticity of each statement to which I declare. For those
6  statements I make on information and belief, I believe them to be true. I have personal knowledge as to
7  the authenticity of each exhibit filed with this declaration.

8    1. Attached as <u>Exhibit 3</u> is a true and correct copy of a press release dated March 10, 2023, from
9       The State Bar of California confirming it had been compromised by bribery and corruption. I
10      obtained this from the internet on April 24, 2023, as it was published at The State Bar of
11      California's website.

12   2. Attached as <u>Exhibit 4</u> is a true and correct copy of a web page from FBI.gov describing Operation
13      Greylord. I obtained this from the internet on April 24, 2023, as it was published at FBI's website.

14   3. Attached as <u>Exhibit 5</u> is a true and correct copy of a press release disclosing "Santa Clara
15      Superior Court has announced the termination of the controversial Bench-Bar-Media-Police
16      Committee (BBMP), and that the committee's most recent chairperson, Judge James Towery,
17      will officially retire from the bench on May 17, 2023." I obtained this from the internet on April
18      24, 2023, as it was published at California Courts' website.

19   4. Attached as <u>Exhibit 6</u> is a true and correct copy of a response I received to a public records
20      request from California State Auditor. I obtained this by email on April 24, 2023, after submitting
21      a request recently to California State Auditor.

22   5. Before it was publicly announced, I alleged Thomas V. Girardi had compromised The State Bar
23      of California through bribery and corruption of its leadership and staff. It was announced on
24      March 10, 2023. I demand the United States act on behalf of its citizens to stop these practices.

25   6. Before it was publicly announced, I alleged Judge James Towery was a key member of the State
26      Bar Enterprise in 3:22-CV-01616-AGS-DDL, and that Bench-Bar-Media-Police ("BBMP")
27      Committee used public funds for private benefit. It was announced on April 19, 2023 with Mr.
28      Towery's resignation from the bench.

3:23-CV-0164-AGS-DDL

7. Before the news on Girardi or Towery were publicly disclosed, I was delivering evidentiary showings of my allegations to the Public Integrity Section of United States Department of Justice. The matters of which I complain are already an "issue of Congressional interest."

8. Through my website, StopCorruptLawyers.com, I regularly receive corroborating evidence as to the criminal nature of The State Bar of California's operations. For instance, when Girardi was disbarred, his cases went to ACTS Law Firm and are now run by Robert Finnerty.

9. On the podcast "Lawyers Behaving Badly," Edelson PC confirmed that The State Bar of California threatened the firm's partners Jay Edelson and Ari Scharg that it would use its State Bar Court to corruptly target Edelson PC's California lawyers if they sued Thomas V. Girardi.

10. I believe and intend to prove in this proceeding and the related case by at least a preponderance of evidence, that The State Bar of California operates primarily for 700 or more public and private attorneys to the direct and ongoing detriment of the public and the United States.

11. I believe and intend to prove in this proceeding and the related case by at least a preponderance of evidence, that The State Bar of California runs State of California, or at minimum, that State of California lacks active supervision of The State Bar of California as defined by U.S. law.

12. I believe and intend to prove in this proceeding that Kenneth Joseph Catanzarite is bribing Eli David Morgenstern, and that leadership of The State Bar of California is aware of this but they conceal it with malice.

13. I believe James Towery is "CTC1" in the redacted investigation "May Report" – former Chief Trial Counsel for The State Bar of California – and that Towery is involved in ongoing criminal conduct in illicit partnership with staff of The State Bar of California as presently comprised.

14. I believe Thomas V. Girardi donated funds stolen from clients to Gavin Newsom's campaign.

15. I am informing ProPublica and a group of investigative journalists of what I allege to be systemic corruption of The State Bar of California. I intend to judicially notice their findings or reporting during this proceeding.

16. I am coordinating a multi-district effort to thoroughly inform Public Integrity Section of United States Department of Justice and United States Congress seeking federal intervention against The State Bar of California for cause.

