Exhibit 4

Justin S. Beck
3501 Roselle St.,
Oceanside, CA 92056
760-449-2509
justintimesd@gmail.com
*In Propria Persona*

# IN THE SUPERIOR COURT OF CALIFORNIA

## COUNTY OF ORANGE

_____

JUSTIN S. BECK,

          Plaintiff,

    vs.

KENNETH J. CATANZARITE, ESQ., an individual; CATANZARITE LAW CORPORATION, a California corporation; MOBILE FARMING SYSTEMS, INC., a California corporation; BRANDON WOODWARD, ESQ., an individual; TIM JAMES O'KEEFE, an individual; RICHARD FRANCIS O'CONNOR, JR., an individual; AMY JEANETTE COOPER, an individual; CLIFF HIGGERSON, an individual; TONY SCUDDER, an individual; JAMES DUFFY, an individual; MOHAMMED ZAKHIREH, an individual; TGAP HOLDINGS, LLC, a Nevada limited liability corporation; AROHA HOLDINGS, INC., a California corporation; THE STATE OF CALIFORNIA, a public entity; THE STATE BAR OF CALIFORNIA, a public entity; RUBEN DURAN, an individual; SUZANNE GRANDT, an individual; ELI DAVID MORGENSTERN, an individual; NICOLE MARIE CATANZARITE WOODWARD, an individual;

          Defendants,

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 30-2020-01145998-CU-BT-CJC

Judge: Hon. Randall J. Sherman

**OMNIBUS OPPOSITION TO MOTIONS TO COMPEL; MEMORANDUM OF POINTS AND AUTHORITIES; OBJECTION TO SANCTIONS; DECLARATION OF JUSTIN S. BECK**

Filed concurrently with:

   Memorandum of Points and Authorities

   Exhibits

   Request for Judicial Notice [ROA #998]

Department: CX105

Hearing Date: May 5, 2023

Hearing Time: 10:00AM

Action Filed: May 26, 2020

Trial Date: None Set

**MEMORANDUM OF POINTS AND AUTHORITIES**................................................................1-13

**I.    INTRODUCTION**.................................................................................................1

**II.   STATEMENT OF FACTS**....................................................................................2-7

**III.  ARGUMENT**.......................................................................................................7-12

   **A. Governing Law Precedes and Supersedes Motions to Compel from Conflicted Parties**

      1. <u>California Rules of Professional Conduct 1.7 Bars Catanzarite's Appearance</u>

      2. <u>California Rules of Professional Conduct 1.9 Bars Conflicted Discovery Production</u>

      3. <u>Court's Inherent Powers to Disqualify Catanzarite, Deny Motions to Compel</u>

   **B. Catanzarite's Purported Harm to Attorneys' Due Process Rights**

**IV.   CONCLUSION**....................................................................................................12

<u>TABLE OF AUTHORITIES</u>

<u>State Cases</u>

*Anderson* v. *Eaton*, ...................................................................................................9

      211 Cal. 113 [293 P. 788] (1930)

*Arden* v. *State Bar*, ...............................................................................................12

      52 Cal.2d 310 (1959)

*Beck v. Catanzarite Law Corp.*, .................................................................................8

      No. G059766, 17-18, 33, 38-39 (Cal. Ct. App. Jul. 13, 2022)

*Fincanna Capital Corp. v. Cultivation Tech.*, .................................................1, 8, 10, 12, 13

      No. G058700, 22 (Cal. Ct. App. Jun. 28, 2021

*Flatt v. Superior Court*, .......................................................................................9, 13

      9 Cal.4th 275, 36 Cal. Rptr. 2d 537, 885 P.2d 950 (Cal. 1994)

*Gregory* v. *Gregory*, ...........................................................................................12

      92 Cal. App.2d 343 [206 P.2d 1122] (1949)

*Hammett* v. *McIntyre*, ...........................................................................................9

      114 Cal. App.2d 148, 153-154 [249 P.2d 885] (1952)

*Ishmael* v. *Millington*, .........................................................................................12

      241 Cal. App.2d 520 [50 Cal. Rptr. 592] (1966)

*Kennedy v. Kennedy*, ..............................................................................................7

      235 Cal. App. 4th 1474, 1485 (2015)

*Klemm v. Superior Court*, ...............................................................................9, 12, 13

      75 Cal.App.3d 893, 901 (1977)

*Lysick* v. *Walcom*, ...............................................................................................12

      258 Cal. App.2d 136

*McClure* v. *Donovan*, ............................................................................................9

      82 Cal. App.2d 664, 666 [186 P.2d 718] (1947)

*Oasis West Realty, LLC v. Goldman*, .........................................................................10

      51 Cal.4th 811 [124 Cal.Rptr.3d 256] (2011)

*Whitten v. Dabney,* ..............................................................................................................*passim*

171 Cal. 623, 631 (1915)

*Wutchumna Water Co. v. Bailey,* .....................................................................................10

216 Cal. 564 [15 P.2d 505] (1932)

<u>State Statutes, Rules & Codes</u>

Cal. Cod. Civ. Proc. § 128...............................................................................................11

Inherent Powers of the Court to Restrain and Prevent Violations of Mandatory Law

Cal. Corp. Cod. § 800(b)(1) .......................................................................................*passim*

Shareholder Requirement to File or Maintain Derivative Actions

Bus. & Prof. Code, § 6131................................................................................................10

Misdemeanor for Certain Conflicted Representation

Cal. Bus. & Prof. Cod. § 6068.....................................................................................10, 11

Oath & Duty of Each Attorney Associated with Catanzarite Law Corporation

Cal. Bus. & Prof. Cod. § 6077..........................................................................................13

Binding Nature of California Rules of Professional Conduct

Cal. Bus. & Prof. Cod. § 6104..........................................................................................11

Appearing Corruptly and Willfully, Without Authority

Cal. Rul. of Prof. Conduct 1.7(d)(3) ..............................................................................7, 13

Un-Waivable Conflicts of Interest

Cal. Rul. of Prof Conduct 1.9.................................................................................1, 7, 9, 10

Duties to Former Clients

Cal. Rul. of Prof. Conduct 4.1.........................................................................................7, 8

Duty of Candor for Each Attorney Associated with Catanzarite Law Corporation

Cal. Rul. of Prof. Conduct 8.4......................................................................................*passim*

Moral Turpitude or Fraud

<u>Federal Cases</u>

*Lujan v. Defenders of Wildlife*, ................................................................................................1, 9, 13

    504 U.S. 555 (1992)


<u>Federal Statutes, Rules & Codes</u>

18 U.S.C. § 207(a) ...........................................................................................................................10

    Barring Certain Conflicted Representation

42 U.S.C. § 12131-12134.........................................................................................................*passim*

    Americans with Disabilities Act of 1990, Title II

F.R.Civ.P. 23.1(c) ..............................................................................................................................7

    Dismissal of a Derivative Claim Requires Court Approval

## I.   INTRODUCTION

Kenneth J. Catanzarite and Catanzarite Law Corporation – as attorneys for Defendants Kenneth Catanzarite, Catanzarite Law Corporation, Brandon Woodward, Tim James O'Keefe, Amy Jeanette Cooper, Cliff Higgerson, Mohammed Zakhireh, Richard Francis O'Connor, Jr., James Duffy, Tony Scudder, Aroha Holdings, Inc., TGAP Holdings, LLC, Nicole Marie Catanzarite Woodward and Defendant/Cross-Complainant Mobile Farming Systems, Inc. (together the "Conflicted Parties") – have an illegal and prejudicial unity of interests in this case with parties they are suing, tolling claims against, or representing at various times in this case and related cases as set forth within the statement of facts and declaration of Beck ("Decl."). Conflicted Parties seek to compel Beck's production of: Request for Production of Documents (Set One); Request for Production of Documents (Set Two); Special Interrogatories; Form Interrogatories (together the "Conflicted Discovery" at ROA #798, ROA #799, ROA #800, ROA #801). Plaintiff Justin S. Beck ("Beck") hereby opposes the Conflicted Discovery.

It is against the law for Kenneth J. Catanzarite, Catanzarite Law Corporation, Nicole Marie Catanzarite Woodward, Tim James O'Keefe, or Eric V. Anderton (together "Catanzarite") to represent any party to this case, or obtain, or use the Conflicted Discovery. Rule 1.9 holds "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person* in the same or a substantially related matter in which that person's* interests are materially adverse to the interests of the former client unless the former client gives informed written consent.*." Cultivation Technologies, Inc. ("CTI") has provided no such consent, nor can any among Conflicted Parties provide such consent.