13                                3:23-CV-0164-AGS-DDL

17. I have pending Federal Tort Claims Act filings with United States Department of Justice for the role of Special Agent Alexander Murray of the Federal Bureau of Investigation, Assistant Attorney Kristen Clarke for the Civil Rights Division United States Department of Justice, U.S. Attorney and Chief of the Public Corruption & Civil Rights Section Mack Jenkins, and U.S. Attorney of the Public Corruption and Civil Rights Section Lindsey Greer Dotson who each have actual knowledge of the facts at issue.

I DECLARE THE FOREGOING TO BE TRUE AND CORRECT UNDER PENALTY OF PERJURY. I AM SIGNING THIS FROM OCEANSIDE, CALIFORNIA ON APRIL 24, 2023.

Justin S. Beck
Declarant

14                                   3:23-CV-0164-AGS-DDL

## **PROOF OF SERVICE**

I, Brian Bargabus, hereby declare that I am over 18 years of age and am not a party to this action, and that my address is 3501 Roselle St., Oceanside, CA 92056.

On April 24, 2023, I scheduled for delivery one copy of the following documents:

**PLAINTIFF JUSTIN S. BECK'S OPPOSITION TO UNITED STATES ATTORNEY GENERAL AND UNITED STATES OF AMERICA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; DECLARATION IN SUPPORT**

Participants in the case who are registered CM/ECF users will be served when these papers are filed with the Court.

*See the CM/ECF service list.*

Electronic service is scheduled for delivery April 24, 2023, to the following email addresses:

| | |
|---|---|
| Corey Amundson | corey.amundson@usdoj.gov |
| Todd Gee | todd.gee@usdoj.gov |
| Robert Heberle | Robert.heberle@usdoj.gov |
| Sean Mulryne | sean.mulryne@usdoj.gov |
| U.S. Attorney's Office | efile.dkt.civ@usdoj.gov |

By electronic mail by personally transmitting a true copy thereof via an electronic email service connected to the internet, addressed to the email address listed above [X].

I declare the foregoing to be true under penalty of perjury under the laws of the State of California and United States. I am signing this from Oceanside, California on April 24, 2023.

Brian Bargabus, Declarant

15                                          3:23-CV-0164-AGS-DDL

EXHIBIT 3

 The State Bar *of California*

## News Releases
**Media Contact**
Office of Communications | 213-765-1388 | barcomm@calbar.ca.gov

### State Bar of California Releases Reports Detailing Past Unethical Conduct in Handling Girardi Complaints
**Agency to Implement Additional Enhancements to Strengthen Oversight, Improve Discipline System, and Prevent Conflicts of Interest**

f 𝕏 in ✉

Friday, March 10, 2023   Categories: News Releases

The State Bar of California Board of Trustees released today two redacted reports on its past handling of complaints against disgraced and disbarred attorney Thomas V. Girardi. The Board decided to release the reports in furtherance of the agency's public protection mission and its commitment to transparency and accountability. In releasing these reports, the State Bar has redacted information that is protected under the law, including California Business and Professions Code section 6086.1, and the right to privacy.

The first report was prepared by attorney Alyse Lazar, who in 2021 was retained by the State Bar to review 115 files of past complaints against Girardi. Her review, limited to documents in investigative files, identified numerous instances in which complaints were closed without complete investigations or despite the development of facts warranting discipline. A redacted version of the report is posted here.

The second report was completed by Halpern May Ybarra Gelberg LLP, an outside law firm hired by the State Bar to conduct a wide-ranging investigation that was not limited to file review and included interviews of 74 witnesses and extensive evidence gathering. The May report details instances where Girardi's efforts to buy relationships and exercise influence at the State Bar—at all levels—likely impacted the handling of some complaints against him, causing those complaints to be closed improperly. A redacted version of the report is posted here.

Together, the two reports provide a clear and comprehensive review of how Girardi's unethical and unacceptable behavior went unchecked for so long and reveal systemic organizational dysfunction that persisted for many years and through many changes of leadership. Importantly, none of the individuals whose unethical behavior is detailed in the May report are still affiliated with or employed by the State Bar in any capacity.