Catanzarite will assert Beck lacks standing. "The problem with Catanzarite's lack-of-standing argument is that it ignores the fact CTI [or MFS] is not an individual, but rather an inanimate corporate entity having a board of directors with authority to hire corporate counsel." *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 22 (Cal. Ct. App. Jun. 28, 2021) Such authority cannot come from the exculpation of conflict waivers of parties Catanzarite are also suing and tolling claims against. Decl. Ex. 28, 29. Beck has a due process right to be free of material conflicts which are now manifesting as expected. Per U.S. Supreme Court, in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), when Congress authorizes private parties to challenge procedural wrongs, as here, Beck must show a concrete and imminent injury to establish standing, which Beck does. Decl. ¶¶ 1-44. ROA #773, p. 3, ¶ 4 (19:22).

## II.    STATEMENT OF FACTS

Beck met O'Connor, Cooper, and Probst after April 7, 2015. Decl., ¶ 1. Beck has never been an officer, director, employee, consultant, or manager of Mobile Farming Systems, Inc. ("MFS"). Id. ¶ 2. O'Connor and Cooper each admitted to Beck they paid $340,000 in illegal commissions to a Joseph Porche out of an investment of approximately $450,000 in Mobile Farming Systems, Inc. made by Jolly Roger, Inc. or Jolly Rogers Investments, Inc. Id. ¶ 3. O'Connor, Cooper, and Probst each executed the amended acts of organization of Cultivation Technologies, Inc. ("CTI") on June 15, 2015, and it was their express intention that MFS not receive shares of CTI. Id. ¶ 4, 5, Ex. 1. Every shareholder of MFS was offered shares of CTI, and each knew that MFS would be wound down or dissolve. Id. ¶ 6. Jolly Roger, Inc., or Jolly Rogers Investments, Inc., was offered shares of CTI but declined. Id. ¶ 7, Ex. 2. O'Connor, Cooper, and Probst communicated about winding down or bankrupting MFS. Id. ¶ 8.

O'Connor participated in 158 separate securities transactions involving the sale or transfer of CTI shares between June 15, 2015, to January 23, 2019. Id. ¶ 9, Ex. 3. O'Connor never disclosed or asserted MFS to own shares of CTI during that period. Id. ¶ 10. O'Connor, in his duly authorized capacity, authorized the first private placements for the company. ¶ 11. O'Connor was CEO of CTI when it made its first share issuances, which did not include shares to MFS as per his express intent in his duly authorized capacity. Id. ¶ 12, Ex. 4. According to the representations of O'Connor and Cooper who were majority of the CTI board acting in a duly authorized capacity, to the transfer agent and every shareholder buying stock in the company thereafter, MFS was not to be issued shares of CTI and any issuance that may have been authorized but unissued was expressly cancelled. Id. ¶¶ 5, 12.

Zakhireh and Duffy bought shares from CTI directly. Id. ¶ 13. Zakhireh and Duffy acquired CTI shares from O'Connor or the entity TGAP Holdings, LLC privately. Id. ¶ 14. No securities agreement involving the sale or transfer of shares of CTI reflected ownership of CTI shares by MFS until January 23, 2019, under coercion. Id. ¶ 10. O'Connor resigned from CTI and held a grudge against Beck for all times relevant after resigning. Id. ¶ 16. Zakhireh and O'Connor sued Beck in April 2017 based on their standing as CTI shareholders after CTI announced a $14 million funding agreement. Id. ¶ 15.

Because of O'Connor's harbored grudge, O'Connor and Zakhireh complained to the United States Securities & Exchange Commission ("SEC") of purportedly illegal conduct by CTI and Beck

involving CTI shares. Id. ¶ 16. The SEC reviewed approximately 25,000 pages of securities documents, many of which were signed by O'Connor. Ibid. The SEC concluded its investigation in January 2018 finding no cause for enforcement. Ibid., Ex. 5. The 25,000 pages of securities documents, including those signed by O'Connor, did not disclose any ownership by MFS of CTI shares as per the express intent of O'Connor and Cooper. Id. ¶¶ 4-14.

On September 14, 2018, Catanzarite Law Corporation for a "Denise Pinkerton" as "attorney-in-fact" for a non-shareholder of MFS (Roger Root, not Jolly Roger) filed a derivative action against MFS, Beck, O'Connor, Cooper, Higgerson, Scudder, and Aroha Holdings, Inc. without standing and a direct action against Cooper and O'Connor for securities fraud and elder abuse. Id. ¶¶ 17-18. On October 4, 2018, Kenneth Catanzarite emailed Beck demanding 10,000,000 shares of CTI from its founders while separately claiming those shares did not exist. Id. ¶ 19. On December 21, 2018, Ken Watnick, actual legal counsel for MFS, was served or notified of over 5,000 discovery requests from Kenneth Catanzarite and Catanzarite Law Corporation against MFS (more than 500 requests) and others including Beck, O'Connor, Cooper, Higgerson. Id. ¶ 20, Ex. 6. See also Ex. 10 for motion from Higgerson.

Cliff Higgerson demurred to the derivative MFS action, asserting Roger Root was not a shareholder of MFS and that Catanzarite Law Corporation had no standing to pursue derivative claims. Id. ¶ 21. After that, MFS counsel Ken Watnick filed a motion for security on January 7, 2019. In response to cover up a lack of standing, Catanzarite Law Corporation took over MFS through a series of non-judicial acts in January 2019 and started acting as its counsel without legal authority. Ibid., Ex. 6.

On January 23, 2019, Amy Jeanette Cooper's legal counsel resigned after learning the derivative action against MFS had been compromised or settled without court approval – they were not involved in any negotiation or discussion with Catanzarite Law Corporation. Id. ¶¶ 22, 23., Ex. 7. (It is unknown how Ms. Cooper was contacted directly or indirectly by Catanzarite; she was represented by counsel).

On January 23, 2019, Richard Francis O'Connor, Jr. signed a knowingly fraudulent shareholder consent of CTI asserting MFS was its sole shareholder which purported to unwind three years of securities transactions for millions of dollars, many for which he acted principal within. Id. ¶ 24. Ex. 8. The fraudulent shareholder consent purported to place Richard Francis O'Connor, Jr., Mohammed Zakhireh, and James Duffy as officers and directors of CTI on the basis that MFS was its "sole

shareholder" – but each O'Connor, Zakhireh, and Duffy were actually CTI shareholders. Id. ¶ 25. Kenneth Catanzarite sent Beck a threatening letter January 25, 2019, that he was "working with law enforcement" and to turn over all operations of CTI to him and his "clients" – he knew this letter was false. Id. ¶ 26, Ex. 9. After taking over MFS under the threat of "working with law enforcement," Catanzarite Law Corporation filed a direct lawsuit while it was suing MFS derivatively, and after serving MFS with 500 discovery requests and over 5,000 discovery requests on other defendants including O'Connor, Cooper, and Higgerson. Id. ¶ 27. In doing so, Catanzarite Law Corporation relied upon purported exculpation of conflict waivers from parties defendant from the false derivative action as it was tolling claims to "bring later." Id. ¶ 32, Ex. 13.

CTI received valuation guidance and entered into a merger transaction with Western Troy Capital Resources between January and February 2019 with an estimated value of $261 million. Id. ¶¶ 28, 29, Ex. 12. Beck informed Conflicted Parties on February 5, 2019, with specificity of the amount of direct damages that could be caused if they continued their campaign of non-judicial and judicial fraud. Id. ¶ 29, Ex. 11. They continued anyway. Ibid. Catanzarite Law Corporation filed a declaration of Richard Francis O'Connor on or around March 19, 2019, and obtained a temporary restraining order under false pretenses, which it used to obtain a list of all CTI shareholders. Id., ¶ 30. Using this information, Catanzarite Law Corporation filed a direct and derivative action for CTI shareholders on April 16, 2019, as it was separately preparing for a trial of fact under Section 709 in which the firm sought to cancel or unwind all shares of CTI on April 30, 2019. Id. ¶ 31.