"To ensure that what happened in the Girardi matter never happens again, we commissioned unflinching investigations by outside experts, are making the results public to the extent we can legally do so, and are addressing the findings comprehensively," said Ruben Duran, Chair of the State Bar Board of Trustees. "While none of the individuals named in the May report are still at the State Bar, the magnitude and duration

of the transgressions reveal persistent institutional failure and a shocking past culture of unethical and unacceptable behavior. In recent years we have put in place many safeguards that serve both to prevent unethical or corrupt behavior and—if it does occur—to catch and address it quickly. That work continues. Providing this disclosure is a necessary step to demonstrate our commitment to transparency and accountability and restore public trust."

## The findings

During a 16-month investigation, May and his team reviewed over 950,000 documents, issued 23 subpoenas, and interviewed, either voluntarily or under compulsion, 74 witnesses. The May report indicates that Girardi intentionally cultivated relationships at many levels in the State Bar to increase his influence in the agency. The report outlines several instances of past State Bar staff exercising poor judgment, ignoring or poorly handling conflicts of interest, and otherwise behaving unethically. None of the individuals identified as engaging in unethical conduct remain affiliated with or employed by the State Bar.

Examples include:

- Former State Bar employee Tom Layton, who was terminated in 2015, (and his wife) received gifts and payments estimated at over $1 million from Girardi, through his firm, while Layton was employed at the State Bar. Those payments and gifts were never properly disclosed.
- Other State Bar employees and Board members accepted and failed to report gifts and other items of value from Girardi.
- Relatives of staff members were employed by Girardi's firm.
- Staff in the Office of Chief Trial Counsel (OCTC) were improperly involved in matters assigned to outside conflict counsel.
- Eight Girardi cases were closed by individuals who May determined had conflicts of interest at the time they worked on the cases. The report found that their conflicts tainted their decisions to close the cases.
- Interim Executive Director Bob Hawley ghostwrote decisions in matters assigned to outside conflict counsel without disclosing that fact, including a decision to recommend closure of a complaint against Girardi.
- Between 2013 and 2015, both the Executive Director's Office and Office of General Counsel received reports about Girardi's influence at the State Bar and connection to Layton and others but failed to investigate.
- Former Executive Director Joe Dunn, who was terminated in 2014, and Hawley made questionable terminations of two OCTC attorneys who were advocating for disciplinary actions against Girardi.
- On at least one occasion, Girardi successfully deployed his connections at the State Bar to discourage people from making complaints against him.

The May report found that—while the State Bar has since done much to remedy these problems—in the past, conflict policies were weak, record-keeping on conflicts was incomplete, and awareness of conflict rules, which should have influenced case assignments and handling, was low.

The 2021 Lazar report revealed errors made in case closures over the four decades of Girardi's career. In particular, the report identified significant issues regarding the investigation and evaluation of high-dollar, high-volume trust accounts. The 2021 Lazar report prompted the Board to undertake the May investigation and to take several actions by the Board to strengthen the discipline system.

**Actions already taken**

Current Board and staff leadership have already taken many steps to reform the agency. Many of the failures outlined in the May report occurred before 2018, when the State Bar shed its professional association functions and focused more sharply on its public protection mission. Examples of these reforms include:

- More robust policies and procedures regarding conflicts-of-interest and gifts that recognize the importance of avoiding the appearance of impropriety and mandate frequent reporting.
- New OCTC policies that limit the ability to close cases when a complaining party withdraws a complaint.
- Improvements in how OCTC reviews patterns of complaints.
- Numerous steps to strengthen the Special Deputy Trial Counsel (SDTC) Program, which handles cases when internal staff have conflicts.
- Elimination of Board elections. All Trustees are now appointed, and elections for Board officer positions have also been eliminated.
- Greater oversight by the Board of the CTC and SDTC.

**Looking ahead**

Before the May report was submitted, the Board created an Ad Hoc Committee on Oversight and Accountability Reforms to review the findings and recommendations from the May report and recommend additional changes in State Bar governance and operations. Committee members are Trustees Arnie Sowell, Jr., Hailyn J. Chen, and Melanie M. Shelby.

After its members fully consider the May report's findings in conjunction with the Lazar report, the committee will make recommendations that will be posted for public comment before being acted on by the Board of Trustees.