During the 709 trial, the Court reviewed private placement memorandums signed by O'Connor, the transfer agent declaration signed by O'Connor and Cooper, transfer agent retention agreement signed by O'Connor and Cooper, initial share issuances from July 2015 approved by CTI's board. Id. ¶ 33. The Court concluded that laches supports Mobile Farming Systems, Inc. had been of the belief that it was not a shareholder of Cultivation Technologies, Inc. Whether or not this was captured in the Court order following that trial, Mr. Catanzarite knows that Mobile Farming Systems, Inc. is not and has never been a shareholder of Cultivation Technologies and that he is defrauding this Court and innocent people. Id. ¶ 34. Concluding the trial as verified by Beck as his own testimony here, the Court stated "every fiber

of [its] being" concluded the facts were "overwhelming" against the contention that Mobile Farming Systems, Inc. was a shareholder of Cultivation Technologies, Inc. Id. ¶ 33-35.

The Court stated that Cooper and O'Connor would be "violating their fiduciary duties up the ying yang" if Mobile Farming Systems, Inc. had been a shareholder of Cultivation Technologies, Inc. all along – having participated in so many securities transactions without disclosing it. Id. ¶ 35, Ex. 14.

Convinced Beck could finally complete the Western Troy transaction valued at $261 million for CTI shareholders after confirming the lack of merit to Catanzarite Law Corporation's false claims in the 709 trial, Beck travelled to Italy after May 1, 2019, for a vacation as he negotiated the final merger agreement. Id. ¶¶ 33-36. During that trip, he spoke with Carlos Calixto who had received calls, texts, and voicemails from Tony Scudder on behalf of Kenneth J. Catanzarite, who ultimately filed a shareholder proxy containing Carlos Calixto's forged signature. Ex. 15. Beck resigned from Cultivation Technologies, Inc. on May 14, 2019, when it became clear that Catanzarite Law Corporation's fraudulent scheme would destroy the merger with Western Troy Capital Resources. Decl. ¶ 36. Calixto informed Beck that Mr. Catanzarite tried to bribe him for his Cultivation Technologies, Inc. shareholder vote for $5,000. Calixto declares his signature on the proxy was forged anyway when he declined Mr. Catanzarite's bribe. Id. ¶ 36, Ex. 15. Tony Scudder later confirmed to Beck that Mr. Catanzarite bribes witnesses and extorts litigants as a practice to support manufactured claims and fraudulent litigation – and that he even intended to bring witnesses during the 709 trial that were bribed to provide false testimony in support of his manufactured claims (including a former CTI consultant, Nick Fleig). Id. ¶ 37. Mr. Scudder informed Beck that he was afraid of Mr. Catanzarite, calling him a "powerful criminal." Ibid. Beck alleges Mr. Catanzarite also bribes State Bar staff (subject of racketeering claims). Id. ¶ 44.

.   Catanzarite Law Corporation commenced the scheme on September 14, 2018, for a non-shareholder of MFS, and has propounded thousands of discovery requests against parties without standing, factual, or legal probable cause to do so amidst material conflicts of interests. Id. ¶¶ 17-18. Conflicted Parties have previously received, and subsequently abused production of discovery to file more fraudulent litigation even after material facts are adjudicated and concealed from this Court. Id. ¶¶ 1-35, Ex. 14. See also Ex.18-26. Beck has never received, to his knowledge through any counsel or in pro per, any discovery production from Conflicted Parties. Id. ¶ 39.

Catanzarite Law Corporation has access to most discovery of which it requests because Cultivation Technologies, Inc. was financed by a public issuer, and the other company destroyed indirectly Contakt World Technologies Corp. was also a public issuer. Id. ¶¶ 40-41.

Beck is unemployed and suffers from severe hardship and now a disability as direct and proximate cause of the schemes continuing inside and outside this Court. Id. ¶ 42. Catanzarite Law Corporation filed motions to compel production for information it has, or was directly provided, during the fraudulent scheme or through filings in U.S. Southern District of California concerning his damages with specificity. Id. ¶ 40. Catanzarite also has a duty of candor to this Court:

"The Court: So we have got this written consent of directors of CTI signed on 06/15/15 [by O'Connor, Cooper, and Probst]...[MFS] failed to provide any consideration as required, and so it wasn't issued the stock. The board deems it to be in the best interest to sell to its founders listed there. Other people." Decl. ¶ 35, Ex. 14, pp. 10-11. "The Court: "[] I don't really care about, you know, what somebody declares under penalty of perjury. I want the underlying document." Id. p. 18 (21:23). "The Court: So this is dated 7/30/15, checklist reminder. And you are saying this lists the initial shareholders [of CTI]? Id. p. 19 (17:19)...So page 3 lists eight shareholders...none of which are the plaintiff [MFS]." Ibid. (23, 25). "Mr. Catanzarite: It is undisputed [O'Connor, Cooper, and Probst] are the same three people [who authorized all the transactions], but they did not act formally to acknowledge that MFS was never a shareholder." Id. p. 22 (3:5). "The Court: You say O'Connor also signed over 50 subscription agreements to sell CTI stock directly to MFS shareholders." Id. p. 21 (21:23). "The Court: O'Connor represented and warranted to the CTI transfer agent that MFS was not a shareholder of CTI." Id. p. 22 (17:19). "[O'Connor] was bound under 1E...to give a complete list of all shares issued...MFS was not listed." Id. p. 24 (9:11). "The Court: So basically the documents support the position that CTI has taken the position that MFS doesn't own stock. CTI has done that through its three directors as of 2015: Probst, Cooper, and O'Connor, and those are the three directors of Mobile Farming Systems. So even though Mobile Farming Systems didn't per se itself adopt this position that it didn't own stock, then the three people did so, which for lack of a better term constitutes an admission against interest. If it wasn't true, they would be violating their fiduciary duties up the ying yang to sign documents on behalf of CTI saying that MFS is no longer a stockholder if, in fact, MFS was a stockholder."

1      "So let's assume for argument sake that all three of these modes of consideration were conveyed

2 from the plaintiff [MFS] to the defendant [CTI], then you have got this resolution repudiating the

3 shareholder signed off on by the three individuals in their representative capacity for CTI." Ex. 1.

4      "The Court: Mr. Catanzarite, every fiber of my being says that the facts are overwhelming against

5 your position in this case...We have repudiation of the agreement by people who were the same

6 principals in the plaintiff [MFS]. We have actions – repeated actions taken subsequently consistent with

7 the notion that plaintiff [MFS] was not a stockholder. The delay in bringing this action [January 28,

8 2019] is consistent with that conclusion, that plaintiff [MFS] has been of the view they are not a

9 shareholder....So the Court concludes that the challenge director election is denied, and the Court

10 concludes that plaintiff [MFS] is not a stockholder in CTI." Ex. 14. See Cal. Rul. Prof. Cond. 4.1.

## III. ARGUMENT

     The instant case arises from Catanzarite's serial fraud, malicious prosecution and unwaivable conflicts of interest which continue to contaminate this proceeding and related cases, deny Beck's due process rights, and impede Beck's right to access to government services free of such conflicts and attorney fraud under the Americans with Disabilities Act, Title II ("ADA"). ROA #2. Importantly, after Catanzarite Law Corporation's filing a false derivative action against MFS September 14, 2018, for a non-shareholder, dismissing parties Cooper, Higgerson, Scudder, and O'Connor who are somehow among Conflicted Parties producing evidence, the Court never approved any compromise or settlement, which is required under California law to prevent collusion. *Kennedy v. Kennedy*, 235 Cal. App. 4th 1474, 1485 (2015) ("Dismissal of a derivative claim requires court approval.") See F.R.Civ.P. 23.1(c).

     Nor can Catanzarite take any act against CTI or obtain Conflicted Discovery harming CTI interests under California Rules of Professional Conduct 1.9, or otherwise under 1.7(d)(3).

### A. Governing Law Precedes and Supersedes Motions to Compel from Conflicted Parties

#### 1. California Rules of Professional Conduct 1.7 Bars Catanzarite's Appearance

Rule 1.7 Conflict of Interest: Current Clients holds: "Representation [of Conflicted Parties seeking Conflicted Discovery] is permitted under this rule only if the lawyer complies with paragraphs (a), (b), and (c), and: (1) the lawyer reasonably believes* that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; and (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal."