"The commissioning and release of the May and Lazar reports represent important steps in the State Bar's efforts to better fulfill its public protection mission by fostering a culture grounded in integrity, accountability, and transparency," Duran said. "While much has already been achieved, these investigations equip us to further strengthen governance, ethical culture, policies, and procedures."

Frequently asked questions about the release of these reports and past actions on the Girardi matter are posted here.

<p style="text-align:center">###</p>

Follow the State Bar online
LinkedIn, Twitter, Facebook, and Instagram

*The State Bar of California's mission is to protect the public and includes the primary functions of licensing, regulation and discipline of attorneys; the advancement of the ethical and competent practice of law; and support of efforts for greater access to, and inclusion in, the legal system.*

Previous Article                                                                                                          Next Article

Copyright © 2023 The State Bar of California

EXHIBIT 4

An official website of the United States government. Here's how you know

# Operation Greylord

**OPERATION GREYLORD**

## It was one of the most important cases in the annals of public corruption investigations in the United States.

On March 15, 1984, in a federal courtroom in Chicago, a jury found Harold Conn guilty on all four counts of accepting bribes to be passed on to Cook County, Illinois judges as payment for fixing tickets. The evidence? He had been caught live on FBI tapes.

This "bagman" had been the deputy traffic court clerk in the Cook County judicial system, and he was the first defendant to be found guilty in a mammoth sting investigation of crooked officials in the Cook County courts.

**It was called Operation Greylord**, named after the curly wigs worn by British judges.

And in the end—through undercover operations that used honest and very courageous judges and lawyers posing as crooked ones and with the strong assistance of the Cook County court and local police—92 officials were indicted, including 17 judges, 48 lawyers, eight policemen, 10 deputy sheriffs, eight court officials, and one state legislator. Nearly all were convicted, most of them pleading guilty. It was an important first step to cleaning up the administration of justice in Cook County.

That's really the whole point. Abuse of the public trust cannot and must not be tolerated. Corrupt practices in government strike at the heart of social order and justice. And that's why the FBI has the ticket on investigations of public corruption as a top priority.

Historically, of course, these cases were considered local matters. A county court clerk taking bribes? Let the county handle it.

But in the 1970s, state and local officials asked for help. They didn't have the resources to handle such intense cases, and they valued the authority and credibility that outside investigators brought to the table. By 1976, the Department of Justice had created a Public Integrity Section, and the FBI was tasked with the investigations, focusing on major, systemic corruption in the body politic.

### Resources

- Major Cases

EXHIBIT 5

 **CALIFORNIA COURTS NEWSROOM** newsroom.courts.ca.gov    

NewsLink

# Silicon Valley Judge Retires Amid Disclosure Scandal

Apr 19, 2023



Santa Clara Superior Court has announced the termination of the controversial Bench-Bar-Media-Police Committee (BBMP), and that the committee's most recent chairperson, Judge James Towery, will officially retire from the bench on May 17, 2023.

## Related Links

🖹 Silicon Valley Judge Retires Amid Disclosure Scandal ⬈

---

News and Features

Chief Justice

Supreme Court

Courts of Appeal

Superior Courts

Resources

Calendar

Public Records Request

Supreme Court Oral Argument Archive

<u>All News</u>                                       <u>Branch Facts</u>

**For Media**                                    Subscribe with your email address to receive
                                                 news and updates
<u>Media Contacts</u>

<u>Multimedia</u>

<u>Cameras in the Courtroom</u>

<u>COVID-19</u>                                    Sign Up

# CALIFORNIA COURTS NEWSROOM



---

Access to Records

Accessibility Statement

Terms of Use

Privacy

Contact Us

© 2023

EXHIBIT 6



**Grant Parks** *State Auditor*

[SENT VIA EMAIL TO: justintimesd@gmail.com]

April 24, 2023

Dear Mr. Beck:

The California State Auditor's Office (Office) received your request on April 12, 2023 for records under the California Public Records Act ((Gov. Code, § 7920.000 et seq.) (hereafter "CPRA")), wherein you requested records from our office.  Specifically, you have requested the following:

> "PUBLIC RECORDS REQUESTS
> 1) What authority does California State Auditor possess over The State Bar of California?
> 2) What is the status of my audit demand via Legislature through Laurie Davies AD74?
> 3) What disclosures were made, and when, by State or State Bar RE: contingent liability for:
>> *Justin S. Beck v. State of California et al.*
>> Orange County Superior Court Case No. 30-2020-01145998**
>> *Justin S. Beck v. State of California et al.*
>> Orange County Superior Court Case No. 30-2021-01237499**
>> *Justin S. Beck v. State of California et al.*
>> U.S. Southern District of California Case No. 3:23-0164-AGS-DDL
>> *Justin S. Beck v. Catanzarite Law Corporation et al.*
>> U.S. Southern District of California Case No. 3:22-CV-01616-AGS-DDL
> 4) What constitutes a "*de minimis*" amount of public money referenced in Report 2022-030?
> 5) Produce all records RE: money laundering convictions by State Bar's attorneys 2010-2022.
> 6) What common characteristics did the "700 attorneys" in Report 2022-030 share?
> 7) Produce all records RE: "700 attorneys" referenced in Report 2022-030, or any related data.
> 8) Has California State Auditor received whistleblower complaints to investigate State Bar staff?
> 9) What is the status of those whistleblower complaints?
> 10) How does California State Auditor oversee State Bar's "Leadership Bank Program?"
> 11) What state oversight exists to ensure State Bar staff/officials are not laundering money?
> 12) What agencies of California provide oversight to The State Bar of California, and how?
> 13) What public employees of The State Bar of California has auditor investigated 2010-2022?
> 14) Produce all records RE: investigation from 2010-2022 involving State Bar staff/officials.
> 15) Produce all records RE: embezzlement from 2010-2022 involving State Bar staff/officials.
> 16) Produce all records RE: known/alleged bribery from 2010-2022 to State Bar staff/officials.
> 17) Produce all records RE: State Bar's "Conflict List" referenced in Report 2022-030.
> 18) Produce all records RE: State employee Charles Tsai (Deputy Attorney General)*"

Anti-SLAPP Opp. 3:23-CV-0164-AGS-DDL Exhibit #8: 002

**Grant Parks** *State Auditor*



Mr. Beck
April 24, 2023
Page 2

The CPRA provides for an extension of the usual 10-day time limit in which an agency is to determine whether a request seeks disclosable public records when there is a "need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records that are demanded in a single request" and the "need for consultation with another agency having substantial interest in the determination of the request." (Gov. Code, § 7922.535, subds. (c)(2) & (3).) Considering the voluminous nature of your request, the office needs additional time to identify responsive records to review and determine what may or may not be released in response to your request. The office anticipates making a determination about your request by **May 8, 2023**.

Please note that, although we have not yet completed a review of each individual document responsive to your request, as a matter of law, our office is prohibited from releasing records that were not used in support of our published audit report. (Gov. Code §§ 7927.705 and 8545, subd. (c).) We are also prohibited from disclosing any substantive information about our pending audit work (Gov. Code § 8545). Additionally, our statutes prohibit us from releasing information that is otherwise privileged or confidential, such as attorney-client communications or work product, information about whistleblower complaints and investigations, and confidential personnel and licensure information. (Gov. Code, §§ 7927.705, 8545, and 8547.7; Evid. Code, § 954; and Code Civ. Proc., § 2018.030.) In addition to these privileges, we anticipate that our individualized review of the documents you requested will reveal additional bases for withholding documents that we will specify when we provide our initial release of records. Finally, we note that a number of your "requests for records" are actually questions, some of which are legal and some of which are factual in nature. The CPRA entitles members of the public access to non-confidential public records, not written answers to legal and other inquiries. Accordingly, we intend to focus our response on identifying and providing to you responsive records. As non-parties to your litigation, we are under no obligation to respond to interrogatories and decline to do so.

If you have any questions concerning your CPRA request, please feel free to contact me at (916) 445-0255.

Yours very truly,

STEPHANIE RAMIREZ-RIDGEWAY
Chief Counsel