By May 1, 2019, "Catanzarite's concurrent and successive representation of adverse parties included the following: (1) Catanzarite was representing the Roots' elder abuse lawsuit **against CTI** and some of its Founders (the Probst Faction) as well as a derivative action **against MFS**; (2) Catanzarite had made a deal with a handful of CTI Founders to dismiss them from the Pinkerton Action [without court approval as it tolls claims against them to "bring later," Ex. 13]; (3) it became MFS's counsel of record; (4) Catanzarite filed a derivative shareholder lawsuit for MFS, claiming 100 percent control and ownership of CTI, despite having lawsuits filed by other people claiming to be MFS shareholders; and (5) after filing two *derivative* shareholder lawsuits, Catanzarite filed a third derivative action (the Mesa Action) claiming to represent a different set of outsider shareholders, i.e., a class of derivative shareholders willing to join in the MFS Action but also independently seeking damages from CTI, its current shareholders, and board of directors. *Beck v. Catanzarite Law Corp.*, No. G059766, 17 (Cal. Ct. App. Jul. 13, 2022) At the end of May 2019, Catanzarite filed a lawsuit on behalf of Cooper and Mebane against CTI. The Cooper Action requested the court direct CTI to (1) hold a shareholder's meeting to elect a board of directors; (2) deliver an annual report; (3) appoint an accountant to conduct an audit; and (4) order CTI to pay the costs for an investigation, audit, and costs of the suit. CTI's corporate counsel filed an opposition, asserting a shareholder meeting was scheduled for August 2019. (See *FinCanna, supra,* G058700 [description of Catanzarite's six lawsuits].) In July 2019, Catanzarite filed first amended complaints (FAC) in the Pinkerton Action and the MFS Action. It removed all derivative action claims made on behalf of MFS and CTI. Catanzarite claimed to be MFS's and CTI's corporate counsel. Catanzarite next filed two lawsuits as CTI's corporate counsel (the FinCanna Action and Scottsdale Action). The Scottsdale Action is noteworthy in that Catanzarite demanded that CTI's insurance company stop providing a defense or indemnify Beck and other Probst Faction defendants in the Mesa Action. (See *FinCanna, supra,* G058700 [description of Catanzarite's six lawsuits].) *Beck v. Catanzarite Law Corp.*, No. G059766, 17-18 (Cal. Ct. App. Jul. 13, 2022) "[T] the record shows that when Catanzarite learned MFS lacked standing to bring a derivative suit on CTI's behalf, it did not dismiss the lawsuits. Catanzarite filed FACs instead." *Beck v. Catanzarite Law Corp.*, No. G059766, 33 (Cal. Ct. App. Jul. 13, 2022) [Catanzarite is concealing all material facts from the May 1, 2019, trial of fact, no matter what the subsequent Court order detailed]. See Cal. Rul. Prof. Conduct 4.1.

*Flatt v. Superior Court*, 9 Cal.4th 275, 36 Cal. Rptr. 2d 537, 885 P.2d 950 (Cal. 1994) is instructive. (Holding that where the requisite substantial relationship exists, "access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is presumed and disqualification of the attorney's representation of the second client is **mandatory**; indeed, the disqualification extends vicariously to the **entire firm**." Beck shows evidence of this proving the conflicts cannot continue, here. Decl. ¶¶ 1-44, Ex. 14. Ex. 18-26 for captions and signature pages of lawsuits filed for and against adversaries in the same or substantially related matters.

*Klemm v. Superior Court*, 75 Cal.App.3d 893 (1977) is also instructive as to why the Conflicted Discovery is frivolous, and why Catanzarite cannot be provided the Conflicted Discovery. "Though an informed consent be obtained, no case we have been able to find sanctions dual representation of conflicting interests if that representation is in conjunction with a trial or hearing where there is an actual, present, existing conflict and the discharge of duty to one client conflicts with the duty to another. (See *Anderson* v. *Eaton* (1930) 211 Cal. 113 [293 P. 788]; *Hammett* v. *McIntyre* (1952) 114 Cal. App.2d 148, 153-154 [249 P.2d 885]; *McClure* v. *Donovan* (1947) 82 Cal. App.2d 664, 666 [186 P.2d 718].) (1) As a matter of law a purported consent to dual representation of litigants with adverse interests at a contested hearing would be neither intelligent nor informed. Such representation would be per se inconsistent with the adversary position of an attorney in litigation, and common sense dictates that it would be **<u>unthinkable to permit [Catanzarite] to assume a position at a trial or hearing where he could not advocate the interests of one client without adversely injuring those of the other</u>**."

Before filing the Conflicted Discovery, Catanzarite was subject to mandatory disqualification in this action and all related cases as a matter of mandatory law. Beck cannot be compelled to produce information on motions that were illegally filed without authority at threshold. Beck has standing to challenge this illegal conduct under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

### 2. California Rules of Professional Conduct 1.9 Bars Conflicted Discovery Production

Rule 1.9 Duties to Former Clients holds: "(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person* in the same or a substantially related matter in which that person's* interests are materially adverse to the interests of the former client unless the former client gives informed written consent.* (b) A lawyer shall not knowingly* represent a person* in the same or a substantially related matter in which a firm* with which the lawyer formerly was associated had previously represented a client (1) whose interests are materially adverse to that person;*

and (2) about whom the lawyer had acquired information protected by Business and Professions Code section 6068, subdivision (e) and rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed written consent.* (c) A lawyer who has formerly represented a client in a matter or whose present or former firm* has formerly represented a client in a matter shall not thereafter: (1) use information protected by Business and Professions Code section 6068, subdivision (e) acquired by virtue of the representation of the former client to the disadvantage of the former client except as these rules or the State Bar Act would permit with respect to a current client, or when the information has become generally known;* or (2) reveal information protected by Business and Professions Code section 6068, subdivision (e) and rule 1.6 acquired by virtue of the representation of the former client except as these rules or the State Bar Act permit with respect to a current client."

 "These three consolidated appeals concern Cultivation Technologies, Inc.'s (CTI) motion to disqualify its own legal counsel, the Catanzarite Law Corporation (Catanzarite), in related cases. The trial court granted CTI's disqualification motion relating to two lawsuits, deciding Catanzarite could not represent the following parties (1) CTI; (2) three CTI subsidiaries (Coachella Manufacturing, LLC, Coachella Distributors, LLC, and DS Gen, LLC, hereafter collectively referred to as CTI Subsidiaries); and (3) a group of CTI shareholders bringing a derivative lawsuit. We conclude the trial court was correct and we affirm its disqualification orders." *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 1 (Cal. Ct. App. Jun. 28, 2021) See Rule 8.1115(b) for reliance upon unpublished opinions, and Ex. 22 and 25 for complaints filed on behalf of CTI before the attorney-client relationship was terminated and upheld by Court of Appeal. The Conflicted Discovery all relates to CTI in some manner.

Cal. Rul. Prof. Conduct 1.9 fn. Holds "[1] After termination of a lawyer-client relationship [as above], the lawyer owes two duties to a former client [CTI].  The lawyer may not (i) do anything that will injuriously affect the former client [CTI] in any matter in which the lawyer represented the former client [CTI], or (ii) at any time use against the former client knowledge or information acquired by virtue of the previous relationship [Conflicted Discovery].  (See *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811 [124 Cal.Rptr.3d 256]; *Wutchumna Water Co. v. Bailey* (1932) 216 Cal. 564 [15 P.2d 505].)  For example, (i) a lawyer [Catanzarite] could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client and (ii) a lawyer who has prosecuted an accused person* could not represent the accused in a subsequent civil action against the government concerning the same matter.  (See also Bus. & Prof. Code, § 6131; 18 U.S.C. § 207(a).)"

### 3. <u>Court's Inherent Powers to Disqualify Catanzarite, Deny Motions to Compel</u>

The Court has the power to deny the Conflicted Discovery motions to compel because it has inherent power to control its proceedings. If the Court were to grant the motions, it would be disregarding mandatory law for the benefit of Catanzarite, to the concrete and particularized injury of Beck.

Cal. Cod. Civ. Proc. § 128 holds: (a) Every court shall have the power to do all of the following: (1) To preserve and enforce order in its immediate presence. (2) To enforce order in the proceedings before it, or before a person or persons empowered to conduct a judicial investigation under its authority. (3) To provide for the orderly conduct of proceedings before it, or its officers. (4) To compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in an action or proceeding pending therein. (5) To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto. (6) To compel the attendance of persons to testify in an action or proceeding pending therein, in the cases and manner provided in this code. (7) To administer oaths in an action or proceeding pending therein, and in all other cases where it may be necessary in the exercise of its powers and duties. (8) To amend and control its process and orders so as to <u>make them conform to law and justice</u>...if an order of contempt is made affecting an attorney, his or her agent, investigator, or any person acting under the attorney's direction, in the preparation and conduct of any action or proceeding, the execution of any sentence shall be stayed pending the filing within three judicial days of a petition for extraordinary relief testing the lawfulness of the court's order, the violation of which is the basis of the contempt except for the conduct as may be proscribed by subdivision (b) of **Section 6068** of the Business and Professions Code, relating to an attorney's duty to maintain respect due to the courts and judicial officers.

Beck filed a motion for protective order at ROA #1003. If the Court does not act to disqualify Catanzarite on its own from this case under the foregoing law, the Court has authority to deny the illegal Conflicted Discovery filings under Cal. Cod. Civ. Proc. § 128 and deny the associated, illegal requests for sanctions which were also filed without authority under Cal. Bus. & Prof. Cod. § 6104.

### B. Catanzarite's Purported Harm to Attorneys' Due Process Rights

According to Conflicted Parties' Demurrer to Beck's Complaint at ROA #2 supplemented at ROA #742, as Conflicted Parties seek to compel Beck to produce Conflicted Discovery, they contend:

"The Second Cause of Action for Unfair Business Practices fails because Defendants Kenneth Catanzarite, Catanzarite Law Corporation, Brandon Woodward, Tim James O'Keefe's due process rights to present a defense would be violated by inability to disclose their client's confidential information." ROA #773, p. 3, ¶ 4 (19:22). The same frivolous assertion – that their own conflicts are somehow harming them but not Beck – is re-asserted for Slander of Title. Id. p. 4, ¶ 4 (12:14). It is also asserted for Intentional Infliction of Emotional Distress. Id. p. 5, ¶ 3 (1:4). See RJN, Ex. 3 ROA #998.

This proves Beck does not have equal access to government services under ADA and that Catanzarite is using its own conflicts for an illegal strategic advantage (concrete injury). As set forth within *Klemm*, *supra*, 75 Cal.App. 3d 901 (1977) 142 Cal.Rptr. 509: "(5) Finally, as a caveat, we hasten to sound a note of warning. Attorneys who undertake to represent parties with divergent interests owe the highest duty to each to make a full disclosure of all facts and circumstances which are necessary to enable the parties to make a fully informed decision regarding the subject matter of the litigation, including the areas of potential conflict and the possibility and desirability of seeking independent legal advice. (*Ishmael* v. *Millington* (1966) 241 Cal. App.2d 520 [50 Cal. Rptr. 592].) (6) Failing such disclosure, the attorney is civilly liable to the client who suffers loss caused by lack of disclosure. (*Lysick* v. *Walcom, supra,* 258 Cal. App.2d 136.) In addition, the lawyer lays himself open to charges, whether well founded or not, of unethical and unprofessional conduct. (*Arden* v. *State Bar, supra,* 52 Cal.2d 310.) Moreover, the validity of any agreement negotiated without independent representation of each of the parties is vulnerable to easy attack as having been procured by misrepresentation, fraud and overreaching. (*Gregory* v. *Gregory* (1949) 92 Cal. App.2d 343 [206 P.2d 1122].) It thus behooves counsel to cogitate carefully and proceed cautiously before placing himself/herself in such a position."

Here, Catanzarite is telling the Court that Beck's claims are barred because they chose to engage in illegal conduct and conflicts, and with disregard of Beck and their own clients – purport that the illegal conduct and conflicts in which they have chosen to engage are somehow harmful to them but not to Beck. "Due to the undisputed contentious nature of [Beck's] dispute, it would be absurd to suggest [Catanzarite] could simultaneously represent [any among Conflicted Parties in this proceeding]." *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 23 (Cal. Ct. App. Jun. 28, 2021) See Rule 8.1115(b) for reliance on unpublished opinions, and Ex. 21-26 for material conflicts.

**IV.    CONCLUSION**

When one purports to have loyalty to everyone, one has loyalty to nobody but themselves. Catanzarite is subject to mandatory disqualification in this case – whether they continue this illegal representation or not, Beck can no longer be prejudiced as this is purely discriminatory and it threatens Beck's health and his case by the admission of Catanzarite on demurrer. *Flatt v. Superior Court*, 9 Cal.4th 275, 36 Cal. Rptr. 2d 537, 885 P.2d 950 (Cal. 1994). See also Cal. Rul. Prof. Cond. 1.7(d)(3) and Cal. Bus. & Prof. Cod. § 6077. In other words, because Catanzarite now contends its own conflicts bar its own defense and somehow Beck's claims, so Beck's imminent injury is concrete and particularized under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

Catanzarite will invariably point to a prior failed joinder from Beck to disqualify the firm [from MFS only] in December 2019 when circumstances were different, but Catanzarite was not yet playing every side of the fence or defending this action, nor had it been disqualified by this Court and upheld by Court of Appeal. Nor was Catanzarite asserting on demurrer its own conflicts were somehow harming its own attorneys (without regard for due process of others or their oath). Ex. 18-26. ROA #773. See also RJN, Ex. 3 ROA #998. Further, whether Catanzarite was or is disqualified under mandatory law, Catanzarite cannot obtain information adverse to CTI, use it, or any of its other clients (and the conduct is tortious under *Klemm*). *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700 (Cal. Ct. App. Jun. 28, 2021) Whether it is disqualified is disjunctive of Beck's rights to access government services.

For the foregoing reasons, Beck respectfully requests the Court deny each of the motions to compel the Conflicted Discovery, and disqualify Catanzarite and each of its attorneys Kenneth J. Catanzarite, Brandon Woodward, Tim James O'Keefe, Eric V. Anderton, and Nicole Marie Catanzarite Woodward of Catanzarite Law Corporation, under its inherent powers. Beck cannot be compelled to produce information that would breach Catanzarite's duty of loyalty to CTI or Conflicted Parties, and the very filing of the motions to compel was without authority due to mandatory disqualification.

Respectfully Submitted,

April 21, 2023 ,                                    _____

                                                    Justin S. Beck, Moving Party

                                                    Plaintiff, *In Pro Per*

                                                    Opposing Party to Motions to Compel

## <u>DECLARATION OF JUSTIN S. BECK IN OPPOSITION OF DEFENDANTS' MOTIONS TO COMPEL DISCOVERY</u>

I, Justin S. Beck, declare as follows under penalty of perjury under the laws of the United States and State of California. I am over the age of 18. I have personal knowledge, could, and would competently testify as to the truth and authenticity of each statement to which I declare. For those statements I make on information and belief, I believe them to be true. I have personal knowledge as to the authenticity of each exhibit filed with this declaration.

1.  I met Richard Francis O'Connor, Jr., Amy Jeanette Cooper, and Richard Probst after April 7, 2015.

2.  I have never been officer, director, employee, consultant, or manager for Mobile Farming Systems, Inc.

3.  Richard Francis O'Connor, Jr. and Amy Jeanette Cooper each admitted to me that they visited Roger Root at his home in Florida in or around 2012 or 2013, and that they paid $340,000 in illegal commissions to a Joseph Porche out of a ~$450,000 investment in Mobile Farming Systems, Inc. through a company called Jolly Rogers Investments, Inc. or Jolly Roger, Inc. Those transactions have nothing to do with me, and never did.

4.  It was the express intent of Richard Francis O'Connor, Jr., Amy Jeanette Cooper, and Richard Probst – as officers and directors of Mobile Farming Systems, Inc. – that Mobile Farming Systems, Inc. never receive shares of Cultivation Technologies, Inc. to avoid successor liability issues of the failed company, a balance sheet with almost $700,000 in loans owed by O'Connor to MFS, and the illegal commissions paid by Mobile Farming Systems, Inc. to Joseph Porche at the direction of O'Connor and Cooper.

5.  Richard Francis O'Connor, Jr., Amy Jeanette Cooper, and Richard Probst, in their duly authorized capacities for Cultivation Technologies, Inc. and Mobile Farming Systems, Inc., each executed the "Unanimous Written Consent of Directors of Cultivation Technologies, Inc." on June 15, 2015, which constituted the "Amended Organizational Acts & Resolutions" of Cultivation Technologies, Inc.

6. Richard Francis O'Connor, Jr., Amy Jeanette Cooper, and Richard Probst, in their duly authorized capacities for Cultivation Technologies, Inc. and Mobile Farming Systems, Inc., offered every Mobile Farming Systems, Inc. shareholder shares in Cultivation Technologies, Inc. Approximately fifty-three of fifty-eight accepted the offer recognizing Mobile Farming Systems, Inc. failed to execute its business strategy and would be unwound or dissolved. Each agreed to buy shares of Cultivation Technologies, Inc. I later issued 65,000 shares to two shareholders that could not be reached (50,000 and 15,000 shares, respectively).

7. Roger Root, on behalf of the entity Jolly Rogers Investments, Inc. or Jolly Roger, Inc., was offered shares of Cultivation Technologies, Inc. in August 2015 but declined. Mr. Root told Tony Scudder, who performed investor relations services, that he supported what Cultivation Technologies, Inc. was doing.

8. From June 15, 2015, through September 14, 2018, no person ever claimed Mobile Farming Systems, Inc. to own shares or rights to any interests of Cultivation Technologies, Inc. Richard Francis O'Connor, Amy Jeanette Cooper, and Richard Probst communicated about bankrupting or unwinding the company.

9. Richard Francis O'Connor, Jr. participated in approximately 158 separate securities transactions from June 15, 2015, through January 23, 2019, involving the sale or transfer of Cultivation Technologies, Inc. shares on behalf of the issuer in an authorized capacity, or privately for personal benefit. I believe he personally made more than $2,000,000 from these transactions before January 23, 2019, when he would claim the shares didn't exist for Catanzarite's scheme.

10. No securities sale or transfer agreement from June 15, 2015, through January 23, 2019, reflected ownership by Mobile Farming Systems, Inc. of Cultivation Technologies, Inc. shares because Mobile Farming Systems, Inc. was never issued shares of Cultivation Technologies, Inc. as a matter of fact.

11. The first private placement memorandums (PPM) of Cultivation Technologies, Inc. were approved by Richard Francis O'Connor, Jr. and did not reflect ownership by Mobile Farming Systems, Inc. of Cultivation Technologies, Inc. shares. No subsequent PPM disclosed them because Mobile Farming Systems, Inc. was not a shareholder according to O'Connor, Cooper,

12. Richard Francis O'Connor, Jr., Amy Jeanette Cooper, and Richard Probst retained a transfer agent in July 2015 to issue the first shares of Cultivation Technologies, Inc. No shares were issued then to Mobile Farming Systems, Inc., and no shares were ever issued after that to Mobile Farming Systems, Inc. (except for the acts of January 23, 2019 outlined herein).

13. Mohammed Zakhireh and James Duffy each purchased shares of Cultivation Technologies, Inc. through the issuer via private placement memorandums authorized by the board of directors. Those PPMs did not reflect any Cultivation Technologies, Inc. shares owned by Mobile Farming Systems, Inc. – which were required to list any shareholder having more than 5% of stock.

14. Mohammed Zakhireh and James Duffy each purchased shares of Cultivation Technologies, Inc. through Richard Francis O'Connor, Jr. in private transactions from him or TGAP Holdings, LLC.

15. In April 2017 after Cultivation Technologies, Inc. executed a $14 million funding agreement, Mohammed Zakhireh and Richard Francis O'Connor, Jr. each sued me and Cultivation Technologies, Inc. with standing based on their ownership of Cultivation Technologies, Inc. shares. They settled those claims in June 2017 with James Duffy also agreeing to the settlement and signing it. They would later agree those shares did not exist for Catanzarite's scheme.

16. In July 2017, Mohammed Zakhireh and Richard Francis O'Connor, Jr. complained to the United States Securities Exchange Commission about Cultivation Technologies, Inc. and me due to a grudge harbored by Richard Francis O'Connor, Jr. following his resignation in 2016. The SEC investigated and reviewed approximately 25,000 pages of securities documents. None of those documents reflected any ownership by Mobile Farming Systems, Inc. of shares of Cultivation Technologies, Inc. That investigation concluded in January 2018 with the SEC finding no wrongdoing for enforcement by me or CTI. Those documents reviewed by the SEC included the purportedly "undisclosed" Preferred Series A shares. (Investigation #LA-4837).

17. On September 14, 2018, Catanzarite Law Corporation sued Mobile Farming Systems, Inc, Richard Francis O'Connor, Amy Jeanette Cooper, Cliff Higgerson, and others directly and/or derivatively. At no point did a Court authorize compromise or settlement of that derivative action.

18. Catanzarite Law Corporation's allegations filed on September 14, 2018, for a "Denise Pinkerton" as "attorney-in-fact" for "Roger Root" included securities fraud and abuse of the elderly charges against Amy Jeanette Cooper and Richard Francis O'Connor, Jr. This would later form the basis of Mr. Catanzarite extorting them to produce evidence while defrauding this Court and innocent people, including me, with false evidence produced by O'Connor and Cooper.

19. On October 4, 2018, Kenneth Catanzarite emailed my counsel demanding 10,000,000 shares of Cultivation Technologies, Inc. be issued Roger Root without regard for the derivative interests of Mobile Farming Systems, Inc. Roger Root was never a shareholder of Mobile Farming Systems, Inc., either. It is unclear if Mr. Root's "attorney-in-fact" Denise Pinkerton even knows him beyond the factual representations of Kenneth J. Catanzarite.

20. On December 21, 2018, Kenneth Catanzarite served approximately 5,000 total discovery requests upon Mobile Farming Systems, Inc., Amy Jeanette Cooper, Richard Francis O'Connor, Jr., me, and others.

21. Cliff Higgerson demurred to the derivative MFS action January 3, 2019, asserting Roger Root was not a shareholder of MFS and that Catanzarite Law Corporation had no standing to pursue derivative claims. After that, MFS counsel Ken Watnick filed a motion for security on January 7, 2019. In response to cover up a lack of standing, Catanzarite Law Corporation took over MFS in January 2019 and started acting as its counsel.

22. On January 23, 2019, Amy Jeanette Cooper's insurance-assigned counsel resigned and later declared under penalty of perjury they were not involved in any compromise of the derivative action against MFS.

23. O'Connor, Cooper, Higgerson, and TGAP Holdings, LLC were each dismissed from the false derivative action against MFS between January 22, 2019, and January 23, 2019, without court approval.

24. On January 23, 2019, Richard Francis O'Connor, Jr. signed a fraudulent shareholder consent of "sole shareholder" of Cultivation Technologies, Inc. being Mobile Farming Systems, Inc. purporting to unwind three years of securities transactions. O'Connor was principal in many of these transactions for millions of dollars.

25. The fraudulent January 23, 2019, shareholder consent appointed Richard Francis O'Connor, Jr., Mohammed Zakhireh, and James Duffy as officers and directors of Cultivation Technologies, Inc. on the knowingly false basis that Mobile Farming Systems, Inc. was a shareholder. Each were shareholders of Cultivation Technologies, Inc. through transactions with the issuer and with O'Connor himself as set forth above.

26. On January 25, 2019, Kenneth Catanzarite sent a letter that he was "working with law enforcement" and that I was to turn over all operations of Cultivation Technologies, Inc. on the basis that Mobile Farming Systems, Inc. was its sole shareholder. Catanzarite knew this letter was false. I believe Mr. Catanzarite bribes local law enforcement to enable these schemes.

27. On January 28, 2019, Catanzarite Law Corporation filed a direct lawsuit on behalf of Mobile Farming Systems, Inc. while he and his firm were concurrently suing Mobile Farming Systems, Inc. derivatively about a month after serving more than 500 discovery requests on Mobile Farming Systems, Inc.

28. On February 5, 2019, Catanzarite Law Corporation received details on the merger transaction valued at $261 million that was at risk of failing if the knowingly false claims filed, and non-judicial fraud supporting those claims, were continued. The scheme continued anyway with knowledge of damages.

29. On February 6, 2019, Cultivation Technologies, Inc. entered a letter of intent to complete the merger with Western Troy Capital Resources. Rex Loesby later confirmed the causation of the merger's failure.

30. On March 19, 2019, Catanzarite Law Corporation suborned and then filed a declaration from O'Connor which contained materially false statements of fact to obtain a temporary restraining order and steal more information on CTI shareholders. Conflicted Parties are now seeking the same information again from me.

31. On April 16, 2019, Catanzarite Law Corporation filed a competing, direct and derivative lawsuit on behalf of Cultivation Technologies, Inc. shareholders that the firm was concurrently and separately claiming did not exist which would be tried on April 30, 2019, before Honorable Randall J. Sherman in CX105 of Orange County Superior Court through a 709 hearing. The

factual findings of that trial were ignored and concealed. After the firm as disqualified, former associate of Catanzarite Law Corporation and proxy Jim Travis Tice is now "counsel."

32. On April 19, 2019, "Kenneth J. Catanzarite for Richard O'Connor" emailed MFS shareholders that "neither I, Richard O'Connor, Tony Scudder, nor anyone else sued in the Root Case or the Mobile Farming Case have settled any claims with Root or anyone else. All we did was agree to toll the statute of limitations to allow claims to be brought against us later. No conflict."

33. Between April 30, 2019, and May 1, 2019, I participated in the trial of fact wherein the Court reviewed evidence and concluded that Mobile Farming Systems, Inc. was not a shareholder of Cultivation Technologies, Inc. The hearing sought to cancel all shares of CTI in favor of MFS under false pretenses.

34. During the 709 trial the Court reviewed private placement memorandums signed by O'Connor. It reviewed the transfer agent declaration signed by O'Connor and Cooper. It reviewed the transfer agent retention agreement signed by O'Connor and Cooper. It reviewed the initial share issuances from July 2015. The Court concluded that laches supports Mobile Farming Systems, Inc. had been of the belief that it was not a shareholder of Cultivation Technologies, Inc. Whether or not this was captured in the Court order following that trial, Mr. Catanzarite knows that Mobile Farming Systems, Inc. is not and has never been a shareholder of Cultivation Technologies and that he is defrauding this Court and innocent people. Those claims are just re-filed and somehow allowed again in this Court to defraud litigants and Scottsdale Insurance Company further.

35. Concluding the trial, the Court stated "every fiber of [its] being" concluded the facts were "overwhelming" against the contention that Mobile Farming Systems, Inc. was a shareholder of Cultivation Technologies, Inc. The Court stated that Cooper and O'Connor would be "violating their fiduciary duties up the ying yang" if Mobile Farming Systems, Inc. had been a shareholder of Cultivation Technologies, Inc. all along – having participated in many securities transactions without disclosing it.

36. I resigned from Cultivation Technologies, Inc. on May 14, 2019, when it became clear that Catanzarite Law Corporation's fraudulent scheme would destroy the merger with Western Troy Capital Resources. I spoke with Carlos Calixto while I was on vacation in Italy around that date,

who informed me Mr. Catanzarite contacted him and tried to bribe him for his Cultivation Technologies, Inc. shareholder vote for $5,000.

37. I agreed to settle federal racketeering and conspiracy allegations against Anthony B. Scudder over the Summer 2022. During our discussions, Mr. Scudder informed me that Mr. Catanzarite had bribed several witnesses who were to attend the 709 trial on April 30, 2019 and May 1, 2019 (including a "Nick Fleig") – and that Mr. Catanzarite was a "powerful criminal."

38. Mr. Scudder confirmed by phone my suspicion that Mr. Catanzarite engages in bribery and extortion of witnesses and litigants as a practice to suit false narratives and fraudulent litigation such as the cases I have faced since September 14, 2018.

39. I do not believe any party has received discovery from Conflicted Parties in this case or related cases despite formal requests for the same, although others have provided discovery production in good faith that was used to file more knowingly false claims against innocent people without objective probable cause.

40. Catanzarite Law Corporation has in its possession the answers to virtually all material discovery of which it seeks to compel me to produce. My damages were noticed before CTI and the merger were destroyed with malice. I have provided extensive details to Mr. Catanzarite in Federal Court, too but it is ignored just as with the material facts that estop all of his false claims.

41. Catanzarite Law Corporation has in its possession information from two public issuers – FinCanna Capital detailing Cultivation Technologies, Inc., and Contakt World Technologies Corp. detailing that company which was indirectly destroyed by the conduct at issue in this case. The information is public and readily available to anyone with internet access.

42. As direct and proximate cause of non-judicial fraud leading to fraudulent litigation in this Court, I am now unemployed and suffer from a new onset seizure disorder commencing in December 2022. Catanzarite Law Corporation is aware of this and is harassing me with knowledge of my injuries.

43. I do not understand how or why Catanzarite Law Corporation is enabled by Courts to conduct serial fraud on innocent litigants, yet I am compelled to produce more material to perpetuate the schemes where I have never received discovery. Nor do I understand how Catanzarite Law

Corporation is representing its adversaries who are producing evidence as it tolls claims against them in a fraudulent derivative action that was compromised without Court approval.

44. I believe Kenneth Catanzarite is bribing Eli David Morgenstern of The State Bar of California to protect him, so there are no other avenues of recourse for me or the public but for the Court to exercise its inherent powers. The State Bar of California recently admitted to its own bribery and corruption schemes by press release on March 10, 2023, in two published, heavily redacted investigative reports.

45. I delivered a request to meet and confer on Thursday, April 13, 2023, but did not hear back. I proposed to informally resolve the list of Conflicted Discovery requests and reminded Conflicted Parties that they have most of the information they seek to compel.

46. I provided documentation for my damages in U.S. Southern District of California Court and filed a statement of damages in this Court. I do not intend to make any other showings due to the conflicts of interest that prevent me from fair hearings and provide unfair advantage to attorneys engaged in fraud and concealment of evidence.

47. The discovery requests filed against me – and motions to compel me to produce them – are harassing, oppressive, and duplicative and make the Court process seem illegitimate. They acutely threaten my health.

48. I do not have the time or resources to re-produce thousands of documents that are already in possession of Catanzarite Law Corporation.

49. I do not expect to obtain discovery from Conflicted Parties because Catanzarite Law Corporation confessed that their conflicts are not curable and that it will restrict production to me and harm their "due process rights." I intend to rely upon the proof I have in jury trial and expect Conflicted Parties to do the same after 5-years of discovery efforts and fraudulent litigation.

50. Attached as <u>EXHIBIT 1</u> is a true and correct copy of the June 15, 2015, Amended Acts of Organization of Cultivation Technologies, Inc. signed by Richard Francis O'Connor, Jr. and Amy Jeanette Cooper in their duly authorized capacities. This is part of the bona fide corporate records of Cultivation Technologies, Inc. upon which I relied as CEO in raising capital after 2016.

51. Attached as <u>EXHIBIT 2</u> is a true and correct copy of an email confirming Tony Scudder's conversation with Roger Root declining to purchase CTI shares. I received this email in the normal course of business as a consultant to Cultivation Technologies, Inc.

52. Attached as <u>EXHIBIT 3</u> is a true and correct copy of a list of 158 transactions involving the sale or transfer of Cultivation Technologies, Inc. shares by Richard Francis O'Connor, Jr. I prepared this list with assistance from company counsel for the 709 trial on April 30, 2019 and May 1, 2019. I am readily familiar with the securities transactions of Cultivation Technologies, Inc.

53. Attached as <u>EXHIBIT 4</u> is a true and correct copy of the transfer agent agreement for Cultivation Technologies, Inc. signed by Richard Francis O'Connor and Amy Jeanette Cooper, and a declaration from the transfer agent. The Court reviewed this agreement and the share issuance list in the 709 trial leading to its findings May 1, 2019 as set forth below. I am readily familiar with the issuances of stock by Cultivation Technologies, Inc. reflected therein.

54. Attached as <u>EXHIBIT 5</u> is a true and correct copy of a letter I received from the SEC concluding its investigation of CTI's securities transactions. I received this in the normal course of business.

55. Attached as <u>EXHIBIT 6</u> is a true and correct copy of a January 7, 2019, motion for security from Mobile Farming Systems, Inc. actual counsel. I received this as a defendant.

56. Attached as <u>EXHIBIT 7</u> is a true and correct copy of a declaration from Amy Jeanette Cooper's former counsel Stephen Erigero, Esq. who resigned from that role January 23, 2019. I received this in the normal course of defending claims.

57. Attached as <u>EXHIBIT 8</u> is a true and correct copy of a shareholder consent of Cultivation Technologies, Inc. dated January 23, 2019, signed by Richard Francis O'Connor, Jr. I received this from Catanzarite Law Corporation.

58. Attached as <u>EXHIBIT 9</u> is a true and correct copy of a letter I received from Catanzarite Law Corporation dated January 25, 2019, signed by Kenneth Catanzarite.

59. Attached as <u>EXHIBIT 10</u> is a true and correct copy of a motion filed by Cliff Higgerson dated January 3, 2019, in Orange County Superior Court Case No. 30-2018-0108922.

60. Attached as <u>EXHIBIT 11</u> is a true and correct copy of a letter delivered to Catanzarite Law Corporation dated February 5, 2019. I am readily familiar with its contents.

61. Attached as <u>EXHIBIT 12</u> is a true and correct copy of a declaration from Rex Loesby dated September 27, 2021. I am readily familiar with its contents and the matters to which he declares.

62. Attached as <u>EXHIBIT 13</u> is a true and correct copy of an email I received from Richard Probst from Han Le of Catanzarite Law Corporation. I spoke with Richard Probst after this was received, who confirmed its authenticity. I am readily familiar with its contents.

63. Attached as <u>EXHIBIT 14</u> is a true and correct copy of a trial transcript dated May 1, 2019, which I hereby certify as being true and correct. I further swear the factual findings of the Court to be true and correct, and that Catanzarite Law Corporation is concealing material facts from this Court. I have intimate knowledge of the facts and evidence the Court reviewed.

64. Attached as <u>EXHIBIT 15</u> is a true and correct copy of a declaration from Carlos Calixto dated May 17, 2019, filed in Orange County Superior Court Case No. 30-2019-01046904.  I am readily familiar with its contents.

65. Attached as <u>EXHIBIT 16</u> is a true and correct copy of my letter to Mr. Catanzarite for all Conflicted Parties is attached hereto. I delivered this to Mr. Catanzarite on April 13, 2023.

66. Attached as <u>EXHIBIT 18</u> is a true and correct copy of the caption and signature page in Case No. 30-2018-01018922 filed against Mobile Farming Systems, Inc. and Cultivation Technologies, Inc. September 14, 2018, in Orange County Superior Court.

67.  Attached as <u>EXHIBIT 19</u> is a true and correct copy of the caption and signature page in Case No. 30-2019-01046904 filed on behalf of Mobile Farming Systems, Inc. against Cultivation Technologies, Inc. January 28, 2019, in Orange County Superior Court.

68. Attached as <u>EXHIBIT 20</u> is a true and correct copy of the caption and signature page in Case No. 30-2019-01064267 filed April 16, 2019, in Orange County Superior Court.

69. Attached as <u>EXHIBIT 21</u> is a true and correct copy of the caption and signature page in the first amended complaint for Case No. 30-2019-01064267 filed May 15, 2019, in Orange County Superior Court.

70. Attached as <u>EXHIBIT 22</u> is a true and correct copy of the caption and signature page in a cross complaint filed on behalf of Cultivation Technologies, Inc. by Catanzarite Law Corporation in Case No. 30-2019-01072088-CU-BC-CJC on July 2, 2019, in Orange County Superior Court.

71. Attached as <u>EXHIBIT 23</u> is a true and correct copy of the caption and signature page in Case No. 30-2019-01046904 signed July 22, 2019, and filed in Orange County Superior Court.

72. Attached as <u>EXHIBIT 24</u> is a true and correct copy of the caption and signature page in the first amended complaint for Case No. 30-2018-01018922 signed July 22, 2019, and filed in Orange County Superior Court. Settlement of this derivative action was never approved by the Court.

73. Attached as <u>EXHIBIT 25</u> is a true and correct copy of the complaint in Case No. 30-2019-01096233 filed on behalf of Cultivation Technologies, Inc. by Catanzarite Law Corporation filed September 11, 2019, in Orange County Superior Court before it was removed by defendant Scottsdale Insurance Company October 19, 2019, in U.S. Central District, Southern Division Case No. 8:19-cv-01993.

74. Attached as <u>EXHIBIT 26</u> is a true and correct copy of the caption and signature page in the cross complaint for Case No. 30-2020-01145998 filed on behalf of Mobile Farming Systems, Inc. by Catanzarite Law Corporation on August 10, 2020, in Orange County Superior Court.

75. Attached as <u>EXHIBIT 28</u> is a true and correct copy of Mobile Farming Systems, Inc. Statement of Information dated 12/22/2022 showing a street address of Catanzarite Law Corporation 2331 West Lincoln Avenue, Anaheim, CA 92801 with officers Richard F. O'Connor II and James Duffy and directors James A. Duffy, Amy J. Cooper, and Richard F. O'Connor II with the agent name Kenneth J. Catanzarite. I obtained this from California Secretary of State's website on April 17, 2022.

76. Attached as <u>EXHIBIT 29</u> is a true and correct copy of Mobile Farming Systems, Inc. Statement of Information dated 11/17/2020 showing a street address of Catanzarite Law Corporation 2331 West Lincoln Avenue, Anaheim, CA 92801 with officers Richard F. O'Connor II and James Duffy and directors James A. Duffy, Amy J. Cooper, and Richard F. O'Connor II with the agent name Kenneth J. Catanzarite. I obtained this from California Secretary of State's website on April 17, 2022.

//

//

[SIGNATURE PAGE FOLLOWS]

I DECLARE THE FOREGOING TO BE TRUE UNDER PENALTY OF PERJURY, SIGNED TODAY,

APRIL 21, 2023, FROM OCEANSIDE CALIFORNIA

_____

Justin S. Beck, Declarant

## **PROOF OF SERVICE**

1

2    I, Brian Bargabus, hereby declare: that I am over 18 years of age and I am not a party to this

3    action, and that my address is 3501 Roselle St., Oceanside, CA 92056 and my email address is

4    bbargabus@yahoo.com

5    On April 21, 2023, I scheduled for service one copy of the following documents using a computer

6    connected to the internet.

7    **OMNIBUS OPPOSITION TO MOTIONS TO COMPEL; MEMORANDUM OF POINTS AND**
8    **AUTHORITIES; OBJECTION TO SANCTIONS; DECLARATION OF JUSTIN S. BECK**

9

10

11

12    On the parties listed below:

13    Catanzarite Law Corporation             kcatanzarite@catanzarite.com

14    Attorneys for Kenneth Catanzarite, Catanzarite Law Corporation, Brandon Woodward, Tim
15    James O'Keefe, Amy Jeanette Cooper, Cliff Higgerson, Mohammed Zakhireh, Richard Francis
      O'Connor, Jr. James Duffy, TGAP Holdings, LLC, Nicole Marie Catanzarite Woodward, and Mobile
16    Farming Systems, Inc.

17    State of California                      AGElectronicService@doj.ca.gov

18    The State Bar of California              serviceofprocess@calbar.ca.gov

19    Eli David Morgenstern                    serviceofprocess@calbar.ca.gov

20    Suzanne Grandt                           serviceofprocess@calbar.ca.gov

21    Ruben Duran                              serviceofprocess@calbar.ca.gov

22
23    **Attorneys for Cross-Defendants**        **Attorneys for Cross-Defendant**      **Attorneys for Cross-Defendants**
      **Justin Beck, I'm Rad, LLC, EM2**        **Richard Joseph Probst:**             **Horwitz + Armstrong, a Professional**
      **Strategies, LLC, Robert A.**            Wendy M. Thomas                       **Law Corporation, Lawrence W.**
24    **Bernheimer and Robert A.**              Jessica B. King                       **Horwitz, and John R. Armstrong II:**
      **Bernheimer, Inc.:**                     Tadjedin Thomas & Engbloom Law         John R. Armstrong, Esq.
25    Steve Belilove, Esq.                      Group LLP                             Ryan Thomason, Esq.
      Rosely George, Esq.                       6101 W Centinela Ave, Ste 270          Lawrence Horwitz, Esq.
26    KAUFMAN DOLOWICH VOLUCK LLP               Culver City, CA 90230                  Lockett + Horwitz, APLC
      11755 Wilshire Blvd., Ste. 2400           wendyt@ttelawgroup.com                 2 South Pointe, Ste. 275
27    Los Angeles, CA 90025                     jessicak@ttelawgroup.com               Lake Forest, CA 92630
      Fax: (310) 575-9720                                                              Fax: (949) 540-6578
28    sbelilove@kdvlaw.com                                                             jarmstrong@horwitzarmstrong.com
      rgeorge@kdvlaw.com                                                               rthomason@lhlawpc.com
                                                                                       lhorwitz@lhlawpc.com

1       By electronic mail by personally transmitting a true copy thereof via an electronic email service

2  connected to the internet, addressed to the email addresses listed above.        [X]

3       I swear the foregoing to be true under penalty of perjury under the laws of the State of California.

4  I'm signing this April 21, 2023

5  

6                         Brian Bargabus

7  

8  

9  

10  

11  

12  

13  

14  

15  

16  

17  

18  

19  

20  

21  

22  

23  

24  

25  

26  

27  

28